# EXHIBIT 8

March 9, 2026

**BY ELECTRONIC FILING**

Marlene H. Dortch
Secretary
Federal Communications Commission
45 L Street NE
Washington, DC 20554

>    Re:  MB Docket No. 25-331:  In the Matter of Applications to Transfer Control of
>    TEGNA Inc. to Nexstar Media Inc.

Dear Ms. Dortch,

The Broadband Communications Association of Pennsylvania ("BCAP"), Broadband Communications Association of Washington ("BCAW"), Indiana Cable and Broadband Association ("ICBA"), Mississippi Internet and Television ("MIT") (formerly known as the Mississippi Cable Telecommunications Association), Tennessee Cable & Broadband Association ("TCBA"), and VCTA – Broadband Association of Virginia ("VCTA") (collectively, "State Cable Petitioners") hereby submit this *ex parte* letter for the Commission's consideration in this proceeding.  State Cable Petitioners have detailed on the record the numerous reasons why the Commission should deny, or at minimum designate for a formal hearing, the proposed transfer of control ("Transaction") of the broadcast licenses of TEGNA Inc. ("TEGNA") to Nexstar Media Group, Inc. ("Nexstar") (collectively, the "Applicants").

***Consumer price increases are the most immediate and concrete public interest harm that the Transaction would cause.***  The record overwhelmingly demonstrates that the Transaction would enable Nexstar to substantially increase the retransmission consent-related rates that multichannel video programming distributors ("MVPDs") would have to pay to Applicants, and thereby raise costs for consumers.[1]  Across all MVPDs, these costs will rise ***and increase consumer TV prices by hundreds of millions of dollars annually over the next three years alone*** and continue rising even more after that.  Nexstar has boasted to Wall Street that its retransmission consent revenues will rise substantially and immediately as it executes on its "consolidation playbook" for utilizing after-acquired station clauses in its contracts and other leverage to drive TEGNA rates to Nexstar's levels and Nexstar's rates even higher after that.[2]

---

[1] *See e.g.,* Petition to Deny of State Cable Petitioners, MB Docket No. 25-331, at 36-48 (filed Dec. 31, 2025); Reply of State Cable Petitioners, MB Docket No. 25-331, at 21-28 (filed Jan. 26, 2026); Letter from Michael Nilsson, Counsel to DIRECTV, to Marlene H. Dortch, Secretary, FCC, MB Docket No. 25-331 (filed Mar. 2, 2026); Letter from Cristina Chou, VP of Government Affairs, Optimum Communications, to Marlene H. Dortch, Secretary, FCC, MB Docket No. 25-331 (filed Mar. 2, 2026).  Unless otherwise noted, all citations to petitions to deny, comments, or reply comments included herein are to those filed in response to the Transaction in MB Docket No. 25-331.

[2] *See* Transcript of Nexstar Media Group, Inc. Presentation at 53rd Annual JPMorgan Global Technology, Media and Communications Conference (May 14, 2025) ("**[W]e have the ability to step up any targets['] retrans if it is lower to our level.  And that's a very nice synergy to have.  It's easy to achieve.**"); Nexstar June 2025 Investor Presentation at 22 ("**The Nexstar Consolidation Playbook:  1. Retransmission Revenue Synergies:  Acquired stations move to Nexstar's retransmission consent agreements**"); *see also* Petition to Deny of State Cable

Marlene H. Dortch
March 9, 2026
Page 2

The Commission should take account of these imminent and avoidable consumer harms as it is deliberating over the Transaction.

Beyond demonstrating these harms from Applicants' retransmission revenue "synergies," State Cable Petitioners:

- Explained why the Commission lacks the authority to waive or otherwise adjust the 39 percent national television audience reach limitation set by Congress ("National Cap" or "Cap");[3]

- Explained that the waivers of the Duopoly Rule the Applicants requested lack the particularized justifications required by Commission rules, and would impermissibly frustrate the purpose of that rule by impairing viewpoint diversity and localism;[4]

- Highlighted the fact that Nexstar is proposing to reacquire from TEGNA 11 stations across eight markets that the DOJ previously required it to divest, in clear violation of the terms of DOJ's settlement with Nexstar in connection with its 2020 Tribune transaction;[5]

- Discussed why Nexstar's sidecar relationships raise substantial and material questions of fact as to whether Nexstar has already been violating the Commission's bright-line ownership rules;[6]

- Demonstrated that, if the Transaction is approved, Nexstar has indicated that it will continue its pattern of laying off workers and centralizing its production of news content following consolidation;[7] and

- Explained why local advertising prices would increase as a result of the Transaction, and that the Applicants' claims related to ATSC 3.0 are theoretical and speculative.[8]

---

Petitioners at 41; *id.*, Declaration of Joe Lorah ¶ 7, Declaration of Paul Beaudry ¶ 7, and Declaration of Jack Capparell ¶ 7.

[3] *See* Petition to Deny of State Cable Petitioners at 10-26; Reply of State Cable Petitioners, at 8-15; Letter from Todd Eachus et al., President, Broadband Communications Association of Pennsylvania, to Marlene Dortch, Secretary, FCC, MB Docket No. 25-331, at 1 (filed Feb. 10, 2026).

[4] *See* Petition to Deny of State Cable Petitioners at 26-32; Reply of State Cable Petitioners at 16-19.

[5] *See* Petition to Deny of State Cable Petitioners at 32-33.

[6] *See id.* at 33-35.

[7] *See id.* at 48-54; Reply of State Cable Petitioners at 29.

[8] *See* Petition to Deny of State Cable Petitioners at 54-57; Reply of State Cable Petitioners at 28.

Marlene H. Dortch
March 9, 2026
Page 3

For all of these reasons, State Cable Petitioners maintain that the Commission should deny the Transaction or, at minimum, designate it for formal hearing under Section 309(e).[9]

If the Commission nonetheless decides to approve the Transaction, it should adopt the following structural and behavioral conditions to help mitigate the public interest harms to consumers and MVPDs that the Transaction would cause:

***Station Divestitures.***  The Commission should require the Applicants to divest such stations as are necessary to come into compliance with the National Cap and Local Television Ownership Rule ("Divested Stations").[10]  During this divestiture period, retransmission consent rates that such stations charge MVPDs must be frozen at current levels, and Applicants should also be barred from entering into any form of local marketing, joint sales, shared services, or any other agreement related to the operations or other functions with any Divested Station.

***Anti-Circumvention.***  To prevent Applicants from circumventing such divestiture conditions, the Commission should bar Applicants from (a) shifting affiliations from Divested Stations to stations that Applicants retain post-Transaction ("Retained Stations"), including, but not limited to, multicast streams of Retained Stations and affiliated LPTV stations; (b) divesting stations to any "sidecar entity" used now or in the future by Applicants; or (c) obtaining an option to reacquire a Divested Station.[11]

***After-Acquired Station Clauses.***  To prevent supra-competitive price hikes that the Applicants have promised are coming, the Commission should bar Nexstar from triggering after-acquired station clauses in its agreements with MVPDs for any Retained Station.  There is precedent for broadcast applicants agreeing to such conditions in prior transactions subject to Commission review, such as the parties did in the Standard General/TEGNA transaction.[12]  This condition would last until Applicants' existing agreements with MVPDs expire or a period of three years from approval of the Transaction, whichever is longer.  Under this condition, stations currently owned by TEGNA must charge current TEGNA rates.

These conditions, if imposed by the Commission, would help mitigate the Transaction's public interest harms and save consumers from substantial imminent and long-term price hikes for the same broadcast programming they are getting today.

Please contact the undersigned with any questions about this filing.

---

[9] 47 U.S.C. § 309(e).

[10] 47 C.F.R. §§ 73.3555(b), (e).

[11] A sidecar entity includes any entity with which Nexstar or TEGNA today, or the merged entity in the future, has any form of local marketing, joint sales, shared services, or any other agreement relating to the operation or other functions of any broadcast station licensed to such entity.

[12] *See, e.g.*, Letter from Soohyung Kim, Standard General L.P to Marlene H. Dortch, Secretary, FCC, MB Docket No. 22-162 (filed Dec. 16, 2022).

Marlene H. Dortch
March 9, 2026
Page 4

Respectfully submitted,

/s/ _____

Todd Eachus
President
BROADBAND COMMUNICATIONS
ASSOCIATION OF PENNSYLVANIA
127 State St.
Harrisburg, PA 17101

David Ducharme
Executive Director
BROADBAND COMMUNICATIONS
ASSOCIATION OF WASHINGTON
4217 Williams Ave. N.
Renton, WA 98056

Joseph Dant
Executive Director
INDIANA CABLE AND BROADBAND
ASSOCIATION
150 W. Market St., Ste. 412
Indianapolis, IN 46204

Lindsey Simmons
Interim Executive Director
MISSISSIPPI INTERNET AND TELEVISION
PO Box 55867
Jackson, MS 39296

Ann Marie Walp
President
TENNESSEE CABLE & BROADBAND
ASSOCIATION
414 Union St., Ste. 1900
Nashville, Tennessee 37219

Ray LaMura
President
VCTA – BROADBAND ASSOCIATION OF
VIRGINIA
1111 East Main St., Ste. 802
Richmond, VA 23219

CC (via email):

David Brown
Chris Robbins
Emily Harrison
Jim Bird