Alexander P. Okuliar (*pro hac vice*)
Bradley S. Lui (CA Bar No. 143088)
Robert W. Manoso (*pro hac vice)*
Alexa Rae DiCunzolo (*pro hac vice*)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
Telephone: 202.887.1500
Facsimile: 202.912.2329
Email: AOkuliar@mofo.com
        BLui@mofo.com
        RManoso@mofo.com
        ADiCunzolo@mofo.com

Nicole K. Serfoss (*pro hac vice*)
MORRISON & FOERSTER LLP
370 Seventeenth Street 4200 Republic Plaza
Denver, CO 80202-5638
Telephone: 303.592.1500
Facsimile: 303.592.1510
Email: NSerfoss@mofo.com

Eliot A. Adelson (CA Bar No. 205284)
Daralyn J. Durie (CA Bar No. 169825)
Adam R. Brausa (CA Bar No. 298754)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: EAdelson@mofo.com
        DDurie@mofo.com
        ABrausa@mofo.com

Henry Huttinger (CA Bar No. 312843)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454
Email: HHuttinger@mofo.com

*Attorneys for Defendants*
Nexstar Media Group, Inc. and TEGNA Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re Nexstar-TEGNA Merger Litigation | Case No. 2:26-cv-00976-TLN-CKD |
| | **DEFENDANTS NEXSTAR MEDIA GROUP, INC. AND TEGNA INC.'S EXHIBIT A TO PROPOSED ORDER MODIFYING THE TEMPORARY RESTRAINING ORDER AND CONVERTING INTO PRELIMINARY INJUNCTION** |
| | Judges: Honorable Troy L. Nunley and Honorable Carolyn K. Delaney |
| | Action Filed: March 18, 2026 |

EXHIBIT A

# Exhibit A

## Exhibit A: Proposed Obligations and Restrictions During Applicable Period

Below sets forth the obligations and restrictions that would apply to the specified stations (i.e., applicable stations in overlap markets) during the applicable period.  The below are consistent with the provisions set forth in the Nexstar/TEGNA Merger Agreement that applied to TEGNA during the period between signing and closing.

(a)    During the applicable period, with respect to the specified stations, TEGNA management shall (i) conduct operations in all material respects in the ordinary course of business, (ii) maintain in all material respects the station licenses and the rights thereunder, (iii) preserve intact in all material respects its ongoing businesses and material relationships with third parties, (iv) preserve intact the employee base as set forth in the business plan for 2026 and (v) maintain in all material respects the facilities of the specified stations, provided that any expiring leases may be extended on market terms.  TEGNA management shall, as directed by Nexstar, pay dividends/distributions and loan/repay intercompany loans as needed in connection with Nexstar's ordinary course operations and debt financing, cash and tax optimization strategies.

(b)    In addition to the foregoing, in order to maximize the value and operations of the applicable stations on a standalone and combined basis for the benefit of all parties, TEGNA management shall comply with directives and initiatives as determined by Nexstar (in consultation with TEGNA management) with respect to overall strategy, budget and business plans on material matters.  Such compliance and consultation shall not apply to negotiation for retransmission consents.

(c)    During the applicable period, with respect to the specified stations, TEGNA management shall not take the following actions (provided that, notwithstanding such restrictions, Nexstar and TEGNA management will consult with respect to such actions if TEGNA management believes any such action would be beneficial to the applicable stations):

(i)    adjust, split, reverse split, consolidate, subdivide, combine or reclassify any shares of capital stock, voting securities or other ownership interests of any entity holding the specified stations;

(ii)    other than to Nexstar Media Inc. (or any intermediary company) make, declare or pay any dividend, or make any other distribution on, or directly or indirectly redeem, purchase or otherwise acquire, any equity interests of any entity holding the specified stations;

(iii)    issue any equity interests of any entity holding the specified stations;

(iv)    adopt any formal or informal plan of complete or partial liquidation, dissolution, merger, consolidation or other reorganization;

1

(v)     other than in accordance with contracts already in effect or in connection with any intercompany indebtedness between the stations and Nexstar Media Inc. (or any intermediary company) incur, assume, endorse, guarantee or otherwise become liable for or modify the terms of any indebtedness or issue or sell any debt securities or any rights to acquire any debt securities (other than, for the avoidance of doubt, Nexstar's existing debt arrangements);

(vi)     other than in accordance with contracts or agreements already in effect and the refinancing or replacement thereof, sell, transfer, license, create any Lien (other than a Permitted Lien) or otherwise dispose of any of its properties or assets (other than (A) sales of inventory, (B) sales of rental equipment or obsolete or worthless equipment in the ordinary course of business, and (C) immaterial properties or assets, in each case, in the ordinary course of business);

(vii)     acquire any assets or any other Person or business of any other Person (whether by merger or consolidation, acquisition of stock or assets or by formation of a joint venture or otherwise) or make any investment in any Person;

(viii)    make, authorize or commit to any capital expenditures, except for capital expenditures (A) set forth in any existing capital plans or (B) as required by a governmental entity (it being understood that TEGNA management may in good faith reduce the amount of capital expenditures below that set forth in the capital plans);

(ix)     other than any intercompany indebtedness between the stations and Nexstar Media Inc. (or any intermediary company) make any loans, advances or capital contributions to, or investments in, any Person;

(x)     except as required by the terms of any collective bargaining agreement or company benefit plan currently in place, (A) establish, adopt, amend or terminate any (1) company benefit plan or similar plan, agreement, program, policy, trust, fund or other arrangement that would be a company benefit plan or (2) collective bargaining agreement, (B) increase in any manner the compensation (including severance, change-in-control and retention compensation) or benefits of any employees or other individual service providers, except ordinary course annual increases consistent with past practice and that do not constitute or result in any increase in any employee's actual or potential severance entitlements, (C) other than in accordance with contracts already in effect, pay or award, or commit to pay or award, any bonuses or incentive compensation, retention, change in control, transaction, severance or similar compensation, (D) accelerate any rights or benefits under any company benefit plan, (E) accelerate the time of vesting or payment of any award under any company benefit plan, (F) hire, promote or engage, or otherwise enter into any employment or consulting agreement or arrangement with, any current or former employee, officer, director or other individual service provider whose annual base compensation exceeds $150,000, (G) terminate any

2

employee or officer or other service provider, other than for cause or (H) withdraw from, or incur any withdrawal liability with respect to, any multiemployer plan, or commence an obligation to contribute to any multiemployer plan (other than existing contributions to the AFTRA Retirement Plan);

(xi)     other than in the ordinary course of business, enter into any contract that would be material to the applicable stations or enter into any lease with a term that exceeds the term of this agreement; provided that the foregoing restriction shall not apply to any retransmission consent agreement, provided such contracts are entered into in the ordinary course of business consistent with past practice;

(xii)     implement or adopt any change in its financial accounting principles or its methods, other than as may be required by GAAP or applicable laws;

(xiii)     commence, settle, offer or propose to settle any proceeding (or join any existing proceeding, including with respect to the acquisition of TEGNA by Nexstar) or otherwise discharge, settle or satisfy any proceeding, other than ordinary course proceedings that involve amounts less than $250,000 and, with respect to discharges, settlements or satisfactions, would not  limit or restrict the operation of the individual station;

(xiv)     apply for a construction permit or modify any of the company station licenses;

(xv)     make, change or revoke any material tax election, adopt or change any tax accounting period or material method of tax accounting, amend any material tax Return, settle or compromise any material liability for taxes or any tax audit, claim or other proceeding for a material amount of taxes, enter into any "closing agreement" within the meaning of Section 7121 of the Code (or any similar provision of state, local or non-U.S. Law), surrender any right to claim a material refund of taxes, or agree to an extension or waiver of the statute of limitations with respect to a material amount of taxes (other than in connection with any automatic or automatically granted extension to file any tax return);

(xvi)     agree to take, or make any commitment to take, any of the foregoing actions that are prohibited pursuant to the above.