Beth A. Wilkinson (*pro hac vice*)
Kosta S. Stojilkovic (*pro hac vice*)
Sarah E. Neuman (*pro hac vice*)
Jenna P. Swarbrick (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: 202.847.4010
Email: bwilkinson@wilkinsonstekloff.com
        kstojilkovic@wilkinsonstekloff.com
        sneuman@wilkinsonstekloff.com
        jpswarbrick@wilkinsonstekloff.com

Eliot A. Adelson (CA Bar No. 205284)
Daralyn J. Durie (CA Bar No. 169825)
Adam R. Brausa (CA Bar No. 298754)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: EAdelson@mofo.com
        DDurie@mofo.com
        ABrausa@mofo.com

Alexander P. Okuliar (*pro hac vice*)
Bradley S. Lui (CA Bar No. 143088)
Robert W. Manoso (*pro hac vice*)
Alexa Rae DiCunzolo (*pro hac vice*)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
Telephone: 202.887.1500
Facsimile: 202.912.2329
Email: AOkuliar@mofo.com
        BLui@mofo.com
        RManoso@mofo.com
        ADiCunzolo@mofo.com

Nicole K. Serfoss (*pro hac vice*)
MORRISON & FOERSTER LLP
370 Seventeenth Street 4200 Republic Plaza
Denver, CO 80202-5638
Telephone: 303.592.1500
Facsimile: 303.592.1510
        Email: nserfoss@mofo.com

*Attorneys for Defendants Nexstar Media
Group, Inc. and TEGNA Inc.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re Nexstar-TEGNA Merger Litigation | No. 2:26-cv-00976-TLN-CKD |
| | **DEFENDANTS NEXSTAR MEDIA GROUP, INC. AND TEGNA INC.'S ANSWER TO DIRECTV, LLC'S AMENDED COMPLAINT FOR INJUNCTIVE RELIEF** |
| | Judges: Honorable Troy L. Nunley and Honorable Carolyn K. Delaney |
| | Action Filed: March 18, 2026 |

Defendants Nexstar Media Group, Inc. ("Nexstar") and TEGNA Inc. ("TEGNA") (together "Defendants"), by and through their undersigned counsel, hereby answer and respond as follows to Plaintiff DIRECTV, LLC's ("DIRECTV" or "Plaintiff") Amended Complaint (the "Amended Complaint") in the above-captioned action (the "Action").

## PRELIMINARY STATEMENT

In communities across America, local newspapers have disappeared and radio stations have gone silent. Local television broadcasters could be the next to go. Broadcasters face a crisis on two fronts: revenues are declining while costs are surging, driven by seismic shifts in how consumers access content. Streaming and social media services are siphoning consumers away from broadcast television. Advertising revenues—once the main source of income for local broadcasters—have followed those consumers to digital platforms. At the same time, the fees that large national networks charge their local affiliates have been rising at unprecedented rates. How can local broadcasters survive—let alone compete—in this environment? The answer is to achieve scale and pool resources to innovate and evolve. This is why Nexstar and TEGNA merged.

Nexstar was founded in 1996 with a single television station in Scranton, Pennsylvania, in the back of a converted department store. Today, with TEGNA, Nexstar provides local news and programming to more than 130 communities across the country and employs nearly 9,000 journalists. Nexstar's local broadcasts are available over-the-air, at no cost, for anyone with an antenna. They are also retransmitted by traditional cable and satellite providers referred to as multichannel video programming distributors or "MVPDs." Nexstar's stations are consistently praised for their neutral, fact-based reporting. Independent industry watchdogs have rated *100%* of Nexstar news programming as "politically neutral," and have awarded Nexstar's own network programming a 100/100 score for credible and transparent content. Providing this high-quality local news has never been more important to the fabric of our democracy. Nor has carrying out that work ever been more challenging.

Even a decade ago, Americans' choices for accessing video content looked a lot different. What viewers might have typically turned to their local broadcast television for, they can now

ANSWER TO DIRECTV'S
FIRST AMENDED COMPLAINT

access through digital pay-TV services like YouTube TV and Hulu+Live TV, streaming services like Netflix and Amazon Prime Video, and social media platforms like TikTok and Instagram. These digital behemoths dwarf Nexstar in market capitalization and revenue, as do other industry participants.  No matter how one conceives of the marketplace, Nexstar—even after acquiring TEGNA—is hardly a threat to competition:





ANSWER TO DIRECTV'S
FIRST AMENDED COMPLAINT

As more consumers subscribe to alternative sources, they are "cutting the cord" and abandoning traditional MVPDs. According to Nielsen, Americans now consume more television through streaming than traditional broadcast and cable.[1] Industry watchers predict that by 2027, YouTube TV—a "virtual" MVPD ("vMVPD") that runs over the internet and is permitted by regulation to bypass local broadcasters and contract directly with networks—will *alone* surpass cable and satellite providers like DIRECTV, Comcast, and Charter.[2] This cord cutting is also eroding local broadcaster revenues, because broadcasters depend on the per-subscriber retransmission fees paid by MVPDs.

At the same time, advertising revenues are following viewership to digital platforms. And local broadcasters are spending more than ever on network affiliation fees, which each local station must pay to its affiliated Big Four network for access to that network's programming. Indeed, over the past 15 years, network fees (paid by local broadcasters) have grown far faster than retransmission fees (paid to local broadcasters by MVPDs), and the trend is expected to continue:



**Percentage Of Retransmission Revenue Broadcasters Spend On Network Affiliation Fees***

Source: S&P Global Market Intelligence (June 2025).
*Excludes network owned and operated stations.

[1] Nielsen, *Streaming Shatters Multiple Records in December 2025 with 47.5% of TV Viewing, according to Nielsen's The Gauge* (Jan. 2026), https://www.nielsen.com/news-center/2026/streaming-shatters-multiple-records-in-december-2025-with-47-5-of-tv-viewing-according-to-nielsens-the-gauge.
[2] *Omdia: YouTube TV on Track to Become the Largest U.S. Pay-TV Operator by 2027* (Dec. 11, 2025), https://omdia.tech.informa.com/pr/2025/dec/omdia-youtube-tv-on-track-to-become-the-largest-us-pay-tvoperator-by-2027.

4

In response to these headwinds from every direction, Nexstar sought to acquire TEGNA, another broadcast company that owned local television stations around the country.  Like Nexstar, TEGNA's stations are dedicated to providing their communities with high-quality local news and programming.  Combined, Nexstar and TEGNA still have only *15 percent of local broadcast stations* across the country.  But by joining forces, the deal would position Nexstar-TEGNA to compete more effectively in the increasingly fragmented media landscape, preserving viewers' access to free, over-the-air local broadcasts.  The deal would also enhance existing offerings for viewers.  For example, TEGNA stations would gain immediate access to Nexstar's Washington, D.C. news bureau and 24 state-capitol bureaus, which would allow TEGNA's stations to expand the scope and quality of their reporting.  As another example, the deal would hasten the rollout of NEXTGEN TV—the latest digital terrestrial broadcast standard—to TEGNA stations, allowing up to 4K HDR video, immersive audio (Dolby AC-4), advanced emergency alerts, and interactive features on both stationary and mobile devices.  These innovations and improved service will allow TEGNA stations to better compete with Amazon, Google, Netflix, Meta, and other substantially larger competitors, as well as the national networks themselves, who began providing their content directly to consumers in the last few years.

Recognizing these benefits, the Federal Communications Commission and Department of Justice cleared the merger after a thorough review.  As the FCC explained, the deal "will promote the FCC's longstanding media policy goals of competition, localism, and diversity," by "empower[ing] these broadcasters to better serve their communities by investing in local news and reporting" and "enabl[ing] these broadcast TV stations to counter the growing power that national programmers have amassed in recent years."[3]  The FCC further recognized Nexstar's proven track record of *expanding* local news after an acquisition, noting that in the five years following Nexstar's acquisition of Tribune, Nexstar's stations increased news coverage by "more

---

[3] Fed. Commc'ns Comm'n, FCC *Empowers Local Broadcast TV Stations* (Mar. 19, 2026), https://docs.fcc.gov/public/attachments/DOC-419971A1.pdf.

ANSWER TO DIRECTV'S
FIRST AMENDED COMPLAINT

than 28,000 hours per year (more than 12.5%)."[4]  Nexstar's track record makes clear that the combined Nexstar-TEGNA will provide consumers with more hours of better quality local news and programming than would be possible apart.

Plaintiff's challenge to the Nexstar-TEGNA merger is thus premised on a fundamental distortion of market forces.  Plaintiff entirely ignores the fierce competition for viewership across more platforms than ever before—a dynamic that is reshaping the media industry and exerting increasing pressure on local broadcasters.  In the face of those pressures, the Nexstar-TEGNA merger will provide local broadcasters with the scale that makes it possible to compete in the modern media economy.  DIRECTV does not want this to happen because it thinks it can bully broadcasters more effectively (to preserve its own profits) if they are smaller and unable to evolve with the times.  And while DIRECTV and the Plaintiff States allege that the merger threatens local news, that gets it exactly backwards.  Without scale to compete against Big Tech and streaming platforms, local news will not survive, much less thrive.  It is a fundamental misuse of antitrust laws to prevent combinations that can help address the existential questions facing broadcasters.  Plaintiff's challenge should be denied.

## GENERAL RESPONSES TO PLAINTIFF'S ALLEGATIONS

Except as expressly admitted herein, Defendants deny each and every allegation set forth in the Amended Complaint.  Paragraph numbers in this Answer and the responses contained herein correspond and respond to the allegations in the like-numbered paragraphs of the Amended Complaint.  To the extent the paragraphs in the Amended Complaint are grouped under headings and sub-headings, Defendants respond generally that such headings and sub-headings state unsupported legal conclusions as to which no response is required.  To the extent a response is necessary, Defendants deny each heading and sub-heading in the Amended Complaint and incorporate by reference this response in each paragraph below as if fully set forth therein.

---

[4] Applications for Consent to the Transfer of Control of TEGNA Inc. to Nexstar Media Inc., MB Docket No. 25-331 (Fed. Commc'ns Comm'n Mar. 19, 2026) (order), https://docs.fcc.gov/public/attachments/DA-26-267A1.pdf.

The Amended Complaint contains many purported quotes from a number of sources, some identified, some not.  Plaintiff does not provide copies of the documents from which quotes were taken, which has impaired Defendants' ability to confirm or deny the accuracy of the quotes in the Amended Complaint as compared to the original text.  Defendants, therefore, do not admit the authenticity of any documents from which quotes were taken or the accuracy of the quotes (either as quoted or in the context of material not quoted).  Furthermore, with reference to all quotes, citations to documents, or any such averments that might be offered into evidence, Defendants specifically reserve the right to object to any use of such quotes, citations, documents, averments, or the Amended Complaint as a whole in evidence for any purpose whatsoever. Defendants do not concede the truthfulness of third-party articles, news sources, and data sources quoted, characterized, referenced, paraphrased, and reproduced in the Amended Complaint.  To the extent a response is required, Defendants deny all allegations of the third-party sources quoted or referenced in the Amended Complaint.

To the extent Defendants refer the Court to a document for its complete and accurate contents, such an assertion shall not be deemed an admission that the contents of any such document are accurate or complete unless so stated expressly.  Any allegations in the Amended Complaint that state a legal conclusion do not require a response and, to the extent that any response is required, such allegations are denied.  Defendants generally and specifically deny any averments in the Amended Complaint's unnumbered paragraphs, footnotes, and prayer for relief except as expressly admitted herein, and specifically deny that Plaintiff is entitled to the relief sought in its Prayer for Relief.  Defendants deny any characterizations, including bolding, italics, or paraphrasing of any alleged statement, or any characterization that is not a full and accurate quote of the actual complete statement in context.  Defendants reserve the right to amend and/or supplement this Answer.

**I.**

1.   Defendants admit that Nexstar is an owner of local broadcast television stations in the United States, and that on March 19, 2026, Nexstar closed its acquisition of TEGNA Inc. Paragraph 1 otherwise asserts legal conclusions to which no response is required.  To the extent a

ANSWER TO DIRECTV'S
FIRST AMENDED COMPLAINT

response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 1.

2. Defendants admit that Nexstar seeks to integrate its operations with those of TEGNA, and that TEGNA owned local English-language broadcast stations, as well as other stations, in the United States. Defendants deny the remaining allegations in Paragraph 2.

3. Defendants admit that the transaction resulted in Nexstar owning more broadcast stations. Defendants deny all other allegations in Paragraph 3.

4. Defendants admit that DIRECTV is a distributor that purchases, among other things, the right to retransmit local television broadcast stations to its subscribers. To the extent Paragraph 4 characterizes DIRECTV's reasons for its actions, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations. Defendants deny the remaining allegations in Paragraph 4.

5. Defendants admit that some Americans turn to local broadcast television for news about their communities, sporting events, and other local content. Defendants deny the remaining allegations in Paragraph 5.

6. Nexstar admits that in 2025, it had a market capitalization of over $6 billion, annual revenues of approximately $4.9 billion, and over 200 owned or partner broadcast stations in 116 Designated Market Areas ("DMAs"). To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's earnings calls and investor materials, Nexstar denies that the quotes accurately reflect the full content and context of the calls, materials, and topics discussed therein. Nexstar denies the remaining allegations in Paragraph 6. TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

7. Defendants admit that Nexstar proposes to integrate TEGNA, which owned 64 broadcast stations in 51 DMAs. Defendants admit that TEGNA had a market capitalization of over $3 billion as of December 2025. Defendants deny the remaining allegations in Paragraph 7.

8. Paragraph 8 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 8.

8

**A.**

9.     Defendants admit that their broadcast stations operate under Federal Communications Commission ("FCC") licenses to broadcast signals.  Defendants admit that some of their stations are affiliated with the Big Four networks (ABC, CBS, FOX, and NBC), and that Big Four affiliates broadcast local news, syndicated content, and network programming, among other programming.  Paragraph 9 otherwise asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 9.

10.     Defendants admit that Nexstar and TEGNA have agreements with MVPDs for the retransmission of their over-the-air broadcast signals, and that MVPDs may pay retransmission consent fees for the right to retransmit those signals.  Defendants deny the remaining allegations in Paragraph 10.

11.     To the extent Paragraph 11 purports to selectively quote, characterize, reference, and/or paraphrase certain alleged Nexstar and/or TEGNA documents or statements, the Complaint does not identify the source of the purported references.  Defendants deny that the references accurately reflect the full content and context of the alleged documents or statements and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 11.

12.     Nexstar admits that following the closure of the transaction, Nexstar owns additional Big Four affiliates, including in some DMAs where it already owned at least one Big Four affiliate before the transaction.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase certain alleged Nexstar documents or statements, the Complaint does not identify the source of the purported quotes.  Nexstar denies that the quotes accurately reflect the full content and context of the alleged documents or statements and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 12.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

13.     Defendants deny the allegations in Paragraph 13.

14.     Defendants deny the allegations in Paragraph 14.

9

15. Defendants deny the allegations in Paragraph 15.

16. Defendants deny the allegations in Paragraph 16.

**B.**

17. To the extent Paragraph 17 purports to selectively quote, characterize, reference, and/or paraphrase a third-party conference transcript, including a statement attributed to Nexstar's Chief Financial Officer, Nexstar denies that the quotes accurately reflect the full content and context of the transcript and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 17.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

18. Nexstar admits there are some DMAs where prior to the acquisition of TEGNA, Nexstar owned more than one Big Four affiliate.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase certain alleged Nexstar documents or statements, the Complaint does not identify the source of the purported quotes.  Nexstar denies that the quotes accurately reflect the full content and context of the alleged documents or statements and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 18.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

19. Defendants deny the allegations in Paragraph 19.

20. Defendants deny the allegations in Paragraph 20.

**C.**

21. To the extent Paragraph 21 purports to selectively quote, characterize, reference and/or paraphrase Nexstar's public filings and investor materials, Nexstar denies that the quotes accurately reflect the full content and context of the filings, materials, and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 21.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**D.**

22. Defendants admit that they closed Nexstar's acquisition of TEGNA on March 19, 2026, following the FCC's determination that the transaction "promotes the public interest" and

clearance of the transaction by the FCC and Department of Justice ("DOJ").  Defendants admit that DIRECTV and certain State Attorneys General filed their original Complaints in this action on March 18, 2026, and that DIRECTV moved for a temporary restraining order on March 20, 2026.  Defendants admit that on March 27, 2026, this Court issued a temporary restraining order requiring that Nexstar hold TEGNA separate.  After an in-person hearing, the Court, on April 17, 2026, issued a preliminary injunction.  Defendants deny the remaining allegations in Paragraph 22.

23.     To the extent Paragraph 23 quotes from the Court's Preliminary Injunction Order, Defendants refer to that Order for a complete and accurate statement of its contents.  The remaining allegations in Paragraph 23 assert legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 23.

## II.

24.     Defendants admit that following the closure of the transaction, Nexstar owns two Big Four affiliates located in Sacramento, CA, which are retransmitted to DIRECTV subscribers in Sacramento: KTXL, a station affiliated with FOX, and KXTV, a station affiliated with ABC, which was owned by TEGNA prior to the transaction.  Each station broadcasts local news and sports, among other programming, in Sacramento.  The remaining allegations in Paragraph 24 assert legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.

25.     Paragraph 25 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 25.

26.     Paragraph 26 asserts legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations in Paragraph 26.

## III.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.

28.     Nexstar admits that it is a Delaware corporation with its headquarters in Irving, TX.  Nexstar admits that in 2025, it had annual revenues of approximately $4.9 billion and that it

had over 200 owned or partner broadcast stations in 116 DMAs.  Nexstar also admits some of its broadcast stations have the ability to broadcast multiple networks on one assigned frequency, including KRQE in Albuquerque, NM.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's public filings and investor materials, Nexstar denies that the quotes accurately reflect the full content and context of the filings, materials, and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 28 and footnote 7.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

29.    Defendants admit that TEGNA was a Delaware corporation with its headquarters in Tysons, VA.  Defendants admit that TEGNA generated approximately $3.1 billion in revenue in 2024.  Defendants admit that TEGNA owned 64 broadcast stations in 51 DMAs before the transaction.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase TEGNA's public filings and website materials, Defendants deny that the quotes accurately reflect the full content and context of the filings, website materials, and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 29.

## IV.

## A.

30.    Defendants admit that ABC, CBS, FOX, and NBC networks are sometimes referred to as the "Big Four" networks, and that those networks offer national news, sports, and primetime programming, among other programming.  Defendants deny the remaining allegations in Paragraph 30.

31.    Defendants admit that in some DMAs each Big Four network has at least one affiliate, and that DMAs are geographic regions defined by Nielsen for measuring local television viewership.  Defendants admit there are 210 DMAs throughout the United States.  Defendants deny the remaining allegations in Paragraph 31.

32.    Defendants admit that some broadcast stations are owned by the network itself (sometimes referred to as "owned and operated" or "O&O" broadcast stations).  Defendants admit that some broadcast stations are owned by broadcast groups that license the right to

12

retransmit network programming to MVPDs.  Defendants deny the remaining allegations in Paragraph 32.

33.     Defendants admit that broadcast stations may obtain rights to syndicated programming and that this programming may be licensed to multiple stations or networks across DMAs.  Defendants deny the remaining allegations in Paragraph 33.

34.     Defendants admit that broadcast stations may produce local news and other programming.  Defendants admit that broadcast stations provide important information to American communities across the country, such as local current events, local traffic, local weather predictions, and information about local governance and issues of public importance.  Defendants deny the remaining allegations in Paragraph 34.

**B.**

35.     Defendants admit that prior to the development of satellite television, cable television, and streaming video services, some Americans watched television through over-the-air broadcasts, and some still do today.  Defendants deny the remaining allegations in Paragraph 35.

36.     Defendants admit that some Americans watch broadcast programming for free over the air.  Defendants deny the remaining allegations in Paragraph 36.

37.     Defendants admit that in 1992, Congress enacted legislation permitting broadcasters to negotiate retransmission consent agreements with MVPDs.  Defendants admit that Nexstar and TEGNA may negotiate with MVPDs for retransmission consent agreements, and that MVPDs may pay retransmission consent fees pursuant to those negotiated agreements.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the terms of agreements between DIRECTV and broadcast groups, Defendants deny that the quotes accurately reflect the full content and context of those agreements and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 37.

38.     Defendants admit that Nexstar and TEGNA negotiate agreements with MVPDs for the retransmission of their over-the-air broadcast signals.  Defendants admit that DIRECTV may pay retransmission consent fees for the right to retransmit those signals, pursuant to

ANSWER TO DIRECTV'S
FIRST AMENDED COMPLAINT

retransmission consent agreements negotiated between Defendants and DIRECTV.  Defendants deny the remaining allegations in Paragraph 38.

**C.**

39.    Defendants deny the allegations in Paragraph 39.

40.    To the extent Paragraph 40 purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's acquisition history and its public filings, and to selectively reproduce a slide from Nexstar's investor materials, Nexstar denies that the characterizations and reproduction accurately reflect the full content and context of its prior acquisitions, public filings, materials and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 40. TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

41.    To the extent Paragraph 41 purports to selectively quote, characterize, reference, paraphrase, and/or reproduce a slide from Nexstar's investor materials, Nexstar denies the quotes and reproduction accurately reflect the full content and context of the materials and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 41.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

42.    Nexstar admits that it entered into a stipulation and proposed judgment with the DOJ to divest certain stations in connection with Nexstar's acquisitions of Media General and Tribune Media, which was entered by the Court.  The proposed judgment specifically states that Nexstar entered it "without trial or adjudication of any issue of fact or law and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law."  To the extent Paragraph 42 and footnote 16 purport to selectively quote, characterize, reference, and/or paraphrase a DOJ press release and DOJ final judgment, Nexstar denies that the quotes and characterizations accurately reflect the full content and context of the documents and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 42 and footnote 16.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

14

43. Defendants deny the allegations in Paragraph 43.

44. To the extent Paragraph 44 selectively relies on third-party data, Defendants lack knowledge or information sufficient to form a belief about the validity of that data. Defendants deny that the cited data accurately reflects the full context of the topics discussed in this paragraph. Defendants deny the remaining allegations in Paragraph 44.

45. To the extent Paragraph 45 purports to selectively quote, characterize, reference, and/or paraphrase the terms of retransmission consent agreements between Nexstar and DIRECTV, Nexstar denies that the characterizations accurately reflect the full content and context of the agreements, their terms, and the circumstances that led to them. Nexstar denies the remaining allegations in Paragraph 45. TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

46. To the extent Paragraph 46 purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's earning calls, Nexstar denies that the quotes accurately reflect the full content and context of the calls and topics discussed therein. Nexstar denies the remaining allegations in Paragraph 46. TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

47. To the extent Paragraph 47 selectively relies on or reproduces third-party data, Defendants lack knowledge or information sufficient to form a belief as to the validity of that data. Defendants deny that the data and any reproduction of the data reflect the full content and context of the topics discussed in Paragraph 47. Defendants deny the remaining allegations in Paragraph 47.

48. Defendants admit that vMVPDs such as YouTube TV, Fubo, and Hulu+Live TV, among others, and online streaming video services such as Netflix, Prime Video, Paramount+, Peacock, and HBO Max have become popular among consumers. To the extent Paragraph 48 selectively relies on or reproduces third-party data, Defendants lack knowledge or information sufficient to form a belief as to the validity of that data. Defendants deny that the data and any reproduction of the data reflect the full content and context of the topics discussed in Paragraph 48. Defendants deny the remaining allegations in Paragraph 48.

49.     To the extent Paragraph 49 purports to selectively quote, characterize, reference, and/or paraphrase sworn third-party declarations before the FCC, the Complaint does not identify the source of the purported characterizations.  Defendants deny that the characterizations accurately reflect the full content and context of the alleged declarations and alleged topics discussed therein.  To the extent Paragraph 49 purports to selectively quote, characterize, reference, and/or paraphrase the DOJ Competitive Impact Statements, Defendants deny that the quotes and references accurately reflect the full content and context of the statements and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 49.

**D.**

50.     Defendants admit that during a retransmission consent dispute, an MVPD's subscribers may be unable to receive certain broadcast stations' signals through that particular MVPD subscription.  Defendants deny that blackouts are caused by broadcast groups, as they occur only if an MVPD, such as DIRECTV, and a broadcast group are unable to reach terms on retransmission fees.   Paragraph 50 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 50.

51.     Defendants admit that during a retransmission consent dispute, an MVPD's subscribers may be unable to receive certain broadcast stations' signals through that particular MVPD subscription.  Defendants deny that blackouts are caused by broadcast groups, as they occur only if an MVPD, such as DIRECTV, and a broadcast group are unable to reach terms on retransmission fees.  Paragraph 51 and footnote 20 assert legal conclusions to which no response is required.  To the extent a response is required, Defendants refer to the relevant FCC regulations and federal law for a complete and accurate statement of their contents.  Paragraph 51 poses a hypothetical, and no response to the hypothetical is required.  To the extent any response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 51 and footnote 20.

52.     Defendants admit that between 2015 and 2025, some retransmission consent negotiations have resulted in blackouts.  Defendants deny that blackouts are caused by broadcast

16

groups, as they occur only if an MVPD, such as DIRECTV, and a broadcast group are unable to reach terms on retransmission fees. To the extent this paragraph references third-party data, Defendants lack knowledge or information sufficient to form a belief as to the validity of that data.  Defendants deny that the data and any characterizations of that data accurately reflect the full content and context of the data and topics discussed therein.  To the extent this paragraph characterizes the dates and durations of specific retransmission consent disputes involving DIRECTV, Defendants deny that the characterizations accurately reflect the full context and content of those disputes.  Defendants deny the remaining allegations in Paragraph 52.

53.     Defendants deny that blackouts are caused by broadcast groups, as they occur only if an MVPD, such as DIRECTV, and a broadcast group are unable to reach terms on retransmission fees.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase a third-party press release and a third-party publication, Defendants deny that the quotes and characterizations accurately reflect the full content and context of the events discussed therein.  Defendants deny the remaining allegations in Paragraph 53.

## V.

## A.

54.     Paragraph 54 and footnote 24 assert legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 54 and footnote 24.  To the extent Paragraph 54 and footnote 24 purport to selectively quote, characterize, reference, and/or paraphrase the DOJ's prior litigation positions, Defendants deny that those characterizations accurately reflect the full content and context of the DOJ's prior litigation positions.

55.     Paragraph 55 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 55.

56.     Paragraph 56 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations in Paragraph 56.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the DOJ and FTC's 2023 Merger Guidelines, Supreme Court decisions, and the DOJ's Competitive Impact

17

Statements, Defendants deny that the quotes accurately reflect the full content and context of the Guidelines, decisions, statements, and topics discussed therein. Defendants deny the remaining allegations in Paragraph 56.

57. Paragraph 57 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants admit that NFL content is popular and that it is distributed across multiple platforms, including but not limited to broadcast stations and streaming services. To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the DOJ's Competitive Impact Statements, Defendants deny that the quotes accurately reflect the full content and context of the statements and topics discussed therein. Defendants deny the remaining allegations in Paragraph 57.

58. Defendants admit that some broadcast stations offer foreign language content. Paragraph 58 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. To the extent this paragraph purports to quote, characterize, reference, and/or paraphrase the DOJ's Competitive Impact Statements, Defendants deny that the characterizations accurately reflect the full content and context of the statements and topics discussed therein. Defendants deny the remaining allegations in Paragraph 58.

59. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59.

60. Paragraph 60 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. To the extent this paragraph purports to selectively quote, characterize, reference, or paraphrase the DOJ's Competitive Impact Statements, Defendants deny that the quotes accurately reflect the full content and context of the statements and topics discussed therein. Defendants deny the remaining allegations in Paragraph 60.

61. Paragraph 61 asserts legal conclusions to which no response is required. To the extent a response is required, Nexstar denies those allegations. To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's investor materials, Nexstar denies that the quotes accurately reflect the full content and context of the

18

materials and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 61.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

62.    Paragraph 62 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the DOJ's Competitive Impact Statements, Defendants deny that the quotes accurately reflect the full content and context of the statements and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 62.

63.    Paragraph 63 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Paragraph 63 purports to describe third-party negotiations or agreements with DIRECTV.  Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations.  Defendants deny the remaining allegations in Paragraph 63.

64.    Paragraph 64 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's investor materials, Nexstar denies that the quotes accurately reflect the full content and context of the materials and topics discussed therein.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  Defendants deny the remaining allegations in Paragraph 64.

65.    Defendants admit that some NFL games are aired on broadcast television, among other places.  Paragraph 65 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's investor materials, Nexstar denies that the quotes accurately reflect the full content and context of the materials and topics discussed therein.  TEGNA lacks knowledge or information sufficient to

form a belief as to the truth of those allegations.  Defendants deny the remaining allegations in Paragraph 65.

**B.**

66.     Paragraph 66 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph selectively characterizes the DOJ's prior litigation positions, Defendants deny that the characterizations accurately reflect the full content and context of the DOJ's prior litigation positions.  Defendants deny the remaining allegations in Paragraph 66.

67.     Paragraph 67 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 67.

68.     Paragraph 68 and footnote 38 assert legal conclusions to which no response is required.  To the extent a response is required, Defendants refer to the relevant FCC regulations and federal law for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in Paragraph 68 and footnote 38.

69.     To the extent Paragraph 69 purports to selectively quote, characterize, reference, or paraphrase the DOJ's Competitive Impact Statements, Defendants deny that the characterizations accurately reflect the full content and context of the statements and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 69.

70.     Defendants admit that DMAs are geographic regions defined by Nielsen for measuring local television viewership.  Defendants admit that prior to the transaction, TEGNA owned 64 broadcast stations in 51 DMAs.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase TEGNA's financial reporting, Defendants deny that the quotes accurately reflect the full context and content of that reporting and topics discussed therein.  Nexstar admits that Nexstar owned or partnered with broadcast stations in 116 DMAs as of December 2025.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's investor materials and financial reporting, Nexstar denies that the quotes accurately reflect the full context and content of those materials, reporting, and topics discussed therein.  TEGNA lacks knowledge or information sufficient to

20

form a belief as to the truth of those allegations.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase, a third-party blog post, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations. Defendants deny the remaining allegations in Paragraph 70.

**VI.**

**A.**

71.    Nexstar admits that following the closure of the transaction, Nexstar owns additional Big Four affiliates, including in some DMAs where it already owned at least one Big Four affiliate before the transaction.  Defendants lack knowledge or information sufficient to form a belief as to industry knowledge on certain terminology used in Paragraph 71.  Defendants deny the remaining allegations in Paragraph 71, its referenced chart, and footnote 44.

72.    Paragraph 72 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 72 and its referenced chart.

73.    Paragraph 73 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 73.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the DOJ and FTC's Merger Guidelines, Defendants deny that the characterizations accurately reflect the full context and content of the Guidelines and topics discussed therein.   Defendants deny the remaining allegations in Paragraph 73.

74.    Paragraph 74 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 74.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the DOJ and FTC's Merger Guidelines and case law, Defendants deny that the quotes accurately reflect the full context and content of the Guidelines, case law, and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 74.

75.    Paragraph 75 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 75.  To the extent this

21

paragraph purports to selectively quote, characterize, reference, and/or paraphrase the DOJ and FTC's Merger Guidelines and case law, Defendants deny that the quotes accurately reflect the full context and content of the Guidelines, case law, and topics discussed therein. Defendants deny the remaining allegations in Paragraph 75.

76. Paragraph 76 and its referenced table assert legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 76 and its referenced table. To the extent this paragraph and table purport to rely on third-party sources, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations. Defendants deny the remaining allegations in Paragraph 76 and its referenced table.

77. Paragraph 77 and its referenced table assert legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 77 and its referenced table. To the extent this paragraph and table purport to rely on third-party sources, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations. To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase DOJ and FTC's 2023 Merger Guidelines, Defendants deny that the characterizations accurately reflect the full content and context of the Guidelines and topics discussed therein. Defendants deny the remaining allegations in Paragraph 77 and its referenced table.

78. Paragraph 78 and its referenced table assert legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 78 and its referenced table. To the extent this paragraph and table purport to rely on third-party sources, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 and its referenced table. Defendants deny the remaining allegations in Paragraph 78 and its referenced table.

**B.**

79. Defendants deny the allegations in Paragraph 79.

22

80.    To the extent Paragraph 80 and footnote 50 purport to selectively quote, characterize, reference, and/or paraphrase Nexstar's public filings and investor materials, Nexstar denies that the quotes and characterizations accurately reflect the full content and context of those filings, materials, and the topics discussed therein.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  Paragraph 80 poses a hypothetical, and no response to the hypothetical is required.  To the extent any response is required, Defendants deny the remaining allegations in Paragraph 80 and footnote 50.

81.    Paragraph 81 asserts legal conclusions to which no response is required.   To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 81.

82.    Defendants admit that following the closure of the transaction, Nexstar owns two Big Four affiliates located in Sacramento, CA: KTXL, a station affiliated with FOX, and KXTV, a station affiliated with ABC, which was owned by TEGNA prior to the transaction.  Paragraph 82 poses a hypothetical, and no response to the hypothetical is required.  To the extent any response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 82.

83.    Paragraph 83 poses a hypothetical, and no response to the hypothetical is required. To the extent any response is required, Defendants deny the allegations in Paragraph 83. Defendants deny the remaining allegations in Paragraph 83.

84.    To the extent Paragraph 84 relies on DIRECTV's internal data, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations. Defendants deny the remaining allegations in Paragraph 84.

85.    Paragraph 85 poses a hypothetical, and no response to the hypothetical is required. To the extent any response is required, Defendants deny the allegations in Paragraph 85. Defendants deny the remaining allegations in Paragraph 85.

86.    To the extent Paragraph 86 relies on DIRECTV's internal data, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations. Defendants deny the remaining allegations in Paragraph 86.

87.     Defendants admit that there are some DMAs in which Nexstar owns and/or operates more than one broadcast station.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's investor materials, Nexstar denies that the quotes accurately reflect the full content and context of those materials and topics discussed therein.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  Defendants deny the remaining allegations in Paragraph 87.

88.     Defendants admit that Nexstar and TEGNA have agreements with MVPDs for the retransmission of their over-the-air broadcast signals.  Defendants admit that MVPDs may pay retransmission consent fees for the right to retransmit those signals, pursuant to retransmission consent agreements negotiated between the broadcast group and MVPD.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the terms of any retransmission consent agreements, Defendants deny that the characterizations accurately reflect the full content and context of the agreements, their terms, and the topics discussed therein.  Defendants deny the remaining allegations in Paragraph 88.

89.     To the extent Paragraph 89 selectively relies on third-party data, Defendants lack knowledge or information sufficient to form a belief as to the validity of that data.  Defendants deny the remaining allegations in Paragraph 89.

90.     To the extent Paragraph 90 purports to selectively quote, characterize, reference, and/or paraphrase a third-party conference transcript, including a statement attributed to Nexstar's Chairman and Chief Executive Officer, Nexstar denies that the quotes and characterizations accurately reflect the full content and context of the transcript and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 90.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**C.**

91.     Defendants deny the allegations in Paragraph 91.

92.     Defendants lack knowledge or information sufficient to form a belief as to whether retransmission consent fees are a key input cost for MVPDs.  Defendants deny the remaining allegations in Paragraph 92.

93.    Defendants lack knowledge or information sufficient to form a belief as to the number of households that subscribe to MVPDs.  Defendants deny the remaining allegations in Paragraph 93.

**D.**

94.    Defendants deny the allegations in Paragraph 94.

95.    Defendants admit that local news provides important information to Americans about their local communities, including natural disasters and other emergencies, timely information about weather, traffic, and crime, and investigative reports about issues of local importance like education, the conduct of public officials, or local business and the economy.

96.    Defendants admit Americans benefit from quality local news.  Paragraph 96 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations in Paragraph 96.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's public filings, Nexstar denies that the quotes accurately reflect the full content and context of the filings and topics discussed therein.  TEGNA lacks knowledge or information sufficient to form a belief about the truth of those allegations.  Defendants deny the remaining allegations in Paragraph 96.

97.    Defendants deny the allegations in Paragraph 97.

98.    To the extent Paragraph 98 purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's investor materials and earnings calls, Nexstar denies that the quotes accurately reflect the full content and context of the materials, calls, and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 98.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

99.    Paragraph 99 poses a hypothetical, and no response to the hypothetical is required.  To the extent any response is required, Defendants deny the allegations in Paragraph 99.

100.    Defendants deny the allegations in Paragraph 100.

ANSWER TO DIRECTV'S
FIRST AMENDED COMPLAINT

101.    Paragraph 101 poses a hypothetical, and no response to the hypothetical is required.  To the extent any response is required, Defendants deny the allegations in Paragraph 101.

102.    Paragraph 102 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the DOJ and FTC's 2023 Merger Guidelines, Supreme Court decisions, district court decisions, and circuit court decisions, Defendants deny that the quotes and characterizations accurately reflect the full content and context of the Guidelines, court decisions, and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 102.

103.    Defendants admit that they have acquired stations and other assets in the last decade, but deny Plaintiff's allegations about what effect the acquisitions have had.  To the extent this paragraph purports to selectively, quote, characterize, reference, and/or paraphrase third-party earnings calls and presentations, Defendants lack knowledge or information sufficient to form a belief as to the truth of those calls, presentations, and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 103.

### VII.

104.    Paragraph 104 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 104.  Defendants deny the remaining allegations in Paragraph 104.

105.    Paragraph 105 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's investor materials and a third-party conference transcript, including statements attributed to Nexstar executives, Nexstar denies that the quotes and characterizations accurately reflect the full content and context of the materials, transcript, and topics discussed therein.  Nexstar denies the

ANSWER TO DIRECTV'S
FIRST AMENDED COMPLAINT

remaining allegations in Paragraph 105.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

106.    Defendants admit that broadcast television competes with other sources of content, such as digital pay-TV services, streaming services, and social media platforms.  Paragraph 106 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 106.

107.    To the extent Paragraph 107 purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's investor materials and earnings calls, Nexstar denies that the quotes and characterizations accurately reflect the full content and context of the materials, calls, and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 107.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

108.    To the extent Paragraph 108 purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's earnings release and earnings calls, Nexstar denies that the quotes and characterizations accurately reflect the full content and context of the release, calls, and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 108.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

109.    Defendants deny the allegations in Paragraph 109.

## VIII.

110.    Paragraph 110 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 110.

111.    Nexstar admits that its current retransmission consent agreement with DIRECTV expires in 2026.  Defendants deny that blackouts are caused by broadcast groups, as they occur only if an MVPD, such as DIRECTV, and a broadcast group are unable to reach terms on retransmission fees.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  Defendants deny the remaining allegations in Paragraph 111.

112.    Defendants deny the allegations in Paragraph 112.

ANSWER TO DIRECTV'S
FIRST AMENDED COMPLAINT

113.    Defendants deny the allegations in Paragraph 113.

114.    Defendants deny the allegations in Paragraph 114.

115.    Defendants deny the allegations in Paragraph 115.

116.    Defendants deny the allegations in Paragraph 116.

117.    Paragraph 117 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 117.

## IX.

118.    Paragraph 118 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 118.

119.    Paragraph 119 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 119.

120.    Paragraph 120 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 120.

121.    Paragraph 121 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 121.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following defenses with respect to the causes of action alleged in the Complaint, without assuming the burden of proof or persuasion where such burden rests on the Plaintiff. Defendants have not knowingly or intentionally waived any applicable defenses, and they reserve the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action. Defendants reserve the right to supplement their defenses as discovery progresses.

1.  The Complaint fails to allege a plausible relevant product market or markets.

2.  The Complaint fails to allege a plausible relevant geographic market.

3.  The Complaint fails to allege undue share in any plausibly defined relevant market.

4.  The Complaint fails to allege any plausible harm to competition.

28

5.  The Complaint fails to allege any plausible harm to consumers or consumer welfare.

6.  The combination of Nexstar's business with TEGNA's business will result in substantial acquisition-specific efficiencies.

7.  The combination of Nexstar's business with TEGNA's business will be procompetitive.  The transaction will result in procompetitive effects that will directly benefit consumers. These benefits will greatly outweigh any and all proffered anticompetitive effects.

8.  There will be no harm to competition, consumers, or consumer welfare because there is, and will continue to be, entry and expansion by competitors, which is timely, likely, and sufficient.

29

ANSWER TO DIRECTV'S
FIRST AMENDED COMPLAINT

Dated: May 21, 2026

Respectfully submitted,

By: */s/ Beth A. Wilkinson*
Beth A. Wilkinson (*pro hac vice*)
Kosta S. Stojilkovic (*pro hac vice*)
Sarah E. Neuman (*pro hac vice*)
Jenna P. Swarbrick (*pro hac vice*)

WILKINSON STEKLOFF LLP

Alexander P. Okuliar (*pro hac vice*)
Eliot A. Adelson (CA Bar No. 205284)
Bradley S. Lui (CA Bar No. 143088)
Daralyn Durie (CA Bar No. 169825)
Adam R. Brausa (CA Bar No. 298754)
Nicole K. Serfoss (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
Alexa Rae DiCunzolo (*pro hac vice*)

MORRISON & FOERSTER LLP

*Attorneys for Defendants Nexstar
Media Group, Inc. and TEGNA Inc.*

30