Beth A. Wilkinson (*pro hac vice*)
Kosta S. Stojilkovic (*pro hac vice*)
Sarah E. Neuman (*pro hac vice*)
Jenna P. Swarbrick (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: 202.847.4010
Email: bwilkinson@wilkinsonstekloff.com
       kstojilkovic@wilkinsonstekloff.com
       sneuman@wilkinsonstekloff.com
       jpswarbrick@wilkinsonstekloff.com

Eliot A. Adelson (CA Bar No. 205284)
Daralyn J. Durie (CA Bar No. 169825)
Adam R. Brausa (CA Bar No. 298754)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: EAdelson@mofo.com
       DDurie@mofo.com
       ABrausa@mofo.com

Alexander P. Okuliar (*pro hac vice*)
Bradley S. Lui (CA Bar No. 143088)
Robert W. Manoso (*pro hac vice*)
Alexa Rae DiCunzolo (*pro hac vice*)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
Telephone: 202.887.1500
Facsimile: 202.912.2329
Email: AOkuliar@mofo.com
       BLui@mofo.com
       RManoso@mofo.com
       ADiCunzolo@mofo.com

Nicole K. Serfoss (*pro hac vice*)
MORRISON & FOERSTER LLP
370 Seventeenth Street 4200 Republic Plaza
Denver, CO 80202-5638
Telephone: 303.592.1500
Facsimile: 303.592.1510
       Email: nserfoss@mofo.com

*Attorneys for Defendants Nexstar Media
Group, Inc. and TEGNA Inc.*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re Nexstar-TEGNA Merger Litigation | No. 2:26-cv-00976-TLN-CKD<br><br>**DEFENDANTS NEXSTAR MEDIA GROUP, INC. AND TEGNA INC.'S ANSWER TO PLAINTIFF STATES' FIRST AMENDED COMPLAINT FOR A PERMANENT INJUNCTION**<br><br>Judges: Honorable Troy L. Nunley and Honorable Carolyn K. Delaney<br>Action Filed: March 18, 2026 |

Defendants Nexstar Media Group, Inc. ("Nexstar") and TEGNA Inc. ("TEGNA") (together "Defendants"), by and through their undersigned counsel, hereby answer and respond as follows to the Plaintiff States' ("Plaintiffs'") Amended Complaint (the "Amended Complaint") in the above-captioned action (the "Action").

## PRELIMINARY STATEMENT

In communities across America, local newspapers have disappeared and radio stations have gone silent.  Local television broadcasters could be the next to go.  Broadcasters face a crisis on two fronts: revenues are declining while costs are surging, driven by seismic shifts in how consumers access content.  Streaming and social media services are siphoning consumers away from broadcast television.  Advertising revenues—once the main source of income for local broadcasters—have followed those consumers to digital platforms.  At the same time, the fees that large national networks charge their local affiliates have been rising at unprecedented rates.  How can local broadcasters survive—let alone compete—in this environment?  The answer is to achieve scale and pool resources to innovate and evolve.  This is why Nexstar and TEGNA merged.

Nexstar was founded in 1996 with a single television station in Scranton, Pennsylvania, in the back of a converted department store.  Today, with TEGNA, Nexstar provides local news and programming to more than 130 communities across the country and employs nearly 9,000 journalists.  Nexstar's local broadcasts are available over-the-air, at no cost, for anyone with an antenna.  They are also retransmitted by traditional cable and satellite providers referred to as multichannel video programming distributors or "MVPDs."  Nexstar's stations are consistently praised for their neutral, fact-based reporting.  Independent industry watchdogs have rated *100%* of Nexstar news programming as "politically neutral," and have awarded Nexstar's own network programming a 100/100 score for credible and transparent content.  Providing this high-quality local news has never been more important to the fabric of our democracy.  Nor has carrying out that work ever been more challenging.

Even a decade ago, Americans' choices for accessing video content looked a lot different.  What viewers might have typically turned to their local broadcast television for, they can now

ANSWER TO STATES'
FIRST AMENDED COMPLAINT

access through digital pay-TV services like YouTube TV and Hulu+Live TV, streaming services like Netflix and Amazon Prime Video, and social media platforms like TikTok and Instagram. These digital behemoths dwarf Nexstar in market capitalization and revenue, as do other industry participants.  No matter how one conceives of the marketplace, Nexstar—even after acquiring TEGNA—is hardly a threat to competition:



Source: Bloomberg Financial Data (May 18, 2026).
*Included for comparison purposes.



Source: Bloomberg Financial Data (May 18, 2026).
*DIRECTV market capitalization is for DIRECTV parent company, TPG. TPG market capitalization includes open-market shares and non-controlling interests.

3

As more consumers subscribe to alternative sources, they are "cutting the cord" and abandoning traditional MVPDs.  According to Nielsen, Americans now consume more television through streaming than traditional broadcast and cable.[1]  Industry watchers predict that by 2027, YouTube TV—a "virtual" MVPD ("vMVPD") that runs over the internet and is permitted by regulation to bypass local broadcasters and contract directly with networks—will alone surpass cable and satellite providers like DIRECTV, Comcast, and Charter.[2]  This cord cutting is also eroding local broadcaster revenues, because broadcasters depend on the per-subscriber retransmission fees paid by MVPDs.

At the same time, advertising revenues are following viewership to digital platforms.  And local broadcasters are spending more than ever on network affiliation fees, which each local station must pay to its affiliated Big Four network for access to that network's programming.  Indeed, over the past 15 years, network fees (paid by local broadcasters) have grown far faster than retransmission fees (paid to local broadcasters by MVPDs), and the trend is expected to continue:



**Percentage Of Retransmission Revenue Broadcasters Spend On Network Affiliation Fees***

Source: S&P Global Market Intelligence (June 2025).
*Excludes network owned and operated stations.

---

[1] Nielsen, *Streaming Shatters Multiple Records in December 2025 with 47.5% of TV Viewing, according to Nielsen's The Gauge* (Jan. 2026), https://www.nielsen.com/news-center/2026/streaming-shatters-multiple-records-in-december-2025-with-47-5-of-tv-viewing-according-to-nielsens-the-gauge.
[2] *Omdia: YouTube TV on Track to Become the Largest U.S. Pay-TV Operator by 2027* (Dec. 11, 2025), https://omdia.tech.informa.com/pr/2025/dec/omdia-youtube-tv-on-track-to-become-the-largest-us-pay-tvoperator-by-2027.

ANSWER TO STATES'
FIRST AMENDED COMPLAINT

In response to these headwinds from every direction, Nexstar sought to acquire TEGNA, another broadcast company that owned local television stations around the country. Like Nexstar, TEGNA's stations are dedicated to providing their communities with high-quality local news and programming. Combined, Nexstar and TEGNA still have only *15 percent of local broadcast stations* across the country. But by joining forces, the deal would position Nexstar-TEGNA to compete more effectively in the increasingly fragmented media landscape, preserving viewers' access to free, over-the-air local broadcasts. The deal would also enhance existing offerings for viewers. For example, TEGNA stations would gain immediate access to Nexstar's Washington, D.C. news bureau and 24 state-capitol bureaus, which would allow TEGNA's stations to expand the scope and quality of their reporting. As another example, the deal would hasten the rollout of NEXTGEN TV—the latest digital terrestrial broadcast standard—to TEGNA stations, allowing up to 4K HDR video, immersive audio (Dolby AC-4), advanced emergency alerts, and interactive features on both stationary and mobile devices. These innovations and improved service will allow TEGNA stations to better compete with Amazon, Google, Netflix, Meta, and other substantially larger competitors, as well as the national networks themselves, who began providing their content directly to consumers in the last few years.

Recognizing these benefits, the Federal Communications Commission and Department of Justice cleared the merger after a thorough review. As the FCC explained, the deal "will promote the FCC's longstanding media policy goals of competition, localism, and diversity," by "empower[ing] these broadcasters to better serve their communities by investing in local news and reporting" and "enabl[ing] these broadcast TV stations to counter the growing power that national programmers have amassed in recent years."[3] The FCC further recognized Nexstar's proven track record of expanding local news after an acquisition, noting that in the five years following Nexstar's acquisition of Tribune, Nexstar's stations increased news coverage by "more than 28,000 hours per year (more than 12.5%)."[4] Nexstar's track record makes clear that the

[3] Fed. Commc'ns Comm'n, FCC *Empowers Local Broadcast TV Stations* (Mar. 19, 2026), https://docs.fcc.gov/public/attachments/DOC-419971A1.pdf.
[4] Applications for Consent to the Transfer of Control of TEGNA Inc. to Nexstar Media Inc., MB Docket No. 25-331 (Fed. Commc'ns Comm'n Mar. 19, 2026) (order), https://docs.fcc.gov/public/attachments/DA-26-267A1.pdf.

combined Nexstar-TEGNA will provide consumers with more hours of better quality local news and programming than would be possible apart.

Plaintiffs' challenge to the Nexstar-TEGNA merger is thus premised on a fundamental distortion of market forces. Plaintiffs entirely ignore the fierce competition for viewership across more platforms than ever before—a dynamic that is reshaping the media industry and exerting increasing pressure on local broadcasters. In the face of those pressures, the Nexstar-TEGNA merger will provide local broadcasters with the scale that makes it possible to compete in the modern media economy. DIRECTV does not want this to happen because it thinks it can bully broadcasters more effectively (to preserve its own profits) if they are smaller and unable to evolve with the times. And while DIRECTV and the Plaintiff States allege that the merger threatens local news, that gets it exactly backwards. Without scale to compete against Big Tech and streaming platforms, local news will not survive, much less thrive. It is a fundamental misuse of antitrust laws to prevent combinations that can help address the existential questions facing broadcasters. Plaintiffs' challenge should be denied.

## GENERAL RESPONSES TO PLAINTIFFS' ALLEGATIONS

Except as expressly admitted herein, Defendants deny each and every allegation set forth in the Amended Complaint. Paragraph numbers in this Answer and the responses contained herein correspond and respond to the allegations in the like-numbered paragraphs of the Amended Complaint. To the extent the paragraphs in the Amended Complaint are grouped under headings and sub-headings, Defendants respond generally that such headings and sub-headings state unsupported legal conclusions as to which no response is required. To the extent a response is necessary, Defendants deny each heading and sub-heading in the Amended Complaint and incorporate by reference this response in each paragraph below as if fully set forth therein.

The Amended Complaint contains many purported quotes from a number of sources, some identified, some not. Plaintiffs do not provide copies of the documents from which quotes were taken, which has impaired Defendants' ability to confirm or deny the accuracy of the quotes in the Amended Complaint as compared to the original text. Defendants, therefore, do not admit the authenticity of any documents from which quotes were taken or the accuracy of the quotes

ANSWER TO STATES'
FIRST AMENDED COMPLAINT

(either as quoted or in the context of material not quoted). Furthermore, with reference to all quotes, citations to documents, or any such averments that might be offered into evidence, Defendants specifically reserve the right to object to any use of such quotes, citations, documents, averments, or the Amended Complaint as a whole in evidence for any purpose whatsoever. Defendants do not concede the truthfulness of third-party articles, news sources, and data sources quoted, characterized, referenced, paraphrased, and reproduced in the Amended Complaint. To the extent a response is required, Defendants deny all allegations of the third-party sources quoted or referenced in the Amended Complaint.

To the extent Defendants refer the Court to a document for its complete and accurate contents, such an assertion shall not be deemed an admission that the contents of any such document are accurate or complete unless so stated expressly. Any allegations in the Amended Complaint that state a legal conclusion do not require a response and, to the extent that any response is required, such allegations are denied. Defendants generally and specifically deny any averments in the Amended Complaint's unnumbered paragraphs, footnotes, and requested relief except as expressly admitted herein, and specifically deny that Plaintiffs are entitled to the relief sought in their Requested Relief. Defendants deny any characterizations, including bolding, italics, or paraphrasing of any alleged statement, or any characterization that is not a full and accurate quote of the actual complete statement in context. Defendants reserve the right to amend and/or supplement this Answer.

**I.**

1.      Defendants admit that Nexstar is a local broadcast company in the United States and that it acquired TEGNA in a transaction valued at approximately $6.2 billion. Defendants deny the remaining allegations in Paragraph 1 and footnote 1.

2.      Defendants admit that following the closure of the transaction, Nexstar owns and/or operates 265 television stations across 44 states and the District of Columbia. Defendants admit that these stations represent roughly 15% of local broadcast stations in the United States and, by some metrics, cover roughly 80% of U.S. households. Defendants deny the remaining allegations in Paragraph 2.

7

3.      Defendants admit that Nexstar owns and/or operates local stations affiliated with the FOX, NBC, ABC, and CBS networks (sometimes referred to as the "Big Four" networks), and that these stations broadcast local news, sports, and primetime programming, among other programs.  Defendants admit that following the closure of the transaction, Nexstar owns additional Big Four affiliates.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's public filings and investor materials, Nexstar denies that the quotes and characterizations accurately reflect the full content and context of the filings and materials, and topics discussed therein.  Nexstar denies the remaining allegations in this paragraph.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3.

4.      Defendants admit that DMAs are geographic regions defined by Nielsen for measuring local television viewership.  Defendants admit that in Sacramento, CA, Nexstar owns KTXL-TV, a station affiliated with FOX, and KXTV-TV, a station affiliated with ABC, which was owned by TEGNA prior to the transaction.  Nexstar admits that following the closure of the transaction, Nexstar owns additional Big Four affiliates, including in some DMAs where it already owned at least one Big Four affiliate before the transaction.  Defendants deny the remaining allegations in Paragraph 4 and footnotes 4 and 5.

5.      Defendants deny the allegations in Paragraph 5 and footnote 6.

6.      Defendants lack knowledge or information sufficient to form a belief as to the truth of whether MVPDs pass on their costs to consumers.  Defendants deny the remaining allegations in Paragraph 6.

7.      Defendants admit that Big Four affiliates broadcast local news and sports, among other programs, and that some consumers access this content through retransmissions of the broadcasts on MVPDs.  Defendants deny the remaining allegations in Paragraph 7.

8.      To the extent Paragraph 8 purports to selectively quote, characterize, reference, and/or paraphrase a Nexstar document, Nexstar denies that the quotes accurately reflect the full content and context of the document and topics discussed therein, and TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the quoted material.  To the extent this

8

paragraph purports to selectively quote, characterize, reference, and/or paraphrase third-party data or reports, Defendants lack knowledge or information sufficient to form a belief as to the validity of the data or reports. Defendants deny the remaining allegations in Paragraph 8 and footnotes 7, 8, and 9.

9. Defendants admit that Nexstar and TEGNA have agreements with MVPDs for the retransmission of their over-the-air broadcast signals, and that MVPDs may pay retransmission consent fees for the right to retransmit those signals.

10. Defendants lack knowledge or information sufficient to form a belief as to the desires or goals of MVPDs. Defendants deny the remaining allegations in Paragraph 10.

11. Nexstar admits that it entered into a stipulation and proposed judgment with the U.S. Department of Justice ("DOJ") to divest certain stations in connection with Nexstar's acquisitions of Media General and Tribune Media, which was entered by the Court. The proposed judgment specifically states that Nexstar entered it "without trial or adjudication of any issue of fact or law and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law." To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase a DOJ press release and DOJ final judgment, Nexstar denies that the quotes and characterizations accurately reflect the full content and context of the document and topics discussed therein. Nexstar denies the remaining allegations in Paragraph 11 and footnote 10. TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

12. Defendants deny the allegations in Paragraph 12 and footnote 11.

13. To the extent Paragraph 13 purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's public filings and investor materials, Nexstar denies that the characterizations accurately reflect the full content and context of the filings and materials, and topics discussed therein. Nexstar denies the remaining allegations in Paragraph 13. TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

14. Defendants deny the allegations in Paragraph 14. To the extent Paragraph 14 selectively quotes from a third-party study, Defendants lack knowledge or information sufficient to form a belief as to the validity of the study.

15. Paragraph 15 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 15.

16. Paragraph 16 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 16.

**II.**

17. Paragraph 17 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 17.

18. Paragraph 18 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 18.

19. Defendants admit that they license retransmission consent rights to MVPDs. Nexstar admits that it operates stations in the States and Commonwealths identified in this paragraph. Paragraph 19 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 19.

20. Defendants admit that following the closure of the transaction, Nexstar owns two Big Four affiliates located in Sacramento, CA: Nexstar owns KTXL, a station affiliated with FOX, and KXTV, a station affiliated with ABC, which was owned by TEGNA prior to the transaction. The remaining allegations in Paragraph 20 assert legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

**III.**

21. Defendants admit that the State of California is a sovereign state of the United States, and that this action is brought by its Attorney General, Rob Bonta. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21.

22. Defendants admit that the State of Colorado is a sovereign state of the United States, and that this action is brought by its Attorney General, Philip Weiser. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22.

23. Defendants admit that the State of Connecticut is a sovereign state of the United States, and that this action is brought by its Attorney General, William Tong. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 23.

24. Defendants admit that the State of Illinois is a sovereign state of the United States, and that this action is brought by its Attorney General, Kwame Raoul. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24.

25. Defendants admit that the State of Indiana is a sovereign state of the United States, and that this action is brought by its Attorney General, Todd Rokita. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25.

26. Defendants admit that the State of Kansas is a sovereign state of the United States, and that this action is brought by its Attorney General, Kris Kobach. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 26.

27. Defendants admit that the Commonwealth of Massachusetts is a sovereign state of the United States, and that this action is brought by its Attorney General, Andrea Joy Campbell. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27.

28. Defendants admit that the State of New York is a sovereign state of the United States, and that this action is brought by its Attorney General, Letitia James. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28.

29. Defendants admit that the State of North Carolina is a sovereign state of the United States, and that this action is brought by its Attorney General, Jeff Jackson. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29.

30. Defendants admit that the State of Oregon is a sovereign state of the United States, and that this action is brought by its Attorney General, Dan Rayfield. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30.

31. Defendants admit that the Commonwealth of Pennsylvania is a sovereign state of the United States, and that this action is brought by its Attorney General, David W. Sunday, Jr. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31.

32. Defendants admit that the State of Vermont is a sovereign state of the United States, and that this action is brought by its Attorney General, Charity R. Clark. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32.

33. Defendants admit that the Commonwealth of Virginia is a sovereign state of the United States, and that this action is brought by its Attorney General, Jay Jones. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33.

34. Paragraph 34 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants refer to Plaintiffs' Amended Complaint.

35. Nexstar admits that it is a Delaware corporation with its headquarters in Irving, TX. Nexstar admits that in 2025, it had annual revenues of approximately $4.9 billion and that it has over 200 owned or partner broadcast stations in 116 DMAs covering over 220 million people. To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's public filings, investor materials, and website materials and selectively reproduce a slide from Nexstar's investor materials, Nexstar denies that the characterizations and

12

reproduction accurately reflect the full content and context of the filings and materials, and topics discussed therein. Nexstar denies the remaining allegations in Paragraph 35 and footnotes 15 and 16. TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

36.      Defendants admit that TEGNA was a Delaware corporation with its headquarters in Tysons, VA, and that following the closure of the transaction, it became a wholly-owned subsidiary of Nexstar. Defendants admit that TEGNA generated approximately $2.7 billion in revenue in 2025, and that it owned 64 broadcast stations in 51 DMAs before the transaction. To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase TEGNA's public filings and website and selectively reproduce a TEGNA webpage, Defendants deny that the characterizations and reproduction accurately reflect the full content and context of the filings and website, and topics discussed therein. Defendants deny the remaining allegations in Paragraph 36.

**IV.**

37.      Defendants admit that certain Plaintiff States filed their initial complaint on March 18, 2026, and that Defendants closed Nexstar's acquisition of TEGNA on March 19, 2026, in a cash transaction valued at approximately $6.2 billion, inclusive of TEGNA's net debt and estimated transaction fees and expenses, following the Federal Communications Commission's ("FCC's") determination that the transaction "promotes the public interest" and clearance of the transaction by the FCC and Department of Justice ("DOJ") on March 19, 2026. Defendants admit that following the closure of the transaction, Nexstar owns and/or operates 265 broadcast stations across 44 states and the District of Columbia in 132 DMAs. Defendants admit that these stations represent roughly 15% of local broadcast stations in the United States and, according to some metrics, cover roughly 80% of U.S. households. Nexstar also admits that following the closure of the transaction, Nexstar owns additional Big Four affiliates, including in some DMAs where it already owned at least one Big Four affiliate before the transaction. Defendants deny the remaining allegations in Paragraph 37.

38.     Nexstar admits that following the closure of the transaction, Nexstar owns additional Big Four affiliates, including in some DMAs where it already owned at least one Big Four affiliate before the transaction.  Defendants deny the remaining allegations in Paragraph 38 and footnote 18.

39.     To the extent Paragraph 39 purports to selectively quote, characterize, reference, and/or paraphrase a statement by Nexstar's Chairman and CEO, the Complaint does not identify the source of the purported quotation.  Nexstar denies that the quote accurately reflects the full content and context of the alleged statement.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39.

**V.**

40.     Defendants admit that broadcast groups and MVPDs may negotiate agreements for the retransmission of Big Four affiliate content, among other content.  Defendants admit that MVPDs may pay retransmission consent fees for that content, pursuant to retransmission consent agreements negotiated between the broadcast group and MVPD.  To the extent this paragraph purports to selectively characterize the terms of any retransmission consent agreements, Defendants deny that the characterizations accurately reflect the full content and context of the agreements and their terms.  To the extent this paragraph purports to quote, characterize, reference, and/or paraphrase the DOJ's Competitive Impact Statements, Defendants deny that the characterizations accurately reflect the full content and context of the statement and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 40.

41.     To the extent this paragraph purports to selectively characterize the terms of any retransmission consent agreements, Defendants deny that the characterizations accurately reflect the full content and context of the agreements and their terms.  Defendants deny the remaining allegations in Paragraph 41.

42.     Defendants admit that retransmission consent agreements are periodically renegotiated with MVPDs.  Defendants admit that during a retransmission consent dispute, an MVPD's subscribers may be unable to receive certain broadcast stations' signals through that particular MVPD subscription.  Defendants deny that blackouts are caused by broadcast groups,

14

as they occur only if an MVPD, such as DIRECTV, and a broadcast group are unable to reach terms on retransmission fees.  To the extent this paragraph purports to selectively characterize the terms of any retransmission consent agreements, Defendants deny that the characterization accurately reflects the full content and context of those agreements and the topics discussed therein.  To the extent Paragraph 42 poses a hypothetical, no response is required.  Defendants deny the remaining allegations in Paragraph 42.

**A.**

43.    Paragraph 43 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the Supreme Court's decision in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), Defendants deny that the quotes accurately reflect the full content and context of that decision and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 43.

44.    Defendants admit that Big Four affiliates broadcast local news and sports, as well as national programming from the Big Four networks, among other programming, and that some consumers receive Big Four broadcast content through MVPDs.  Defendants deny the remaining allegations in Paragraph 44.

45.    Defendants admit that Big Four affiliates broadcast local news, sports, and primetime programs, among other programming.  Defendants lack knowledge or information sufficient to form a belief as to the desires or goals of MVPDs.  Defendants deny the remaining allegations in Paragraph 45.

46.    Nexstar admits that some NFL games are aired on broadcast television, among other places.  To the extent Paragraph 46 purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's investor materials, earnings calls, and financial reporting, Nexstar denies that the quotes accurately reflect the full content and context of the materials, calls, and reporting, and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 46.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

15

47.    To the extent Paragraph 47 purports to selectively quote, characterize, reference, and/or paraphrase Nexstar's earnings calls and selectively reproduce a slide from Nexstar's investor materials, Nexstar denies that the characterization and reproduction accurately reflect the full content and context of the calls and materials, and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 47.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47.

48.    Defendants admit that Big Four affiliates broadcast local news, sports, and primetime programs, among other programming, and that they can have retransmission consent agreements with MVPDs.  Defendants lack knowledge or information sufficient to form a belief as to the truth of whether MVPDs pass on their costs to consumers.  Defendants deny the remaining allegations in Paragraph 48.

49.    Paragraph 49 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that MVPDs are subject to federal regulations related to retransmission consent licensing.  To the extent Paragraph 49 purports to selectively quote, characterize, reference, and/or paraphrase federal regulations, a declaration in *Circle City Broad. I, LLC v. AT&T Servs., Inc.* and the DOJ's Competitive Impact Statements, Defendants deny that the quotes and characterizations accurately reflect the full content and context of the regulations, declaration, statements, and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 49 and footnotes 27 and 28.

50.    Defendants admit that during a retransmission consent dispute, an MVPD's subscribers may be unable to receive certain broadcast stations' signals through that particular MVPD subscription.  Defendants deny that blackouts are caused by broadcast groups, as they occur only if an MVPD, such as DIRECTV, and a broadcast group are unable to reach terms on retransmission fees.  Paragraph 50 poses a hypothetical, and no response to the hypothetical is required.  To the extent any response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 50.

51.    Defendants admit that some non-Big Four broadcast stations offer foreign language content.  Paragraph 51 asserts legal conclusions to which no response is required.  To

16

the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 51.

52.    Paragraph 52 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 52.

53.    Paragraph 53 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 53.

54.    Defendants admit that some streaming services provide an on-demand library of content via an app, the Internet, or an online platform where users sometimes pay a recurring fee for the content.  Defendants deny the remaining allegations in Paragraph 54 and footnotes 29 and 30.

55.    Paragraph 55 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 55.

56.    Defendants deny the allegations in Paragraph 56.

57.    Paragraph 57 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 57.

58.    Paragraph 58 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 58.

59.    Defendants admit that some MVPDs have retransmission consent agreements for Big Four affiliate broadcasts.  To the extent Paragraph 59 relies on third-party data, Defendants lack knowledge or information sufficient to form a belief as to the validity of that data.  Defendants deny the remaining allegations in Paragraph 59 and footnote 31.

60.    Paragraph 60 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 60.

17

**B.**

61.    Defendants admit that DMAs are geographic regions defined by Nielsen for measuring local television viewership.  Defendants lack knowledge or information sufficient to form a belief as to industry knowledge on certain terminology used in Paragraph 61.  Paragraph 61 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants refer to the relevant FCC regulations and federal law for a complete and accurate statement of their contents.

62.    Defendants admit that during a retransmission consent dispute, an MVPD's subscribers may be unable to receive certain broadcast stations' signals through their MVPD subscription.  Defendants deny that blackouts are caused by broadcast groups, as they occur only if an MVPD, such as DIRECTV, and a broadcast group are unable to reach terms on retransmission fees.  Paragraph 62 and footnote 32 assert legal conclusions to which no response is required.  To the extent a response is required, Defendants refer to the relevant FCC regulations and federal law for a complete and accurate statement of their contents.  Paragraph 62 poses a hypothetical, and no response to the hypothetical is required.  To the extent any response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 62.

**VI.**

63.    Paragraph 63 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 63.

64.    Paragraph 64 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 64.

65.    Paragraph 65 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the DOJ and FTC's Merger Guidelines, Defendants deny that the characterizations accurately reflect the full content and context of the Guidelines and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 65.

66.     Paragraph 66 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase the DOJ and FTC's Merger Guidelines, Defendants deny that the quotes and characterizations accurately reflect the full content and context of the Guidelines and topics discussed therein.  Defendants deny the remaining allegations in Paragraph 66.

67.     Paragraph 67 and its referenced chart assert legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph and chart purport to rely on third-party data, Defendants lack knowledge or information sufficient to form a belief as to the validity of that data.  Defendants deny the remaining allegations in Paragraph 67, its referenced chart, and footnotes 33 and 34.

68.     Paragraph 68 and its referenced chart assert legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph and chart purport to rely on third-party data, Defendants lack knowledge or information sufficient to form a belief as to the validity of that data.  Defendants deny the remaining allegations in Paragraph 68 and its referenced chart.

69.     Paragraph 69 and its referenced chart assert legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph and chart purport to rely on third-party data, Defendants lack knowledge or information sufficient to form a belief as to the validity of that data.  Defendants deny the remaining allegations in Paragraph 69 and its referenced chart.

70.     Paragraph 70 and its referenced chart assert legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph and chart purport to rely on third-party data, Defendants lack knowledge or information sufficient to form a belief as to the validity of that data.  Defendants deny the remaining allegations in Paragraph 70 and its referenced chart.

ANSWER TO STATES'
FIRST AMENDED COMPLAINT

71.     Paragraph 71 and footnote 36 assert legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 71 and footnote 36.

## VII.

72.     Paragraph 72 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 72.

73.     To the extent Paragraph 73 purports to quote a TEGNA email and a Nexstar document, the Complaint does not identify the sources of the purported quotations.  To the extent this paragraph purports to selectively quote, characterize, reference, and/or paraphrase Defendants' documents, Defendants deny that the quotes and characterizations accurately reflect the full content and context of those documents and alleged topics discussed therein.  Defendants deny the remaining allegations in Paragraph 73.

74.     To the extent this paragraph purports to selectively characterize the terms of any retransmission consent agreements, Defendants deny that the characterizations accurately reflect the full content and context of the agreements and their terms.  Defendants deny the remaining allegations in Paragraph 74.

75.     To the extent Paragraph 75 purports to selectively quote, characterize, reference, and/or paraphrase a statement by Nexstar's Chief Financial Officer, Nexstar denies that the quotes and characterizations accurately reflect the full content and context of the statement and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 75.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

76.     Defendants admit that the transaction resulted in Nexstar owning more broadcast stations.  Defendants deny that blackouts are caused by broadcast groups, as they occur only if an MVPD, such as DIRECTV, and a broadcast group are unable to reach terms on retransmission fees.  To the extent Paragraph 76 poses a hypothetical, no response to the hypothetical is required.  Defendants deny all other allegations in Paragraph 76.

ANSWER TO STATES'
FIRST AMENDED COMPLAINT

77.    Defendants admit that following the closure of the transaction, Nexstar owns two Big Four affiliates located in Sacramento, CA:  Nexstar owns KTXL, a station affiliated with FOX, and KXTV, a station affiliated with ABC, which was owned by TEGNA prior to the transaction.  To the extent Paragraph 77 poses a hypothetical, no response to the hypothetical is required.  Defendants deny the remaining allegations in Paragraph 77.

78.    Nexstar denies the allegations in Paragraph 78.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78.

79.    Defendants deny the allegations in Paragraph 79 and footnotes 39 and 40.

80.    Defendants deny the allegations in Paragraph 80.

81.    Nexstar admits that in Indianapolis, IN, Nexstar owns WXIN, a station affiliated with FOX, and WTTV, a station affiliated with CBS, and that these stations share some employees.  To the extent Paragraph 81 purports to quote, characterize, reference, and/or paraphrase third-party commentary, Nexstar lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent Paragraph 81 purports to quote, characterize, reference, and/or paraphrase Nexstar's investor materials and statements, Nexstar denies that the quotes accurately reflect the full content and context of the materials and statements therein.  Nexstar denies the remaining allegations in Paragraph 81 and footnote 44. TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 and footnote 44.

82.    To the extent Paragraph 82 purports to quote, characterize, reference, and/or paraphrase Nexstar's investor materials, earnings calls, and documents, Nexstar denies that the quotes and characterizations accurately reflect the full content and context of the materials, calls, documents, and topics discussed therein.  Nexstar denies the remaining allegations in Paragraph 82.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82.

83.    Defendants admit that local news broadcasts sometimes include reporting on community events, local elections, and local emergency coverage, and that some viewers watch that programming.  To the extent that Paragraph 83 poses a hypothetical, no response to the

21

ANSWER TO STATES'
FIRST AMENDED COMPLAINT

hypothetical is required.  To the extent any response is required, Defendants deny those allegations.  To the extent Paragraph 83 selectively quotes from third-party filings before the FCC and other third-party commentary, Defendants deny that the quotes accurately reflect the full content and context of those documents and the topics discussed therein.  Defendants deny the remaining allegations in Paragraph 83 and footnotes 47, 50, and 51.

84.    Paragraph 84 consists of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 84.

**VIII.**

85.    Paragraph 85 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 85.  To the extent Paragraph 85 purports to selectively quote, characterize, reference, and/or paraphrase the DOJ and FTC's Merger Guidelines, Defendants deny that the quotes accurately reflect the full content and context of those Guidelines and topics discussed therein.

86.    Nexstar admits that it has acquired stations and other assets, including Tribune Media and Media General.  To the extent this paragraph purports to quote, characterize, reference, and/or paraphrase Nexstar's investor materials and statements, Nexstar denies that the quotes accurately reflect the full content and context of the materials and statements therein.  Nexstar denies the remaining allegations in Paragraph 86.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86.

87.    To the extent Paragraph 87 purports to quote, characterize, reference, and/or paraphrase Nexstar's investor materials and statements, Nexstar denies that the quotes accurately reflect the full content and context of the materials and statements therein.  Nexstar denies the remaining allegations in Paragraph 87.  TEGNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87.

88.    Paragraph 88 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 88.  To the extent Paragraph 88 purports to selectively quote, characterize, reference, and/or paraphrase the DOJ

ANSWER TO STATES'
FIRST AMENDED COMPLAINT

and FTC's Merger Guidelines, Defendants deny that the quotes accurately reflect the full content and context of those Guidelines and topics discussed therein.

89.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89.  To the extent that Paragraph 89 selectively quotes from third-party publications and earnings calls, Defendants deny that the quotes accurately reflect the full content and context of those publications and calls, and topics discussed therein.

90.    Paragraph 90 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 90.

### IX.

91.    Paragraph 91 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 91.

92.    Defendants deny the allegations in Paragraph 92.

93.    Defendants deny the allegations in Paragraph 93.

### X.

94.    Paragraph 94 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent Paragraph 94 purports to selectively quote, characterize, reference, and/or paraphrase the DOJ and FTC's Merger Guidelines, Defendants deny that the quotes accurately reflect the full content and context of those Guidelines and topics discussed therein.

95.    Defendants admit that the FCC regulates the issuance of broadcast television licenses.  Paragraph 95 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny the remaining allegations in Paragraph 95.

96.    Paragraph 96 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 96.

97.    Paragraph 97 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny those allegations.  To the extent this paragraph

23

purports to selectively quote, characterize, reference, and/or paraphrase the DOJ and FTC's Merger Guidelines, Defendants deny that the quotes accurately reflect the full content and context of those Guidelines and topics discussed therein.

## XI.

98.    Paragraph 98 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 98.

99.    Paragraph 99 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 99.

## XII.

100.    Paragraph 100 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 100.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following defenses with respect to the causes of action alleged in the Amended Complaint, without assuming the burden of proof or persuasion where such burden rests on the Plaintiffs.  Defendants have not knowingly or intentionally waived any applicable defenses, and they reserve the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action.  Defendants reserve the right to supplement their defenses as discovery progresses.

1.    Plaintiffs lack Article III standing.

2.    Plaintiffs lack antitrust standing.

3.    Plaintiffs lack regulatory authority over the merger, which is vested in the Federal Communications Commission and the U.S. Department of Justice.

4.    The Complaint fails to allege a plausible relevant product market or markets.

5.    The Complaint fails to allege a plausible relevant geographic market.

6.    The Complaint fails to allege undue share in any plausibly defined relevant market.

7.    The Complaint fails to allege any plausible harm to competition.

24

8.    The Complaint fails to allege any plausible harm to consumers or consumer welfare.

9.    The combination of Nexstar's business with TEGNA's business will result in substantial acquisition-specific efficiencies.

10.    The combination of Nexstar's business with TEGNA's business will be procompetitive.  The transaction will result in procompetitive effects that will directly benefit consumers. These benefits will greatly outweigh any and all proffered anticompetitive effects.

11.    There will be no harm to competition, consumers, or consumer welfare because there is, and will continue to be, entry and expansion by competitors, which is timely, likely, and sufficient.

25

Dated: May 21, 2026

Respectfully submitted,

By: */s/ Beth A. Wilkinson*
Beth A. Wilkinson (*pro hac vice*)
Kosta S. Stojilkovic (*pro hac vice*)
Sarah E. Neuman (*pro hac vice*)
Jenna P. Swarbrick (*pro hac vice*)

WILKINSON STEKLOFF LLP

Alexander P. Okuliar (*pro hac vice*)
Eliot A. Adelson (CA Bar No. 205284)
Bradley S. Lui (CA Bar No. 143088)
Daralyn Durie (CA Bar No. 169825)
Adam R. Brausa (CA Bar No. 298754)
Nicole K. Serfoss (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
Alexa Rae DiCunzolo (*pro hac vice*)

MORRISON & FOERSTER LLP

*Attorneys for Defendants Nexstar
Media Group, Inc. and TEGNA Inc.*