*[Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re Nexstar-TEGNA Merger Litigation | Case No. 2:26−cv−00976−TLN−CKD<br><br>**PLAINTIFFS' NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF**<br><br>Date: September 3, 2026<br>Time: 2:00 PM<br>Courtroom: 2, 15th Floor<br>Judge: Hon. Troy L. Nunley<br>Trial Date: July 6, 2027<br>Action Filed: March 18, 2026 |

**TO ALL PARTIES AND ATTORNEYS OF RECORD:**

YOU ARE HEREBY GIVEN NOTICE that on September 3, 2026, at 2:00 p.m., or as soon as this matter may be heard, Plaintiff States and Plaintiff DIRECTV, LLC ("Plaintiffs") will, and hereby do, respectfully request that this Court: (1) clarify that its April 17, 2026 Preliminary Injunction prohibits current and recent former Nexstar Media Group, Inc. officers, employees, directors, consultants, or other affiliated personnel from serving on the Board of Directors for TEGNA, Inc.; (2) require Defendants to submit regular reports about their compliance with the

-1-

NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

injunction to the Court and Plaintiffs and supporting documentation to Plaintiffs; (3) establish procedures requiring Defendants to respond within seven days to discovery requests related to their compliance; and (4) order an accelerated briefing schedule for any disputes related to that discovery before the Magistrate Judge.

This Motion is brought pursuant to the Court's inherent authority to interpret, clarify, supervise, and enforce its Preliminary Injunction.  Plaintiffs' Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the supporting declaration of Xiaonan April Hu, all documents in the Court's file, and upon such oral and other documentary evidence as may be presented at the time of any hearing on this application.

Dated:  July 22, 2026

FOR PLAINTIFF DIRECTV:

*/s/ Glenn D. Pomerantz*

Glenn D. Pomerantz (State Bar No. 112503)
   glenn.pomerantz@mto.com
Kuruvilla J. Olasa(State Bar No. 281509)
   kuruvilla.olasa@mto.com
Robert E. Bowen (State Bar No. 335932)
   robert.bowen@mto.com
Lauren Beck (State Bar No. 343375)
   lauren.beck@mto.com
Liam Gennari (State Bar No. 350177)
   liam.gennari@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone:  (213) 683-9100

Justin P. Raphael (State Bar No. 292380)
   justin.raphael@mto.com

Carson J. Scott (State Bar No. 339868)
   carson.scott@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone:  (415) 512-4000

NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Xiaonan April Hu (State Bar No. 321354)
    april.hu@mto.com
Lauren E. Ross (pro hac vice)
    Lauren.Ross@mto.com
Brandon H. Thomas (State Bar No. 334240)
    brandon.thomas@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

McGregor Scott (State Bar No. 142413)
    mscott@kslaw.com
KING & SPALDING LLP
621 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:     (916) 321-4800

Olivier N. Antoine (pro hac vice)
oantoine@kslaw.com
Laura Harris (pro hac vice)
    lharris@kslaw.com
Joshua Hazan (pro hac vice)
    jhazan@kslaw.com
Sean Murray (pro hac vice)
    smurray@kslaw.com
Arthur B. Schoen (pro hac vice)
    aschoen@kslaw.com
KING & SPALDING LLP
1290 Avenue of the Americas, 14th Floor
New York, New York 10104
Telephone:     (212) 556-2100

M. Sean Royall (pro hac vice)
    sroyall@kslaw.com
Emily Blackburn (pro hac vice)
    eblackburn@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone:     (202) 737-0500

Michael D. Nilsson (pro hac vice)
    mnilsson@hwglaw.com
Jared Paul Marx (pro hac vice)
    jmarx@hwglaw.com
Kathleen Weng (pro hac vice)
    kweng@hwglaw.com
HWG LLP
1919 M St. NW, Eighth Floor
Washington, D.C. 20036
Telephone:     (202) 730-1334

*Attorneys for Plaintiff DIRECTV, LLC*

-3-

NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

FOR PLAINTIFF STATE OF CALIFORNIA:

ROB BONTA
Attorney General of California

*/s/ Emily C. Curran*
Emily C. Curran (SBN 293065)
Deputy Attorney General
Paula Blizzard (SBN 207920)
Senior Assistant Attorney General
Brent K. Nakamura (SBN 283572)
Supervising Deputy Attorney General
Laura Antonini (SBN 271658)
Elizabeth Cheever (SBN 341421)
Jennifer K. Hane (SBN 275729)
Connie P. Sung (SBN 304242)
Brian D. Wang (SBN 284490)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Laura.Antonini@doj.ca.gov
        Brent.Nakamura@doj.ca.gov


Shaoul Sussman (*Admitted Pro Hac Vice*)
Nico Gurian (*Admitted Pro Hac Vice*)
Victoria M. O. Field (*Admitted Pro Hac Vice*)
Paul M. Goorich (*Admitted Pro Hac Vice*)
Simonsen Sussman LLP
307 W. 38th St., 16th Fl.
New York, NY 10018
Telephone: (646) 693-3929
Email: shaoul@simonsensussman.com
        nico.gurian@simonsensussman.com
        victoria.field@simonsensussman.com
        paul.goodrich@simonsensussman.com


Catherine S. Simonsen (SBN 307325)
Thomas G. Mattes (SBN 355010)
Simonsen Sussman LLP
418 Bamboo Ln., Suite C-18
Los Angeles, CA 90012
Telephone: (917) 747-5196
Email: catherine@simonsensussman.com
        thomas.mattes@simonsensussman.com

NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER
COMPLIANCE RELIEF

Nicolas A. Stebinger (*Admitted Pro Hac Vice*)
Victoria R. Sims (*Admitted Pro Hac Vice*)
Simonsen Sussman LLP
1629 K St. NW, Suite 300
Washington, DC 20006
Telephone: (202) 384-3130
Email: nicolas@simonsensussman.com
          victoria.sims@simonsensussman.com

FOR PLAINTIFF STATE OF COLORADO:

PHILIP J. WEISER
Attorney General

*/s/ Bryn Williams*
Bryn A. Williams
First Assistant Attorney General
Jonathan B. Sallet (*Admitted pro hac vice*)
Special Assitant Attorney General
Robin Alexander (*Admitted pro hac vice*)
Assistant Attorney General
Amy Bowles (*Admitted pro hac vice*)
Assistant Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 702- 508-6000
Email: Bryn.Williams@coag.gov
          Jon.Sallet@coag.gov
          Robin.Alexander@coag.gov
          Amy.Bowles@coag.gov

*Attorneys for Plaintiff State of Colorado*

FOR PLAINTIFF STATE OF CONNECTICUT:

WILLIAM TONG
Attorney General of Connecticut

NICOLE DEMERS
Deputy Associate Attorney General
(*Admitted pro hac vice*)

*/s/ Julián A. Quiñones Reyes*
Julián A. Quiñones (*Admitted pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue

NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Hartford, CT 06106
Telephone: 860-808-5030
Email: Julian.Quinones@ct.gov

*Attorney for Plaintiff State of Connecticut*

FOR PLAINTIFF STATE OF ILLINOIS:

KWAME RAOUl
Attorney General of Illinois

*/s/ Paul J. Harper*
Paul J. Harper (*Admitted pro hac vice*)
Supervising Attorney, Antitrust Bureau

Elizabeth L. Maxeiner (*Admitted pro hac vice*)
Chief, Antitrust Bureau
John R. Milligan (*Admitted pro hac vice*)
Daniel R. Betancourt (*Admitted pro hac vice*)
Assistant Attorneys General
Office of the Attorney General of Illinois
115 S. LaSalle Street
Chicago, Illinois 60603
Telephone: (312) 814-1004
Email: Paul.Harper@ilag.gov

*Attorneys for Plaintiff State of Illinois*

THEODORE E. ROKITA
Attorney General of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart, Att. No.25474-82
Chief Counsel and Director of Consumer
Protection
(*Admitted pro hac vice*)
Jacob Patterson, Atty. No. 38302-29
Deputy Attorney General (*Admitted pro hac vice*)

OFFICE OF INDIANA ATTORNEY
GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN 46204
Telephone: 317-232-4956
Fax: 317-232-7979
Email: Jacob.Patterson@atg.in.gov

*Counsel for Plaintiff State of Indiana*

-6-

NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER
COMPLIANCE RELIEF

FOR PLAINTIFF STATE OF KANSAS

KRIS KOBACK
Attorney General of Kansas

/s/ John Harris
John Harris (*Admitted pro hac vice*)
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: 785-296-2215
Email: John.Harris@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

FOR PLAINTIFF COMMONWEALTH OF MASSACHUSETTS:

ANDREA JOY CAMPBELL
Attorney Genaral of Massachusetts

/s/ Anthony W. Mariano
Anthony W. Mariano (*Admitted pro hac vice*)
Chief, Antitrust Division
Jennifer E. Greaney (*Admitted pro hac vice*)
Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
Telephone: 781-835-7990
Email: Anthony.Mariano@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General of New York

/s/ Elinor R. Hoffmann
Elinor R. Hoffmann (*Admitted pro hac vice*)
Chief, Antitrust Division
Christopher D' Angelo (*Admitted pro hac vice*)
Deputy Chief Attorney General
Economic Justice Division
Amy McFarlane (*Admitted pro hac vice*)
Deputy Chief, Antitrust Bureau
Morgan Feder (*Admitted pro hac vice*)
Assistant Attorney General, Antitrust Bureau
Jaya Mantovani (*Admitted pro hac vice*)
Attorney General Fellow

-7-

NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Elinor.Hoffmann@ag.ny.gov | 212-416-8269
Christopher.D'Angelo@ag.ny.gov |
212-416-6124
Amy.McFarlane@ag.ny.gov | 212-416-6195
Morgan.Feder@ag.ny.gov | 212-416-8288
Jaya.Mantovani@ag.ny.gov | 212-416-8284

*Attorneys for Plaintiff State of New York*

FOR PLAINTIFF STATE OF NORTH
CAROLINA

JEFF JACKSON
Attorney general of North Carolina

KUNAL CHOKSI (*Admitted pro hac vice*)
Senior deputy attorney general

*/s/ Francisco Benzoni*
Francisco Benzoni (*Admitted pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (*Admitted pro hac vice*)
Director of Major Litigation for Consumer
Protection
114 W. Edenton Street
Raleigh, NC 27603
Telephone: 919-716-6000
Email: Fbenzoni@ncdoj.gov
          Brabinovitz@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina*

FOR PLAINTIFF STATE OF OREGON:

DAN RAYFIELD
Attorney General of Oregon

*/s/ Alex DeLorenzo*
Timothy D. Smith (*Admitted pro hac vice*)
Attorney-in-Charge
Ian Van Loh (SBN 280254)
Alex DeLorenzo (*Admitted pro hac vice*)
Senior Assistant Attorneys General
Economic Justice Section
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tim.Smith@doj.oregon.gov | 503-798-3297
Ian.Vanloh@doj.oregon.gov | 971-239-7457
Alex.Delorenzo@doj.oregon.gov | 503-428-9482

-8-

NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER
COMPLIANCE RELIEF

*Attorneys for Plaintiff State of Oregon*

FOR PLAINTIFF COMMONWEALTH OF PENNSYLVANIA:

DAVID W. SUNDAY, JR.
Attorney General of Pennsylvania

*/s/ Tracy W. Wertz*
Tracy W. Wertz (*Admitted pro hac vice*)
Chief Deputy Attorney General
Antitrust Section
Email: twertz@attorneygeneral.gov

Joseph S. Betsko (*Admitted pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Email: jbetsko@attorneygeneral.gov

Jennifer A. Thomson (*Admitted pro hac vice*)
Senior Deputy Attorney General
Antitrust Section
Email: jthomson@attorneygeneral.gov

Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Phone: 717-787-4530

*Attorneys for Plaintiff Commonwealth of Pennsylvania*

FOR PLAINTIFF STATE OF VERMONT:

CHARITY R. CLARK
Attorney General of Vermont

*/s/ Sarah L. J Aceves*
Sarah L. J. Aceves (*Admitted pro hac vice*)
Assistant Attorney General
Public Protection and Antitrust Unit
Office of the Attorney General of Vermont
109 State Street
Montpelier, VT 05676
Telephone: 802-828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

FOR PLAINTIFF COMMONWEALTH OF VIRGINA

JAY JONES
Attorney General of Virginia

*/s/ Tyler T. Henry*

-9-

NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Tyler T. Henry (*Admitted pro hac vice*)
Senior Assistant Attorney General
Antitrust Unit
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: 804-692-0485
Email: THenry@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia*

NOTICE AND MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| In re Nexstar-TEGNA Merger Litigation | Case No. 2:26−cv−00976−TLN−CKD<br><br>**PLAINTIFFS' MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF** |
| --- | --- |

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ..................................................................................................3

        A.      The Court Ordered Nexstar and TEGNA to Remain Separate Pending Trial............3

        B.      Rather Than Preserve TEGNA's Independence, Nexstar Installed Its Own
                Leadership to Govern TEGNA ...................................................................5

                1.      Plaintiffs Requested Information After Public Reports that Nexstar
                        Was Running TEGNA ....................................................................5

                2.      Defendants Delayed Responding Before Revealing that TEGNA
                        Was Being Overseen by a Nexstar-Dominated Board of Directors...............5

                3.      Defendants Refused to Remove Nexstar Executives from the
                        TEGNA Board, Explain the Board's Function, or Submit Any
                        Reports on Their Compliance with the Preliminary Injunction ...................6

III.    ARGUMENT ....................................................................................................10

        A.      The Court Should Clarify that the Preliminary Injunction Prohibits Nexstar
                Executives from Serving on the TEGNA Board .........................................10

                1.      A Board Controlled by Nexstar Executives Cannot Be Reconciled
                        with the Preliminary Injunction.....................................................10

                2.      Defendants' Explanations for the TEGNA Board Lack Merit....................13

                3.      Defendants' Recusal Proposal Is Insufficient and Unworkable ..................17

        B.      The Court Should Order Defendants to Submit Regular Reports on Their
                Compliance and Require Expedited Discovery.........................................18

IV.     CONCLUSION ................................................................................................20

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF
PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*A&M Recs., Inc. v. Napster, Inc.*,
284 F.3d 1091 (9th Cir. 2002).................................................................................................18

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of HHS*,
780 F. Supp. 3d 897 (N.D. Cal. 2025) ....................................................................................18

*Damus v. Nielsen*,
328 F.R.D. 1 (D.D.C. 2018)......................................................................................................19

*FTC v. Productive Mktg., Inc.*,
136 F. Supp. 2d 1096 (C.D. Cal. 2001)....................................................................................10

*Gluth v. Kangas*,
951 F.2d 1504 (9th Cir. 1991)..................................................................................................19

*In re Nat'l Collegiate Athletic Assoc. Athletic Grant-in-Aid Cap Antitrust Litig.*,
958 F.3d 1239 (9th Cir. 2020)..................................................................................................13

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,
774 F.3d 935 (9th Cir. 2014)....................................................................................................13

*McMichael v. U.S. Filter Corp*,
2001 WL 418981 (C.D. Cal. Feb. 23, 2001) ...........................................................................12

*Obasi Inv. LTD v. Tibet Pharms., Inc*,
931 F.3d 179 (3d Cir. 2019)......................................................................................................11

*Pub. Serv. Co. of Colo. v. Batt*,
67 F.3d 234 (9th Cir. 1995).......................................................................................................10

*Safari Club Int'l v. Bonta*,
756 F. Supp. 3d 837 (E.D. Cal. 2024)......................................................................................10

*Square D Co. v. Schneider S.A.*,
760 F. Supp. 362 (S.D.N.Y. 1991)...........................................................................................13

*Thakur v. Trump*,
795 F. Supp. 3d 1168 (N.D. Cal. 2025) ...................................................................................10

*United States v. XCL Resources Holdings, LLC*,
2026 WL 292073 (D.D.C. 2026)...............................................................................................16

*Washington v. Trump*,
2025 WL 835030 (W.D. Wash. Mar. 17, 2025).......................................................................19

**STATE CASES**

*Geller v. Tabas*,
462 A.2d 1078 (Del. 1983)........................................................................................................10

-ii-

*In re Bally's Grand Derivative Litig.*,
  1997 WL 305803 (Del. Ch. Ct. June 4, 1997) ..............................................................12

**FEDERAL STATUTES**

15 U.S.C. § 19 ..............................................................................................................2, 13

15 U.S.C. § 7241 ................................................................................................................15

**RULES - OTHER**

Fed. R. Civ. P. 33 ..........................................................................................................8, 19

Fed. R. Civ. P. 34 ..............................................................................................................19

**AGENCY DECISIONS**

*United Auto Workers Advisory Opinion*, 97 F.T.C. 933 (1981)........................................13

**OTHER AUTHORITIES**

Louis D. Brandeis, *Other People's Money and How the Bankers Use It* (1914).............................13

TEGNA, *Tegna Shareholders Approve All Board of Directors Proposals at 2025
  Annual Meeting* (Apr. 5, 2025), https://www.tegna.com/tegna-shareholders-
  approve-all-board-of-directors-proposals-at-2025-annual-meeting............................................11

TEGNA Inc., Definitive Proxy Statement, Schedule 14A (Mar. 11, 2024), available
  at https://www.sec.gov/Archives/edgar/data/39899/000095017024029237/tgna-
  20240311.htm...............................................................................................................11

TEGNA Inc., *Principles of Corporate Governance* (updated Nov. 19, 2025) ...............................12

Warren Gorham & Lamont, Thomson Reuters Tax and Accounting, The Trickle-
  Down Approach to Certification (Sep. 2003) ..........................................................................15

-iii-

## I.   INTRODUCTION

This Court issued a preliminary injunction on April 17, 2026 requiring Nexstar to hold TEGNA separate because Plaintiff States and DIRECTV are likely to succeed on their claims that Nexstar's acquisition of TEGNA violates Section 7 of the Clayton Act. In its order, this Court required that "Nexstar must permit TEGNA to continue operating as a separate and *distinct*, *independently* managed business unit from Nexstar," that "Nexstar must place and maintain internal controls and procedures to prevent the sharing of competitively sensitive information," and that "Nexstar must not influence the management of the held-separate TEGNA business unit." Dkt. No. 172 at 48 (emphasis added). Despite those mandates, Nexstar has installed a TEGNA Board of Directors ("TEGNA Board") comprised of Nexstar's CEO, President, CFO, and General Counsel as well as the former President of its broadcasting division who ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. These Nexstar executives have already taken part in managing TEGNA's strategy: they have approved TEGNA's budget, which was developed from forecasts that surely contain TEGNA's competitively sensitive information and which would not have been shared with Nexstar if the two companies were independent competitors. And Nexstar's CEO, Mr. Sook, has openly touted that notwithstanding this Court's order, TEGNA operates as a "subsidiary of Nexstar," which in his view means that TEGNA senior management must "report to the Board" and can "have conversations" with Nexstar executives. Declaration of Xiaonan April Hu ("Hu Decl."), Ex. A at 1, 25.

The Court's order requiring Nexstar to hold TEGNA separate does not permit Nexstar to make the TEGNA Board an extension of Nexstar's C-suite. A company's board of directors exercises oversight of the most important matters involving the company after being informed about confidential information. That is what TEGNA's Board did prior to the merger: according to TEGNA's SEC disclosures, the Board was "actively involved in overseeing, reviewing and guiding the Company's corporate strategy"; the Board discussed "industry positioning, opportunities for growth, [and] multiyear strategic plans" as "a matter of course"; and the Board engaged in "comprehensive discussion and review of the Company's strategic and operational plans."

It stands to reason that Nexstar has installed its executives on TEGNA's Board to do these

-1-

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF
PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

very same things:  to oversee and guide TEGNA's corporate strategy and discuss and review TEGNA's strategic plans.  But that would be Nexstar influencing TEGNA, not holding it separate as this Court required.  Indeed, antitrust law prohibits executives of one company from serving on the board of a competing company because doing so would enable a company to influence its competitor and access its confidential information—exactly what this Court's preliminary injunction seeks to prevent.  15 U.S.C. § 19.  Plaintiffs thus request that this Court clarify that its preliminary injunction requiring Nexstar to hold TEGNA separate does not permit Nexstar to appoint its current or recent former employees, executives, consultants, or other personnel to TEGNA's Board.

For nearly two months, Plaintiffs have tried to get to the bottom of this without burdening the Court.  Plaintiffs repeatedly asked Nexstar for basic information about what its executives are doing on TEGNA's Board and why Nexstar needs its executives on TEGNA's Board to carry out the narrow set of TEGNA-related activities that this Court expressly carved out of its hold-separate order.  Nexstar, however, has refused to provide meaningful responses to Plaintiffs' questions or produce information that would support Nexstar's assurances about what its executives are doing or its explanation for why Nexstar executives need to be on the TEGNA Board.  For example, Nexstar has refused to say what oversight it exercises or plans to exercise over TEGNA's officers or provide any detail on what information Nexstar's executives reviewed when approving a new budget for TEGNA.  Nexstar has also declined to share what information TEGNA's officers provide to the TEGNA Board as part of their updates.  When pressed, Nexstar refused to provide any more information regarding its compliance unless Plaintiffs serve formal discovery.

Plaintiffs therefore need the Court's assistance to obtain information needed to ensure that Nexstar is complying with the Court's preliminary injunction.  Plaintiffs respectfully request that the Court clarify that current and recent Nexstar executives, contractors, and other personnel cannot serve on TEGNA's Board.  Plaintiffs further request that the Court (i) require Defendants to submit regular reports about their compliance with the preliminary injunction to the Court and Plaintiffs and supporting documentation to Plaintiffs; (ii) require Defendants to respond to discovery related to their compliance within seven days, which will not count towards the limits set for merits

-2-

discovery; and (iii) order an accelerated briefing schedule for any disputes related to that discovery.

## II.    BACKGROUND

### A.    The Court Ordered Nexstar and TEGNA to Remain Separate Pending Trial

This antitrust action seeks to block Nexstar's acquisition of its close competitor, TEGNA, a transaction that would, if not enjoined, create an unprecedented broadcast behemoth. Rather than await this Court's consideration, Defendants raced to consummate the merger within minutes of receiving federal regulatory clearance, despite knowing this litigation was pending and multiple, standard requests from Plaintiffs not to close until resolution of the litigation.

On March 27, 2026, after finding that the merger likely violates Section 7 of the Clayton Act and threatens irreparable harm to competition, the Court entered a temporary restraining order ("TRO"). Dkt. No. 60. To preserve the status quo—a marketplace in which Nexstar and TEGNA compete against one another as independent broadcasters—the TRO enjoined "all actions relating to integration and consolidation of Nexstar and TEGNA." *Id.* at 21.

Four days later, Defendants sought "[c]ompliance [g]uidance" from the Court. Dkt. No. 63. Defendants represented that, because they had chosen to close the transaction before the Court ruled, ███████████████████████████████████. *Id.* at 4. Defendants asked the Court to modify the TRO to "allow Nexstar to take actions necessary to establish a functional governance structure for TEGNA, including appointing or reappointing officers, *to the extent necessary to permit TEGNA to fulfill the TRO*." *Id.* at 7 (emphasis added). Defendants further requested permission to take "reasonable steps to perform all obligations required under its debt instruments [and] SEC reporting requirements." *Id.*

DIRECTV consented to most of the requested modifications "*so long as they are construed in accordance with the Order's aims*" of "preserv[ing] competition between Nexstar and TEGNA" and "facilitat[ing] TEGNA's continued operation as an independent, going concern." Dkt. No. 97 at 5 (capitalization altered and emphasis added). DIRECTV agreed that Nexstar be allowed to appoint officers so long as it did "not appoint current Nexstar employees, or former employees employed within the prior six months." *Id.* at 6. However, DIRECTV opposed Nexstar's request for broader "[m]anagement [a]uthority" over TEGNA, explaining this would "swallow[] the rule"

-3-

requiring TEGNA to remain independently managed. *Id.* at 8, 10.

On April 17, the Court granted a preliminary injunction. The preliminary injunction (the "Order") largely mirrored the terms of the TRO while incorporating the requested modifications—as amended by DIRECTV to preserve the force and purpose of the hold-separate order. Dkt. No. 172; *see* Hu Decl., Ex. P (Sealed PI Hr'g Tr. at 24:16–18) ███████████████████████████████████ ██████████████████████████████████████ ██████████████████████. The Court explained that the Order sought "[t]o preserve the status quo and prohibit Nexstar and TEGNA from further integration pending adjudication of the merits." Dkt. No. 172 ("Order") at 48. To do so, the Court repeated the TRO's directives that:

- "Nexstar must permit TEGNA to continue operating as a separate and distinct, independently managed business unit from Nexstar, and Nexstar must put measures in place to maintain TEGNA as an ongoing, economically viable, and active competitor." *Id.* ¶ 2.

- "TEGNA shall have separate management that operates TEGNA in the ordinary course consistent with pre-closing practices." *Id.*

- "Nexstar must place and maintain internal controls and procedures to prevent the sharing of competitively sensitive information." *Id.* ¶ 3.

- "Nexstar must not influence the management of the held-separate TEGNA business unit." *Id.* ¶ 4.

The Order permitted Nexstar to appoint or reappoint TEGNA officers only "to the extent necessary to permit TEGNA to fulfill its obligations under this Order" and prohibited Nexstar from appointing its own current employees or recent former employees as TEGNA officers. *Id.* ¶ 11(c). The Court also permitted Nexstar to take "narrowly tailored" actions necessary to comply with debt instruments and SEC reporting requirements, subject to strict limitations on information sharing. *Id.* ¶ 11(e). Nothing in the Order, however, authorized Nexstar to assume governance of TEGNA or otherwise undermine the requirement that TEGNA remain an independently managed competitor.

**B.  Rather Than Preserve TEGNA's Independence, Nexstar Installed Its Own Leadership to Govern TEGNA**

**1.  Plaintiffs Requested Information After Public Reports that Nexstar Was Running TEGNA**

Plaintiffs grew concerned that Nexstar was not maintaining TEGNA as an independently run company when, on May 7, 2026, Nexstar CEO Perry Sook told investors that certain transactions TEGNA wished to pursue "would have to be approved by the Board of TEGNA, which is comprised of Nexstar executives, and Nexstar management team" and that TEGNA would "operate as a [Nexstar] subsidiary."  Hu Decl., Ex. A at 25.  Mr. Sook added in the same remarks that "[w]e [Nexstar] can have conversations with them [TEGNA], [and] the executives running the entity report to the Board." *Id.*  Bloomberg soon reported, based on interviews with current Nexstar and TEGNA employees, that although members of TEGNA management remained in place, they occupied only "limited roles," lacked "authority to communicate with employees," and that Nexstar "must make" decisions directing TEGNA-owned stations. *Id.* at 1, 8.

Based on these public reports and statements by Nexstar executives, Plaintiffs requested information on May 22, 2026 concerning Defendants' compliance with the preliminary injunction and asked for a response by May 29.  Hu Decl., Ex. A.

**2.  Defendants Delayed Responding Before Revealing that TEGNA Was Being Overseen by a Nexstar-Dominated Board of Directors**

Rather than provide the requested information, including information about the composition of the TEGNA Board, Defendants delayed for weeks.  On June 3, after a meet-and-confer, Defendants provided only a "Preliminary Response" that answered none of Plaintiffs' questions, instead insisting that many requests be reformulated as discovery requests and objecting to others as unduly burdensome.  Hu Decl., Ex. B.  Plaintiffs responded on June 9 by narrowing and reformatting their requests in an effort to avoid further delay while emphasizing that the information was necessary to determine whether Defendants were complying with the Court's Order.  Hu Decl., Ex. C.

Only on June 12—twenty days after Plaintiffs' original request—did Defendants finally disclose that the five-member "TEGNA Board" is comprised exclusively of current and former

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Nexstar executives:

- **Perry Sook** – Nexstar Chief Executive Officer
- **Michael Biard** – Nexstar President & Chief Operating Officer
- **Lee Ann Gliha** – Nexstar Executive Vice President & Chief Financial Officer
- **Elizabeth Ryder** – Nexstar Executive Vice President & General Counsel & Secretary to Nexstar Board of Directors
- **Timothy Busch** – Former President of Nexstar Broadcasting Inc. and Nexstar consultant.

Hu Decl., Ex. D at 2–3. Defendants claimed Mr. Busch—Nexstar's former President who worked for the company for more than twenty years—was nevertheless "independent" because he had not been employed by Nexstar within the prior six months. *Id.* at 3. But documents produced by Defendants show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Defendants also disclosed that this all-Nexstar "TEGNA Board" "[e]xercises governance oversight of TEGNA, including establishing a functional governance structure, appointing TEGNA officers, and approving TEGNA budgets." Hu Decl., Ex. D at 2–3. Over two months after entry of the TRO, however, the Board had appointed only a single TEGNA officer—Chief Executive Officer Patrick Paolini—who "*reports to the TEGNA Board of Directors*."[1] *Id.* at 3 (emphasis added).

> **3.    Defendants Refused to Remove Nexstar Executives from the TEGNA Board, Explain the Board's Function, or Submit Any Reports on Their Compliance with the Preliminary Injunction**

On June 16, Plaintiffs advised Defendants that these disclosures raised serious concerns that they were violating the preliminary injunction, which requires that "Nexstar must not influence the

---

[1] On June 16, 2026, TEGNA announced that it had appointed Kurt Rao as EVP and Chief Technology and Digital Products Officer. Hu Decl., Ex. N. On June 23, 2026, TEGNA announced that it had appointed four employees to senior leadership positions, including General Counsel, Vice President of Human Resources, Senior Vice President of Finance, and Senior Vice President of Content. *Id.*, Ex. O. Nexstar did not identify any of these individuals in its June 26 letter; it revealed their appointments only on July 7. *Id.*, Ex. J. It is unclear how TEGNA operated as a distinct, independent business unit for multiple months prior to these appointments.

-6-

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

management of the held-separate TEGNA business unit," Order ¶ 4, and also "prevent[s] the sharing of competitively sensitive information," *id.* ¶ 3. Plaintiffs requested that the Nexstar executives resign from the TEGNA Board and sought information about the Board's actions, such as "the process for the TEGNA Board to approve TEGNA budgets, including what TEGNA information Board members receive as part of that process." Hu Decl., Ex. F.

Defendants responded ten days later on Friday, June 26. Hu Decl., Ex. G. Defendants refused to remove Nexstar executives from the TEGNA Board. Defendants acknowledged that the Board "received updates from TEGNA management" and had "approved a budget change." *Id.* at 3. But Defendants failed to answer almost all of Plaintiffs' questions and instead sought to justify their decision to stack the TEGNA Board with Nexstar executives. First, Defendants asserted that the Board complies with the preliminary injunction because the injunction bars Nexstar employees from serving as "TEGNA *officers*" but does not expressly prohibit "Nexstar employees or officers [from] serving as TEGNA *directors*," who oversee TEGNA's officers. *Id.* at 2. Second, Defendants argued that the preliminary injunction permits Nexstar to oversee debt agreements and SEC reporting and claimed—without support—that such "oversight cannot be properly exercised without a Board presence." *Id.* Third, Defendants proposed that "any Nexstar executive serving on the TEGNA Board will recuse from any matter beyond those that are permissible for their oversight under the Order, based on advice of counsel." *Id.* at 3. In other words, Defendants proposed that the four current Nexstar executives could all recuse, leaving former Nexstar President and recent consultant Timothy Busch—who Defendants claimed was "independent," but who is plainly not— to "handle those types of matters." *Id.* Defendants did not explain how this recusal process would operate and asserted only that, in their view, no issue requiring recusal had "arisen to date." *Id.*

On June 30, Plaintiffs responded that they were "troubled by Defendants' inability to answer straightforward questions regarding the TEGNA Board's actions" and concerned by their insistence on "keeping Nexstar's executives on the TEGNA Board.'" Hu Decl., Ex. H at 1. Plaintiffs requested that Nexstar provide support for its bald assertion that Nexstar executives are required to serve on the TEGNA Board, explain how it planned to determine when Nexstar executives must recuse, and explain Mr. Busch's position at Nexstar. *Id.* at 1–2. Plaintiffs also requested that Defendants

-7-

respond to nine outstanding questions from their May 22 and June 16 letters by July 6, including questions about what information the TEGNA Board received about TEGNA in order to vote on TEGNA budgets. *Id.* at 2–3.

On July 6, despite the fact that many of Plaintiffs' questions had been pending for nearly a month or longer, Defendants informed Plaintiffs that they could not respond to Plaintiffs' letter on such a "short deadline," but would respond "soon." Hu Decl., Ex. I. The following day, Defendants sent a letter that again provided, at best, incomplete responses to Plaintiffs' questions concerning their compliance with the preliminary injunction. Hu Decl., Ex. J. Defendants refused to explain the oversight role the TEGNA Board exercises over TEGNA officers,[2] what governance decisions it anticipates making besides approving the selection of additional TEGNA officers, or the substance of its written communications with TEGNA leadership. *Id.* Although Defendants acknowledged that the Board had approved a revised budget that was created based on "a forecast provided by TEGNA's finance personnel," they did not say what information the Board members received about TEGNA prior to approving the revised budget, including whether the Board received the forecast itself, which likely contained competitively sensitive information. *Id.* at 3. Defendants said they would produce minutes from the May and June TEGNA Board meetings "when available," without explaining why minutes from earlier Board meetings were not already in hand. *Id.* Plaintiffs have yet to receive those minutes as of the date of this filing.

Defendants refused to answer any further questions concerning compliance with the Court's preliminary injunction outside the formal discovery process. Hu Decl., Ex. J at 1–2. That is, Plaintiffs would have to serve new discovery requests—eating into their merits discovery allotment—and then wait 30 more days just to receive Defendants' responses and objections. Fed. R. Civ. P. 33. At that point, Plaintiffs notified Defendants that they intended to seek relief from the Court to (1) clarify that the preliminary injunction does not permit current or recent former Nexstar

---

[2] Nexstar claims that it has answered this question by disclosing that the TEGNA Board "formally ratif[ies] Mr. Paolini's selections of other TEGNA senior leaders" and "approve[s] Mr. Paolini's proposed compensation packages for senior leadership candidates." Hu Decl., Ex. G at 3. This is, at best, a partial answer—it does not address what oversight, if any, the TEGNA Board exercises over TEGNA officers and senior leadership *after* their appointment.

-8-

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF
PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

executives and other personnel to sit on TEGNA's Board; and (2) appoint a special master or, alternatively, direct Defendants to respond to discovery related to their compliance and brief any disputes related to that discovery on an expedited basis. Hu Decl., Ex. Q at 13–14.

At a meet and confer on July 13, Defendants again refused to remove Nexstar executives from the TEGNA Board. Defendants requested information on a potential special master's role and proposal for expedited discovery. *Id.* at 13. Plaintiffs explained that a special master could supervise expedited discovery into Defendants' compliance with the injunction; establish procedures to facilitate compliance; receive regular reports from Defendants about their compliance with the preliminary injunction; and submit reports and recommendations to the Court. *Id.* at 9–10. Plaintiffs also proposed an expedited discovery schedule before the Magistrate Judge. *Id.* at 10.

Defendants stated that they were amenable to producing minutes of any TEGNA Board meeting and changes to TEGNA's budget to any special master, but nothing more. *Id.* at 5–6. They objected to a special master exercising a "compliance monitor function." *Id.* at 6. Defendants proposed an extended process for identifying candidates for the special master position and procedures for presenting issues to any special master. *Id.* Defendants also represented that they were agreeable to some form of accelerated discovery regarding their compliance but declined to take a position on Plaintiffs' proposal or propose any alternative procedures. *Id.* at 6–7.

Defendants' proposal appeared to reflect a desire to use litigation over a special master to continue their pattern of delay and avoid scrutiny of their compliance. Plaintiffs therefore determined that requesting the Court order Defendants to make reports directly to Plaintiffs and the Court and that compliance discovery be accelerated under the procedures already established by the Local Rules would be more efficient and effective than litigating the appointment of a special master under Rule 53, and informed Defendants of their position on July 21, 2026. *See id.* at 1–4. Defendants did not consent to providing the Court with regular reports on their compliance with the preliminary injunction. Hu Decl. ¶ 19. Plaintiffs are mindful of the judicial emergency in this District, but they submit that having Defendants report directly to the Court and provide discovery to Plaintiffs on an expedited basis will create strong incentives for Defendants to comply and provide transparency, substantially reducing the need for further Court intervention.

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

## III.   ARGUMENT

### A.   The Court Should Clarify that the Preliminary Injunction Prohibits Nexstar Executives from Serving on the TEGNA Board

The preliminary injunction requires that Nexstar "not influence the management of the held-separate TEGNA business unit" and also "prevent[s] the sharing of competitively sensitive information."   Order ¶¶ 3–4.   A TEGNA Board controlled by Nexstar's own executives is incompatible with that requirement.   The Board sits atop TEGNA's governance structure and, by Nexstar's own admission, has the power to approve or reject TEGNA's budget, including revisions proposed by TEGNA's officers to that budget.   Indeed, it is hornbook law that a corporation's board of directors exercises considerable powers, including but not limited to overseeing the company's business and management and reviewing major company financial plans, guidelines, and policies. *See* Alan S. Gutterman, Business Transactions Solutions § 43:18 (2026); *see also Geller v. Tabas*, 462 A.2d 1078, 1083 (Del. 1983) (discussing "well settled rule that the Board of Directors manage the corporation, and they cannot abdicate these responsibilities").   Nexstar cannot simultaneously control TEGNA's Board and comply with an injunction requiring TEGNA to remain independent.

This should have been obvious.   But to eliminate any doubt, Plaintiffs request that the Court clarify that the Order does not permit current Nexstar personnel or recent former Nexstar personnel, including Nexstar contractors, to serve on TEGNA's Board of Directors.   "A district court has discretion to clarify or modify the scope of an injunction."   *Safari Club Int'l v. Bonta*, 756 F. Supp. 3d 837, 840 (E.D. Cal. 2024).   "By clarifying the scope of a previously issued injunction, a court adds certainty to an implicated party's effort to comply with the order and provides fair warning as to what future conduct may be found contemptuous."   *Id.* (citation modified).[3]

### 1.   A Board Controlled by Nexstar Executives Cannot Be Reconciled with the Preliminary Injunction

The preliminary injunction "must be read in light of [its] purpose."   *FTC v. Productive Mktg.,*

---

[3] The Court's power to clarify the preliminary injunction order is unaffected by Defendants' pending appeal.   *See Thakur v. Trump*, 795 F. Supp. 3d 1168, 1178 (N.D. Cal. 2025) ("[A] district court has jurisdiction to clarify the meaning of its orders even while an appeal is pending" (citing *Pub. Serv. Co. of Colo. v. Batt*, 67 F.3d 234, 238 (9th Cir. 1995)).

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

*Inc.*, 136 F. Supp. 2d 1096, 1109 (C.D. Cal. 2001).  That purpose is unmistakable.  The Court ordered Nexstar to preserve TEGNA as an independent competitor pending resolution of this litigation over whether Nexstar's acquisition of TEGNA harms competition.  Accordingly, the Court required that "Nexstar must permit TEGNA to continue operating as a separate and distinct, independently managed business unit from Nexstar," that "Nexstar must place and maintain internal controls and procedures to prevent the sharing of competitively sensitive information," and that "Nexstar must not influence the management of the held-separate TEGNA business unit."  Order ¶¶ 2–4.  That Order does not permit Nexstar to control the TEGNA Board, which enables Nexstar to influence management of TEGNA and obtain access to TEGNA's confidential information.

Prior to closing, the TEGNA Board of Directors—comprised of nine independent directors and the CEO[4]—was "actively involved in overseeing, reviewing and guiding the Company's corporate strategy."  TEGNA Inc., Definitive Proxy Statement at 33 (Schedule 14A) (Mar. 11, 2024).[5]  "Strategic business issues, including developments in our industry and industry positioning, opportunities for growth, multiyear strategic plans, investments and capital allocation, including M&A-related decisions, are discussed as a matter of regular course at [the] Board meetings."  *Id.*  The Board discussed "corporate strategy throughout the year with management, both formally and informally[.]"  *Id.*  Board discussions were "regularly infused with strategic and business themes," including "presentations to the Board to facilitate a further in-depth and comprehensive discussion and review of the Company's strategic and operational plans."  *Id.*

Nexstar claims that its reconstituted TEGNA Board comprised of former and current Nexstar executives is different and engaging only in activities permitted by the Court's order.  That cannot be right.  After all, a "board manages the corporation's affairs by," among other things, "making high level corporate policy," "deciding financing and capital allocation," and "supervising the welfare of the whole enterprise."  *Obasi Inv. LTD v. Tibet Pharms., Inc*, 931 F.3d 179, 184–85 (3d

---

[4] TEGNA, *Tegna Shareholders Approve All Board of Directors Proposals at 2025 Annual Meeting* (Apr. 5, 2025), https://www.tegna.com/tegna-shareholders-approve-all-board-of-directors-proposals-at-2025-annual-meeting.

[5] Available at https://www.sec.gov/Archives/edgar/data/39899/000095017024029237/tgna-20240311.htm.

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Cir. 2019) (citation omitted). "The board's duty to manage or supervise the management of the business and affairs of a corporation ordinarily 'entails the duty to establish or approve the long-term strategic, financial and organizational goals of the corporation; to approve formal or informal plans for the achievement of these goals; to monitor corporate performance; and to act, when in the good faith, informed judgment of the board it is appropriate to act.'" *In re Bally's Grand Derivative Litig.*, 1997 WL 305803, at *4 (Del. Ch. Ct. June 4, 1997) (citation omitted).

In carrying out these important oversight functions, a board of directors has "a duty to act on an informed basis." *McMichael v. U.S. Filter Corp*, 2001 WL 418981, at *10 (C.D. Cal. Feb. 23, 2001). "It would seem to be axiomatic that an individual director cannot make a full contribution to the management of the corporate business unless given access to the corporation's books and records. Such information is ordinarily requisite to the exercise of the judgment required of directors in the performance of their fiduciary duty." 5A Fletcher Cyc. Corp. § 2235. Directors cannot discharge their duties while deliberately insulated from the information necessary to evaluate significant corporate decisions. A TEGNA Board that approves budgets without understanding them—or abstains whenever material business issues arise—is not functioning as a genuine corporate board consistent with TEGNA's "pre-closing practices." Order ¶ 2.[6]

Nexstar has thus admitted that the TEGNA Board approves TEGNA's budgets, Hu Decl., Ex. D at 2–3, and recently exercised that power to approve revisions to TEGNA's 2026 budget that was prepared "based on a forecast provided by TEGNA's finance personnel." Hu Decl., Ex. J at 3. ███████████████████████████████████████████████. Hu Decl., Ex. K. It is hard to imagine that a forecast of TEGNA's operations did not contain competitively sensitive information about its business.

[6] Nor would doing so be at all consistent with TEGNA's own corporate governance principles, which provide that "[e]ffective corporate directors are diligent monitors" and that "[t]he Board should be knowledgeable concerning trends in the company's business and is responsible for understanding and approving the company's principal activities and for monitoring the effectiveness of their implementation." TEGNA Inc., *Principles of Corporate Governance* 1–2 (updated Nov. 19, 2025).

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

In short, as directors of TEGNA, Nexstar executives have a duty to oversee TEGNA's major initiatives and strategy after being informed of confidential information about the company, and Nexstar has admitted that its executives have already begun doing so by approving changes to TEGNA's budget based on a forecast of its future operations.  In those circumstances, TEGNA is not being maintained "separate and distinct" as this Court's order requires.  Order ¶ 2.  Rather, Nexstar is doing precisely what this Court's order prohibits:  it is exercising "influence" over "the management of the held-separate TEGNA business unit" and accessing "competitively sensitive information" about TEGNA.  *Id.* ¶¶ 3–4.  Indeed, Defendants have admitted that TEGNA officers provide updates about TEGNA to Nexstar executives on the TEGNA Board—the contents of which Defendants have failed to disclose to Plaintiffs, *see* Hu Decl., Ex. J—and Mr. Sook himself has proclaimed that TEGNA senior management must "report to the Board" and can "have conversations" with Nexstar executives, Hu Decl., Ex. A at 20, 25.  Nexstar's insistence that it does not "influence" TEGNA's management flies in the face of these undisputed facts.

The Clayton Act—the very same statute that justified the preliminary injunction in the first place—reinforces the same conclusion.  Section 8 of the Clayton Act prohibits the same directors from sitting on the board of competitors.  15 U.S.C. § 19.  "The basic purposes of Section 8 are to avoid the opportunity for coordination of business decisions by competitors, *United Auto Workers Advisory Opinion*, 97 F.T.C. 933, at \*2 (May 1, 1981), and "prevent the exchange of commercially sensitive information among competitors," *Square D Co. v. Schneider S.A.*, 760 F. Supp. 362, 366 (S.D.N.Y. 1991); *see also* Louis D. Brandeis, *Other People's Money and How the Bankers Use It* 51 (1914) ("The practice of interlocking directorates is the root of many evils. . . . Applied to rival corporations, it tends to the suppression of competition and to violation of the Sherman law.").

The preliminary injunction sought to preserve TEGNA as an independent competitor.  The TEGNA Board's current composition violates that command.

### 2.      Defendants' Explanations for the TEGNA Board Lack Merit

None of Defendants' attempts to reconcile the TEGNA Board with the preliminary injunction withstand scrutiny.

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Case 2:26-cv-00976-TLN-CKD   Document 269   Filed 07/22/26   Page 28 of 35

***First,*** Nexstar mistakenly infers permission to appoint Nexstar employees as TEGNA *directors* from a provision of the injunction prohibiting Nexstar employees from serving as TEGNA officers. Hu Decl., Ex. G at 2. This reasoning by negative implication fails.

Injunctions are read "in context," in light of their purpose, "so as to avoid absurd results." *In re Nat'l Collegiate Athletic Assoc. Athletic Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1261 (9th Cir. 2020) (citation omitted); *see Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) ("In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted[.]" (citation omitted)). The preliminary injunction sought to restore TEGNA as an independent competitor during the pendency of the litigation and required TEGNA to have its own separate management. Order ¶¶ 2–4. To that end, the Order provided that "Nexstar must permit TEGNA to continue operating as a *separate and distinct, independently* managed business unit from Nexstar," that "Nexstar must place and maintain internal controls and procedures to prevent the sharing of competitively sensitive information," and that "Nexstar *must not influence* the management of the held-separate TEGNA business unit." *Id.* (emphasis added).

Section 11(c) of the Court's Order further provides that "it shall not be a violation of this Order for Nexstar . . . to take actions necessary to establish a functional governance structure for TEGNA, including appointing or reappointing officers, to the extent necessary to permit TEGNA to fulfill its obligations under this Order." Thus, any actions establishing a governance structure for TEGNA must be "necessary to permit TEGNA to fulfill its obligations" under the injunction. Appointing Nexstar employees as TEGNA directors does not meet that standard because, as explained, that governance structure causes Nexstar to *violate* its obligations under the injunction by influencing management of TEGNA and accessing TEGNA's confidential information.

Section 11(c) of the Order goes on to provide that "Nexstar shall not appoint current Nexstar employees, or former employees employed within the prior six months, as TEGNA officers." That provision simply identifies appointing Nexstar employees as TEGNA officers as one type of conduct that is not necessary for TEGNA to fulfill its obligations under the injunction. It does not say that appointing Nexstar employees as TEGNA officers is the only conduct that is not necessary for

-14-

TEGNA to fulfill its obligations under the injunction. And it does not say that appointing Nexstar employees as TEGNA directors is necessary or permissible.

***Second***, Nexstar's attempt to explain why appointing Nexstar employees as TEGNA directors is compelled by the Sarbanes-Oxley Act or SEC regulations is wholly unsupported. Hu Decl., Ex. G at 2. Plaintiffs requested that Nexstar "[i]dentify any statutory or regulatory authority you contend requires Nexstar executives to serve on TEGNA's Board." Hu Decl., Ex. H at 1. Defendants identified none. Hu Decl., Ex. G.

That is unsurprising. The Sarbanes-Oxley Act does not require top company executives to personally review or verify every subsidiary's financial reporting. Instead, the Act requires the CEO and CFO to certify periodic reports based on disclosure controls and procedures designed to ensure that material information is collected and communicated to senior management. 15 U.S.C. § 7241. Those controls routinely include sub-certifications and representations from finance personnel, business-unit leaders, and other employees. *See, e.g.*, Warren Gorham & Lamont, Thomson Reuters Tax and Accounting, The Trickle-Down Approach to Certification (Sep. 2003) (observing the "prevalence of subcertification" to satisfy Sarbanes-Oxley Act requirements). These controls could have been implemented here, and Defendants have provided no reason to think otherwise. In fact, when Plaintiffs asked Defendants why they could not rely "on sub certifications from independent individuals with operational and financial knowledge of the subsidiaries," Hu Decl., Ex. H at 1–2, Defendants declined to respond.

Defendants' silence only underscores that there is no legal mandate that Nexstar executives sit on the TEGNA Board. That was a choice Nexstar made. The preliminary injunction requires Nexstar to make a different one.

***Third***, Nexstar misinterprets the preliminary injunction's narrow carve-outs in a manner that would swallow the basic hold-separate rule embodied in the Court's Order. The parties have already litigated—and this Court has already resolved—the scope of these carve-outs. When Nexstar first proposed making sweeping modifications to the Court's hold-separate order, DIRECTV voiced concern that some of these modifications were thinly veiled attempts to dismantle the order. Dkt. No. 97 at 8 (opposing several requested modifications because they would "undermine the TRO's

-15-

purpose of preserving TEGNA as a viable competitor to Nexstar" and "swallow the rule of separate management").   As a result, DIRECTV made clear that any modification—including the modifications upon which Nexstar now relies—must be "in accordance with the Order's aims" of "preserv[ing] competition" and "facilitat[ing] TEGNA's continued operation as an independent, going concern." *Id.* at 5.  DIRECTV revised the proposed modifications with that aim in mind, and the Court incorporated those modifications into its preliminary injunction after observing that its goal was to adopt the "most narrowly tailored solution," Hu Decl. Ex. P at 19:22–20:1.  That restraint is reflected throughout the Order, which cautions that various carve-outs should not be used "as a pretext to undermine TEGNA's viability as a going concern," Order ¶ 11(a), and will apply only "to the extent necessary to permit TEGNA to fulfill its obligations under this Order," *Id.* ¶ 11(c).

Nexstar now seeks to drive a truck through those limited carve-outs by claiming that the provision allowing it to "perform all obligations required under its debt instruments" allows Nexstar to dominate the TEGNA Board.  Order ¶ 11(e).  It does not.  The Order expressly says that any involvement by Nexstar in TEGNA's operations "to perform all obligations required under its debt instruments, SEC reporting requirements, or refinancing transactions" must be "*narrowly tailored* to complying with reporting requirements and avoiding breaches under debt instruments." *Id.* (emphasis added).  Installing Nexstar executives to control TEGNA's Board is far broader than necessary to satisfy those limited purposes, which can be accomplished through other means including, for example, by relying on subcertifications from TEGNA officers, *see supra* p. 15.

Equally misguided is Mr. Sook's unqualified assertion that the Order permits Nexstar to approve financial transactions "above a certain size" that TEGNA seeks to undertake.  Hu Decl., Ex. A at 1, 25.  The Order requires TEGNA management to "adhere to the interim operating covenants set forth in the Merger Agreement . . . *in the same manner as applied pre-closing*." Order ¶ 11(g) (emphasis added).  Those operating covenants include a gun-jumping provision[7] that, consistent with antitrust law, prohibits Nexstar from "directly or indirectly . . . control[ling] or

---

[7] Gun-jumping refers to when merging parties "fail[] to observe the required premerger waiting period" by transferring beneficial ownership or operational control before the waiting period has expired. *United States v. XCL Resources Holdings, LLC*, 2026 WL 292073, at *1 (D.D.C. 2026).

-16-

direct[ing] [TEGNA's] operations" and requires TEGNA to exercise "complete control and supervision over its operations." Hu Decl. Ex. R at 52.

### 3.    Defendants' Recusal Proposal Is Insufficient and Unworkable

Defendants alternatively propose that the current Nexstar executives simply "recuse from any matter beyond those that are permissible for their oversight under the Order, based on advice of counsel." Hu Decl., Ex. G at 2.  That proposal solves nothing.

It is no fix to leave sole authority in the hands of Nexstar's former President and consultant Timothy Busch, who ███████████████████████████████████ ███████.  See, e.g., N.Y. Stock Exch., Listed Co. Manual § 303A.01 ("No director qualifies as 'independent' unless the board of directors affirmatively determines that the director has no material relationship with the listed company."). As the Court recognized in forbidding both current Nexstar employees and former employees employed within the last six months from serving as TEGNA officers, Mr. Busch—who, like Mr. Sook, is paid by Nexstar—is not independent.  To avoid violating the preliminary injunction, every single member of TEGNA's current Board would therefore have to recuse.  That absurd result only underscores the fundamental defect in the Board's composition.  A Board that must recuse whenever the company's competitively sensitive information is discussed or an important strategic decision is made is no board of directors at all. Directors cannot discharge their duties by absenting themselves from the very matters that define corporate oversight.  And this bizarre arrangement is in no way a meaningful substitute for TEGNA's pre-merger Board, which was "actively involved in overseeing, reviewing and guiding the Company's corporate strategy." See supra p. 11.

At bottom, this proposal is little more than asking the fox to guard the henhouse.  As the budget modifications demonstrate, Nexstar cannot be entrusted to decide for itself what decisions it can or cannot make with respect to TEGNA.

\*         \*         \*

For these reasons, Plaintiffs respectfully request that the Court clarify that the preliminary injunction prohibits (i) current Nexstar officers, employees, and other affiliated personnel, including consultants; and (ii) former officers, employees, and other affiliated personnel who have worked at

-17-

Nexstar within the six months prior to entry of the Court's TRO, including consultants, from serving on TEGNA's Board of Directors.  Such clarification would help ensure what the Order already requires: that TEGNA remain a genuinely independent, separately managed competitor during the pendency of this litigation, free of influence from Nexstar's own executives.

**B.    The Court Should Order Defendants to Submit Regular Reports on Their Compliance and Require Expedited Discovery**

Nexstar's brazen attempt to influence TEGNA by controlling its Board raises serious concerns about Defendants' compliance with the Court's preliminary injunction.  At the same time, however, Defendants' two months of obfuscation and delay about the TEGNA Board have made clear that Defendants will not voluntarily provide information needed to verify their compliance. Plaintiffs have been forced to obtain information about TEGNA's management and the Board's actions through piecemeal and protracted correspondence, waiting weeks for partial responses (at best) that fail to address pressing questions.  Even now, significant questions remain unanswered concerning how Nexstar is complying with the preliminary injunction and the extent to which it directs or oversees TEGNA's operations.  This drip by drip, slow trickle of information is no way to ensure compliance with a court order, particularly where the entire purpose of the injunction is to prevent anticompetitive conduct *before* it inflicts irreparable harm.

Plaintiffs therefore ask the Court to order two measures designed to keep the Court and Plaintiffs informed about Defendants' compliance and hopefully avoid further issues.

***First***, Plaintiffs respectfully request that the Court require Defendants to provide regular updates to the Court, the Magistrate Judge, and the Plaintiffs.  Specifically, Defendants should be required to provide a detailed report every 30 days regarding how they are complying with the Court's preliminary injunction.  Separately, Defendants should submit monthly reports to Plaintiffs that include the following: (1) a record of all written communications and a list of any oral communications between any member of Nexstar's senior management and any member of TEGNA senior management during the preceding month, including minutes for any meetings, or a sworn certification that no such communications occurred; (2) any material changes to TEGNA's budgets, forecasts, or strategic or operating plans adopted or approved by TEGNA or its Board of Directors

-18-

during the preceding month, or a sworn certification that no such changes were adopted or approved; and (3) records of TEGNA's monthly and quarterly financial and operational reports presented to the TEGNA Board and Chief Executive Officer.

This proposal for limited, periodic reporting should not be controversial. *See, e.g.*, *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of HHS*, 780 F. Supp. 3d 897, 927 (N.D. Cal. 2025) (requiring regular "status reports regarding compliance with the injunction"); *cf. A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1096 (9th Cir. 2002) (district court "required periodic reports from the parties" regarding compliance with preliminary injunction). Defendants have represented that they are amenable to providing minutes of TEGNA board meetings and any changes to TEGNA's budget within 3 business days. Hu Decl., Ex. Q at 6. The additional, regular reporting Plaintiffs request would "help[] ensure compliance with the injunction" and would not be "overly burdensome" if Defendants are, in fact, complying with the Court's order. *Gluth v. Kangas*, 951 F.2d 1504, 1511 (9th Cir. 1991). For example, if Nexstar is not influencing TEGNA management, then there should be few communications between Nexstar management and TEGNA management. And it should be feasible to identify the small number of material changes to budgets, forecasts or operating plans that may be adopted each month and any reports made to the TEGNA Board or CEO each month.

**Second**, to minimize delays in obtaining information regarding Defendants' compliance with the preliminary injunction, Plaintiffs respectfully request that the Court require Defendants to provide expedited discovery related to their compliance and establish an accelerated briefing schedule for briefing any disputes about such discovery.[8] *See, e.g.*, *Damus v. Nielsen*, 328 F.R.D. 1, 2–3 (D.D.C. 2018) (ordering separate discovery into whether Defendants violated preliminary

---

[8] Although Defendants indicated they were amenable to accelerated discovery of some kind, they have not provided specific proposals. Because the parties are at an impasse on (1) whether the Board's current composition violates the Order; and (2) whether Defendants should be required to provide regular compliance reports, which are time-sensitive issues, Plaintiffs did not wish to delay this Court's consideration of this motion while the parties discuss the procedures for accelerated discovery. Hu Decl. ¶ 19. Plaintiffs will continue to confer with Defendants to see if there is a mutually acceptable path forward on accelerated discovery and will notify the Court if the parties are able to reach agreement on that procedural question.

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

injunction); *cf. Washington v. Trump*, 2025 WL 835030, at *8 (W.D. Wash. Mar. 17, 2025) (ordering expedited discovery into whether Defendants violated preliminary injunction).

As set forth in Plaintiffs' Proposed Order, Defendants would be required to respond and object to discovery requests concerning compliance within seven days, rather than the default thirty-day period. *See* Fed. R. Civ. P. 33(b)(2) (providing that "[a] shorter or longer time" to respond to interrogatories may "be ordered by the court"); Fed. R. Civ. P. 34(b)(2)(A) (providing the same for responses to requests for production).

Should the parties reach an impasse on a discovery dispute regarding compliance, the parties would be required to submit a joint letter to the Magistrate Judge requesting an informal telephonic conference. *See* Hon. Carolyn K. Delaney, Informal Telephonic Conferences re Discovery Disputes.[9] This procedure would ensure that disputes concerning compliance with the Court's Order are brought promptly to the Court's attention before any ongoing violations can undermine the preliminary injunction's purpose. Defendants have already agreed in principle to "some accelerated discovery," Hu Decl., Ex. Q at 6, and there should be no objection to accelerated discovery managed by the Magistrate Judge who already has been assigned to this case.

Finally, Plaintiffs respectfully request that the Court clarify that discovery into Defendants' compliance shall not count against the parties' merits discovery limits in this case. Plaintiffs should not be forced to choose between taking discovery to prepare for a trial on the merits of their claims and ensuring that Defendants are complying with the Court's order.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court clarify that the preliminary injunction prohibits current and recent Nexstar personnel from serving on the TEGNA Board; require Defendants to submit regular reports about their compliance with the injunction to the Court and Plaintiffs and supporting documentation to Plaintiffs; order Defendants to respond to discovery related to their compliance on an expedited basis; and establish an accelerated briefing schedule for any disputes related to that discovery.

---

[9] Available at https://www.caed.uscourts.gov/caednew/index.cfm/judges/all-judges/5055.

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Dated:  July 22, 2026                    MUNGER, TOLLES & OLSON LLP

                                         /s/ Glenn D. Pomerantz
                                         GLENN D. POMERANTZ
                                         *Attorneys for Plaintiff DIRECTV, LLC*

Dated:  July 22, 2026                    FOR PLAINTIFF STATE OF NORTH CAROLINA

                                         /s/ Franscio Benzoni
                                         FRANCISCO BENZONI
                                         *Attorneys for Plaintiff The State of North Carolina
                                         and on Behalf of All Plaintiff States*

-21-

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION OF
PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF