UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re Nexstar-TEGNA Merger Litigation

Case No. 2:26-cv-00976-TLN-CKD

**[PROPOSED] STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

Judges: Honorable Troy L. Nunley and Honorable Carolyn K. Delaney
Action Filed: March 18, 2026

To expedite the flow of discovery material and to facilitate consistency in the format of the documents to be produced in this case, Plaintiffs and Defendants (collectively, "Parties"), by and through their respective counsel, hereby stipulate and agree to the terms of this Stipulated Protocol for Production of Documents and Electronically Stored Information ("ESI Protocol"), consistent with Fed. R. Civ. P. 26(f)(3)(C):

IT IS HEREBY STIPULATED, subject to the approval of the Court, that:

## I.    PURPOSE

1.    This ESI Protocol shall govern the production of Documents and ESI ("Discovery Materials") in the above-captioned litigation (the "Action").  The Parties desire to tailor the process of production of Discovery Materials to the needs of the Action to promote a just, speedy, and inexpensive determination, as required by Fed. R. Civ. P. 1.

## II.    COOPERATION

2.    The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this matter.

## III.    APPLICABILITY

3.    The ESI Protocol shall apply to all Discovery Materials that are produced in the first instance in this Action after the date of entry of this Order.  Productions in this Action that were

**STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Receiving Party otherwise agree.  To the extent a Party or Non-Party produces Discovery Materials that were previously produced in this Action or in connection with pre-complaint Investigation relating to this Action, the Producing Party may produce such Discovery Materials in the same format and with the same Metadata with which such Discovery Materials were previously produced.  All previously produced Discovery Materials by Non-Parties shall display the Bates number from the original production(s), and a Bates number in accordance with Paragraph 9(c) of this ESI Protocol, and the Producing Party shall include Metadata fields noting the prior production information contained in Appendix A.  No Party is obligated to reformat or reproduce any such previously produced Discovery Materials in accordance with the production specifications in this ESI Protocol.

4.      This ESI Protocol shall be attached to all subpoenas issued in this Action after the date of entry of this Order and promptly served on all Non-Parties to whom subpoenas issued prior to the entry of this Order.

5.      This ESI Protocol does not define the scope of production, nor the relevance of any particular information. No provision of this ESI Protocol waives any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents and ESI.

6.      For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Highly Confidential or Confidential under any Protective Order entered in this case.

## IV.    DEFINITIONS

7.      The Parties agree that the following definitions shall apply to the terms used herein.

- "Confidentiality Designation" means the legend affixed to "Confidential" and/or "Highly Confidential - Attorneys' Eyes Only" Protected Material as defined by, and subject to, the terms of the Protective Order in this Action.

- "Discovery Materials" is defined as all Documents, Data, or other ESI produced, given, or exchanged by and among all Parties, or received from Non-Parties in this Action.

2                    **STIPULATED PROTOCOL FOR**
                    **PRODUCTION OF DOCUMENTS**

- "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure.

- "Document Family" means a collection of pages or files produced manually or by a software application, constituting a logical single communication of information, but potentially consisting of more than a single stand-alone record. Examples include a cover email and the attachments to the email, the cover email being the "Parent," and the attachments each being a "Child."

- "Electronically Stored Information" or "ESI" as used herein has the same meaning as in Rule 34 of the Federal Rules of Civil Procedure.

- "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

- "Investigation" refers to any pre-Complaint review, assessment, or investigation of the Transaction by any federal or state government agency, including the United States Department of Justice, the Federal Communications Commission, and the Plaintiff States.

- "Metadata" refers to the structural information of a file that contains data about the file, as opposed to describing the content of a file.

- "Native Format" refers to an electronic Document's associated file structure defined by the original creating application. For example, the native format of an Excel workbook is an .xls or .xslx file.

- "Optical Character Recognition" or "OCR" means the process of recognizing text within an image for the purpose of allowing text searches of a file.

- "Hard-Copy Documents" means Documents existing in paper form at the time of collection.

- "Protective Order" refers to the Amended Stipulated Protective Order, entered on June 4, 2026 (ECF No. 238), as well as any subsequent amendment to that Order entered by the Court or stipulated by the Parties.

**STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

- "Transaction" refers to the acquisition of TEGNA Inc. by Nexstar Media Group, Inc.

- "Searchable Text" means the native text extracted from ESI and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

## V.    SCOPE OF DISCOVERY

8.    The Parties agree that, pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, the scope of discovery encompasses those matters that are relevant to the Parties' claims and defenses and proportional to the needs of the case.  The Parties agree to meet and confer regarding the appropriate sources of Documents and information that are subject to discovery in this Action, including:

- Data sources;

- Date ranges;

- File types; and

- Custodians.

The Parties agree to meet and confer regarding any search methodologies that they intend to use to identify responsive Discovery Materials, including, without limitation:  (1) key word search terms; (2) Technology Assisted Review ("TAR"); and (3) the use of other analytical tools, including Generative AI, subject to the limitations described in the Protective Order issued in this Action.

## VI.    LIAISON

9.    Within 3 days after entry of this ESI Protocol Order, each Party will designate an ESI liaison knowledgeable about the Party's ESI (the "Liaison") who will be responsible for participating in any discussions of such Party's ESI.  Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.  Each Liaison will be, or will have access to those who are, knowledgeable about the technical aspects of electronic discovery and production of ESI in this Action.

**STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

## VII.   NON-DISCOVERABLE DATA SOURCES

10.   Consistent with the proportionality standard, and absent a Party's specific written notice for good cause, the following categories of ESI are presumed to be inaccessible and not discoverable:

(a)   ESI deleted in the normal course of business before the time a preservation obligation in this matter came into effect;

(b)   Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data more accessible elsewhere;

(c)   Deleted, "slack," fragmented, or unallocated data only accessible by forensic means;

(d)   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(e)   On-line access data such as (without limitation) temporary internet files, internet history files, usage data, cache files, and cookies;

(f)   Data in Metadata fields frequently updated automatically, such as last-opened or last-printed dates;

(g)   Electronic data (*e.g.*, call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

(h)   Server, system, network, or software application logs;

(i)   Data remaining from systems no longer in use that is unintelligible on the systems in use;

(j)   Software files included on the National Institute of Standards and Technology (NIST) Modern RDS (minimal) list obtained from https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download/current-rds;

5

**STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

(k)     Structural files not material to individual file contents (*e.g.*, .CSS, .XSL, .XML, .DTD, etc.);

(l)     Operating System files that do not store user-created content (*e.g.*, CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS, etc.); and

(m)     Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use (*e.g.*, BAK, BIN, CFG, DBF, DAT, JS, JSON, JAR, LUA, MSB, RES, WINNT, YTR, etc.).

If a Requesting Party provides written notice for good cause requiring a Producing Party to search, restore, or produce ESI from any of the preceding categories, the Requesting Party shall bear the reasonable costs of such search, restoration, and production unless the Court orders otherwise.

## VIII.   PRODUCTION FORMAT

11.     The Parties agree that the Discovery Materials produced in this Action will conform to the following specifications:

a.     <u>Hard-Copy Documents</u>:   Hard-Copy Documents will be scanned or otherwise converted into electronic form in the format specified in Appendix A.   In scanning Hard-Copy Records, the Producing Party shall use best efforts to avoid merging distinct Documents into a single record, and splitting single Documents into multiple records (*i.e.*, Hard-Copy Documents should be logically unitized).   The Parties will make their best efforts to have their vendors unitize Documents correctly and will commit to address situations where there are improperly unitized Documents.

b.     <u>ESI</u>:   The Parties agree, subject to the exceptions herein, that they will produce ESI in TIFF format according to the specifications set forth in Appendix A.

All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file when available (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction.   To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.   In the case of files with redacted text, OCR'd text

**STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

of the redacted Documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing. For Documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

In the case of email, the corresponding text file shall include, where reasonably available (and where not otherwise revelatory of privileged information): (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

c. Unique IDs: Each image should have a unique file name that corresponds to the Bates number of the page. Bates numbering should contain no blank spaces, be zero-padded, and be numerically sequential within a given Document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. All attachments to Documents will be assigned Bates numbers that directly follow the Bates numbers on the Documents to which they were attached. Bates numbers will be unique across the entire production, and prefixes will be consistent across all Documents that a Party produces in this Action after the date of entry of this Order.

d. Metadata Fields: The Metadata fields specified in Appendix A that are associated with each electronic Document will be produced, to the extent they are reasonably available, and not otherwise revelatory of privileged information. No Party shall be required to manually populate any Metadata fields that do not exist as a Document is maintained in the ordinary course of business.

e. Discovery Materials Produced in Native Format: The Parties agree that they will produce the following types of ESI in their native file format where a native is available:

- Excel spreadsheets;
- Audio/video files; and
- Presentations (PowerPoint, Keynote, etc.).

To the extent that other file types are unable to be read and/or reviewed when produced as TIFF files, the Parties agree to meet and confer concerning the production format of such files.

7   **STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

f.    Redacted Files:    Extracted text will *not* be provided for electronic Documents that have been redacted—*e.g.*, for privilege or personal information—because the extracted text would reveal the redacted information.  Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.  Documents that do not render in a readable format to TIFF, such as Excel spreadsheets, may be redacted in native form, so long as the Producing Party keeps a pristine, unredacted copy of the native file and identifies the natively redacted Documents to the Receiving Party in the redaction field.

g.    De-Duplicating and De-NISTing Documents:    Each Party will de-duplicate ESI globally across all custodians for exact duplicate Documents based on MD5 or SHA-1 Hash Values at the Parent Document level.  This will result in the Producing Party producing only a single copy of responsive duplicate ESI, provided that all other custodians of the duplicate ESI are listed in the "Duplicate Custodians" (or similar name) field.  Additionally, all BCC recipients whose names would have been included in the BCC Metadata field, to the extent such Metadata exists, but are excluded because of de-duplication must be identified in the BCC Metadata field specified in Appendix A.  The Parties shall de-duplicate stand-alone Documents against stand-alone Documents and shall de-duplicate top-level email Documents against top-level email Documents.  De-duplication shall not break apart Document Families.  Attachments should not be eliminated as duplicates for the purposes of production, unless the Parent email and all other attachments are also duplicates.  Common system and program files as defined by the NIST library need not be processed, reviewed, or produced.

h.    Most-Inclusive Email Productions:    Production of a most-inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails.  No Document will be intentionally withheld from production solely on the basis that it is included in a produced more-inclusive email.

i.    Parent-Child Relationships:    The Parties agree that Parent-Child relationships (the association between an attachment and its Parent Document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably

8    **STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

practicable.  For example, if a Party is producing a Hard-Copy printout of an email with its attachments, the attachments should be processed in order to be directly behind the Parent email.

j.   <u>Text Messages and Instant Messages</u>:  All text messages (including, but not limited to, SMS, iMessage, WhatsApp, etc.) and Instant Messaging applications (including, but not limited to, Microsoft Teams, Slack, Google Chat, Jabber, Signal, Telegram, Confide, etc.) will be produced in 24-hour increments by conversation with a load file format with all associated Metadata, including without limitation:  (i) BegBates, (ii) EndBates, (iii) Date Sent, (iv) Time Sent, (v) Author, (vi) Participants, (vii) Subject, and (viii) Channel or Group, to the extent reasonably available.

k.   <u>Proprietary or Third-Party Software</u>:  To the extent that information produced pursuant to this Protocol, including, but not limited to, AI-generated materials and chats, cannot be rendered or viewed without the use of proprietary or third-party software, the Parties agree to meet and confer to minimize any expense or burden associated with the production of such information in an acceptable format.

l.   <u>Structured Data</u>:  The Parties agree that to the extent that potentially relevant and proportional data is contained in a Producing Party's databases, or other sources or structured data, they will meet and confer regarding how best to identify and produce information from those sources.  If it is determined after meeting and conferring with the Requesting Party that any such discoverable data can be produced in an already-existing and reasonably available report based on agreement, then the Producing Party may collect and produce the data in that report format.  If existing report formats do not reasonably provide the requested information, the Parties will meet and confer to agree upon an acceptable format for production.

m.   <u>Production Media</u>:  The Parties shall produce Discovery Materials via an encrypted Secure File Transfer Protocol ("SFTP") or an encrypted readily accessible electronic media (*i.e.*, an encrypted hard drive) or using any alternative format the Parties agree provides similar security for the Discovery Materials included in the production(s). The Discovery Materials shall be password-protected and/or -encrypted, and the Producing Party shall provide the

9

**STIPULATED PROTOCOL FOR
PRODUCTION OF DOCUMENTS**

password(s) necessary to access the Discovery Materials under separate cover. The Bates Number range(s) of the materials in the production shall be provided in an accompanying letter.

n.    Hyperlinked Documents and Collaborative Work Environments:    A Producing Party must conduct an automated search of Documents to be produced to identify in those Documents links to additional Documents in any Collaborative Work Environment maintained by the Party (such as OneDrive, SharePoint, Box, Google Workspace, Confluence, or Druva). For any such Documents ("Linked Parents"), to the extent reasonably feasible and capable of being done automatically, without undue burden, the Producing Party shall use its best efforts using available technical solutions to produce the Document corresponding with each identified link ("Linked Attachments"). To the extent reasonably feasible and capable of being done automatically, a Producing Party shall use its best efforts to populate the LINKEDATTACHIDS field with the Document control numbers of every record the Linked Parent reference. To the extent reasonably feasible and capable of being done automatically, for each Linked Attachment, the Producing Party will use available technical solutions to attempt to populate the LINKEDPARENTIDS field with the Document control numbers of every record that links to the Linked Attachment. In the event the Linked Parent or Linked Attachment were part of a prior production, the Producing Party will employ commercially reasonable efforts to provide an overlay file populating these two fields as needed and to the extent feasible with available technical solutions. For Collaborative Work Environments offering version control, the Producing Party will use automated collection methods to produce the version provided by the platform that has a DATESAVED value closest to the DATESENT of the referencing email or message (*i.e.*, manual review and linking will not be necessary if the Collaborative Work Environment will link only to more recent versions of the Document using automated methods). For Documents where Linked Attachments and Metadata were not produced, a Receiving Party may request that the Producing Party search for and produce specific Linked Attachments with appropriate Metadata for up to 500 such Documents, which the Producing Party will do to the extent the Linked Attachments still exist and can be retrieved from the identified link. Any Linked Parent or Linked Attachment which appears in or as an exhibit in a deposition, motion, expert report, trial exhibit, or any other court

**STIPULATED PROTOCOL FOR
PRODUCTION OF DOCUMENTS**

filing in this Action may be requested, alongside its appropriate Metadata, by the Receiving Party without counting against the 500-Document limit.  A Receiving Party may request additional Linked Attachments in excess of the 500-Document limit with either a showing of good cause or by written agreement of the parties.  Notwithstanding this Section VIII(n), a hyperlink relationship (meaning the Document, such as an email, contains a link to another Document) does not by itself mean the linked Document should be treated as an attachment.

o.     Generative AI Collection and Production.  To the extent that responsive information is contained in, or generated using, a Generative AI tool or system, such as ChatGPT, Claude, Grok, Gemini, Copilot, Harvey, or another similar platform, the Parties agree to meet and confer about the collection and production issues associated with such materials.  For clarity, this provision does not require the Parties to meet and confer regarding previously produced Investigation materials or the types of AI-generated materials already produced in connection with the Investigation(s).

**IX.     PRIVILEGE CHALLENGES**

12.     Sections 13 and 14 of the Protective Order set out the process and terms for the clawback of inadvertently produced privileged material and any privilege challenges in this Action. Nothing in this Protocol shall contradict the Parties' rights and obligations under the terms of the Protective Order.

**X.     MODIFICATION**

13.     Any practice or procedure set forth herein may be modified by agreement of the Parties, which will be confirmed in writing, or by order of the Court.  The Parties agree that, in the event that they cannot agree to a specific modification, any affected Party may request the Court's assistance to resolve such dispute.

**STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: July 24, 2026

_/s/ Bradley S. Lui_
BRADLEY S. LUI
*Attorneys for Defendants Nexstar Media Group, Inc. and TEGNA Inc.*

Dated: July 24, 2026

_/s/ Daniel R. Betancourt_
DANIEL R. BETANCOURT
*Attorneys for Plaintiff The State of Illinois and on Behalf of All Plaintiff States*

Dated: July 24, 2026

_/s/ Kuruvilla J. Olasa_
KURUVILLA J. OLASA
*Attorneys for Plaintiff DIRECTV, LLC*

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: _____          _____

[Name of Judge]
United States District/Magistrate Judge

12          **STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

<u>**APPENDIX A:**</u>
<u>**TECHNICAL SPECIFICATIONS AND**</u>
<u>**REQUIRED METADATA FIELDS**</u>

1.   **IMAGES**

- Produce Documents as single page Group IV, TIFF files.

- Documents or ESI containing color must be produced in color.

- Image Resolution:  at least 300 DPI.

- File Naming Convention:  Match Bates Number of the page.

- Insert placeholder image stating "Document Produced In Native Format" for files produced in Native Format.

- Original Document orientation shall be retained.

- Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a Document in its native file format and visible in the form in which the electronic Document was last saved, shall also be imaged so that such content is viewable on the image file.

2.   **SPECIAL FILE TYPE INSTRUCTIONS**

- Responsive, unredacted Microsoft Excel and other spreadsheet files, PowerPoint/Keynote and other presentation files, audio/video files, and animation files shall be produced in Native Format where available.

- The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in Native Format.

- The placeholder will be branded with the production number in the lower right-hand corner and the phrase "Document Produced In Native Format" branded in the center of the page.  The Producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

**STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

**3.      FULL TEXT EXTRACTION/OCR**

- Produce full extracted text for all file types (redacted text will not be produced) including text of embedded content.

- Produce OCR text for any Hard-Copy Document (redacted text will not be produced).

- Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF, etc.) where extracted text cannot be provided, using industry standard OCR technology (redacted text will not be produced).

- Produce OCR text for any redacted Document.

- Production format:  single text file for each Document, not one text file per page.

- File naming convention:  Match BegBates Number.

**4.      LOAD FILES**

<u>Data Load File</u>:  The data load file should use standard Concordance delimiters:

- Comma - ¶ (ASCII 20);

- Quote - þ (ASCII 254);

- Newline - ® (ASCII174);

- The first record should contain the field names in the order of the data;

- All date fields should be produced in mm/dd/yyyy format;

- Use carriage-return line-feed to indicate the start of the next record;

- Load files should not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered;

- The name of the data load file should mirror the name of the delivery volume and should have a .DAT extension (*i.e.*, ABC001.DAT); and

- The volume names should be consecutive (i.e., ABC001, ABC002, *et seq.*)

<u>Image Load File</u>:

- The name of the image load file should mirror the name of the delivery volume and should have an .OPT extension (*i.e.*, ABC001.OPT).

14                **STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

- The volume names should be consecutive (*i.e.*, ABC001, ABC002, *et seq.*).

- There should be one row in the Load File per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as the Bates Number of the page.

- Load files should not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

- The Opticon OPT image load file (.OPT) configuration shall be a page level comma delimited file containing seven fields per line:   PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, and PageCount.

**METADATA FIELDS**

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| Production Number Begin | Beginning page production number | X | X | X |
| Production Number End | Ending page production number | X | X | X |
| Attachment Begin | Beginning page of attachment range | X | X | X |
| Attachment End | Ending page of attachment range | X | X | X |
| Attachment Count | Number of attachments. | X | X | X |
| Custodian | Name of the custodian or repository name of the Document produced - Last Name, First Name format | X | X | X |
| All Custodians | Name(s) of the deduplicated custodians or repository name(s) of the Document produced - Last Name, First Name format; semi-colon delimited | X | X | |
| File Name | File name of Document | X | X | |
| File Extension | File extension of document | X | X | |
| Email Outlook Type | Type of Outlook item, *e.g.*, email, calendar item, note, task | X | | |
| Importance | Notes whether email was sent with "Important" notification | X | | |
| Page Count | For Documents produced in TIFF form, number of pages in the Document. For Documents produced in native, page count will be 1 (for placeholder). | X | X | X |

15                                      **STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| Document Title | Title field extracted from the Metadata of a non-Email Document | | x | |
| Author | Document author of a non-Email Document | | x | |
| Email Subject | Subject of email | x | | |
| From | Email author | x | | |
| To | Email recipients | x | | |
| CC | Email copyees | x | | |
| BCC | Email blind copyees | x | | |
| Date Sent | Date sent (mm/dd/yyyy) | x | | |
| Time Sent | Time sent (hh:mm:ss format) | x | | |
| Date Received | Date received (mm/dd/yyyy format) | x | | |
| Time Received | Time Received (hh:mm:ss format) | x | | |
| Date Created | Creation date (mm/dd/yyyy) | | x | |
| Time Created | Creation time (hh:mm:ss format) | | x | |
| Date Last Modified | Last modification date (mm/dd/yyyy) | | x | |
| Time Last Modified | Last modification time (hh:mm:ss format) | | x | |
| Hash Value | Unique electronic signature of email or electronic file used for de-duplication | x | x | |
| Message-ID | The Outlook Message ID assigned by the Outlook mail server, if applicable | x | | |
| Production Volume | Production volume name | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | x | x | x |
| Redacted | Descriptor for Documents that have been redacted (<yes> or <no>) | x | x | x |
| Native Link | Path to produced native file used for linking | x | x | x |
| Extracted Text Link | Path to produced extracted text file used for database linking | x | x | x |

**STIPULATED PROTOCOL FOR PRODUCTION OF DOCUMENTS**