UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

In Re: Nexstar-TEGNA Merger Litigation

Case No. 2:26-cv-00976-TLN-CKD

**DECLARATION OF LEE ANN GLIHA IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER**

I, Lee Ann Gliha, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am Chief Financial Officer of Nexstar Media Group, Inc. ("Nexstar"). I also serve on the Board of TEGNA Inc. ("TEGNA"), and have been in that role since Nexstar closed its acquisition of TEGNA on March 19, 2026. Prior to my time at Nexstar, I was an investment banker and have worked on dozens of transactions—including debt, equity, mergers and acquisitions, and restructurings—with many corporations and have an intimate knowledge of corporate structure, financial reporting, and debt financing.

2.      I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to them under oath.

3.      Since the TRO was entered in this case, the TEGNA Board has had no involvement in TEGNA's retransmission consent negotiations, content decisions, station management, or other day-to-day operations.

4.      The actions taken by the post-TRO TEGNA Board have been limited and have consisted of the following: The Board expanded its initial size of three—Perry Sook, the Nexstar General Counsel (Rachel Morgan, later replaced by Elizabeth Ryder), and me—to five by adding Michael Biard, President and Chief Operating Officer of Nexstar, and independent director Timothy Busch to the Board. In connection with the departure of TEGNA's previous CEO, Michael Steib, the Board searched for a new CEO to run an independently managed TEGNA. On May 26, 2026, the Board announced its appointment of Patrick Paolini, then-Executive Vice President of Advertising

Sales for FOX Television Stations, to the role. Mr. Paolini began serving as TEGNA CEO on June 1, 2026, and since then has named seven additional TEGNA officers—Raquel Amparo (Senior Vice President, Content), Mark Cornetta (Senior Vice President, Interim Head of Sales), Melissa Jones (Senior Vice President, Human Resources), Pamela Long (Senior Vice President, Finance), Cam McClelland (Senior Vice President, Controller), Kurt Rao (Executive Vice President, Chief Technology and Digital Products Officer), and Marc Sher (Senior Vice President, General Counsel)—as well as Scott Gill (Vice President of Technology and Operations) as another senior leader.

5. These items all have bearing on my ability to ensure that Nexstar's financial reporting is accurate in all material respects, including the requirement to describe as part of the "Management Discussion and Analysis" portion of the financial reports why each line item increased or decreased (or provided an offset to any increase or decrease) and to sufficiently plan for any capital requirements and what cash flow might be available to service debt, among other reasons.

[REDACTED]

6.      I understand that Paragraph 11 of the Preliminary Injunction Order (the "Order") contains a list of functions relating to TEGNA that Nexstar is permitted to perform while the Order is in effect. My service on TEGNA's Board has been limited to those specific functions. I have agreed to recuse myself from any Board decision that may come up that falls outside those specific functions. No such decision has yet been presented to the Board.

***My Sarbanes-Oxley Certification Obligations Require Direct and Current Access to TEGNA as a Consolidated Subsidiary of Nexstar***

7.      As CFO, I am the "principal financial officer" required to personally certify, and to sign, Nexstar's reports filed with the U.S. Securities and Exchange Commission (the "SEC"). Section 13(a) of the Securities Exchange Act of 1934 and related SEC regulations require Nexstar to file annual reports on Form 10-K, quarterly reports on Form 10-Q, and current reports on Form 8-K. 15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.13a-1, 240.13a-11, 240.13a-13. Section 302 of the Sarbanes-Oxley Act of 2002, Exchange Act Rule 13a-14, and related regulations require me to certify, among other things, that I have reviewed each periodic report; that, based on my knowledge, the periodic report does not contain any untrue statement of material fact or omit any material fact necessary to make the statements made not misleading; and that, based on my knowledge, the financial statements and other financial information included in the report fairly present in all material respects Nexstar's financial condition, results of operations, and cash flows. 15 U.S.C. § 7241; 17 C.F.R. § 240.13a-14. That certification must be filed as an exhibit to each Form 10-K and each Form 10-Q. When I certify that Nexstar's financial statements fairly present its financial condition and results of operations, I am certifying with respect to consolidated financial statements that incorporate all of Nexstar's assets, liabilities, revenues, expenses, and cash flows, including with respect to all of Nexstar's subsidiaries, including TEGNA. Pursuant to Section 302, Exchange Act Rule 13a-15, and Items 307 and 308 of Regulation S-K, I am also responsible for establishing and maintaining corporate disclosure controls and procedures,

DECLARATION OF LEE ANN GLIHA                    3                    CASE NO. 2:26-CV-00976-TLN-CKD

discussed more below, and internal control over financial reporting, and for the related disclosures concerning their effectiveness in Nexstar's periodic reports.  17 C.F.R. §§ 240.13a-15, 229.307, 229.308.

8.      Separate and apart from those certifications, I am required to sign Nexstar's annual report on Form 10-K and quarterly report on Form 10-Q in my individual capacity.  The Form 10-K and Form 10-Q must be signed on behalf of Nexstar as the registrant and, in addition, the General Instructions to Form 10-K and Form 10-Q require that the report be signed by the registrant's principal financial officer.  That signature obligation is independent of, and additional to, the certification required by Section 302 and Exchange Act Rule 13a-14, discussed above, and it requires me to place my own name on an annual report that presents Nexstar's financial results on a consolidated basis, including TEGNA.

9.      I am separately required to furnish the certification mandated by Section 906 of the Sarbanes-Oxley Act, codified at 18 U.S.C. § 1350.  That provision overlaps with, but is distinct from, the certification mandated by Section 302 discussed above.  Section 906 imposes criminal liability for a certification made when the periodic report does not comport with the requirements of the Exchange Act or does not fairly present, in all material respects, the financial condition and results of operations of the issuer.

10.      These are not obligations discharged by Nexstar in the abstract; the certifications, signatures, and attestations described above are made by me as an individual officer and expose me to personal civil and criminal liability.

11.      Critically, the above-described certification and signature obligations are not limited to the parent entity in isolation.  Under Regulation S-X—promulgated by the SEC and codified at 17 C.F.R. Part 210—and applicable generally accepted accounting principles, Nexstar is required to prepare and file consolidated financial statements that include the accounts of its subsidiaries, which includes TEGNA.  My certifications and signatures therefore extend to, and depend upon, the financial condition, results of operations, and internal controls of all of Nexstar's subsidiaries, including TEGNA, for which Nexstar submits a consolidated financial statement.  I cannot

lawfully certify or sign Nexstar's consolidated financial statements without adequate visibility into the finances, accounting, financial reporting, and internal controls of TEGNA.

12. Because I bear personal responsibility and personal liability for these certifications and signatures, it is not sufficient for me to indirectly rely on an unqualified assurance from an employee or director of TEGNA that TEGNA's financial statements are accurate or that its controls are effective. These obligations are mine, they are non-delegable, and I cannot discharge them by disclaiming knowledge of a subsidiary whose results I am required to certify and report. While sub-certifications are often used as one part of the control process, I am advised that sub-certifications are not independently sufficient, even more so for a subsidiary that is not otherwise fully controlled by its parent entity, as is the case with TEGNA, which is required to operate independently. Sub-certifications do not relieve me of my obligation to make my own evaluation as the principal financial officer. My voting seat on TEGNA's Board provides me with the direct and timely visibility and oversight into TEGNA's finances and financing decisions that I require in order to discharge, in good faith and without exposing myself to civil and criminal liability, the certification, signature, and attestation duties imposed on me by federal law. Moreover, the establishment of a Board of Directors of a subsidiary is the only way I am aware of that provides any parent company with access to the information of a subsidiary entity, short of participating in the subsidiary's management. The establishment of the TEGNA Board of Directors and the placement of Nexstar management on that Board of Directors is not a contrived mechanism; rather this is *the* mechanism for carrying out my non-delegable obligations.

13. Section 404 of the Sarbanes-Oxley Act (codified at 15 U.S.C. § 7262), Exchange Act Rule 13a-15 (promulgated by the SEC and codified at 17 C.F.R. § 240.13a-15), and Item 308 of Regulation S-K (17 C.F.R. § 229.308) likewise require Nexstar management to maintain, assess, and report on the effectiveness of, internal controls over financial reporting on a consolidated basis, including through management's annual report on its internal controls over financial reporting included in Nexstar's Form 10-K. The scope of that internal control encompasses TEGNA because TEGNA's financial results flow into Nexstar's consolidated financial statements, and a material

DECLARATION OF LEE ANN GLIHA                5                CASE NO. 2:26-CV-00976-TLN-CKD

weakness in TEGNA's controls could constitute a material weakness in Nexstar's consolidated controls. Although that responsibility applies generally to Nexstar management, I am the Nexstar officer principally responsible for that internal control framework, and I am required to disclose to Nexstar's auditors and Nexstar's audit committee any significant deficiencies and material weaknesses in the design or operation of internal controls and any fraud, whether or not material, that involves management or other employees who have a significant role in internal controls. My required certifications under Section 302 of the Sarbanes-Oxley Act, which I noted above in paragraph 7, include a certification that I have performed those duties. I cannot responsibly discharge those duties, or attest to the effectiveness of Nexstar's consolidated internal controls, without a voting seat on TEGNA's Board for direct access to, and oversight of, information concerning TEGNA's financial condition, controls, and financing decisions.

14.     These obligations are continuous rather than episodic. Disclosure controls and procedures must be evaluated each reporting period, and management's conclusions disclosed under Item 307 of Regulation S-K, and I must remain currently informed of developments at TEGNA that could affect the accuracy of Nexstar's disclosures, including material events that may require disclosure on a current basis on Form 8-K.

15.     Discharging these responsibilities therefore requires that I have access and authority sufficient to monitor and, where necessary, approve through a voting seat on TEGNA's Board TEGNA's activities that bear on the required certifications, signatures, and attestations to ensure accurate financial statements and effective controls. My director seat on TEGNA's Board provides the mechanism through which I obtain the requisite visibility into and approval of TEGNA's finances that allow me to make the required certifications and attestations and to sign Nexstar's annual report and quarterly report. Moreover, because Nexstar must have the ability to course-correct if needed, Nexstar must maintain a majority of seats on the Board.

***TEGNA Is a Restricted Subsidiary Subject to Nexstar's Debt Covenants, and Compliance With Those Agreements Is Measured on a Consolidated Basis***

16.     Nexstar is party to certain credit agreements and indentures governing its outstanding debt (collectively, the "Debt Agreements").[1]  The Debt Agreements contain a series of covenants Nexstar is subject to, including, without limitation, restrictions on: certain financial maintenance requirements; the incurrence of indebtedness and guarantees; the creation of liens; the making of investments, loans, and advances; the payment of dividends and other restricted payments; the disposition of assets; the entry into transactions with affiliates, mergers and consolidations; and other transactions related to the business outside the ordinary course.

17.     Compliance with the covenants under the Debt Agreements is assessed and reported on a consolidated basis for Nexstar and its restricted subsidiaries (those subsidiaries that are subject to the covenants in the Debt Agreements), including TEGNA.  TEGNA's activities and transactions directly affect whether the entire group is in compliance with the Debt Agreements.  The covenants in the Debt Agreements impose qualitative and quantitative restrictions on Nexstar, as a consolidated entity including TEGNA.  In practical terms, there is no distinction between TEGNA's debt and Nexstar's debt.  Because TEGNA is a wholly owned subsidiary, Nexstar is now responsible for its debt; Nexstar and all its subsidiaries, including TEGNA, are each joint and several guarantors for all debt of the consolidated entity.  Nexstar is thus required to have an overall financing strategy that accounts for TEGNA's financial operations.

18.     The Debt Agreements further require Nexstar to deliver periodic compliance certificates, certifying Nexstar's compliance with these covenants and setting forth the calculations by which compliance is determined.  As Chief Financial Officer of Nexstar, I am the officer who executes those compliance certificates.  In doing so, I certify compliance for the consolidated group, including with respect to TEGNA.

---

[1] The Debt Agreements are publicly available at the following links:
https://www.sec.gov/Archives/edgar/data/1142417/000119312526129955/nxst-ex4_1.htm;
https://www.sec.gov/Archives/edgar/data/1142417/000119312526129955/nxst-ex10_1.htm;
https://www.sec.gov/Archives/edgar/data/1142417/000119312526139729/nxst-ex4_1.htm.

19.    A breach of a covenant attributable to activities of TEGNA—including a breach arising from TEGNA's financing decisions, its incurrence of debt, guarantees, or liens, its investments or restricted payments, or its capital expenditures—would constitute a default under the Debt Agreements.  Such a default could, in turn, permit acceleration of Nexstar's indebtedness, trigger cross-default and cross-acceleration provisions across Nexstar's other financing arrangements, and materially impair Nexstar's liquidity and financial condition.  The consequences of a covenant breach at TEGNA would therefore be borne by Nexstar.

20.    Because covenant compliance is measured on a consolidated basis for the entire group, I cannot discharge my responsibility for compliance simply by relying on a representation from an employee of TEGNA that TEGNA is individually in compliance.  The relevant question is not whether TEGNA complies in isolation, but whether the consolidated group complies with the covenants—a determination that requires me to understand TEGNA's financial position, its indebtedness, its liens, its investments, its restricted payments, and its capital activity, and to integrate that information with the financial position of the rest of the group.  A well-intentioned but incomplete assurance from a subsidiary employee who does not have visibility into the Nexstar group's consolidated position could result in an inadvertent covenant breach with severe consequences for Nexstar.

21.    Discharging this responsibility requires that I have access and authority sufficient to monitor and, where necessary, approve TEGNA's activities that bear on covenant compliance so as to prevent covenant breaches that would imperil Nexstar's entire debt structure.  My voting seat on TEGNA's Board provides the mechanism through which I have visibility into, and can approve, these covenant-relevant decisions as the officer responsible for Nexstar's compliance with the Debt Agreements.

***Budgetary Oversight Is Necessary Because TEGNA Does Not Have an Independent Source of Capital and TEGNA Is Jointly Responsible for Debt Service***

22.    Following Nexstar's acquisition of TEGNA, TEGNA is no longer a standalone public company and cannot raise equity from public investors.  As a result of the acquisition, Nexstar, as

TEGNA's sole equity holder, is the ultimate and only backstop for TEGNA's capital needs. Any material funding shortfall at TEGNA must ultimately be addressed by Nexstar, whether through an intercompany loan, an equity contribution, or another form of capital support. It is therefore essential that Nexstar management, including me as the CFO, review and approve TEGNA's budget and financial forecasts to confirm that TEGNA's business is being operated profitably and in a manner that does not generate an unplanned or unbudgeted need for additional capital.

23.     As a subsidiary of Nexstar, TEGNA is responsible for servicing the debt of the consolidated company. As such, Nexstar management, including me as the CFO, requires information about TEGNA's cash flow to properly and adequately service the debt of Nexstar as a consolidated entity that includes TEGNA.

24.     As a TEGNA director, I am reviewing TEGNA's budgets and financial forecasts to confirm that TEGNA is not planning expenditures, investments, or financing activities that would be inconsistent with its available liquidity and the restrictions under the Debt Agreements, or that would create an unanticipated call on Nexstar's resources. Because Nexstar alone must fund any shortfall, Nexstar has a direct and legitimate interest—indeed, a fiduciary and financial imperative—in understanding and approving the financial plan under which TEGNA operates.

*My Board Service Preserves TEGNA's Operational Independence*

25.     My service on TEGNA's Board is directed at governance oversight, financial reporting, and legal and contractual compliance—not at combining, merging, or integrating the operations of Nexstar and TEGNA. TEGNA continues to operate as an independent entity, with its own management team responsible for its day-to-day operations and own workforce. The functions I perform as a director—reviewing financial information, monitoring covenant compliance, and approving budgets and material financing decisions—are governance and stewardship functions of the kind that any sole equity holder exercises with respect to a wholly owned subsidiary, even if separately managed, and they do not entail the commingling or combination of the two companies' operations, personnel, or commercial activities.

26. Each of the responsibilities described above—the Sarbanes-Oxley certifications, the monitoring of consolidated debt-covenant compliance, and budgetary and capital oversight—arises from Nexstar's status as a public company and as TEGNA's sole equityholder, and from independent obligations imposed by federal securities law and by Nexstar's financing agreements. My voting seat on TEGNA's Board provides the most direct, reliable, and timely means of discharging them.

27. To my knowledge, serving on the TEGNA Board is the only way for me to satisfy the above legal and contractual obligations, and is the standard way to do so. Requiring me to relinquish membership on the TEGNA Board and the associated visibility and voting power would impair my and Nexstar's ability to satisfy mandatory legal and contractual obligations, jeopardize the accuracy of the certifications I am required to make to the SEC, increase the risk of an inadvertent default under the Debt Agreements, and expose me personally to civil and criminal liability.

28. For the foregoing reasons, I respectfully submit that my continued service on the TEGNA Board is necessary for Nexstar's discharge of its legal and contractual obligations.

29. I have read the Order and fully intend to continue complying with it. To the extent I have questions about the Order, I am able to consult with counsel about them.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of July, 2026 in Irving, Texas.

By: /s/ Lee Ann Gliha
       Lee Ann Gliha