UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

In Re: Nexstar-TEGNA Merger Litigation

Case No. 2:26-cv-00976-TLN-CKD

**DECLARATION OF PROFESSOR JOEL SELIGMAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER**

I, Joel Seligman, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am Dean Emeritus and Professor of Law at Washington University in St. Louis, as well as President Emeritus and University Professor at the University of Rochester.  I was previously Dean and Samuel M. Fegtly Professor of Law at the University of Arizona, and have been a member of the law faculties at the University of Michigan, George Washington University, and Northeastern University.  I teach Corporations and Securities Regulation, and my research has focused on the history and application of securities law and its various regulatory regimes.

2.      I have authored or co-authored more than 40 law review articles, most of which focused on securities regulation and corporate governance.  I have authored or co-authored 20 books, including, the eleven-volume treatise *Securities Regulation* and two histories of financial regulation:  *The Transformation of Wall Street:  A History of the Securities and Exchange Commission and Modern Corporate Finance* (3d ed. 2003), and *Misalignment:  The New Financial Order and the Failure of Financial Regulation* (2020).  *Securities Regulation* is generally considered to be a leading treatise on federal securities law; it has been cited thousands of times across judicial opinions and other sources, including in multiple opinions of the Supreme Court of the United States such as *Slack Technologies, LLC v. Pirani*, 598 U.S. 759, 763 (2023).

3.      Among other affiliations, I am or have been a member of:  the American Academy of Arts and Sciences; the New York Stock Exchange Legal Advisory Committee; the North American Securities Administrators Association Task Force on the Future of State and Federal Securities

Regulation; the National Association of Securities Dealers Legal Advisory Board and Board of Governors; the Advisory Committee of the American Law Institute Corporate Governance Project; and the Board of Governors of the Financial Industry Regulation Authority. I have been a reporter for the National Conference of Commissioners on Uniform State Laws regarding Revision of the Uniform Securities Act, and have been Chair of the SEC Advisory Committee on Market Information.

4.      I was retained by counsel for Nexstar Media Group, Inc. (*Nexstar*) and TEGNA Inc. (*TEGNA*) in this matter to offer my expert opinion on the securities regulation and corporate governance issues implicated by Plaintiffs' Motion for Clarification of Preliminary Injunction Order. I am being compensated at my standard rate of $1,500 per hour for my work on this matter. My compensation does not depend on the opinions I offer or on any outcome in the matter.

5.      I have personal knowledge of the facts set forth in this affidavit and, if called as a witness, could and would testify competently to them under oath.

6.      I have been asked to review the following questions:

- First, what are the basic obligations of a covered company under the Sarbanes-Oxley Act with regard to financial reporting and certifications of the accuracy of required reports by the principal executive officer (*PEO*) and principal financial officer (*PFO*)?
- Second, what degree of oversight is required of a parent company when filing consolidated financial reports under Sections 302, 404, and 906 of the Sarbanes-Oxley Act and related Securities Exchange Act Rules 13a-14 and 13a-15? Specifically, what are the obligations of a parent company to design, implement and ensure the effectiveness of a subsidiary's internal controls under Sections 302(a)(4) and 404?
- Third, can the PEO and PFO exclusively rely on sub-certifications to satisfy its statutorily required certifications under Section 302?
- Fourth, what type of access and authority must the parent company's PEO and PFO have to ensure that sufficient controls have been established and maintained

to satisfy the requirements of Sections 302 and 404?

7.    The Sarbanes-Oxley Act applies to all public companies with securities traded on United States stock exchanges ("issuers"), including the consolidated subsidiaries of the issuers. The purpose of the Act is to protect investors from corporate fraud by requiring public companies to engage in accurate financial reporting, maintain strict internal controls, and ensure executive accountability.

8.    Section 302 of the Sarbanes-Oxley Act is unequivocal. The PEO and PFO must certify each annual or quarterly report of a covered company. The PEO and PFO must review the report. *See* Section 302(a)(1). They must certify based on the officers' personal knowledge that the report does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they statements were made, not misleading. *See* Section 302(a)(2). They must certify that the financial statements or other financial information included in the report, fairly present in all material respects the financial condition and results of operations of the issuer for the periods presented in the report. *See* Section 302(a)(3). The signing officers (A) are responsible for establishing and maintaining internal controls, (B) "have designed such internal controls to ensure that material information relating to the issuer and its consolidated subsidiaries is made known to such officers by others within those entities, particularly during the period in which the periodic reports are being prepared." Section 302(a)(4). Section 302(a)(5) also requires the signing officers to disclose to the issuer's auditors and its audit committee (A) significant deficiencies in the design or operation of internal controls and (B) any fraud, whether or not material.

9.    The Sarbanes-Oxley Act was adopted in 2002 in the wake of major auditing scandals at Enron and WorldCom and a stunning number of restatements of financial reports. See, e.g., 2 Louis Loss, Joel Seligman & Troy Paredes, *Securities Regulation* 773-879 (Wolters Kluwer 7th ed. 2024), 4 Louis Loss, Joel Seligman & Troy Paredes, *Securities Regulation* 360-411 (Wolters Kluwer 7th ed. 2025). As I and my coauthors wrote in our treatise: "The personal responsibility imposed on the signing officers in this Section [302] make this among the most draconian sections of the Sarbanes-Oxley Act." 4 *id.* at 361.

10.     Section 906 of the Sarbanes-Oxley Act, codified as 18 U.S.C. § 1350, specifically provides criminal penalties when a periodic report required by covered companies fails to provide a "written statement by the chief executive officer and the chief financial officer . . . of the issuer [certifying] that the periodic reports contained in the financial statements fully comply with the requirements of sections 13(a) and 15(d) of the Securities Exchange Act and that information . . . fairly presents, in all material respects, the financial condition and results of operations of the issuer."

11.     Rule 13a-14(d) pointedly states: "A person required to provide a certification . . . may not have the certification signed on his or her behalf pursuant to a power of attorney or other form of conforming authority." Rule 13a-15 further provides that the corporation's management with the participation of the issuer's PEO and PFOs must evaluate the issuer's disclosure controls and procedures as of the end of each fiscal quarter.

12.     Section 404(a) similarly requires each covered company (1) to state the responsibility of management for establishing and maintaining an adequate internal control structure and procedures for financial reporting and (2) contain an assessment as of the end of the most recent fiscal year of the issuer of the effectiveness of the internal control structure and procedures of the issuer.

13.     The Sarbanes-Oxley Act and related SEC rules recognize that establishing and maintaining an internal control structure and certifying financial reports may require hundreds of officers and employees of a large corporation to work together with outside auditors and outside legal counsel. *See, e.g.*, Andrew Jennings, *Disclosure Procedure*, 82 Maryland L. Rev. 920 (2023). But the fact that management of a corporation may involve the board, senior executives, staff employees and outside auditors and counsel does not alter the basic and fundamentally personal responsibility of the PEO and PFO to certify the issuer's financials under Section 302 and 906, codified as 18 U.S.C. § 1350. There is no statutory or regulatory authority to substitute a sub-certification for these PEO and PFO obligations under these provisions. Nor may certification simply involve signing required documents. Rule 13a-15(b) explicitly requires: "Each . . . issuer's management must evaluate with the participation of the issuer's principal executive and principal financial officers .

. . . the effectiveness of the issuer's disclosure controls and procedures. . . ." These duties are continuous, not episodic, and require that the PEO and PFO have real-time oversight.

14.    Given the demanding requirements of the Sections 302, 404 and 18 U.S.C. § 1350 for consolidated subsidiaries, the parent corporation's PEO and PFO must have the ability to course-correct if they feel changes are needed to TEGNA's financial operations. In the present scenario involving Nexstar and TEGNA, the PEO's and PFO's seats on TEGNA's Board provide the mechanism to carry out that oversight and, if necessary, direct a different course of action.

15.    Both Nexstar and TEGNA are Delaware corporations. Under a long line of Delaware judicial decisions beginning with *In re Caremark Int'l*, 698 A.2d 959 (Del. Chancery 1996), the corporate board is required to establish a system to monitor corporate information and reporting to ensure that they are adequate. *See also Marchand v. Barnhill*, 212 A.3d 805 (Del. 2019) (monitoring not only requires establishing a reasonable system of monitoring and reporting about the company's central compliance risks but also employing the monitoring system on an ongoing basis). Monitoring is the state law equivalent of the federal securities law's statutory and regulatory certification requirements.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of July, 2026 in St. Louis, MO.

By: _Joel Seligman_____
Joel Seligman