*[Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re Nexstar-TEGNA Merger Litigation | Case No. 2:26−cv−00976−TLN−CKD<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF**<br><br>Judge: Hon. Troy L. Nunley<br>Trial Date: July 6, 2027<br>Action Filed: March 18, 2026 |

## I.    INTRODUCTION

Nexstar concedes that the "principal aim" of this Court's Order "is to separately maintain TEGNA and preserve its independence and viability." Dkt. No. 279 ("Opp.") at 10–11. That independence will be lost if its Board consists of Nexstar's executives, which is why antitrust law prohibits executives of one company from sitting on a competitor's board. 15 U.S.C. § 19. Nexstar's arguments to the contrary defy common sense. If TEGNA's Board is an extension of Nexstar's leadership, then Nexstar will "influence the management of the held-separate TEGNA business unit," and have access to TEGNA's competitively sensitive information, which this Court's Order prohibits. Dkt. No. 172 ("Order") ¶¶ 3, 4. Indeed, Defendants' belatedly produced TEGNA Board minutes reveal that Nexstar executives have already begun ████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████ Defendants have not been transparent. After rushing to close, Nexstar stacked the TEGNA Board with Nexstar executives. Then, *after* the Court issued its hold-separate TRO and preliminary injunction, Nexstar not only kept this structure but *added* Nexstar executives to the Board. Defendants did not inform the Court of these actions and dragged their feet in telling Plaintiffs. Nexstar cannot justify its conduct under the facts, the law, or the Court's Order.

Defendants' main argument—that this structure is necessary to ensure that its CEO and CFO can discharge their financial reporting obligations, Opp. at 12–13—is meritless. Defendants do not, and cannot, cite a single provision of the Sarbanes-Oxley Act ("SOX") or their debt covenants that makes this structure "necessary" to satisfy any reporting obligations. Even more telling, Defendants' *own retained expert* does not offer an opinion that SOX requires any Nexstar executive to sit on TEGNA's Board. That is because there is no such requirement. In fact, the Securities and Exchange Commission ("SEC") has long recognized that executives can comply with SOX in other ways. Prior to the merger, both Nexstar's and TEGNA's CFOs certified their SOX obligations without serving on their boards, and many CFOs at major companies do the same.

Defendants also ignore that, to the extent they must "coordinate" with TEGNA personnel to fulfill any "SEC reporting requirements" or "obligations required under … debt instruments," such

-1-

coordination must be "narrowly tailored." Order ¶ 11(e). Allowing Nexstar's management team to run TEGNA's Board is not narrow tailoring; it presents threats to TEGNA's independence that the Order prohibits. The fact that three Nexstar members of the Board have *no SOX reporting obligations at all* is further proof that this structure is not "narrowly tailored" to address reporting obligations.

This Court's narrow carveout for reporting obligations was not a blank check for Nexstar to stand up a TEGNA Board comprised of current and former Nexstar executives, especially when the Order requires that Nexstar "must not influence the management of the held-separate TEGNA business unit." Order ¶ 4. At a minimum, before adopting their broad and reckless interpretation of the Court's injunction, Defendants should have sought guidance from the Court rather than "make their own determination" of what the Order required. *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 954 (9th Cir. 2014). The Court should not credit their "self-serving interpretation of their obligations under [the] injunction." *Id.*

This Court's hold-separate order was designed to protect Plaintiffs and the public from the irreparable harm that would likely arise if Nexstar treated TEGNA as another subsidiary. Those protections cannot wait for another round of meet and confers and motion practice, which will only defer resolution of this important issue. Defendants delayed for weeks in disclosing who is on the TEGNA Board and stonewalled inquiries into its activities. Even now that Defendants have provided some information, there are inconsistencies between their declarations on the one hand and their public statements and Board minutes on the other. Clearly, "trust but verify" is no longer a viable path to ensure compliance. Instead, a structured process that includes regular reports to the Court and accelerated discovery is needed.

## II.    ARGUMENT

### A.    This Court's Order Does Not Permit, Let Alone Require, Nexstar Executives to Serve on TEGNA's Board

This Court's Order required that "Nexstar must permit TEGNA to continue operating as a separate and distinct, independently managed business unit from Nexstar," and that "Nexstar must not influence the management of the held-separate TEGNA business unit." Order ¶¶ 2–4. Nexstar

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION
OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

does not dispute that this injunction prohibits its executives from carrying out the functions that TEGNA's Board would usually perform.  After all, prior to closing, the TEGNA Board was "actively involved in overseeing, reviewing and guiding the Company's corporate strategy"— precisely the activities that most directly influence the company's management. *See* TEGNA Inc., Definitive Proxy Statement at 33 (Schedule 14A) (Mar. 11, 2024), https://www.sec.gov/Archives/edgar/data/39899/000095017024029237/tgna-20240311.htm.  Nor does Nexstar dispute—because it is indisputable—that Nexstar would be violating the Order if its executives on the TEGNA Board were playing that role.

Instead, Defendants argue that this Court's Order permits Nexstar executives to serve on TEGNA's Board because they are not playing the directors' usual role but are only satisfying their SOX reporting obligations and complying with debt covenants.  Opp. at 12–16.  That argument ignores the language of the Order, which contains a narrow exception that permits Nexstar to take "*reasonable steps*" to perform its debt instrument obligations and SEC reporting requirements, and to "coordinat[e] with TEGNA personnel *as necessary*, provided that such coordination is *narrowly tailored* to complying with reporting requirements."  Order ¶ 11(e) (emphases added).  It is not necessary for Nexstar executives to serve on the TEGNA Board to satisfy debt covenants or SOX obligations, and that structure is not narrowly tailored to any reporting or debt service requirements.

*First*, stacking the TEGNA Board with Nexstar executives is neither necessary nor narrowly tailored to SOX reporting obligations because three of the Board's five members—Nexstar's COO (Michael Biard), General Counsel (Elizabeth Ryder), and former President of Broadcasting (Timothy Busch),[1] have no such obligations.  Recognizing this, Defendants assert that the Order separately authorizes these executives' appointments to the Board because the Court expressly forbade Nexstar employees from serving as TEGNA *officers*, but not as *directors*.  Opp. at 11–12.

---

[1] Although Defendants repeatedly characterize Mr. Busch as "independent," that is wrong.  As explained in Plaintiffs' Motion, a director who has a "material relationship" with the company is not independent. Mot. at 17.  Mr. Busch—Nexstar's former President of Broadcasting and ████████  ██████  *see* Dkt. No. 282-10 ("Busch Decl.") ¶¶ 3, 6—plainly has just such a material relationship. *See* N.Y. Stock Exch., Listed Co. Manual § 303A.02 cmt. ("Material relationships can include . . . consulting" arrangements).

-3-

That hypertechnical reading of the Order is disingenuous.  The Order expressly refers to officers because that is how *Nexstar* wrote its modification request.  Dkt. 67 at 7.  Nexstar never sought permission to appoint its executives as TEGNA directors and so the Court had no occasion to consider it, much less decide to *permit* it.

Equally meritless is Nexstar's argument that regardless of which Nexstar executives have reporting obligations, Nexstar must occupy a majority of TEGNA's Board to "divert course" if TEGNA's internal controls present issues.  Opp. at 14–15.  Nexstar's *own Board* consists of a supermajority of independent directors.  *See* Nexstar Media Grp., Inc., *Nexstar Media Group Appoints Ellen Johnson to Board of Directors* (July 30, 2024), https://www.nexstar.tv/nexstar-appoints-ellen-johnson-to-board-of-directors/ ("Following [Ellen Johnson's] appointment, Nexstar will have 10 Board members, *9 of whom are independent.*" (emphasis added)).  That structure has not impaired the Board's ability to "divert course" if Nexstar's internal controls prove insufficient.  There is no reason to think an independent TEGNA Board would be differently situated.

*Second*, having Nexstar executives on the TEGNA Board is neither necessary nor narrowly tailored to SOX reporting obligations because SOX does not require executives to sit on a company's board to fulfill their SOX obligations.  SOX requires certifications from a company's CEO and CFO that the company's financial statement "does not contain any untrue statement of material fact" and that they "have evaluated the effectiveness of the [company's] internal controls" and have "presented in the report their conclusions about the effectiveness" of those controls.  15 U.S.C. § 7241(a).  Defendants are wrong that Nexstar's CEO and CFO "must serve on the TEGNA Board to discharge Nexstar's SEC reporting and debt agreement obligations."  Opp. at 12.  There is no requirement that the CEO and CFO sit on the Board to satisfy their reporting obligations.

Not a single one of the "series of interrelated certification provisions" Defendants cite requires the CEO and CFO of a company to sit on the Board of Directors in order to fulfill their SOX obligations.[2]  Opp. at 13 (citing 15 U.S.C. §§ 7241, 7262; 17 C.F.R. §§ 240.13a-14, 240.13a-

---

[2] Together, these provisions establish the certification requirement, 15 U.S.C. § 7241, authorize the SEC to prescribe rules for financial reporting, 15 U.S.C. § 7262, elaborate on the form of the certificate, 17 C.F.R. § 240.13a-14, affirm that certifiers must attest to the effectiveness of the

-4-

15; 18 U.S.C. § 1350).  In fact, the SEC expressly disavowed any such requirement.  The SEC's rule implementing the certification requirements does "not requir[e] any particular procedures for conducting the required review and evaluation."  Certification of Disclosure in Companies' Quarterly and Annual Reports, 67 Fed. Reg. 57276, 57280 (Sep. 9, 2002).  Not even Defendants' expert, Professor Seligman, claims the current board's structure is *necessary* to satisfy the SOX Act's reporting requirements.  *See* Dkt. No. 279-18 ("Seligman Decl.") ¶¶ 4–14.  Only Nexstar's CFO Lee Ann Gliha says otherwise—without any legal authority to substantiate her claims.[3]  *See* Dkt. No. 279-8 ("Gliha Decl.") ¶¶ 12–15.

Ms. Gliha's insistence that she must sit on the Board is belied by the fact that before the merger, she was able to discharge her SOX obligations without sitting on Nexstar's board.  *See, e.g.*, Nexstar Media Group, Inc., Definitive Proxy Statement at 24 (Apr. 30, 2025).  Before the merger, TEGNA's CFO *also* managed to comply with SOX obligations without sitting on TEGNA's Board.  *See* TEGNA, Tegna Shareholders Approve All Board of Directors Proposals at 2025 Annual Meeting (May 21, 2025), https://www.tegna.com/tegna-shareholders-approve-all-board-of-directors-proposals-at-2025-annual-meeting.  The same is true of CFOs from many major public companies like Warner Bros. Discovery, Nike, Intel, Boeing, and Starbucks who likewise do not serve on their boards.[4]  Indeed, a CFO's service on the board is the exception rather than the rule.  *See e.g.*, Alexander May & Bill Erlain, *A Survey of Non-Independent Directors at S&P 500 Companies*, Harv. Law Sch. F. on Corp. Governance (June 27, 2024), https://corpgov.law.harvard.edu/2024/06/27/a-survey-of-non-independent-directors-at-sp-500-companies ("[O]nly four of the 161 companies [surveyed] had a sitting CFO as a director.").

company's disclosure controls and procedures and internal controls, 17 C.F.R. § 240.13a-15, and provide for criminal penalties for noncompliant statements, 18 U.S.C. § 1350.

[3] The same is true of Ms. Gliha's claim—made without citation—that she must sit on TEGNA's Board and personally review detailed finances to certify compliance with credit agreements.  *See* Gliha Decl.  ¶¶ 16–21.

[4] *See* https://ir.wbd.com/governance/board-of-directors/default.aspx (Warner Bros. Discovery); https://investors.nike.com/investors/corporate-governance (Nike); https://newsroom.intel.com/board-of-directors (Intel); https://www.boeing.com/company/general-info/corporate-governance (Boeing); https://investor.starbucks.com/governance/board-of-directors/default.aspx (Starbucks).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION
OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Nor is board service the only mechanism by which a CFO not involved in a subsidiary's day-to-day operations can satisfy SOX obligations, as Ms. Gliha claims. *See* Gliha Decl. ¶ 12. As the former Director of the SEC's Enforcement Division has explained, "[m]ost companies now have an elaborate subcertification process" to fulfill SOX obligations. *See* Andrew Ceresney, *Directors Forum 2016 Keynote Address*, U.S. Sec. & Exch. Comm'n (Jan. 25, 2016), https://www.sec.gov/newsroom/speeches-statements/directors-forum-keynote-ceresney; *see also* Houman B. Shadab, *Innovation and Corporate Governance: The Impact of Sarbanes-Oxley*, 10 U. Pa. J. Bus. & Emp. L. 955, 994–95 (2008) (explaining it is common practice for a company's CEO and CFO to rely on "internal control sub-certifications" signed by operational directors, managers, vice presidents, and more to satisfy their certification obligations). Ms. Gliha *admits* that "sub-certifications are often used as one part of the control process." Gliha Decl. ¶ 12. Defendants do not explain why they cannot use that process here. Instead, Defendants contend that Mr. Sook and Ms. Gliha could not have relied *exclusively* on subcertifications. But that misses the point, which is that CEOs and CFOs regularly rely on a combination of subcertifications and other measures, such as outside auditors and disclosure committees to ensure accurate reports—and could have done so here. Andrew K. Jennings, Disclosure Procedure, 82 Md. L. Rev. 920, 948–49 (2023) (noting that CEOs and CFOs rely upon the work of disclosure committees and sub-certifications to make their SOX certifications "without personally diligencing each statement they contain"). Indeed, the SEC has recommended that CEOs and CFOs fulfill their reporting obligations by relying on information provided by a disclosure committee responsible for "considering the materiality of information and determining disclosure obligations." *See* 67 Fed. Reg. at 57280. Defendants do not identify this option, let alone explain why it is insufficient.

*Third*, permitting Nexstar executives to serve on the TEGNA Board is not "narrowly tailored" to any reporting or debt covenant requirements because it has collateral consequences that the injunction forbids. Having Nexstar executives on the TEGNA Board creates a significant risk that Nexstar will improperly "influence the management of the held-separate TEGNA business unit" and engage in the "sharing of competitively sensitive information." Order ¶¶ 3–4.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION
OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Defendants cannot resolve the risk of improper Nexstar involvement with assurances that the Nexstar executives will recuse themselves from anything beyond reporting requirements. Mr. Sook now claims that his service is designed merely to satisfy his SOX reporting and debt agreement obligations. *See* Dkt. No. 282-1 ("Sook Decl.") ¶¶ 1–9. But on Nexstar's May 2026 earnings call, Mr. Sook made no such claim. *Compare* Dkt. No. 269-2 at 25, *with* Sook Decl. ¶¶ 1–9. Instead, he said that the arrangement would enable Nexstar to operate TEGNA "as a subsidiary," meaning Nexstar "can have conversations with [TEGNA] [and that] the executives running [TEGNA] report to the Board." Dkt. No. 269-2 at 25. Defendants do not try to reconcile Mr. Sook's declaration to this Court with his public statements earlier this year. *See, e.g.,* Sook Decl. ¶ 5 ("My service on TEGNA's Board has been limited to those specific functions" enumerated in "Paragraph 11 of the Preliminary Injunction Order."). That is reason enough to not credit his declaration. *See United States v. Bright*, 596 F.3d 683, 695 (9th Cir. 2010) (explaining, in context of party's alleged failure to comply with court order, that "the district court [was not] required, in the absence of corroborating evidence, to credit [party's] declaration"); *Jones v. Tozzi*, 2007 WL 433116, at *11 (E.D. Cal. Feb. 7, 2007) ("[A] court [may] disregard self-serving affidavits which are contradicted by [the declarant's] prior statements.").

Further, the Board minutes that Defendants have submitted to the Court suggest that the Board's activities are in fact straying into ███████████████████████ ███████████████████████ The minutes show that Mr. Paolini, TEGNA's CEO, met with Nexstar's CFO to review ███████████████ ███████ and discussed with a Board *comprised of Nexstar executives* ███████ ███████████████████ and ███████████████ ███████████████████████ Dkt. No. 282-6 at 1; Dkt. No. 282-8 at 1. The minutes also reflect that the Board and Mr. Paolini discussed ███████████ ███████████████████████ Dkt. No. 282-5 at 1; Dkt. No. 282-6 at 2; Dkt. No. 282-8 at 1. On their face, many of these activities have nothing to do with Nexstar's reporting requirements, debt covenants, or any other carveout.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION
OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Finally, Defendants' failure to ask the Court for express permission to have Nexstar executives sit on the TEGNA Board undermines their argument that the Order permits this structure. After all, not only did the Court deny Defendants' request to give Nexstar "management authority" over TEGNA, Dkt. No. 67 at 6, the Court expressly instructed Defendants at the preliminary injunction hearing ██████████████████████████████████████████ ███████████████████████████████████████████████████████ Dkt. No. 269-17 at 16:24–17:2 (emphasis added). If Nexstar had appointed those executives to the Board to comply with SOX and debt covenants and Defendants believed that having them on the Board was necessary for continued compliance, then the reasonable approach would have been to explain that to the Court, disclose that Nexstar executives were on the TEGNA Board, and seek permission that they be allowed to remain on the Board—just as Defendants sought permission to appoint TEGNA officers. Dkt. No. 67 at 7. But Defendants never made that request. That suggests that Defendants' justification for why they are supposedly in compliance was manufactured after the fact.

The Court's Order requiring TEGNA to remain independent from Nexstar does not permit Nexstar executives and consultants to sit on the TEGNA Board. To the extent that there is any doubt about the Court's Order on this point, the Court should issue a clarification.

**B.    The Court Should Order Defendants to Participate in Accelerated Discovery and Submit Regular Reports on Compliance**

Far from assuaging Plaintiffs' concerns, Mr. Sook's declaration and the rest of Nexstar's submissions in opposition to Plaintiffs' motion only underscore the need for accelerated discovery and regular reports on compliance. For two months, Nexstar has stonewalled attempts by Plaintiffs to understand critical questions, including (i) whether TEGNA Board members have received competitively sensitive information; (ii) what oversight the TEGNA Board exercises over TEGNA's officers and their decisionmaking; and (iii) whether Nexstar is maintaining TEGNA's staffing and station operations at levels required by the Order.[5]  It was not until Plaintiffs filed their motion that

---

[5] Defendants' assertion that Plaintiffs have not identified "a *single step* that Nexstar has taken to diminish TEGNA's competitive position," Opp. at 2, ignores that Defendants have resisted at every turn Plaintiffs' request for information that would shed light on exactly that issue.

-8-

Nexstar finally submitted minutes from TEGNA Board meetings, the last of which *was held more than a month ago*. *See* Dkt. No. 282-5 (May 26, 2026); Dkt. No. 282-6 (June 3, 2026); Dkt. No. 282-7 (June 11, 2026); Dkt. No. 282-8 (June 17, 2026); Dkt. No. 282-9 (June 26, 2026). Notably, all of these minutes were finalized the day before Defendants' opposition was due. Dkt. No. 282-4 ("Ryder Decl.") ¶ 7.

Plaintiffs and the public cannot afford any more delay or obfuscation with respect to Defendants' compliance. When this Court ordered the companies to be held separate, it specifically held that "further integration of Nexstar and TEGNA constitutes immediate, irreparable harm" because integration would substantially lessen competition and impair the viability of divestiture as a remedy. Order at 39 & n.23. Non-compliance threatens those same harms. Accelerated discovery is therefore urgently needed to understand the full extent of Nexstar's actions with respect to the Order and to institute corresponding remedial measures. As is evident from Nexstar's conduct, Plaintiffs (and the Court) simply cannot rely on Defendants' say-so.

Defendants' complaints about the purported burdens discovery will place on them are unfounded. *See* Opp. at 17–18. As this Motion and the correspondence preceding it show, Plaintiffs' requests have been narrowly tailored to understanding how Defendants' actions comply with specific provisions of the Order. *Compare* Order ¶ 8 ("Defendants shall use all reasonable efforts to maintain—at 2025 levels or 2026 levels that were approved prior to the Transaction, whichever are higher—all station operations [and] staffing . . . for the Acquired Stations.") *with* Dkt. No. 269-4 at 2 (requesting information regarding TEGNA's "2025, pre-closing, and current levels of staffing . . . and financial support for station operations" for the Acquired Stations). Defendants have ignored these requests outright. *See, e.g.*, Dkt. No. 269-6 at 2 (refusing to produce "information related to station staffing and funding"). It makes no sense to institute arbitrary limitations on discovery into compliance when Defendants have not been forthcoming about their actions in response to those requests and the Magistrate Judge retains discretion to oversee discovery. *See Cal. Dep't of Social Servs. v. Leavitt*, 523 F.3d 1025, 1033–36 (9th Cir. 2008) (discovery warranted when the enjoined party "refus[ed] to respond to the request for production of documents that could have illuminated its compliance record").

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION
OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Plaintiffs maintain that the swiftest way to get to the bottom of this issue is for the Court to order Defendants to provide monthly reports on their compliance efforts, authorize an accelerated discovery schedule overseen by the Magistrate Judge, and order Defendants to produce the following records to Plaintiffs on an ongoing basis: (1) a record of all written communications and a list of any oral communications between any member of Nexstar's senior management and any member of TEGNA senior management during the preceding month, including minutes for any meetings, or a sworn certification that no such communications occurred; (2) any material changes to TEGNA's budgets, forecasts, or strategic or operating plans adopted or approved by TEGNA or its Board of Directors during the preceding month, or a sworn certification that no such changes were adopted or approved; and (3) records of TEGNA's monthly and quarterly financial and operational reports (however titled or stylized) presented to the TEGNA Board and Chief Executive Officer.[6]  Mot. at 18–19.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order that (i) clarifies that current and recent former Nexstar executives, officers, employees, consultants, and other personnel may not serve as TEGNA directors; (ii) requires Defendants to submit monthly reports about their compliance with the injunction to the Court and Plaintiffs and provide supporting documentation to Plaintiffs; and (iii) establishes an accelerated discovery schedule for compliance issues before the Magistrate Judge.

---

[6] If the Court would prefer that a Special Master, rather than the Magistrate Judge, handle expedited discovery related to compliance, Plaintiffs respectfully request that the Court empower the Special Master to monitor compliance pursuant to its inherent equitable authority and Rule 53 and set a similar accelerated discovery schedule and monthly reporting requirement.  *See Indep. Living Ctr. of S. Cal. v. City of Los Angeles*, 2025 WL 1712398, at *3 (C.D. Cal. Mar. 31, 2025).  To accelerate the process of selecting a Special Master, Plaintiffs propose that the Court order the parties to submit three candidates each for Special Master within two days of the Court's order resolving Plaintiffs' Motion.  Plaintiffs further request that the Court order Defendants to pay the Special Master's reasonable and customary fees and expenses.  *See Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 539–40, 546 (9th Cir. 1987) (affirming district court order requiring defendants to pay all of the special master's fees and costs to monitor their compliance with preliminary injunction).

Dated:  July 30, 2026

FOR PLAINTIFF DIRECTV:

*/s/ Glenn D. Pomerantz*

Glenn D. Pomerantz (State Bar No. 112503)
   glenn.pomerantz@mto.com
Kuruvilla J. Olasa(State Bar No. 281509)
   kuruvilla.olasa@mto.com
Robert E. Bowen (State Bar No. 335932)
   robert.bowen@mto.com
Lauren Beck (State Bar No. 343375)
   lauren.beck@mto.com
Liam Gennari (State Bar No. 350177)
   liam.gennari@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone:  (213) 683-9100

Justin P. Raphael (State Bar No. 292380)
   justin.raphael@mto.com
Carson J. Scott (State Bar No. 339868)
   carson.scott@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone:  (415) 512-4000

Xiaonan April Hu (State Bar No. 321354)
   april.hu@mto.com
Lauren E. Ross (pro hac vice)
   Lauren.Ross@mto.com
Brandon H. Thomas (State Bar No. 334240)
   brandon.thomas@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

McGregor Scott (State Bar No. 142413)
   mscott@kslaw.com
KING & SPALDING LLP
621 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:     (916) 321-4800

Olivier N. Antoine (pro hac vice)
oantoine@kslaw.com
Laura Harris (pro hac vice)

-11-

lharris@kslaw.com
Joshua Hazan (pro hac vice)
  jhazan@kslaw.com
Sean Murray (pro hac vice)
  smurray@kslaw.com
Arthur B. Schoen (pro hac vice)
  aschoen@kslaw.com
KING & SPALDING LLP
1290 Avenue of the Americas, 14th Floor
New York, New York 10104
Telephone:     (212) 556-2100

M. Sean Royall (pro hac vice)
  sroyall@kslaw.com
Emily Blackburn (pro hac vice)
  eblackburn@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone:     (202) 737-0500

Michael D. Nilsson (pro hac vice)
  mnilsson@hwglaw.com
Jared Paul Marx (pro hac vice)
  jmarx@hwglaw.com
Kathleen Weng (pro hac vice)
  kweng@hwglaw.com
HWG LLP
1919 M St. NW, Eighth Floor
Washington, D.C. 20036
Telephone:     (202) 730-1334

*Attorneys for Plaintiff DIRECTV, LLC*


FOR PLAINTIFF STATE OF CALIFORNIA:

ROB BONTA
Attorney General of California

*/s/ Emily C. Curran*
Emily C. Curran (SBN 293065)
Deputy Attorney General
Paula Blizzard (SBN 207920)
Senior Assistant Attorney General
Brent K. Nakamura (SBN 283572)
Supervising Deputy Attorney General
Laura Antonini (SBN 271658)
Elizabeth Cheever (SBN 341421)
Jennifer K. Hane (SBN 275729)
Connie P. Sung (SBN 304242)
Brian D. Wang (SBN 284490)

-12-

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION
OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Laura.Antonini@doj.ca.gov
         Brent.Nakamura@doj.ca.gov

Shaoul Sussman (pro hac vice)
Nico Gurian (pro hac vice)
Victoria M. O. Field (pro hac vice)
Paul M. Goorich (pro hac vice)
Simonsen Sussman LLP
307 W. 38th St., 16th Fl.
New York, NY 10018
Telephone: (646) 693-3929
Email: shaoul@simonsensussman.com
         nico.gurian@simonsensussman.com
         victoria.field@simonsensussman.com
         paul.goodrich@simonsensussman.com

Catherine S. Simonsen (SBN 307325)
Thomas G. Mattes (SBN 355010)
Simonsen Sussman LLP
418 Bamboo Ln., Suite C-18
Los Angeles, CA 90012
Telephone: (917) 747-5196
Email: catherine@simonsensussman.com
         thomas.mattes@simonsensussman.com

Nicolas A. Stebinger (pro hac vice)
Victoria R. Sims (pro hac vice)
Simonsen Sussman LLP
1629 K St. NW, Suite 300
Washington, DC 20006
Telephone: (202) 384-3130
Email: nicolas@simonsensussman.com
         victoria.sims@simonsensussman.com

FOR PLAINTIFF STATE OF COLORADO:

PHILIP J. WEISER
Attorney General

*/s/ Bryn Williams*
Bryn A. Williams
First Assistant Attorney General
Jonathan B. Sallet (pro hac vice)
Special Assitant Attorney General
Robin Alexander (pro hac vice)

-13-

Assistant Attorney General
Amy Bowles (pro hac vice)
Assistant Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 702-508-6000
Email: Bryn.Williams@coag.gov
         Jon.Sallet@coag.gov
         Robin.Alexander@coag.gov
         Amy.Bowles@coag.gov

*Attorneys for Plaintiff State of Colorado*

FOR PLAINTIFF STATE OF
CONNECTICUT:

WILLIAM TONG
Attorney General of Connecticut

NICOLE DEMERS
Deputy Associate Attorney General
(pro hac vice)

*/s/ Julián A. Quiñones Reyes*
Julián A. Quiñones Reyes (pro hac vice)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: Julian.Quinones@ct.gov

*Attorney for Plaintiff State of Connecticut*

FOR PLAINTIFF STATE OF ILLINOIS:

KWAME RAOUl
Attorney General of Illinois

*/s/ Paul J. Harper*
Paul J. Harper (pro hac vice)
Supervising Attorney, Antitrust Bureau

Elizabeth L. Maxeiner (pro hac vice)
Chief, Antitrust Bureau
John R. Milligan (pro hac vice)
Daniel R. Betancourt (pro hac vice)
Assistant Attorneys General

-14-

Office of the Attorney General of Illinois
115 S. LaSalle Street
Chicago, Illinois 60603
Telephone: (312) 814-1004
Email: Paul.Harper@ilag.gov

*Attorneys for Plaintiff State of Illinois*

THEODORE E. ROKITA
Attorney General of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart, Att. No.25474-82
Chief Counsel and Director of Consumer
Protection
(pro hac vice)
Jacob Patterson, Att. No. 38302-29
Deputy Attorney General (pro hac vice)

OFFICE OF INDIANA ATTORNEY
GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN 46204
Telephone: 317-232-4956
Fax: 317-232-7979
Email: Jacob.Patterson@atg.in.gov

*Counsel for Plaintiff State of Indiana*

FOR PLAINTIFF STATE OF KANSAS

KRIS KOBACH
Attorney General of Kansas

*/s/ John Harris*
John Harris (pro hac vice)
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: 785-296-2215
Email: John.Harris@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

FOR PLAINTIFF COMMONWEALTH OF
MASSACHUSETTS:

ANDREA JOY CAMPBELL
Attorney Genaral of Massachusetts

-15-

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION
OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

/s/ Anthony W. Mariano
Anthony W. Mariano (pro hac vice)
Chief, Antitrust Division
Jennifer E. Greaney (pro hac vice)
Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
Telephone: 781-835-7990
Email: Anthony.Mariano@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General of New York

/s/ Elinor R. Hoffmann
Elinor R. Hoffmann (pro hac vice)
Chief, Antitrust Division
Christopher D'Angelo (pro hac vice)
Deputy Chief Attorney General
Economic Justice Division
Amy McFarlane (pro hac vice)
Deputy Chief, Antitrust Bureau
Morgan Feder (pro hac vice)
Assistant Attorney General, Antitrust Bureau
Jaya Mantovani (pro hac vice)
Attorney General Fellow
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Elinor.Hoffmann@ag.ny.gov | 212-416-8269
Christopher.D'Angelo@ag.ny.gov |
212-416-6124
Amy.McFarlane@ag.ny.gov | 212-416-6195
Morgan.Feder@ag.ny.gov | 212-416-8288
Jaya.Mantovani@ag.ny.gov | 212-416-8284

*Attorneys for Plaintiff State of New York*

FOR PLAINTIFF STATE OF NORTH CAROLINA

JEFF JACKSON
Attorney general of North Carolina

KUNAL CHOKSI (pro hac vice)
Senior deputy attorney general

/s/ Francisco Benzoni
Francisco Benzoni (pro hac vice)
Special Deputy Attorney General

-16-

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION
OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Brian Rabinovitz (pro hac vice)
Director of Major Litigation for Consumer Protection
114 W. Edenton Street
Raleigh, NC 27603
Telephone: 919-716-6000
Email: Fbenzoni@ncdoj.gov
            Brabinovitz@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina*

FOR PLAINTIFF STATE OF OREGON:

DAN RAYFIELD
Attorney General of Oregon

*/s/ Alex DeLorenzo*
Alex DeLorenzo (pro hac vice)
Timothy D. Smith (pro hac vice)
Attorney-in-Charge
Ian Van Loh (SBN 280254)
Senior Assistant Attorneys General
Economic Justice Section
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tim.Smith@doj.oregon.gov | 503-798-3297
Ian.Vanloh@doj.oregon.gov | 971-239-7457
Alex.Delorenzo@doj.oregon.gov | 503-428-9482

*Attorneys for Plaintiff State of Oregon*

FOR PLAINTIFF COMMONWEALTH OF PENNSYLVANIA:

DAVID W. SUNDAY, JR.
Attorney General of Pennsylvania

*/s/ Tracy W. Wertz*
Tracy W. Wertz (pro hac vice)
Chief Deputy Attorney General
Antitrust Section
Email: twertz@attorneygeneral.gov

Joseph S. Betsko (pro hac vice)
Assistant Chief Deputy Attorney General
Antitrust Section
Email: jbetsko@attorneygeneral.gov

Jennifer A. Thomson (pro hac vice)
Senior Deputy Attorney General
Antitrust Section
Email: jthomson@attorneygeneral.gov

-17-

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION
OF PRELIMINARY INJUNCTION ORDER AND OTHER COMPLIANCE RELIEF

Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Phone: 717-787-4530

*Attorneys for Plaintiff Commonwealth of Pennsylvania*

FOR PLAINTIFF STATE OF VERMONT:

CHARITY R. CLARK
Attorney General of Vermont

*/s/ Sarah L. J. Aceves*
Sarah L. J. Aceves (pro hac vice)
Assistant Attorney General
Public Protection and Antitrust Unit
Office of the Attorney General of Vermont
109 State Street
Montpelier, VT 05676
Telephone: 802-828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

FOR PLAINTIFF COMMONWEALTH OF VIRGINA

JAY JONES
Attorney General of Virginia

*/s/ Tyler T. Henry*
Tyler T. Henry (pro hac vice)
Senior Assistant Attorney General
Antitrust Unit
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: 804-692-0485
Email: THenry@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia*

-18-