# EXHIBIT C

June 9, 2026

**Via E-Mail**

Sarah Neuman
Wilkinson Stekloff LLP
2001 M Street NW, 10th Floor,
Washington, D.C. 20036

Re: *In re: Nexstar-Tegna Merger Litigation* - 2:26-cv-00976 – Injunction Compliance

Dear Sarah:

Thank you for your letter dated June 3, 2026. We appreciate Defendants' willingness to provide, on a rolling basis, the information requested in Paragraphs 1(a), (1b), 1(c), 2(a), and 4 of our May 22, 2026 letter. Please confirm you will provide the information sought in those requests within three business days of this letter.

We disagree with Defendants' positions regarding the remaining requests and are concerned by your continued delay in providing substantive responses to these reasonable requests, which seek information directly bearing on Defendants' compliance with the Court's Preliminary Injunction.

In particular, we do not agree that the information sought in Paragraphs 1(d) and 1(e) are unduly burdensome. To the extent TEGNA management and Nexstar management have received guidance or instructions as to how to comply with the injunction or reports on such compliance, that is a discrete set of documents we believe are both easily identifiable and readily obtainable. Similarly, to the extent TEGNA is currently subject to any operating covenants, it should be a simple matter to identify those covenants and share with us copies of those covenants.

We also do not agree with Defendants' assertions that there is no basis to seek the information sought in Paragraphs 6 and 6(a). As our May 22 letter makes clear, Nexstar's CFO, Lee Ann Gliha, stated on a recent earnings call that "excess [TEGNA] cash flow, as we see fit, will be used to repay that [Nexstar] debt." This raises concerns for Plaintiffs that Nexstar may be using TEGNA's excess cash flow in a manner that undermines TEGNA's ability to remain an ongoing, economically viable competitor. If, as Defendants assert, Nexstar is using TEGNA's excess cash flow consistent with ordinary-course debt service and repayment activities, it should not be difficult for Nexstar to answer the question set forth in Paragraph 6 and to provide a copy of TEGNA's pre-closing and current budgets. Indeed, TEGNA's pre-closing and current budgets are standard business documents that we expect Defendants have access to in the ordinary course.

In a good-faith effort to reduce the burden on Defendants, we are willing to clarify and streamline Paragraphs 2(b), 3, and 5 as follows:

- Paragraph 2(b): Defendants appear to have misunderstood this request. Plaintiffs are not, at this time, seeking to obtain the underlying records themselves. Plaintiffs merely seek to understand whether Defendants have a formal process in place for TEGNA to make management decisions around its operations, agreements, and news programming selections. To the extent such a process exists, please describe that process (including the individuals involved) and whether Nexstar and its employees provide approval or input at any point in that process. If no such process exists, please state as much.

- Paragraph 3: At this time, we are willing to streamline Paragraph 3 to ask for TEGNA's operating business plans prior to execution of the merger agreement on August 18, 2025, upon closing of the agreement, and currently in effect as of the date of this letter.[1] To the extent the business operating plans do not include information on the 2025, pre-closing, and current levels of staffing (*e.g.*, number of employees) and financial support for station operations (*e.g.*, station budget) at the Acquired Stations, please provide that information separately. Please also provide us a general description of the steps Defendants have taken to adhere to Paragraph 8 of the Preliminary Injunction Order.

- Paragraph 5: Mr. Sook's comments about arms-length agreements raises questions about the types of agreements Nexstar and TEGNA entered into post-closing and remain in effect. Plaintiffs are entitled to information about these agreements to ensure Nexstar and TEGNA are operating as independent entities as required under the Court's Preliminary Injunction. Defendants almost certainly have procedures in place to ensure they are complying with the Preliminary Injunction, so providing information about these agreements would impose minimal burden. Nonetheless, we are willing to streamline and narrow this request to the following: (i) describe what Mr. Sook meant by an "arms-length" transaction between Nexstar and TEGNA; and (ii) identify all agreements Nexstar and TEGNA entered into after closing on March 19, 2026, if any, and whether each such agreement was arms-length.

As discussed during the meet and confer, we do not believe it is necessary to reformat these straightforward requests for information concerning Defendants' compliance with the Court's Preliminary Injunction. Nevertheless, to avoid any further delay, we have reformatted the requests that remain unresolved in the attached document, as Defendants have requested. Such restyling is not intended to transform our limited requests regarding injunction compliance into formal discovery requests, and we reserve all of our rights related to this matter.

---

[1] Plaintiffs have restyled this request in response to Defendants' requests. Such restyling is not intended to transform our limited requests regarding injunction compliance into formal discovery requests, and we reserve all of our rights related to this matter.

Please confirm that you will provide the information responsive to these remaining requests within one week of this letter. Plaintiffs require this information to ensure that the Court's Preliminary Injunction is being faithfully observed. If Defendants do not provide the requested information, Plaintiffs will seek appropriate relief from the Court.

Very truly yours,

*/s/ Francisco Benzoni*

Francisco Benzoni
Special Deputy Attorney General
Counsel for Plaintiff North Carolina and
on behalf of all Plaintiff States

*/s/ Glenn D. Pomerantz*

Glenn D. Pomerantz
Counsel for DIRECTV

## REQUESTS REGARDING PRELIMINARY INJUNCTION[1]

1. Produce all instructions or guidance provided to (i) TEGNA management regarding its management of TEGNA under the Preliminary Injunction Order and (ii) Nexstar management regarding Nexstar's compliance with the Preliminary Injunction, including all reports made to the "Board of TEGNA" and Nexstar's board discussing how TEGNA and/or Nexstar management will comply or have complied with such instructions or guidance.. Please also produce any operating covenants to which TEGNA management is required to adhere.

2. State whether Defendants have a formal process in place for TEGNA to make management decisions regarding its operations, agreements, and news programming selections during the hold separate period. To the extent such a process exists, please describe that process (including the individuals involved) and whether Nexstar and its employees provide approval or input at any point in that process. If no such process exists, please state as much.

3. Provide the following information regarding TEGNA's operations:

a. Provide TEGNA's (i) last operating business plan prior to the execution of the merger agreement on August 18, 2025; (ii) last operating business plan prior to closing of the merger agreement on March 19, 2026; and (ii) current operating business plan. To the extent these business plans do not include information regarding the 2025, pre-closing 2026, and current staffing levels and financial support for station operations for each acquired TEGNA station, please provide those.

b. Describe the steps Nexstar and TEGNA are taking to comply with Paragraph 8 of the Preliminary Injunction Order.

4. Identify the following information relating to Mr. Sook's statement during Nexstar's Q1 2026 earnings call that "there are certain commercial agreements that Mike Biard and I have been talking about that we could enter into on an arm's length basis with TEGNA under the order":

[1] Pursuant to Defendants' requests, Plaintiffs have restyled their revised requests in this manner. In restyling these requests, Plaintiffs do not waive their right to assert that injunction compliance requests are exempt from the parties' discovery limits.

a. Describe what Mr. Sook meant by "arm's length" agreements between Nexstar and TEGNA.

b. Identify all agreements entered into between Nexstar and TEGNA after closing and state whether each such agreement is "arm's length."

5. Identify and describe what steps, if any, Nexstar is taking to ensure that its use of TEGNA's excess cash flow complies with the Preliminary Injunction's requirement that TEGNA remain an "ongoing, economically viable, and active competitor."

6. Produce a copy of TEGNA's pre-closing budget and a copy of TEGNA's current budget.

DATED: June 9, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Glenn D. Pomerantz*
GLENN D. POMERANTZ
*Attorneys for Plaintiff DIRECTV, LLC*

DATED: June 9, 2026

PLAINTIFF STATES

By: */s/ Francisco Benzoni*
Francisco Benzoni
*Attorneys for Plaintiff The State of North Carolina and on Behalf of All Plaintiff States*