Dalmacio V. Posadas, Jr., Bar No. 316837
dposadas@swlaw.com
Snell & Wilmer LLP
350 South Grand Avenue, Suite 3100
Los Angeles, California 90071-3420
Telephone: 213.929.2500
Facsimile: 213.929.2525

*Attorneys for Nonparty*
*Zolo Broadcasting LLC*

SNELL & WILMER

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: Nexstar-TEGNA Merger Litigation | Case No. 2:26-cv-00976-TLN-CKD<br>Judge: Troy L. Nunley<br>Magistrate Judge: Carolyn K. Delaney<br><br>**NOTICE OF MOTION; MOTION BY NONPARTY ZOLO BROADCASTING LLC FOR PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Dalmacio V. Posadas, Jr. and [Proposed] Order concurrently filed]<br><br>Date: September 30, 2026<br>Time: 10:00 a.m.<br>Courtroom: 24 (via Zoom)<br><br>Trial Date: July 6, 2027<br>Date Action Filed: March 18, 2026 |

**<u>DISCOVERY MATTER</u>**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 30, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 24 of the above-captioned Court (via Zoom) located at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, Nonparty Zolo Broadcasting LLC ("Zolo") will and hereby does move this Court for a protective order barring Michael D. Nilsson of HWG LLP (counsel for DIRECTV, LLC ("DIRECTV")) from receiving any documents produced by Zolo in response to the subpoena issued by DIRECTV to Zolo that Zolo designates as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" under this Court's Amended Stipulated Protective Order (Dkt. No. 238) ("the Protective Order"). Zolo seeks a modification of that Protective Order to effect that limitation.

Zolo Broadcasting LLC makes this motion pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 251(g), which provides that "[w]hen a party files a motion for a protective order in response to any discovery request, that party's obligation to respond to the discovery request is stayed pending resolution of the motion for a protective order," on the following grounds:

1. Federal Rule of Civil Procedure 26(c)(1)(G) authorizes the Court, for good cause, to issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

2. Section 7.1 of the Protective Order provides: "Protected Material disclosed or produced in this litigation shall not be used in any way in any other litigation, investigation, or for commercial purposes, *including as part of retransmission rate setting, discussions, or negotiations*." (emphasis added)

3. Mr. Nilsson is DIRECTV's principal outside counsel in the precise commercial and regulatory field to which much of Zolo's Highly Confidential

Information relates. DIRECTV regularly negotiates the purchase of retransmission consent rights from Zolo, and thus DIRECTV would benefit greatly (and unjustly) from its longtime principal outside counsel on retransmission consent matters receiving Zolo's Highly Confidential Information comprising retransmission rates, terms, conditions and negotiating strategies as well as financial data and other competitively sensitive information.

4. Permitting Mr. Nilsson access to Zolo's Highly Confidential Information creates an untenable risk of improper disclosure and use of that information in contravention of the Protective Order. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470-71 (9th Cir. 1992) (superseded by statute on other grounds).

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, all pleadings, files, and records in this action, argument at the hearing of the matter, and all other matters of which the Court may take judicial notice. This Motion is made pursuant to Local Rule 251, which governs motions for protective orders. *See* L.R. 251(a), (g).

Dated: August 19, 2026

SNELL & WILMER LLP

By: ______________________

Dalmacio V. Posadas, Jr.

*Attorneys for Nonparty Zolo Broadcasting LLC*

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT .......... 7

II. RELEVANT BACKGROUND .......... 8

A. The Protective Order Establishes Heightened Protections for Retransmission Consent Information .......... 8

B. Mr. Nilsson’s Recent Sworn Testimony Establishes His Role as DIRECTV’s Principal Outside Retransmission Consent Counsel .......... 10

C. Mr. Nilsson’s Representation of DIRECTV in Matters Before the Federal Communications Commission (“FCC”) Confirms His Involvement in Retransmission Consent Negotiating Matters and Intimate Knowledge of DIRECTV’s Positions .......... 11

D. Given Mr. Nilsson’s Representation, He Should Be Barred From Accessing Zolo’s Highly Confidential Information. .......... 11

E. DIRECTV Has an Extensive Litigation Team Available to Review the Material. .......... 12

III. LEGAL STANDARD .......... 12

IV. ARGUMENT .......... 14

A. The Protective Order’s Treatment of Retransmission Consent Experts Confirms That Persons Involved in Competitive Decision Making Should Be Excluded. .......... 14

B. The Competitive Decision Making Cases Require a Functional Analysis of Counsel’s Actual Responsibilities. .......... 15

C. The Risk Is Inadvertent Competitive Use, Not Intentional Misconduct. .......... 16

D. Excluding Mr. Nilsson Personally Would Impose Minimal Burden Because DIRECTV Has an Extensive Litigation Team. .......... 17

V. CONCLUSION .......... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avocent Redmond Corp. v. Rose Elecs., Inc.*,
242 F.R.D. 574 (W.D. Wash. 2007) .................... 15, 16

*Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465 (9th Cir. 1992) .................... *passim*

*Fluke Corp. v. Fine Instruments Corp.*,
1994 WL 739705 (W.D. Wash. Oct. 6, 1994) .................... 13

*Intel Corp. v. VIA Techs., Inc.*,
198 F.R.D. 525 (N.D. Cal. 2000) .................... 13, 15

*Ods Techs., L.P. v. Magna Entm't Corp.*,
583 F. Supp. 2d 1141 (C.D. Cal. 2008) .................... 13

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994) .................... 12

*U.S. Steel Corp. v. United States*,
730 F.2d 1465 (Fed. Cir. 1984) .................... 13, 15, 16

*Vignes-Starr v. Lowe's Home Ctrs.*,
544 F. Supp. 3d 774 (W.D. Ky. 2021) .................... 12

**Statutes**

47 U.S.C. § 325(b) .................... 9

**Rules**

Fed. R. Civ. P. 26(c) .................... 7, 14

Fed. R. Civ. P. 26(c)(1)(G) .................... 12

L.R. 141.1(a)(1) .................... 12

L.R. 141.1(b)(1) .................... 14

L.R. 141.1(c) .................... 13

L.R. 141.1(c)(2) .................... 13

L.R. 141.1(c)(3) .................... 13

L.R. 230 .......... 14

L.R. 251 .......... 14

**Other Authorities**

Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427 (1991) .......... 12

Fitch Ratings, *Rating Action Commentary Fitch Rates DIRECTV's Proposed Senior Secured Debt Offering 'BB+'/'RR2'* (May 11, 2026) .......... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Nonparty Zolo Broadcasting LLC ("Zolo") is being required to produce ***extraordinarily sensitive*** commercial information—including retransmission consent rates, negotiating strategies, and detailed financial data—in response to a subpoena issued by DIRECTV LLC ("DIRECTV"). The Amended Stipulated Protective Order (Dkt. No. 238) expressly prohibits using Protected Material "as part of retransmission rate setting, discussions, or negotiations" and excludes experts who provide commercial advice on or participate in retransmission consent negotiations from receiving Highly Confidential Information. Yet one of the attorneys poised to receive Zolo's Highly Confidential Information is Michael D. Nilsson of HWG LLP—who has sworn under oath that he is DIRECTV's "principal outside counsel on retransmission consent." Mr. Nilsson is not a casual observer; he is intimately involved in advising DIRECTV on the precise commercial and regulatory field to which Zolo's Highly Confidential Information relates.

Zolo respectfully requests that the Court modify the Protective Order to bar Mr. Nilsson from receiving Zolo's "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" information for the following reasons:

***First***, the Protective Order's structure already recognizes the competitive danger: experts who provide commercial advice on or participate in retransmission consent negotiations are excluded from receiving Highly Confidential Information. Mr. Nilsson's continuing responsibilities as DIRECTV's principal retransmission consent counsel create the same competitive risk that the Protective Order addresses for experts. Sections 7.1, 7.3, and 7.5 should be read together with Federal Rule of Civil Procedure 26(c) to permit the Court to address circumstances where an outside attorney's continuing responsibilities directly overlap with the commercial activity from which the Order expressly seeks to insulate Protected Material.

***Second***, the leading competitive decision making authorities require a

functional analysis of counsel's actual responsibilities—not whether counsel is technically "outside" or "in-house." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470–71 (9th Cir. 1992). The Ninth Circuit expressly rejected the proposition that the inquiry turns upon the address on counsel's business card, holding that "[t]he same considerations could have applied equally to outside counsel." *Id.* at 1470. Mr. Nilsson's own sworn testimony is the best evidence of his function: he is DIRECTV's longtime "principal outside counsel on retransmission consent."

***Third***, the risk is not intentional misconduct—it is inadvertent competitive use. Once an attorney learns a competitor's rates, terms, negotiating priorities, and financial constraints, the attorney cannot realistically erase that information when subsequently advising his client in the same marketplace. This is the very problem the Ninth Circuit recognized in *Brown Bag*, upholding restrictions because disclosure would place counsel in the "untenable position" of attempting to advise his client without improperly using what he had learned. *Id.* at 1471.

***Fourth***, excluding Mr. Nilsson personally would impose minimal burden. DIRECTV has an extensive litigation team—twenty two other attorneys of record from King & Spalding LLP and Munger, Tolles & Olson LLP—available to review the material ***without*** creating the same concern. The remaining attorneys representing DIRECTV, including two other attorneys from Mr. Nilsson's own firm, would remain available to review the information and litigate the action.

For these reasons, and those discussed in further detail below, Zolo respectfully requests that this Court modify the Protective Order to bar Mr. Nilsson from receiving Zolo's Highly Confidential Information.

## II. RELEVANT BACKGROUND

### A. The Protective Order Establishes Heightened Protections for Retransmission Consent Information.

On June 5, 2026, the Court entered the Amended Stipulated Protective Order

(Dkt. No. 238) specifically prepared for litigation involving "highly sensitive confidential, operational, financial and accounting documents, trade secrets, proprietary information" whose disclosure or misuse could cause irreparable harm. The parties expressly identified categories requiring protection, including confidential business practices, strategies and plans; confidential terms of commercial agreements; detailed financial information concerning revenues, costs, and profits; confidential commercial information; and confidential analyses concerning viewer or subscriber preferences and the impact of programming disputes. The Order establishes a heightened "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" category for extremely sensitive confidential information whose disclosure would create a substantial risk of serious harm that could not be avoided by less restrictive means. The Order expressly defines "Retransmission Consent Agreement" as an agreement negotiated between an MVPD and a broadcaster for retransmission of broadcast signals pursuant to 47 U.S.C. § 325(b).

Most significantly, Section 7.1 of the Protective Order provides: "Protected Material disclosed or produced in this litigation shall not be used in any way in any other litigation, investigation, or for commercial purposes, *including as part of retransmission rate setting, discussions, or negotiations*." (emphasis added) The Order thus already recognizes the precise competitive danger underlying this Motion: information disclosed in this litigation must be insulated from DIRECTV's retransmission consent activities. For ordinary "CONFIDENTIAL" material, Section 7.2(c) permits disclosure to certain officers and employees only if they "do not currently and are not anticipated to provide commercial advice on or participate in pricing or the negotiation of Retransmission Consent Agreements." For the more sensitive "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" category, party officers and employees are excluded altogether. Section 7.5 provides that, absent the Producing Party's written consent, Highly Confidential Information

cannot be disclosed to an expert unless the expert declares under penalty of perjury that the expert "does not currently and is not anticipated to provide commercial advice on or participate in the negotiation of retransmission consent agreements with any entity that engages in such negotiations."

**B. Mr. Nilsson's Recent Sworn Testimony Establishes His Role as DIRECTV's Principal Outside Retransmission Consent Counsel.**

DIRECTV's video subscriber base is the third largest traditional multichannel video programming distributor in the U.S. with about 8.2 million subscribers among its direct broadcast satellite business and its DIRECTV STREAM Internet delivered service as of March 31, 2026.[1] DIRECTV is the largest multichannel video programming distributor to which Zolo grants retransmission consent. In sworn testimony submitted to the Library of Congress, Copyright Royalty Judges, Mr. Nilsson stated that he has represented DIRECTV since 2003, with the exception of the period from 2015 through 2021 when DIRECTV was owned by AT&T and his firm had conflicts. (Declaration of Dalmacio V. Posadas, Jr. ("Posadas Decl.") ¶ 2, Ex. 1.) More importantly, Mr. Nilsson described his role in unequivocal terms: "I have long been DIRECTV's principal outside counsel on retransmission consent…." *Id.* That sworn description is significant. Mr. Nilsson does not merely represent DIRECTV in unrelated litigation or provide occasional regulatory advice. He identifies himself as DIRECTV's principal outside counsel in the precise commercial and regulatory field to which much of Zolo's Highly Confidential Information relates.

[1] Fitch Ratings, *Rating Action Commentary Fitch Rates DIRECTV's Proposed Senior Secured Debt Offering 'BB+'/'RR2'*, (May 11, 2026 - 11:19 AM ET), https://www.fitchratings.com/research/corporate-finance/fitch-rates-directv-proposed-senior-secured-debt-offering-bb-rr2-11-05-2026 (last visited August 17, 2026).

### C. Mr. Nilsson's Representation of DIRECTV in Matters Before the Federal Communications Commission ("FCC") Confirms His Involvement in Retransmission Consent Negotiating Matters and Intimate Knowledge of DIRECTV's Positions.

Mr. Nilsson is very active in representing DIRECTV's interests at the FCC, serving as the party filing comments, complaints and other similar advocacy documents on behalf of DIRECTV no fewer than 87 times.[2] For example, Mr. Nilsson confirmed his involvement in the retransmission consent negotiating strategies when he stated in an FCC filing that he described to the staff of an FCC Commissioner "the DIRECTV STREAM online service and the manner in which it negotiates for carriage of broadcast affiliates . . . ." (Posadas Decl. ¶ 3, Ex. 2.) He has also been lead attorney of record for DIRECTV in two recent retransmission consent fee disputes before the FCC against ABC/Disney and Nexstar Media Group, Mission Broadcasting, Inc. and White Knight Broadcasting, Inc. (*Id.* ¶¶ 4–5, Exs. 3–4.)

### D. Given Mr. Nilsson's Representation, He Should Be Barred From Accessing Zolo's Highly Confidential Information.

The totality of Mr. Nilsson's admissions and other public involvement in DIRECTV's retransmission consent matters demonstrates that Mr. Nilsson is not a casual observer but is intimately involved in advising DIRECTV on retransmission consent negotiating matters. The overlap is therefore direct: Zolo is being required to disclose extraordinarily sensitive information including complete copies of agreements granting retransmission consent to direct competitors of DIRECTV. Zolo also has pending subpoenas that request production of the strategies and business decisions in establishing the frameworks for retransmission consent agreements with DIRECTV and others, economic considerations including impacts on advertising revenues and detailed viewership, and economic impacts when Zolo fails to reach

[2] Based on a search of the FCC's Electronic Comment Filing System on August 17, 2026.

retransmission consent agreements with distributors such as DIRECTV. One of the attorneys potentially receiving that information is DIRECTV's longtime principal outside counsel on retransmission consent matters.

### E. DIRECTV Has an Extensive Litigation Team Available to Review the Material.

At the time the Protective Order was entered, DIRECTV was represented not merely by HWG LLP but also by two major litigation firms—Munger, Tolles & Olson LLP and King & Spalding LLP. Mr. Nilsson was then the sole HWG attorney who had appeared for DIRECTV. The current docket reflects twenty two other attorneys of record for DIRECTV from King & Spalding and Munger, Tolles & Olson, in addition to HWG counsel.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1)(G) authorizes the Court, for good cause, to issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Good cause exists when the moving party articulates specific facts showing clearly defined and serious injury resulting from the disclosure sought. *Vignes-Starr v. Lowe's Home Ctrs.*, 544 F. Supp. 3d 774, 776 (W.D. Ky. 2021). The Court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 432–33 (1991)). Local Rule 141.1(a)(1) recognizes that "[a]ll information provided to the Court in a specific action is presumptively public, but may be sealed in conformance with L.R. 141." L.R. 141.1(a)(1). Nevertheless, "[c]onfidential information exchanged through discovery . . . may be protected by seeking a protective order as described herein." *Id.*

"In granting a protective order that excludes counsel . . . from access to

confidential information, the sole question is whether there is an unacceptable risk of or opportunity for the inadvertent disclosure of confidential information." *Ods Techs., L.P. v. Magna Entm't Corp.*, 583 F. Supp. 2d 1141, 1144 (C.D. Cal. 2008). "Such risk exists when counsel are involved in 'competitive decisionmaking,' which is 'shorthand for counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.'" *Id.* (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000)). "Thus, the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure [of confidential information]." *Id.* (citations omitted). The Court must "examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel, whether in-house or retained." *Fluke Corp. v. Fine Instruments Corp.*, 1994 WL 739705, at *4–5 (W.D. Wash. Oct. 6, 1994) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992)). "Further, the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures factors into decisions on the propriety of such protective orders." *Id.* When the proposed designee is engaged in competitive decision making, "the risk of disclosure may outweigh the need for confidential information." *Intel Corp.*, 198 F.R.D. at 529. Local Rule 141.1(c) requires that all motions seeking entry of a protective order be accompanied by "[a] showing of particularized need for protection as to each category of information proposed to be covered by the order." L.R. 141.1(c)(2). The Local Rules further require a showing "as to why the need for protection should be addressed by a court order, as opposed to a private agreement between or among the parties." L.R. 141.1(c)(3).

## IV. ARGUMENT

### A. The Protective Order's Treatment of Retransmission Consent Experts Confirms That Persons Involved in Competitive Decision Making Should Be Excluded.

The structure of the Protective Order is instructive. Section 7.3 generally permits Highly Confidential Information to be disclosed to "Outside Counsel of Record," defined to include outside attorneys retained to represent or advise a party who have appeared in the action or are affiliated with a firm that has appeared. But recognizing the special competitive danger presented by retransmission consent information, the parties imposed an additional restriction upon experts: Section 7.5 prohibits disclosure to an expert who provides commercial advice on or participates in the negotiation of retransmission consent agreements. The anomaly is apparent. An expert who provides commercial advice concerning retransmission consent negotiations cannot receive the information, yet DIRECTV contends that the same information may be disclosed to an attorney who has sworn that he is DIRECTV's "principal outside counsel on retransmission consent." Nothing suggests that the parties or Court intended "Outside Counsel of Record" to create such an anomalous result. Sections 7.1, 7.3, and 7.5 should be read together with Federal Rule of Civil Procedure 26(c) to permit the Court to address the unusual circumstances presented by an outside attorney whose continuing responsibilities directly overlap with the commercial activity from which the Order expressly seeks to insulate Protected Material. Section 15.1 removes any doubt concerning the Court's authority to address Zolo's requested relief here: "Nothing in this Order abridges the right of any person to seek its modification by the Court in the future." *See also* L.R. 141.1(b)(1) (permitting parties to "move the Court for a protective order pursuant to L.R. 230, 251, or 430.1 or may submit a proposed stipulated protective order").

### B. The Competitive Decision Making Cases Require a Functional Analysis of Counsel's Actual Responsibilities.

The leading competitive decision making authorities reject a categorical distinction between outside and in-house counsel. In *U.S. Steel Corp. v. United States*, the Federal Circuit held that the relevant inquiry concerns counsel's actual "activities, association, and relationship" with the client. 730 F.2d 1465, 1468 (Fed. Cir. 1984). One court described "competitive decision making" as counsel's advice or participation in client decisions—including pricing decisions—made in light of similar information concerning a competitor. *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000). The Ninth Circuit expressly relied upon *U.S. Steel* in *Brown Bag Software v. Symantec Corp.*, holding that courts should examine the specific factual circumstances of counsel's relationship with the client and balance the risk of inadvertent disclosure against any impairment of the client's ability to litigate. 960 F.2d 1465, 1470–71 (9th Cir. 1992) (superseded by statute on other grounds).

Critically, the Ninth Circuit expressly rejected the proposition that the inquiry turns upon whether the attorney is technically outside or in-house counsel. *Id.* at 1470. After affirming restrictions upon counsel who was involved in competitive decision making, the court explained: "The same considerations could have applied equally to outside counsel." *Id.* That principle is dispositive here. The relevant question is not the address on Mr. Nilsson's business card or whether DIRECTV issues his paycheck. The question is the function he performs for DIRECTV. And the best evidence of that function is Mr. Nilsson's own sworn testimony: he is DIRECTV's longtime "principal outside counsel on retransmission consent."

As the court in *Avocent Redmond Corp.* explained, "in *Brown Bag* the Ninth Circuit upheld the magistrate judge's decision to issue a protective order denying access to plaintiff's in-house counsel to defendant's trade secret information." *Avocent Redmond Corp. v. Rose Elecs., Inc.*, 242 F.R.D. 574, 577 (W.D. Wash.

2007). "Brown Bag's in-house counsel admitted that he was responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment." *Id.* "Thus, Brown Bag's in-house counsel was involved in the kind of 'competitive decision making' that warrants a limitation on disclosure under the *U.S. Steel* analysis." *Id.* The court in *Brown Bag* specifically recognized that knowledge of a competitor's secrets would place counsel in the "untenable position" of attempting to advise his client concerning matters overlapping the competitor's confidential information without improperly or indirectly using what he had learned. *Brown Bag Software*, 960 F.2d at 1471.

That same danger is especially acute here in the area of retransmission consent. DIRECTV and Zolo negotiate with many of the same broadcasters and broadcast groups. Knowledge of a competitor's rates, rate structures, negotiating priorities, contractual protections, economic constraints, or tolerance for programming disputes could materially inform subsequent advice concerning negotiations with those same counterparties.

### C. The Risk Is Inadvertent Competitive Use, Not Intentional Misconduct.

Zolo does not suggest that Mr. Nilsson would intentionally violate the Protective Order. That is not the concern addressed by *U.S. Steel* and *Brown Bag*. Once an attorney learns the rates, terms, and conditions under which Zolo provides retransmission consent to competitors of DIRECTV, as well as Zolo's financial constraints, contractual terms, negotiating priorities, assessments of broadcasters, programming dispute analyses, and negotiating strategies, the attorney cannot realistically erase that information when subsequently advising his client in the same marketplace. That creates an unavoidable dilemma. Mr. Nilsson would either have to permit knowledge obtained in this litigation to inform his subsequent retransmission consent advice to DIRECTV or consciously attempt to disregard information already known to him while performing his responsibilities as DIRECTV's principal

retransmission consent counsel. This is the very problem the Ninth Circuit expressly recognized in *Brown Bag*, upholding restrictions because disclosure would place counsel in that untenable position. *Brown Bag Software*, 960 F.2d at 1471.

### D. Excluding Mr. Nilsson Personally Would Impose Minimal Burden Because DIRECTV Has an Extensive Litigation Team.

The balance of hardships strongly favors Zolo's requested relief. DIRECTV is not dependent upon Mr. Nilsson to review discovery in this case. DIRECTV is represented not merely by HWG LLP but also by two major litigation firms—Munger, Tolles & Olson LLP and King & Spalding LLP. The current docket reflects twenty two other attorneys of record for DIRECTV from those firms, in addition to HWG counsel. Zolo is not asking the Court to deprive DIRECTV of access to its evidence or prevent its litigation attorneys from preparing their case. It asks only that one attorney—the attorney whose continuing responsibilities create the specific competitive concern—not personally receive Zolo's Highly Confidential Information. That fact materially distinguishes this situation from one in which excluding an attorney would deprive a party of its principal trial counsel or substantially interfere with its ability to litigate. DIRECTV has ample alternative counsel available to review the material, advise the litigation team, take discovery, prepare witnesses, brief issues, and try the case.

If DIRECTV believes that some particular Highly Confidential document cannot adequately be handled without Mr. Nilsson personally reviewing it, DIRECTV can seek Zolo's consent or ask the Court for relief upon a particularized showing of necessity. That procedure would protect both interests while avoiding wholesale disclosure of Zolo's competitive information to DIRECTV's principal retransmission consent counsel.

## V. <u>CONCLUSION</u>

The unusual facts presented here warrant a narrow modification of the Protective Order. The Court's Order expressly recognizes that the litigation involves

highly sensitive competitive and financial information; that misuse could cause irreparable harm; that Highly Confidential Information presents a "substantial risk of serious harm" from disclosure; that Protected Material may not be used for retransmission rate setting, discussions, or negotiations; that company personnel involved in retransmission pricing or negotiations are excluded from access; and that even an outside expert cannot receive Highly Confidential Information if that expert provides commercial advice on or participates in retransmission consent negotiations.

Against that background, Mr. Nilsson's own sworn testimony establishes the exceptional circumstance justifying relief: he has long served as DIRECTV's "principal outside counsel on retransmission consent." The Court need not question Mr. Nilsson's integrity to recognize the resulting competitive risk. *Brown Bag* requires examination of an attorney's actual responsibilities rather than formal job classification, and expressly recognizes that the same competitive decision making concerns could apply equally to outside counsel. *Brown Bag Software*, 960 F.2d at 1470–71. The requested relief will not meaningfully impair DIRECTV's prosecution of this case. DIRECTV has a substantial litigation team from King & Spalding and Munger, Tolles & Olson available to review the material without creating the same concern.

For the foregoing reasons, Zolo respectfully requests that the Court:

1. Order that Michael D. Nilsson shall not be permitted access to Zolo's "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" information, including but not limited to information concerning:
   a. Retransmission consent rates and rate structures;
   b. Retransmission consent agreements and confidential contractual terms;
   c. Retransmission consent negotiating positions and strategies;
   d. Internal analyses of broadcasters or broadcast groups;
   e. Analyses of programming disputes and blackout economics;

f. Subscriber, revenue, cost, profitability, forecast, and other competitively sensitive financial information; and

g. Other confidential information whose disclosure could reasonably influence retransmission consent strategy, pricing, discussions, or negotiations.

2. In the alternative, require DIRECTV to establish, on a document-by-document or category-by-category basis, that Mr. Nilsson's personal access is reasonably necessary to litigate this action and that the need for his access outweighs the risk created by his continuing retransmission consent responsibilities.

3. Grant such other and further relief as the Court deems just and proper for Zolo.

Dated: August 19, 2026

SNELL & WILMER LLP

By: ______________________
Dalmacio V. Posadas, Jr.

*Attorneys for Nonparty Zolo Broadcasting LLC*