Electronically Filed
Docket: 19-CRB-0010-CD (2018-2021) Consolidated
Filing Date: 06/30/2025 07:20:39 PM EDT

**Before the**
**COPYRIGHT ROYALTY JUDGES**
**The Library of Congress**

***In re***

| | |
|---|---|
| **DISTRIBUTION OF CABLE ROYALTY FUNDS** | **CONSOLIDATED DOCKET NO. 19-CRB-0010 CD (2018-21)** |

# PROGRAM SUPPLIERS' WRITTEN DIRECT STATEMENT REGARDING ALLOCATION METHODOLOGIES

**VOLUME I OF II**
**WRITTEN DIRECT TESTIMONY**

**Gregory O. Olaniran**
**D.C. Bar No. 455784**
**Lucy Holmes Plovnick**
**D.C. Bar No. 488752**
**Jacob D. Albertson**
**N.Y. Bar No. 4898219**
**Albina Gasanbekova**
**D.C. Bar No. 1618930**
**Andrew F. Nietes**
**N.Y. Bar No. 5799846**
**Mitchell Silberberg & Knupp LLP**
**1818 N Street NW, 8th Floor**
**Washington, DC 20036**
**(202) 355-7917 (Telephone)**
**(202) 355-7887 (Facsimile)**
**goo@msk.com**
**lhp@msk.com**
**j1a@msk.com**
**a1g@msk.com**
**afn@msk.com**

***Attorneys for***
***Program Suppliers***

**June 30, 2025**

# EXHIBIT 4

**Before the**
**COPYRIGHT ROYALTY JUDGES**
**The Library of Congress**

***In re***

| | |
|---|---|
| **DISTRIBUTION OF CABLE ROYALTY FUNDS** | **CONSOLIDATED DOCKET NO. 19-CRB-0010 CD (2018-21)** |

# WRITTEN DIRECT TESTIMONY OF

# MICHAEL D. NILSSON

**JUNE 30, 2025**

# WRITTEN DIRECT TESTIMONY OF MICHAEL D. NILSSON

## I. Executive Summary

I practice law in Washington, D.C. and spend much of my time representing clients before the Federal Communications Commission ("FCC") on issues related to must carry and retransmission consent. The Motion Picture Association, on behalf of the Program Suppliers, has asked me to provide the Copyright Royalty Judges ("Judges") with background on the FCC's must-carry and retransmission-consent rules,[1] as well as some context regarding certain private carriage agreements related to public television. I hope this background proves useful if these issues again become part of the discussion of the relative market value of programming attributable to the Public Television Claimants ("PTV"). My conclusions are as follows:

1. The Communications Act generally requires cable system operators to carry a local[2] public television station *primary* signal, free of charge. 47 U.S.C. § 535. Yet that is not the only statutory provision relevant to cable carriage decisions. The cable statutory license, of course, permits a cable operator to carry programming on public television stations without obtaining a private copyright license to do so. 17 U.S.C. § 111. In addition, the Communications Act contains a "retransmission consent" provision. 47 U.S.C. § 325. This generally requires cable operators to obtain the consent from *stations* to carry their *signals*, but does not apply to public television stations. 47 U.S.C. § 325(b)(2)(a). The combination of these three statutory provisions means that every cable system—even ones located far away from a

---

[1] As discussed below, I do not suggest here that retransmission-consent fees provide direct evidence of the comparative market value of copyrighted works. I do, however, suggest that an understanding of the retransmission-consent rules may help the Judges evaluate claims made about the must-carry rules.

[2] As discussed below, the Communications Act's definitions of "local" and "distant" are different than those in the Copyright Act.

including must carry and retransmission consent. I also represented ACA Connects in renewing its carriage agreement with the Association of Public Television Stations ("APTS") and the Public Broadcasting Service ("PBS"), discussed later in this testimony. I am ACA Connects' principal outside counsel on these issues. I have authored numerous FCC pleadings for ACA Connects, drafted Congressional testimony for its executives, and have routinely spoken about must carry and retransmission consent at ACA Connects sponsored events. I have also represented, and continue to represent, numerous individual cable operators on must-carry and retransmission-consent issues, as well as related issues such as broadcast ownership, broadcast mergers, and the cable statutory license. In addition, I represent the American Television Alliance ("ATVA"), a group made up of Charter, Altice, Verizon, ACA Connects, DIRECTV, and DISH. I am principal outside counsel for ATVA, which has become one of the most outspoken advocates before the FCC on retransmission consent (and, in some cases, must carry). *CableFax* named me a "top lawyer" in 2019, which I believe is the last time the magazine has issued such an award.

In addition, I have represented DIRECTV, the satellite television provider, since 2003 (with one exception).[5] I have long been DIRECTV's principal outside counsel on retransmission consent (where the rules are the same as for cable), must carry (where the rules are substantially similar to cable),[6] and statutory licensing (where the regimes are different in many respects). I have defended DIRECTV in several must-carry complaints brought by broadcasters. With

---

5 I did not represent DIRECTV between 2015–21, when DIRECTV was owned by AT&T, with which my firm had unresolvable conflicts.

6 Technically, satellite carriers are subject to a slightly different regime, called "carry one, carry all," in which must-carry obligations apply only in markets where they choose to offer broadcast stations in the first place. 47 U.S.C. § 338. Some of the specifics differ as well, including the definition of "local market" in which stations have carriage rights.

**DECLARATION OF MICHAEL D. NILSSON**

I declare under penalty of perjury that the foregoing testimony is true and correct, and of my personal knowledge.

Executed on June 30, 2025

Michael D. Nilsson