**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | |
|---|---|
| DIRECTV, LLC<br>v.<br>THE WALT DISNEY COMPANY | MB Docket No. 12-1<br>CSR-_________ |

## GOOD FAITH NEGOTIATION COMPLAINT

DIRECTV and Disney have found themselves in an impasse for a week now. DIRECTV subscribers nationwide have lost ESPN and other Disney sports and entertainment programming, and subscribers in eight of the nation's largest markets have lost Disney-owned television stations as well. In addition, subscribers to DIRECTV's streaming services have lost ABC stations *not* owned by Disney itself. Thus, millions of Americans have already missed early college football games, may well miss the first Monday Night Football game, and, if the impasse lasts, will miss the presidential debate, produced and hosted by ABC.

The negotiations have stalled because Disney insists on bundling and penetration requirements that a federal district court judge in New York recently found in the context of the "Venu" joint venture to be unlawful, anticompetitive, and "bad for consumers." Disney wants to force DIRECTV to carry a "fat bundle" including less desirable Disney programming—while *itself* offering cheaper, "skinnier" bundles of programming that consumers want. The Commission has never considered a good faith complaint in these circumstances, and DIRECTV may well wish to bring one in the future concerning Disney's conduct.

Along with these anticompetitive demands, Disney has also insisted that DIRECTV agree to a "clean slate" provision and a covenant not to sue, both of which are intended to prevent DIRECTV from taking legal action regarding Disney's anticompetitive demands, which would include filing good faith complaints at the Commission. Not three months ago, however, the Media Bureau made clear that such a demand *itself* constitutes bad faith. DIRECTV accordingly brings this Complaint asking the Commission to declare Disney's clean slate and covenant not to sue demands to be in bad faith, and to take whatever other action it deems appropriate.

* * *

1. DIRECTV, LLC ("DIRECTV") hereby brings this good faith negotiation complaint against The Walt Disney Company ("Disney"). 47 C.F.R. §§ 76.7, 76.65.

## JURISDICTION

2. The Commission has jurisdiction to consider this Complaint under 47 U.S.C. § 325(b)(3)(C)(ii), 47 C.F.R. § 76.65 and 47 C.F.R. § 76.7.

## THE COMPLAINANT

3. DIRECTV is a Delaware corporation headquartered in El Segundo, California. DIRECTV is the nation's leading satellite television provider and has millions of subscribers throughout the country, all of whom receive multiple channels of digital video programming. Accordingly, DIRECTV is a "multichannel video programming distributor" ("MVPD") as that term is used in 47 C.F.R. § 76.65(a).

## THE DEFENDANT

4. Disney is a Delaware public corporation headquartered in Burbank, California. It is among the 50 largest corporations in the United States.

Disney owns the ESPN suite of services, a variety of Disney-branded services, a portfolio of services purchased from Fox in 2019, both the Fox and Disney studios, the ABC Network and, most relevant to this Complaint, the following eight "owned and operated" ABC television stations:

| Market | Station |
|---|---|
| Fresno, CA | KFSN |
| Los Angeles, CA | KABC |
| San Francisco-Oakland-San Jose, CA | KGO |
| Chicago, IL | WLS |
| New York, NY | WABC |
| Durham-Raleigh-Fayetteville, NC | WTVD |
| Philadelphia, PA | WPVI |
| Houston, TX | KTRK |

5. Disney's owned-and-operated television stations are each "television broadcast station[s]" with respect to its retransmission consent negotiations, as that term is used in 47 C.F.R. § 76.65, and each of Disney and DIRECTV are "negotiating entities" for purposes of those rules.

## Legal Background

6. In 1999, Congress required broadcasters to negotiate with MVPDs in "good faith," and the Commission issued implementing rules the next year. Pub. L. No. 106-113, 113 Stat. 1501 (1999); 47 U.S.C. § 325(b)(3)(C). 47 C.F.R. § 76.65; *Implementation of the Satellite Home Viewer Improvement Act of 1999*, 15 FCC Rcd. 5445 (2000) ("*Good Faith Order*"). Congress made the good faith obligation mutual in 2004. Pub. L. No. 108-447, 118 Stat. 2809 (2004).

7. Relying on labor law concepts, the Commission's rules and orders establish a two-part test for determining bad faith. *Good Faith Order* ¶ 6.

8. First, the Commission identified certain "*per se*" procedural prohibitions. 47 C.F.R. § 76.65(b)(1) and (2).

9. Second, the Commission explained that it can find bad faith based on the totality of the circumstances. 47 C.F.R. § 76.65(b)(4). Complaints alleging bad faith in this category "alleg[e] that specific retransmission consent proposals are sufficiently outrageous, or evidence that differences among MVPD agreements are not based on competitive marketplace considerations, as to breach a broadcaster's good faith negotiation obligations." *Good Faith Order* ¶ 32.

10. In the *Good Faith Order*, the Commission stated that, while it was "difficult to develop a . . . list of proposals that indicate an automatic absence of competitive marketplace considerations . . . it is implicit in section 325(b)(3)(C) that any effort to stifle competition through the negotiation process would not meet the good faith negotiation requirement." *Id.* ¶ 58. Consistent with this reasoning, the Commission identified several examples of "bargaining proposals [that] presumptively are not consistent with competitive marketplace considerations and the good faith negotiation requirement." *Id.* One of these was "proposals for contract terms that would foreclose the filing of complaints with the Commission." The Commission explained:

> [A]ny effort to stifle competition through the negotiation process would not meet the good faith negotiation requirement. Considerations that are designed to frustrate the functioning of a competitive market are not 'competitive marketplace considerations.' Conduct that is violative of national policies favoring competition . . . is not within the competitive marketplace considerations standard included in the statute.

*Id.*

11. Earlier this summer, the Media Bureau found that Nexstar had negotiated in bad faith by seeking "clean slate" language that would prohibit Hawaiian Telecom from filing future

good faith complaints based on those negotiations. *In the Matter of Hawaiian Telcom Servs. Co., Inc., Complainant, v. Nexstar Media Inc., Defendant*, MB Docket No. 23-228, File No. CSR-9012-C, 2024 WL 519155 (OHMSV Feb. 7, 2024) ("*Hawaiian Telecom*") at ¶ 1. There it found that Nexstar had "proposed so-called 'mutual release' or 'clean slate' provisions that contained language seeking to prevent Hawaiian Telcom from bringing future complaints to the Commission." *Id.* ¶ 13. The Bureau found it irrelevant that the proposed release was mutual. *Id.* ¶ 14. It also found irrelevant Nexstar's claims that such provisions were "not novel and are routinely included in carriage agreements." Rather, "[t]he Commission's rules expressly contemplate the possibility that Negotiating Entities may reach an agreement despite bad faith conduct on the part of one of the entities, and permit complaints in those scenarios." *Id.*

12. The Commission has, of course, previously suggested that bundling of retransmission of broadcast stations with other content does not *per se* violate the good faith negotiation obligation. *Good Faith Order* ¶ 39. Yet the Commission has never examined whether it would breach the duty of good faith for a Negotiating Entity to require bundling while *itself* offering non-bundled content for sale directly to consumers. DIRECTV may wish to bring a good-faith complaint against Disney regarding its conduct, but does not do so here.

## FACTUAL BACKGROUND

13. On September 1, DIRECTV's agreement to carry Disney programming expired. Subscribers to DIRECTV's satellite, streaming, and "U-verse" services have thus lost access to ESPN, the SEC Network, the ACC Network, the Disney Channel, FX, National Geographic Channel and Disney's other cable programming. More importantly here, DIRECTV subscribers have also lost access to Disney owned-and-operated ABC local stations in Los Angeles, New York, Chicago, Houston, Philadelphia, San Francisco, Fresno, and Raleigh.

14. In addition, subscribers to DIRECTV's streaming services throughout the country lost access to ABC-affiliated stations *not* owned by ABC. Streaming rights to carry such stations are controlled, in part, by Disney. Thus, although it has current and valid agreements with the owners of such stations, DIRECTV may not offer such stations on its streaming services without *Disney's* consent.

15. Although the parties' economic negotiating positions are not directly at issue in this Complaint, they are relevant. The parties remain at impasse because Disney has refused to allow DIRECTV to offer "skinnier bundles" of programming—unless DIRECTV also meets related minimum penetration requirements designed to make the provision of such skinny bundles effectively impossible or prohibitively expensive.[1] At the same time, Disney *itself*—both directly as part of its announced ESPN Flagship service and through its proposed "Venu" joint venture—plans to sell its most valuable programming more cheaply, in "skinnier" bundles.[2]

16. Among DIRECTV's proposals was one to permit DIRECTV to include ABC owned-and-operated stations in a "broadcast-only" tier. Disney has rejected that proposal, which DIRECTV believes would have increased distribution of broadcast television and local news.

17. DIRECTV believes Disney's position is anticompetitive and, quite possibly, unlawful. And, indeed, a federal district court judge in New York just halted the launch of

---

[1] To illustrate the point, suppose Disney allows ESPN to be part of a skinny "sports bundle" with no minimum penetration requirement. At the same time, Disney also demands that DIRECTV meet a 90% minimum penetration requirement for the rest of its channels. As a practical matter, this means that DIRECTV cannot sell the skinny "sports bundle" to more than 10% of its customer base.

[2] For more on DIRECTV's views of Disney's offers, please see https://www.directv.com/insider/brighter-tv-future/.

Venu—a sports joint venture owned in part by Disney—for precisely these reasons. The court there described at length the history of bundling and reached the following conclusions.

- "[I]t is difficult to avoid the conclusion that, on balance, these practices are bad for consumers."
- "These mind-bending costs do not just hurt the wallets of sports-loving consumers by making them pay for non-sports channels they don't want, but also hurt those customers who only want entertainment channels but pay significantly higher costs because they are made to pay for unwatched sports, the most expensive of all content."
- "[B]undling has been uniformly and systematically imposed on each distributor in the live pay TV industry except the JV, preventing any other distributor from offering a multi-channel sports-focused streaming service."
- "Now, *for the first time ever*, the JV Defendants, who are otherwise competitors both in securing the rights to broadcast live sports and in securing viewers for their content, are granting a firm a license to unbundled sports content. That firm is their own JV."

*fuboTV Inc. v. Walt Disney Co.*, No. 24-cv-01363, 2024 WL 3842116, at **18, 20 (S.D.N.Y. Aug. 16, 2024) (emphasis in original).

18. The *fuboTV* court did not hold that bundling *generally* is always illegal. It did, however, temporarily enjoin the Venu joint venture from launching on antitrust grounds.

19. Fear of further litigation may have spurred Disney's demand for the "clean slate" and covenant not to sue language that is the subject of this complaint. In an Issues List dated August 31, 2024 sent from Christopher Hill to DIRECTV's Rebecca Nelson, Disney proposed language under which DIRECTV would release any claims under existing agreements; release any claims concerning negotiations of renewal agreements; and include a covenant not to sue for released claims. The Issues List also provided that California (not New York, where the *fuboTV* litigation occurred) would be the venue and governing law for any litigation between DIRECTV and Disney.

20. In a follow-up conversation between Disney executives (including Mr. Hill) and DIRECTV executives (including Ms. Nelson), Disney explained that the clean slate was "critical" to Disney and Disney could not "be in a situation" in which it would sign an agreement with DIRECTV and then "find [itself] in a lawsuit in front of the judge overseeing [Disney] in the Fubo trial."

21. The clean slate language, however, was not limited to lawsuits before the "Venu judge." Rather, it would limit all "claims" related to DIRECTV's negotiations with Disney, which would include complaints before the Commission.

22. DIRECTV believes that the manner in which Disney is bundling its programming with broadcast content may well violate its good faith negotiation obligation, given that Disney is *itself* selling that programming unbundled or in "skinny" bundles. To be clear, however, DIRECTV does not presently seek to litigate whether that bunding is in bad faith, and is hopeful it can reach a reasonable resolution with Disney. But DIRECTV does seek a ruling confirming that one thing Disney may not do is ask DIRECTV to cede its right to file a complaint at the Commission based on theory that Disney acted in bad faith by bundling—or based on any other theory for that matter. The rules and orders do not permit that.

## **COUNT I**

### **DISNEY HAS ENGAGED IN BAD FAITH NEGOTIATION UNDER THE TOTALITY OF THE CIRCUMSTANCES TEST**

23. DIRECTV incorporates by reference paragraphs 1 through 22 as though fully stated herein.

24. The Commission may find bad faith under the "totality of the circumstances." 47 C.F.R. 76.65(b)(4). It will do so where "specific retransmission consent proposals are sufficiently outrageous," or where it finds "evidence that differences among MVPD agreements

are not based on competitive marketplace considerations, as to breach a broadcaster's good faith negotiation obligations." *Good Faith Order* ¶ 32.

25. One set of contract terms presumptively *not* based on "competitive marketplace considerations" are those "that would foreclose the filing of complaints with the Commission." *Id.* The Media Bureau recently found that "clean slate" language, no matter how allegedly "common" in the industry, violates the totality of the circumstances test. *Hawaiian Telecom* ¶ 13–14.

26. Disney has proposed "clean slate" language that, by its terms, would foreclose DIRECTV from filing good-faith complaints with the Commission regarding the negotiations at issue here.

27. Disney's representatives have told DIRECTV that this language is "critical," suggesting that Disney will not end its impasse if DIRECTV will not agree to this language.

28. For these reasons, the Commission should conclude that Disney has failed to negotiate in good faith under the totality of the circumstances test, in violation of the Act and the Commission's Rules. 47 U.S.C. § 325(b)(3)(C)(ii), 47 C.F.R. § 76.65.

**REQUEST FOR RELIEF**

For the foregoing reasons, DIRECTV asks the Commission to issue an order granting the following relief:

(1) Declaring that Disney has failed to negotiate in good faith under the Act and the Commission's rules;

(2) Requiring Disney to immediately negotiate in good faith;

(3) Imposing forfeitures on Disney pursuant to Section 1.80 of the Rules, as the Commission deems appropriate; and

(4) Awarding DIRECTV other and further relief that the Commission deems just and proper.

* * *

Respectfully submitted,

Michael Nilsson
Jared Marx
HWG LLP
1919 M Street, NW
The Eighth Floor
Washington, DC 20036
(202) 730-1300
mnilsson@hwglaw.com
*Counsel to DIRECTV*

Stacy Fuller
DIRECTV, LLC
2230 E. Imperial Highway
El Segundo, CA 90245

September 7, 2024

**VERIFICATION**

I, Stacy Fuller, do hereby declare and state under penalty of perjury as follows:

1. I am Senior Vice President, External Affairs, for DIRECTV, LLC. My business address is 2260 E. Imperial Highway, El Segundo, CA 90245.

2. I have read the foregoing Good Faith Negotiation Complaint. To the best of my personal knowledge, information, and belief formed after reasonable inquiry, the statements made in this Complaint other than those of which official notice can be taken, are well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. This Complaint is not interposed for any improper purpose.

September 7, 2024
Date

*/s/ Stacy Fuller*
Stacy Fuller

**DECLARATION**

I, Rebecca Nelson, do hereby declare and state under penalty of perjury as follows:

1. I am Senior Vice President, Content and Programming for DIRECTV, LLC. My business address is 2260 E. Imperial Highway, El Segundo, CA 90245.

2. I have read the foregoing Good Faith Negotiation Complaint. As part of my responsibilities, I personally participated in DIRECTV's negotiations referenced herein.

3. To the best of my personal knowledge, information, and belief formed after reasonable inquiry, the statements made in paragraphs 13-21 of this Complaint (the relevant portions of the "Factual Background") are true and correct.

__September 7, 2024_____ __*/s/ Rebecca Nelson*_______
Date Rebecca Nelson

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 7th day of September, 2024, a copy of the foregoing Complaint was served by electronic mail (and will be served on September 9th by overnight mail) upon:

Horacio Guiterrez
Senior Executive Vice President, Chief Legal and Compliance Officer
The Walt Disney Company
500 South Buena Vista Street
Burbank, California 91521
horacio.guiterrez@disney.com

Susan Fox
Senior Vice President
The Walt Disney Company
25 3rd St SW #1100,
Washington, DC 20024
susan.fox@disney.com

Maria Kirby
Vice President, Government Relations
The Walt Disney Company
25 3rd St SW #1100,
Washington, DC 20024
maria.kirby@disney.com

Matt DelNero
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
mdelnero@cov.com

__*/s/ Michael Nilsson*__________
Michael Nilsson