*[Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re Nexstar-TEGNA Merger Litigation | Case No. 2:26-cv-00976-TLN-CKD<br><br>**SPECIAL MASTER PROPOSAL: DISPUTED ISSUES AND THE PARTIES' SUPPORTING STATEMENTS**<br><br>Judges: Honorable Troy L. Nunley and Honorable Carolyn K. Delaney<br>Action Filed: March 18, 2026 |

**1. Log of All Communications Between Nexstar and TEGNA Senior Management (Paragraphs 4.b and 4.f)**

Plaintiffs' Proposal: a record of all written or oral communications between any of Nexstar's Senior Management[1] and a member of TEGNA Senior Management,[2] including where applicable the dates of any meetings and minutes of the matters discussed that occurred during the preceding month, or a sworn certification that no such communications occurred

Defendants' Proposal: any other materials the Special Master orders Defendants to provide as part of their monthly reporting, whether at the request of Plaintiffs or the Special Master's own determination, subject to Defendants' ability to seek review of such an order from the District Court

**Supporting Statements**

Plaintiffs' Supporting Statement: Defendants' refusal to log communications between Nexstar and TEGNA senior management raises concerns about their compliance. Defendants' "shocking" and "brazen" conduct in appointing Nexstar executives to the TEGNA Board, ECF 292 at 6, 8, suggests that Defendants cannot be trusted to adhere to the Court's Preliminary Injunction. Those reasons for doubt grow by the day. Just yesterday, Defendants told the Ninth Circuit that appointing Nexstar executives to the TEGNA Board was "in good faith" and "reasonable." Case No. 26-2490, Dkt. 107.1 at 2. Requiring Defendants to log communications between Nexstar and TEGNA senior management and submit this log to the Special Master on a monthly basis will provide the Special Master with critical information regarding Defendants' conduct. The log will also increase transparency into whether Defendants are trying to accomplish informally what they could not achieve by installing Nexstar executives on the TEGNA Board.

---

[1] Nexstar Senior Management includes any member of Nexstar's Board of Directors as well as any person occupying an Executive Officer position identified in Part III, Item 10 of Nexstar's annual 10-K report.

[2] TEGNA Senior Management includes any member of TEGNA's Board of Directors as well as any person appointed pursuant to Paragraph 11(f) of the Order as a TEGNA officer, including but not limited to Patrick Paolini, Raquel Amparo, Mark Conetta, Melissa Jones, Pamela Long, Cam McClelland, Kurt Rao, and Marc Sher.

That concern is not hypothetical. After the Court ordered Defendants to respond to Plaintiffs' outstanding compliance discovery requests, Defendants produced materials revealing that Nexstar executives were in communication with TEGNA's CEO beyond formal Board meetings—via email, through text messages, and over the phone about TEGNA's confidential forecasts and proposed transactions, to name a few examples. Those communications underscore the need for transparency regarding contacts between Nexstar and TEGNA senior management. Requiring a log will provide that transparency and facilitate the Special Master's oversight of Defendants' compliance with the Court's order. *See, e.g.*, *United States v. Apple, Inc.*, 2013 WL 4774755, at *5 (S.D.N.Y. Sept. 5, 2013) (permanent injunction requiring defendant to furnish communications to plaintiffs and compliance monitor on a quarterly basis); *United States v. W.A. Foote Mem'l Hosp.*, 2018 WL 3043316, at *3 (E.D. Mich. May 21, 2018) (consent decree requiring defendant to log "telephonic, electronic, in-person, and other communications").

<u>Defendants' Supporting Statement</u>: Defendants will report a vast amount of information each month. This includes not only the information ordered by the Court, but also certifications by Defendants' CEOs concerning PI compliance and internal controls, any agreements entered into between Defendants, and PI compliance complaints submitted through central reporting mechanisms. Particularly given these areas of agreement, Plaintiffs' request for Defendants to also collect and log *all* communications between Nexstar's and TEGNA's directors and senior executives is unnecessary and unduly burdensome. *First*, Defendants are changing TEGNA's board in compliance with the Court's order, so prior board communications are not representative of Nexstar-TEGNA communications going forward. *Second,* there is nothing inherently suspect in Defendants communicating with each other: Nexstar has certain oversight rights and obligations over TEGNA as set forth in PI Paragraph 11, which cannot be exercised without communication; Defendants' executives also communicate with each other in the presence of outside counsel about this litigation and PI compliance; like all broadcasters Defendants at times communicate about potential arms-length agreements; and like all broadcasters Defendants at times communicate regarding broadcast industry issues. It would be unduly burdensome, and would not advance PI compliance, to log all written and

oral communications between Nexstar and TEGNA directors and executives on such matters. *Third*, Plaintiffs have noted in meet and confers that they are seeking the log because they see it as a basis for further discovery requests. But the Court declined to order such a log just weeks ago, *compare* ECF No. 269-20 at 1–2 *with* ECF No. 292 at 14, and there is no basis for a different outcome now. Instead, any concerns about additional information are best addressed by empowering the Special Master to expand the monthly reporting requirements.

**2. Agreements Discussed Between Nexstar and TEGNA Senior Management (Paragraph 4.d)**

Plaintiffs' Proposal (includes the bracketed text): a list of any agreement entered into between Nexstar and TEGNA during the reporting period *[or discussed between Nexstar Senior Management and TEGNA Senior Management]*, including (i) copies of any final, written agreements; (ii) for oral agreements, a summary of material terms; and (iii) a statement explaining why each arrangement entered into—whether oral or written—is believed to be arm's length and consistent with the Preliminary Injunction;

Defendants' Proposal (omits the bracketed text): a list of any agreement entered into between Nexstar and TEGNA during the reporting period, including (i) copies of any final, written agreements; (ii) for oral agreements, a summary of material terms; and (iii) a statement explaining why each arrangement entered into—whether oral or written—is believed to be arm's length and consistent with the Preliminary Injunction;

**Supporting Statements**

Plaintiffs' Supporting Statement: Defendants' refusal to disclose discussions between Nexstar and TEGNA concerning potential agreements is problematic for reasons similar to its refusal to log communications between members of Nexstar and TEGNA senior management. Nexstar and TEGNA discussed multiple agreements during the hold-separate period, some of which were far from "routine" and go directly to the anticompetitive harm in this case by blending operations. *See, e.g.*, ECF 279-11, 279-14 (Sealed). Defendants' recent productions have revealed the existence of even more troubling discussions. Plaintiffs need visibility into these discussions to ensure that Defendants are complying with the Preliminary Injunction.

To address Defendants' concern about the burden of gathering conversations about potential agreements that occur at the station level, Plaintiffs proposed a compromise: Defendants would have to disclose only discussions between Nexstar's and TEGNA's senior management concerning potential transactions. That proposal would minimize any burden on Defendants while still capturing discussions about the most significant transactions. Defendants again refused, asserting that some of these

proposals may ultimately be abandoned on advice of counsel. That is no reason for categorically refusing to disclose the *existence* of these potential agreements and the fact of their discussion. Any privilege concerns can be addressed by the Special Master.

Plaintiffs should not have to wait until such agreements are executed to learn of them—particularly given Defendants' history of consummating transactions before judicial review can occur. The Preliminary Injunction seeks to preserve the status quo and prevent harm from integration, not merely to provide Plaintiffs notice after problematic arrangements have already been finalized.

<u>Defendants' Supporting Statement</u>: Defendants—like all broadcasters—at times consider whether to enter into arms-length agreements with each other. For example, broadcast stations in the same locality often enter into agreements to jointly host debates for local elections, or for helicopter shares in large markets, or when courts order a camera pool for a high-profile trial. Defendants will disclose such agreements, and any others entered into between Nexstar and TEGNA, and will explain why they believe those agreements are arms-length. *See* Paragraph 4.d. The dispute is whether Defendants should also disclose agreements "discussed" by Nexstar and TEGNA Senior Management but not entered into. Such disclosure is unduly burdensome and would improperly invade Defendants' attorney-client and common interest privileges. *First*, for agreements not reached, there would be nothing formal to produce. Instead, disclosure would presumably require a description of the individuals involved, and the general terms discussed, for agreements that were never reached. *Second*, depending on how far the discussions went, Defendants may well not be able to identify all material terms of the potential agreements. *Third*, and critically, Defendants must evaluate potential agreements for consistency with the PI, to ensure that they are arms-length, before entering into them. Such review involves the provision of legal advice by in-house and outside legal counsel. It would be inappropriate for Defendants to be forced to disclose potential agreements that they declined to enter into at the advice of counsel. *Greer v. County of San Diego*, 127 F.4th 1216, 1225 (9th Cir. 2025) ("A lawyer's recommendations on both liability for past events and avoidance of future liability-creating events constitute legal advice." (emphases omitted)). For all these reasons, Defendants should disclose actual agreements but not agreements that were merely discussed and never reached.

**3. Defendants' Internal Mechanisms for PI Compliance Complaints (Paragraph 4.e)**

Plaintiffs' Proposal: copies of complaints received by Nexstar or TEGNA during the reporting period through their central reporting mechanism that allege failure to comply with the Preliminary Injunction, where the central reporting mechanism is either agreed to by both parties or, if not agreed to by both parties, decided by the Special Master

Defendants' Proposal: disclosure of any complaints regarding PI compliance received during the reporting period via reporting mechanisms that Nexstar and TEGNA shall establish within 20 days of this order, as well as any corrective actions taken. Upon instituting the reporting mechanisms, Defendants shall also provide a description of their features to Plaintiffs and to the Special Master, without disclosing any privileged content or advice

**Supporting Statements**

Plaintiffs' Supporting Statement: Defendants should be required to disclose complaints they receive concerning compliance with the Preliminary Injunction. Such complaints may provide an important—and otherwise unavailable—source of evidence regarding potential violations. Defendants' concerns about the burden of this requirement suggest that Defendants do not currently have a centralized process for receiving, preserving, and escalating such complaints, which is itself troubling.

Plaintiffs proposed that the parties jointly develop a protocol for employees to submit such complaints to a centralized repository, but Defendants insisted on unilateral control. Given the nature of Defendants' conduct to date, Plaintiffs cannot agree to a one-sided mechanism designed solely by Defendants with no assurance that it will adequately capture and preserve relevant complaints. Plaintiffs therefore propose that the parties first attempt to agree on a reporting protocol. If the parties cannot agree, then the Special Master can resolve the dispute.

Defendants' Supporting Statement: Defendants have agreed to implement internal reporting mechanisms that will solicit PI-related complaints from their employees, and to disclose such complaints on a monthly cadence, along with any corrective actions taken. Defendants will also

provide a description of the features of the reporting mechanisms that they establish. But these mechanisms will reflect advice of counsel, including as to what instructions and protections are communicated to employees in the course of soliciting complaints. Defendants should not be forced to disclose any privileged content contained in the solicitation of complaints from their employees. *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981) (reversing narrow interpretation of attorney-client privilege that "threatens to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law"); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1244 (D. Or. 2019) ("[C]ommunications [that] were sent to or from counsel seeking or providing actual legal advice . . . would be privileged."). There is no good basis for Plaintiffs to access to such information, or to design the means by which Defendants communicate with their own employees to solicit compliance-related complaints. Rather, if the Special Master finds it appropriate to review such information (either of his own volition or at Plaintiffs' urging), he can do so in "in camera reviews necessitated by issues of privilege," as contemplated by agreed-upon Paragraph 12, and issue any rulings or instructions to Defendants upon such in camera review.

**4. Special Master's Authority to Find Compliance Violations and Recommend Contempt Sanctions or Clarifications**

**(proposed additions to Paragraphs 5 and 17)**

Plaintiffs' Proposed Addition to Paragraph 17: The Special Master may not recommend contempt sanctions, make ultimate findings as to whether Defendants are in compliance with the Preliminary Injunction, modify the Preliminary Injunction, or consider requests to modify or clarify the Preliminary Injunction, which must be raised with the Court in the first instance.

Defendants' Proposed Addition to Paragraph 5: If the Special Master finds, after notice and the opportunity to be heard, that the Preliminary Injunction has been violated, the Special Master may order that corrective action be taken. If the Special Master is unable to determine whether conduct is prohibited by the Preliminary Injunction, the Special Master may recommend to the District Court to issue a clarification. The Court shall have exclusive authority to clarify or modify the Preliminary Injunction and to review any compliance finding made by the Special Master.

**Supporting Statements**

Plaintiffs' Supporting Statement: Plaintiffs' proposal maintains the Court's role in interpreting and enforcing its own order. The Preliminary Injunction is an order of this Court. Accordingly, under Plaintiffs' proposal, the Court will decide in the first instance what its Preliminary Injunction means, whether Defendants have violated it, what corrective action is appropriate, and whether it should be clarified or modified. Pursuant to this Court's August 6, 2026 Order, the Special Master will assist the Court "to oversee compliance with the preliminary injunction as clarified and any compliance discovery disputes." ECF 292 at 14. Consistent with that order, Plaintiffs' proposal authorizes the Special Master to oversee discovery related to compliance and monitor compliance by collecting facts about Defendants' conduct and reporting them to the Court.

Defendants' proposal that the Special Master, not this Court, should in the first instance interpret the Preliminary Injunction and decide whether Defendants' conduct complies is inconsistent with the Court's directives that Defendants seek any such determination directly from the Court. At the preliminary-injunction hearing, "the Court specifically instructed Defendants to seek relief from this

Court if Defendants needed additional authority to ensure TEGNA's continued operations." ECF 292 at 7. And in its August 6, 2026 Order, the Court ordered that, "[t]o the extent Defendants seek to appoint an individual with a material relationship to Nexstar on TEGNA's Board, they shall first seek relief from the Court to do so." *Id.* at 13.

Plaintiffs are mindful of the judicial emergency in this District, but Defendants have no sound explanation for why the Special Master is better placed to interpret the Court's own Preliminary Injunction. Presenting disputes about the meaning of this Court's Order and whether Defendants are violating it directly to the Court will avoid delays that could enable Defendants to cause irreparable harm while the dispute is pending.

<u>Defendants' Supporting Statement</u>: Although this issue is addressed fourth in this submission, it is structurally the most important. The Special Master should be empowered to make initial determinations about PI compliance and to order corrective actions. Rule 53, which allows for the appointment of a Special Master, was motivated in part by a desire to "alleviate the burdens on the district judge." Charles Alan Wright & Arthur R. Miller, 9C Federal Practice & Procedure § 2602.1 (3d ed. 2026). In its August 6 Clarification Order, the Court recognized a need for a compliance monitor to alleviate burden on the Court. ECF No. 292 at 12. Without the power to opine on compliance in the first instance, the Special Master would be a compliance monitor in name only. Until recently, Plaintiffs agreed such power was necessary. Indeed, in their initial proposal for the Proposed Order, Plaintiffs included language that "[i]f the Special Master finds that the Preliminary Injunction has been violated, the Special Master may order that corrective action be taken and recommend a contempt sanction pursuant to Federal Rule of Civil Procedure 53(c)." This language should remain part of the Special Masters' role. In addition, if the Special Master is unable to determine based on the language of the PI whether certain conduct violates the PI, he should be able to recommend that the Court clarify the PI further. Because all Special Master decisions would be reviewable by the Court, under the default standards of review provided by Rule 53 (including de novo review of factual findings

and legal conclusions), and the Court would retain sole authority to clarify or modify the PI, nothing in Defendants' proposal would cabin the Court's power. It would simply allow the Special Master to carry out the role of compliance monitor in the first instance.

**5. Ex Parte Communications Between the Court and the Special Master (Paragraph 11)**

Plaintiffs' Proposal: The Special Master shall be permitted to communicate ex parte with the Court as necessary for administrative purposes, including but not limited to facilitating the filing of any report or recommendation or receiving copies of court filings or transcripts. Otherwise, all communication with the Court by the Special Master should be in writing and either filed on the docket or made in the presence of the parties.

Defendants' Proposal: If the Court deems such communications to be helpful and appropriate, the Special Master shall be permitted to communicate ex parte with the Court.

**Supporting Statements**

Plaintiffs' Supporting Statement: The Advisory Committee Notes to Rule 53 recognize that ex parte communications "between a master and the court present troubling questions" and explain that an order appointing a special master should "[o]rdinarily . . . prohibit such communications." Fed. R. Civ. P. 53 advisory committee's note to 2003 amendment. Plaintiffs submit that this sensible rule should apply here. That will ensure a complete record of communications that may bear on the Special Master's or the Court's decisions and that all parties have full notice of the basis for such decisions and a fair opportunity to address them. Plaintiffs, of course, recognize that it may be necessary for the Special Master to confer with the Court regarding administrative or procedural matters, but Defendants identify no need for broader ex parte communications. *See, e.g.*, *Batta Fulkerson, LLP v. Bulldog Law, P.C.*, No. 25-cv-00551-AGS-GC, ECF 76 at 3 (S.D. Cal. Apr. 22, 2026) (allowing special master to communicate with the Court as necessary about procedural matters but otherwise requiring that all communications be "filed on the docket or in the presence of the parties"). Under the proposed order, the Special Master will communicate regularly with the Court through monthly reports and any interim reports he deems appropriate, ensuring that the Court has insight into the Special Master's activities and carrying out of his duties.

Defendants' Supporting Statement: Defendants are not insisting that the Court have ex parte communications with the Special Master. But Defendants do not object to, and are not looking to proscribe, such communications if the Court would find them helpful. The Special Master is being appointed to assist the Court. The parties cannot anticipate whether, in addition to the Special Master's monthly reports, the Court would wish to have informal discussions with the Special Master. Defendants see no reason to limit the Court's ability to do so. Although the Advisory Committee Notes to Rule 53 state that ex parte communications between the Special Master and the Court can present troubling questions, Defendants—the entities being monitored, and the ones who are at risk of potential adverse findings—would rather the Court have unfettered access to the Special Master. Indeed, the Notes recognize that "there may be circumstances in which the master's role is enhanced by the opportunity for ex parte communications with the court." The Notes also recognize that Rule 53 "does not directly regulate" this issue and calls on the Court to "exercise its discretion and address the topic in the order of appointment." Defendants would proceed as other courts routinely do, *see, e.g.*, Order Appointing Special Master at 3–4, ECF No. 35, *SinglePoint Direct Solar, LLC v. Curiel*, No. 2:21-cv-01076-JAT (D. Ariz. Jul. 14, 2021), ECF No. 35; Order Appointing Special Master at 2, *Fraihat v. U.S. Immigration and Customs Enforcement*, No. 5:19-cv-01546-JGB-SHK (C.D. Cal. Apr. 19, 2021), ECF No. 292, and allow ex parte communication between the Special Master and the Court if the Court would find that helpful.

**6. Responsibility for Costs**

**(Paragraph 16)**

Plaintiffs' Proposal: Pursuant to Fed. R. Civ. P.53(g)(3), as set forth in the Court's Order (ECF No. 292), the Court finds that Defendants' conduct has necessitated appointment of a Special Master. Accordingly, unless otherwise ordered by the Court, Defendants shall be solely responsible for the Special Master's fees and costs, as well as the fees and costs incurred by any assistants hired by the Special Master pursuant to Section 15 of this Order.

Defendants' Proposal: Pursuant to Fed. R. Civ. P.53(g)(3), Defendants shall cover 75 percent of the Special Masters' compensation and assistant costs, while Plaintiffs shall cover the remaining 25 percent.

**Supporting Statements**

Plaintiffs' Supporting Statement: Defendants should bear the Special Master's fees and costs in full because their conduct alone necessitated the appointment. *See* Fed. R. Civ. P. 53(g)(3) (courts should consider "the extent to which any party is more responsible than other parties for the reference to a master"); *see also Batta Fulkerson, LLP v. Bulldog L., P.C.*, 2026 WL 2088004, at *16 (S.D. Cal. July 20, 2026) (allocating all costs to party "solely responsible"); *Guardant Health, Inc. v. Natera, Inc.*, 2026 WL 1401006, at *3 (N.D. Cal. May 19, 2026) (same).

"Defendants could have waited seven days to complete the acquisition or begin integration efforts until after this Court ruled on Plaintiffs' motions for TRO," ECF 172 at 46, but they refused. After the Court ordered Defendants to hold separate, Defendants made the "shocking" decision to stack TEGNA's Board with Nexstar's C-Suite, ECF 292 at 6, while exhibiting a "brazen . . . lack of candor," *id.* at 8. The Court tied the need for monitoring to that misconduct: "[T]he Court has found Defendants' actions violated the preliminary injunction as clarified. *Therefore*, ongoing compliance monitoring and discovery is warranted in this case to ensure adherence to the preliminary injunction, *particularly in light of Defendants' lack of candor*." *Id.* at 12 (emphasis added).

Plaintiffs should not subsidize the costs of Defendants' wrongdoing. Defendants' concern that Plaintiffs may unnecessarily increase the Special Master's fees is speculative and meritless. Plaintiffs

have no incentive to waste their own time and resources—especially after Defendants' misconduct has already forced Plaintiffs to expend substantial resources. Costs should fall where responsibility lies: with Defendants, not Plaintiffs.

If the Court is inclined to require Plaintiffs to bear any portion of the Special Master's fees, Plaintiffs respectfully request that the Court refer compliance-related discovery to the Magistrate Judge.

<u>Defendants' Supporting Statement</u>: Defendants support the appointment of the Special Master regardless of how the Court allots the costs. Rule 53(g)(3) leaves to the Court's discretion how to allocate costs among the parties. Defendants are mindful of the Court's statements in its Order clarifying the PI, and are not recommending an even split of the costs. But Defendants respectfully note that they initially brought the Special Master idea to the Court's attention and argued in favor of a Special Master appointment regardless of the outcome of the Court's Order clarifying the PI. As such, Defendants do not view the appointment of a Special Master as a punitive measure. Moreover, Defendants submit that some degree of financial participation by Plaintiffs—who include a private party with far greater assets than Defendants, as well as 13 States—would best incent all parties to engage with the Special Master process reasonably and efficiently. Defendants would not dictate how Plaintiffs allot their share of the costs among themselves, but just propose that Plaintiffs collectively be responsible for 25 percent of the costs.

Dated: August 20, 2026

FOR DEFENDANTS:

*/s/ Beth A. Wilkinson*
Beth Wilkinson (*pro hac vice*)
Kosta Stojilkovic (*pro hac vice*)
Sarah Neuman (*pro hac vice*)
Jenna P. Swarbrick (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
kstojilkovic@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com
jpswarbrick@wilkinsonstekloff.com

Emily A. Clarke (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
eclarke@wilkinsonstekloff.com

Alexander P. Okuliar (*pro hac vice*)
Bradley S. Lui (CA Bar No. 143088)
Joseph Charles Folio III (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
Alexa Rae DiCunzolo (*pro hac vice*)
Rita Xia (*pro hac vice*)
**MORRISON & FOERSTER LLP**
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 912-2329
AOkuliar@mofo.com
BLui@mofo.com
JFolio@mofo.com
RManoso@mofo.com
ADiCunzolo@mofo.com
RXia@mofo.com

Michael B. Miller (*pro hac vice*)
William C. McCaughey (*pro hac vice*)
**MORRISON & FOERSTER LLP**
250 West 55th Street New York, NY 10019
Telephone: (212) 468-8000

Facsimile: (212) 903-3720
MBMiller@mofo.com
WMcCaughey@mofo.com

Eliot A. Adelson (CA Bar No. 205284)
Daralyn J. Durie (CA Bar No. 169825)
Adam R. Brausa (CA Bar No. 298754)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
EAdelson@mofo.com
DDurie@mofo.com
ABrausa@mofo.com

Sean Paul Gates (CA Bar No. 186247)
**ILLOVSKY GATES & CALIA LLP**
155 N Lake Ave Ste 800
Pasadena, CA 91101
Telephone: (626) 508-1715
Facsimile: (626) 508-1730
sean@illovskygates.com

*Attorneys for Defendants Nexstar Media Group, Inc. and TEGNA Inc.*

FOR PLAINTIFF DIRECTV:

*<u>/s/ Glenn D. Pomerantz</u>*

Glenn D. Pomerantz (State Bar No. 112503)
glenn.pomerantz@mto.com
Kuruvilla J. Olasa(State Bar No. 281509)
kuruvilla.olasa@mto.com
Robert E. Bowen (State Bar No. 335932)
robert.bowen@mto.com
Lauren Beck (State Bar No. 343375)
lauren.beck@mto.com
Liam Gennari (State Bar No. 350177)
liam.gennari@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Justin P. Raphael (State Bar No. 292380)
justin.raphael@mto.com

Carson J. Scott (State Bar No. 339868)
carson.scott@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Xiaonan April Hu (State Bar No. 321354)
april.hu@mto.com
Lauren E. Ross (pro hac vice)
Lauren.Ross@mto.com
Brandon H. Thomas (State Bar No. 334240)
brandon.thomas@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

McGregor Scott (State Bar No. 142413)
mscott@kslaw.com
KING & SPALDING LLP
621 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone: (916) 321-4800

Olivier N. Antoine (*pro hac vice*)
oantoine@kslaw.com
Laura Harris (*pro hac vice*)
lharris@kslaw.com
Joshua Hazan (*pro hac vice*)
jhazan@kslaw.com
Ryan D. Tansey
rtansey@kslaw.com (*pro hac vice*)
Sean Murray (*pro hac vice*)
smurray@kslaw.com
Arthur B. Schoen (*pro hac vice*)
aschoen@kslaw.com
Briana Merritt (*pro hac vice*)
bmerritt@kslaw.com
KING & SPALDING LLP
1290 Avenue of the Americas, 14th Floor
New York, New York 10104
Telephone: (212) 556-2100

M. Sean Royall (*pro hac vice*)
sroyall@kslaw.com
Emily Blackburn (*pro hac vice*)
eblackburn@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500

Michael D. Nilsson (*pro hac vice*)
mnilsson@hwglaw.com
Jared Paul Marx (*pro hac vice*)
jmarx@hwglaw.com
Kathleen Weng (*pro hac vice*)
kweng@hwglaw.com
HWG LLP
1919 M St. NW, Eighth Floor
Washington, D.C. 20036
Telephone: (202) 730-1334

*Attorneys for Plaintiff DIRECTV, LLC*

FOR PLAINTIFF STATE OF CALIFORNIA:

ROB BONTA
Attorney General of California

*/s/ Laura Antonini*
Laura Antonini
Deputy Attorney General
Paula Blizzard (SBN 207920)
Senior Assistant Attorney General
Brent K. Nakamura (SBN 283572)
Supervising Deputy Attorney General
Elizabeth Cheever (SBN 341421)
Emily C. Curran (SBN 293065)
Jennifer K. Hane (SBN 275729)
Connie P. Sung (SBN 304242)
Brian D. Wang (SBN 284490)
Henry J. Hauser (SBN 286744)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Laura.Antonini@doj.ca.gov
Brent.Nakamura@doj.ca.gov

Shaoul Sussman (*Admitted Pro hac vice*)
Nico Gurian (*Admitted Pro hac vice*)
Braden Fain (*Admitted Pro hac vice*)
Victoria M. O. Field (*Admitted Pro hac vice*)
Paul M. Goorich (*Admitted Pro hac vice*)
Simonsen Sussman LLP
307 W. 38th St., 16th Fl.
New York, NY 10018
Telephone: (646) 693-3929

Email: shaoul@simonsensussman.com
nico.gurian@simonsensussman.com
victoria.field@simonsensussman.com
paul.goodrich@simonsensussman.com
braden.fain@simonsensussman.com

Catherine S. Simonsen (SBN 307325)
Thomas G. Mattes (SBN 355010)
Simonsen Sussman LLP
418 Bamboo Ln., Suite C-18
Los Angeles, CA 90012
Telephone: (917) 747-5196
Email: catherine@simonsensussman.com
thomas.mattes@simonsensussman.com

Nicolas A. Stebinger (*Admitted Pro hac vice*)
Victoria R. Sims (*Admitted Pro hac vice*)
Simonsen Sussman LLP
1629 K St. NW, Suite 300
Washington, DC 20006
Telephone: (202) 384-3130
Email: nicolas@simonsensussman.com
victoria.sims@simonsensussman.com

FOR PLAINTIFF STATE OF COLORADO:

PHILIP J. WEISER
Attorney General

*/s/ Bryn Williams*
Bryn A. Williams
First Assistant Attorney General
Jonathan B. Sallet (*Admitted pro hac vice*)
Special Assitant Attorney General
Robin Alexander (*Admitted pro hac vice*)
Assistant Attorney General
Amy Bowles (*Admitted pro hac vice*)
Assistant Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 702- 508-6000
Email: Bryn.Williams@coag.gov
Jon.Sallet@coag.gov
Robin.Alexander@coag.gov
Amy.Bowles@coag.gov

*Attorneys for Plaintiff State of Colorado*

FOR PLAINTIFF STATE OF CONNECTICUT:

WILLIAM TONG
Attorney General of Connecticut

NICOLE DEMERS
Deputy Associate Attorney General
(*Admitted pro hac vice*)

*/s/ Julián A. Quiñones Reyes*
Julián A. Quiñones (*Admitted pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: Julian.Quinones@ct.gov

*Attorney for Plaintiff State of Connecticut*

FOR PLAINTIFF STATE OF ILLINOIS:

KWAME RAOUl
Attorney General of Illinois

*/s/ Paul J. Harper*
Paul J. Harper (*Admitted pro hac vice*)
Supervising Attorney, Antitrust Bureau

Elizabeth L. Maxeiner (*Admitted pro hac vice*)
Chief, Antitrust Bureau
John R. Milligan (*Admitted pro hac vice*)
Daniel R. Betancourt (*Admitted pro hac vice*)
Assistant Attorneys General
Office of the Attorney General of Illinois
115 S. LaSalle Street
Chicago, Illinois 60603
Telephone: (312) 814-1004
Email: Paul.Harper@ilag.gov

*Attorneys for Plaintiff State of Illinois*

THEODORE E. ROKITA
Attorney General of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart, Att. No.25474-82
Chief Counsel and Director of Consumer Protection
(*Admitted pro hac vice*)
Jacob Patterson, Atty. No. 38302-29
Deputy Attorney General (*Admitted pro hac vice*)

OFFICE OF INDIANA ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN 46204
Telephone: 317-232-4956
Fax: 317-232-7979
Email: Jesee.Moore@atg.in.gov

*Counsel for Plaintiff State of Indiana*

FOR PLAINTIFF STATE OF KANSAS

KRIS KOBACK
Attorney General of Kansas

*/s/ John Harris*
John Harris (*Admitted pro hac vice*)
Christopher Teters (*Admitted pro hac vice*)
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: 785-296-2215
Email: John.Harris@ag.ks.gov
Chris.Teters@ag.ks.gov

*Attorneys for Plaintiff State of Kansas*

FOR PLAINTIFF COMMONWEALTH OF MASSACHUSETTS:

ANDREA JOY CAMPBELL
Attorney Genaral of Massachusetts

*/s/ Anthony W. Mariano*
Anthony W. Mariano (*Admitted pro hac vice*)
Chief, Antitrust Division
Jennifer E. Greaney (*Admitted pro hac vice*)
Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
Telephone: 781-835-7990
Email: Anthony.Mariano@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General of New York

*/s/ Elinor R. Hoffmann*
Elinor R. Hoffmann (*Admitted pro hac vice*)
Chief, Antitrust Division
Christopher D' Angelo (*Admitted pro hac vice*)
Deputy Chief Attorney General
Economic Justice Division
Amy McFarlane (*Admitted pro hac vice*)
Deputy Chief, Antitrust Bureau
Morgan Feder (*Admitted pro hac vice*)
Assistant Attorney General, Antitrust Bureau
Jaya Mantovani (*Admitted pro hac vice*)
Attorney General Fellow
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Elinor.Hoffmann@ag.ny.gov | 212-416-8269
Christopher.D'Angelo@ag.ny.gov | 212-416-6124
Amy.McFarlane@ag.ny.gov | 212-416-6195
Morgan.Feder@ag.ny.gov | 212-416-8288
Jaya.Mantovani@ag.ny.gov | 212-416-8284

*Attorneys for Plaintiff State of New York*

FOR PLAINTIFF STATE OF NORTH CAROLINA

JEFF JACKSON
Attorney general of North Carolina

KUNAL CHOKSI (*Admitted pro hac vice*)
Senior deputy attorney general

*/s/ Francisco Benzoni*
Francisco Benzoni (*Admitted pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (*Admitted pro hac vice*)
Director of Major Litigation for Consumer Protection
114 W. Edenton Street
Raleigh, NC 27603
Telephone: 919-716-6000
Email: Fbenzoni@ncdoj.gov
Brabinovitz@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina*

FOR PLAINTIFF STATE OF OREGON:

DAN RAYFIELD
Attorney General of Oregon

*/s/ Alex DeLorenzo*
Timothy D. Smith (*Admitted pro hac vice*)
Attorney-in-Charge
Ian Van Loh (SBN 280254)
Alex DeLorenzo (*Admitted pro hac vice*)
Senior Assistant Attorneys General
Economic Justice Section
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tim.Smith@doj.oregon.gov | 503-798-3297
Ian.Vanloh@doj.oregon.gov | 971-239-7457
Alex.Delorenzo@doj.oregon.gov | 503-428-9482

*Attorneys for Plaintiff State of Oregon*

FOR PLAINTIFF COMMONWEALTH OF PENNSYLVANIA:

DAVID W. SUNDAY, JR.
Attorney General of Pennsylvania

*/s/ Tracy W. Wertz*
Tracy W. Wertz (*Admitted pro hac vice*)
Chief Deputy Attorney General
Antitrust Section
Email: twertz@attorneygeneral.gov

Joseph S. Betsko (*Admitted pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Email: jbetsko@attorneygeneral.gov

Jennifer A. Thomson (*Admitted pro hac vice*)
Senior Deputy Attorney General
Antitrust Section
Email: jthomson@attorneygeneral.gov

Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Phone: 717-787-4530

*Attorneys for Plaintiff Commonwealth of Pennsylvania*

FOR PLAINTIFF STATE OF VERMONT:

CHARITY R. CLARK
Attorney General of Vermont

*/s/ Sarah L. J Aceves*
Sarah L. J. Aceves (*Admitted pro hac vice*)
Assistant Attorney General
Public Protection and Antitrust Unit
Office of the Attorney General of Vermont
109 State Street
Montpelier, VT 05676
Telephone: 802-828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

FOR PLAINTIFF COMMONWEALTH OF VIRGINA

JAY JONES
Attorney General of Virginia

*/s/ Tyler T. Henry*
Tyler T. Henry (*Admitted pro hac vice*)
Senior Assistant Attorney General
Antitrust Unit
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: 804-692-0485
Email: THenry@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia*

**FILER'S ATTESTATION**

As the ECF user whose user ID and password are utilized in the filing of this document, I attest that concurrence in the filing of the document has been obtained from each of the other signatories.

*/s/ Beth A. Wilkinson*
Beth A. Wilkinson (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
*bwilkinson@wilkinsonstekloff.com*