*[Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re Nexstar-TEGNA Merger Litigation | Case No. 2:26−cv−00976−TLN−CKD<br><br>**JOINT STATEMENT OF DISCOVERY DISPUTE REGARDING PLAINTIFFS' INTERROGATORY NO. 3**<br><br>Judge: Hon. Troy L. Nunley (assigned to Chief Magistrate Judge Carolyn K. Delaney for discovery matters)<br>Trial Date: July 6, 2027<br>Action Filed: March 18, 2026<br>Hearing Date: October 7, 2026<br>Time: 10:00 a.m.<br>Courtroom: 24, 8th Floor |

Pursuant to Local Rule 251, Plaintiff States and DIRECTV ("Plaintiffs") and Defendants Nexstar Media Group, Inc. and TEGNA Inc. ("Defendants") submit this Joint Statement regarding a dispute over Defendants' response to an interrogatory served by Plaintiffs. Defendants have objected to providing a complete response to that interrogatory until expert discovery. To try and resolve the dispute, the parties met and conferred by videoconference on July 21, 2026 and September 17, 2026 as well as by numerous emails and letters in July, August, and September. However, the parties were unable to resolve the dispute.

## I. THE DISCOVERY AT ISSUE

**INTERROGATORY NO. 3:** Identify any and all Efficiencies[1] that You contend the TEGNA Transaction will or may achieve that could not be achieved absent the TEGNA Transaction and, for each such Efficiency, describe how Nexstar plans to achieve the Efficiency and state the factual basis for Your contention that the Efficiency could not be achieved absent the TEGNA Transaction.

**RESPONSE TO INTERROGATORY NO. 3:** In addition to their General Objections and Objections to Instructions and Definitions,[[2]] Defendants object to this Interrogatory because it prematurely seeks information that will be the subject of expert testimony and is thus an improper attempt to preempt the expert disclosure schedule. Defendants also object to this Interrogatory as a premature contention interrogatory because there are five months left in fact discovery, Plaintiffs are still producing documents that are responsive to Defendants' discovery requests, third-party discovery is just beginning, and no depositions have been taken.

Defendants further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, the joint defense privilege, or any other applicable privilege or protective doctrine. No such privileged information will be disclosed.

Defendants further object to this Interrogatory on the grounds that it seeks competitively sensitive and proprietary information regarding Defendants' business strategies, financial projections, and integration plans, and that production of such information to Plaintiff DIRECTV— a direct competitor that negotiates retransmission consent fees with Defendants— would cause severe competitive harm. Defendants further object to this Interrogatory on the grounds that responsive information has already been provided in the Investigation Materials,

---

[1] As used in this Interrogatory, "Efficiency" or "Efficiencies" means any purported increase in productivity or competitiveness; reduction in costs; elimination of duplicative functions; achievement of economies of scale; increase in output or quality; the introduction of a new product or service; or product or service improvements as a result of the merger or acquisition, including any of the foregoing related to local news, advertising or competition against streaming services or technology companies.

[2] Defendants' General Objection No. 5 reads: "Defendants object to the Definition of 'Efficiency' or 'Efficiencies' as overbroad, irrelevant, and unduly burdensome to the extent it includes efficiencies that Defendants do not claim as a result of the TEGNA Transaction. Defendants further object to the extent Plaintiffs' definition of 'Efficiency' or 'Efficiencies' falls outside the scope of the ordinary legal meaning ascribed to the terms and defined in federal case law."

including documents produced in response to Second Request Specification 46 addressing anticipated efficiencies, cost savings, and synergies expected from the TEGNA Transaction, and is encompassed by DIRECTV's Requests for Production No. 10 to Nexstar and to TEGNA, and Plaintiff States' Requests for Production No. 37 to Nexstar and to TEGNA, seeking documents relating to efficiencies, cost savings, and procompetitive benefits. Such documents include NXSTDOJ-VAL-000000181, NXST-DOJ-VAL-000000367, NXST-DOJ-VAL-000000371, NXSTDOJ-VAL-000000433, NXST-DOJ-VAL-000000444, NXST-DOJ-VAL-000000297, NXSTDOJ-VAL-000000435, and Nexstar's public August 2025 "Acquisition of TEGNA Inc." deck. Responding to this Interrogatory in the form requested would therefore be duplicative and disproportionate to the needs of the case.

Defendants reserve the right to supplement their response to this contention Interrogatory, including based on ongoing factual discovery, and through the provision of expert reports appropriately submitted pursuant to the schedule for expert discovery.

## II. PLAINTIFFS' POSITION

This is an antitrust action by Plaintiff States and DIRECTV to enjoin defendant Nexstar—the largest owner of local broadcast television stations in the country—from acquiring defendant TEGNA, the second largest owner of local English-language broadcast television stations in the country. Defendants have asserted the following affirmative defense:

> The combination of Nexstar's business with TEGNA's business will result in substantial acquisition-specific efficiencies.

Dkt. No. 227 at 29; Dkt. No. 228 at 25. Defendants must have had a good-faith basis to assert that such efficiencies, in fact, exist. Yet Defendants refuse to answer an interrogatory asking them to identify the efficiencies because an expert will address that topic. That is not a valid objection. "It may be that a party's experts will rely on facts to support the party's contentions, but it is not a valid objection to claim that interrogatories asking about facts and contentions constitute 'premature' expert discovery." *FTC v. Meta Platforms, Inc.*, No. CV 20-3590 (JEB), 2023 WL 3092651 (D.D.C. Apr. 26, 2023) (granting motion to compel defendant in merger case to identify "'each' procompetitive benefit" of mergers). A contrary ruling here would unfairly limit Plaintiffs' ability to conduct fact discovery on Defendants' affirmative defense. When it comes to efficiencies, "much of the information relating to efficiencies is uniquely in the possession of the merging firms." *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1060 (5th Cir. 2023) (citation omitted). Courts have thus relied on fact discovery to reject expert testimony on efficiencies. To take fact discovery that would rebut efficiencies in the same way, Plaintiffs must know what efficiencies Defendants are claiming.

Defendants should know what efficiencies they are claiming. Defendants announced their

merger more than a year ago. They should have known then, and certainly should know by now, the facts about what efficiencies the merger supposedly would generate. Indeed, from August 2025 when they announced their merger through May of this year when they filed their answers, Defendants have asserted that the merger would help them compete. If those statements had any basis, then Defendants must identify it. Defendants' refusal to do so suggests that their pronouncements were corporate speak and that their experts are trying to invent justifications for the merger after the fact. Defendants must either identify their claimed efficiencies so that Plaintiffs can test them through fact discovery or admit that they still do not know how the merger will generate efficiencies that could help them compete.

**A. Background**

Plaintiffs allege that Nexstar's acquisition of TEGNA would violate Section 7 of the Clayton Act, which prohibits mergers where "the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. Plaintiffs allege that the merger would enable Nexstar to increase the fees that it charges cable and satellite television distributors for the right to carry its stations affiliated with ABC, CBS, Fox and NBC (the "Big Four" networks), which in turn will result in higher television bills for millions of Americans who subscribe to cable and satellite television services. Plaintiffs further allege that the merger will reduce output, quality and variety of local news because Defendants would shut down newsrooms and lay off journalists in local markets where they would own two Big Four stations. *See* Dkt. No. 14-47 at 6.

Chief Judge Nunley found that Plaintiffs are likely to succeed on the merits and issued a preliminary injunction requiring Nexstar to hold TEGNA separate and maintain it as an independent competitor pending trial. Dkt. No. 172. Chief Judge Nunley later found that Defendants "violated the preliminary injunction as clarified," Dkt. No. 292 at 12, through their "shocking" and "brazen" decision to appoint Nexstar executives to the Board of TEGNA. *Id.* at 6, 8.

**B. Argument**

Plaintiffs' interrogatory seeks the basis for the efficiencies defense that Defendants have affirmatively pled in their answers. Defendants are wrong that the interrogatory is premature.

"An interrogatory is not objectionable merely because it asks for an opinion or contention

that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). Although "the court may order that the interrogatory need not be answered until designated discovery is complete," *id.*, Rule 33 does not prohibit contention interrogatories prior to the close of fact discovery. For example, courts have held that a "party may obtain answers to contention interrogatories" *either* "after substantial discovery is completed or if it shows that obtaining answers now would contribute meaningfully to" (among other things) "clarifying the issues in the case" and "narrowing the scope of the dispute," *Resh, Inc. v. Skimlite Mfg. Inc.*, No. 22-cv-01427-EJD (VKD), 2022 WL 16935625, at *1 (N.D. Cal. Nov. 14, 2022) (citation omitted).

Plaintiffs' interrogatory is not premature because experts will address efficiencies. The court in *FTC v. Meta Platforms, Inc.*, No. CV 20-3590 (JEB), 2023 WL 3092651 (D.D.C. Apr. 26, 2023), rejected a similar argument and granted a motion to compel Meta to identify "'each procompetitive benefit'" of its acquisitions of Instagram and WhatsApp. *Id.* at *2. The court explained: "That Meta intends experts to testify about procompetitive benefits of its acquisitions does not alter Rule 33 obligation to provide complete interrogatory responses to questions asking it to state its contentions or to provide facts on which they are based. . . ." *Id.* Even if "providing 'a complete list of such benefits'" were "impossible", the court held that "Meta must certify that its response is full and complete to the best of its knowledge and belief." *Id.*

All of this is true here, and this Court should reach the same conclusion. Plaintiffs are entitled to know which efficiencies Defendants are claiming so that they have a fair opportunity to take fact discovery regarding any claimed efficiencies. Under the Court's scheduling order, opening expert reports will be served on January 14, 2027, more than a month after fact discovery closes on December 10, 2026, and Defendants' rebuttal expert reports are not due until February 18, 2027. *See* Dkt. No. at 2. Accordingly, under the current schedule, if Defendants withhold material information about their claimed efficiencies until expert discovery, then Plaintiffs will by definition not have a full opportunity to take fact discovery regarding those alleged efficiencies.

That would unfairly prejudice Plaintiffs because "evidence related to efficiencies developed prior to the merger challenge is much more probative than evidence developed" thereafter, U.S. Dep't of Justice, Merger Guidelines at 32 n.69 ( 2023). And "[p]rojections

of efficiencies may be viewed with skepticism, particularly if they are generated outside of the usual business planning process." *FTC v. ProMedica Health Sys., Inc.*, No. 3:11 CV 47, 2011 WL 1219281, at *40 (N.D. Ohio Mar. 29, 2011).

Indeed, courts have repeatedly rejected expert testimony that mergers would generate efficiencies—including by Defendants' expert in this case, Dr. Mark Israel—because they were inconsistent with evidence from the merging parties. *See United States v. Anthem, Inc.*, 236 F. Supp. 3d 171, 245-47 (D.D.C.), *aff'd,* 855 F.3d 345 (D.C. Cir. 2017) (rejecting expert testimony on efficiencies as a "dubious proposition" where "claimed savings" conflicted with defendant's "internal documents" and "own witness[]" testimony); *FTC v. IQVIA Holdings Inc.*, 710 F. Supp. 3d 329, 397-98 (S.D.N.Y. 2024) (same where "the data cost savings estimated by Dr. Israel were roughly twice as high as the merging parties' own projections"). And the Ninth Circuit has rejected arguments from the merging parties about efficiencies that are inconsistent with fact testimony from market participants. *See Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 791 (9th Cir. 2015) (affirming district court's rejection of purported efficiencies defense based on testimony regarding physicians' access to assets that supposedly would have generated efficiencies). Plaintiffs, too, must be able to use evidence from the merging parties and other industry participants that is developed in fact discovery to rebut Defendants' experts' opinions regarding efficiencies. Plaintiffs will not have a full opportunity to do so if Defendants withhold their claimed efficiencies until after fact discovery has closed.

Defendants should know the basis for their efficiencies defense. An efficiencies defense is that "the proposed merger will create a more efficient combined entity and thus increase competition." *Saint Alphonsus*, 778 F.3d at 790.[3] Interrogatory No. 3 thus defines an "Efficiency" to include any "increase in productivity or competitiveness" or "product or service improvements as a result of the merger or acquisition." Defendants have been asserting for more than a year that their merger supposedly will enhance competition. When Defendants announced their merger last August, they asserted that "the combined entity" would be "well-positioned to

[3] The Ninth Circuit has assumed without deciding that this defense is cognizable. *Id.*

compete," and "better able to compete" as a result of the transaction.[4] And in their Answers filed four months ago, Defendants similarly asserted that "the deal would position Nexstar-TEGNA to compete more effectively"; would "allow TEGNA stations to better compete"; and "will provide local broadcasters with the scale that make it possible to compete in the modern media economy." Dkt. No. 227 at 5-6; Dkt. No. 228 at 5-6. Defendants must be able to identify the reasons why they had a good faith basis to assert that the merger would help the combined firm compete. Their answers provide a few examples, but Plaintiffs are entitled to the full list.

Indeed, Defendants had good reason to identify any supposed efficiencies months ago. Defendants represented to this Court that the "U.S. Department of Justice ('DOJ') and the Federal Communications Commission ('FCC') [] spent several months reviewing the [transaction] and considered many of the very issues and arguments being raised here." Dkt. No. 48 at 1. Defendants similarly asserted to the Ninth Circuit that DOJ "conducted a searching review, involving multiple requests, millions of documents, large volumes of data, and economic and marketplace analyses." Defendants-Appellants Opening Br. at 16, No. 26-2490, Dkt. No. 51 (9th Cir. May 20, 2026). If the regulatory review was as rigorous as Defendants claim, then Defendants must have investigated the facts and developed their position regarding efficiencies. Thus, for purposes of this interrogatory, Defendants are in the same position as litigants "after substantial discovery is completed," *Resh, Inc.* 2022 WL 16935625, at *1.

Defendants' citation to Nexstar's submission to the FCC cited in their current response is not sufficient. During meet-and-confer on September 17, Defendants expressly declined to state whether Nexstar's FCC submission identified any merger-specific efficiencies that support their affirmative defense under federal antitrust law. Plaintiffs should not be required to take discovery regarding more than 100 pages of submissions that may not relate to Plaintiffs' affirmative defenses. Contention interrogatories are permitted to avoid that waste of resources by "clarifying the issues in the case" and "narrowing the scope of the dispute," *Resh*, 2022 WL 16935625, at *1

[4] https://www.nexstar.tv/nexstar-media-group-inc-enters-into-definitive-agreement-to-acquire-tegna-inc-for-6-2-billion-in-accretive-transaction/.

(citation omitted). Nor have Plaintiffs represented that the FCC submission provides information about *all* the efficiencies that allegedly support their affirmative defense. The FCC submission thus does not provide a complete response that will enable Plaintiffs to take fact discovery to rebut Defendants' affirmative defense.[5]

## III. DEFENDANTS' POSITION

Defendants have provided significant factual information in response to Plaintiffs' interrogatories, through robust original responses as well as supplementation following extensive meet and confers. With respect to Interrogatory 3, Plaintiffs now ask Defendants to lay out their economic analysis and legal arguments about the "cognizable" efficiencies associated with the Nexstar/TEGNA deal. In merger litigation, this type of efficiencies analysis is the subject of expert discovery. Plaintiffs' insistence that Defendants catalog and substantiate—at this juncture—each efficiency that could not be achieved absent the deal defies common sense and is a clear end-run around the stipulated discovery schedule entered by the Court, which specifies that merger-specific efficiencies analyses be disclosed at the initial expert report deadline, on January 14, 2027.

Plaintiffs assert they are entitled to the requested information now so they can use it in fact discovery. But when pressed during a meet and confer, Plaintiffs agreed that experts typically analyze efficiencies, and acknowledged that Defendants have pointed Plaintiffs to ordinary-course documents and materials from the regulatory process that address key expected cost-savings and consumer benefits from the merger. Those materials enable Plaintiffs to undertake whatever fact discovery they think may be warranted on the effects of the deal, and there is no basis to force Defendants to develop and disclose analyses of those effects ahead of the expert disclosure schedule under the guise of an interrogatory.

[5] Defendants' amended response also points to their document production and identifies several normal course business documents. But simply pointing to a production of millions of documents and eight non-exhaustive documents would be an "abuse of the business records option" under Rule 33. *Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983) (responding parties did not comply with Rule 33(c) where "[t]heir response did not specify where in the records the answers could be found").

## I. Relevant Background

Plaintiffs served eight interrogatories on June 15, 2026. After Defendants served responses and objections to Plaintiffs' interrogatories, the parties engaged in a lengthy meet and confer process during which Defendants twice amended their responses at Plaintiffs' request. Despite these compromises, Plaintiffs continue to demand that Defendants undertake complex economic analysis and provide their work product to Plaintiffs months in advance of the January 14, 2027 deadline in the Stipulated Discovery Protocol. ECF No. 258 at 2 & n.4. Specifically, Plaintiffs refuse to narrow or defer a response to any part of Interrogatory 3, which broadly seeks:

> any and all Efficiencies that *You contend* the TEGNA Transaction will or may achieve that *could not be achieved absent the TEGNA Transaction* and, for each such Efficiency, describe how Nexstar plans to achieve the Efficiency and state the factual basis for *Your contention that the Efficiency could not be achieved absent the TEGNA Transaction*[6] (emphases added).

Defendants have never objected outright to providing the information sought in Interrogatory 3. To the contrary, Defendants have made clear that they will provide efficiencies analysis through any expert reports on merger-specific efficiencies. Defendants also answered the Interrogatory by pointing Plaintiffs to key ordinary-course documents in Defendants' productions that speak to the expected benefits, cost savings, and synergies from the TEGNA acquisition, including: (a) multiple synergies calculations and estimations at the corporate and station levels by Nexstar's finance and distribution teams; (b) a synergies "workbook" that details expected cost savings across departments; (c) a presentation to Nexstar's Board containing a "transaction summary and rationale" reflecting expected synergies, and (d) a Nexstar presentation to investors and the public noting that increased scale and estimated synergies would allow Nexstar to better compete against Big Tech and other larger players in the media industry. On top of that, in corresponding with Plaintiffs, Defendants catalogued three dozen specific page ranges in Nexstar's

[6] Plaintiffs' First Set of Interrogatories expansively define "Efficiencies" to include "any purported increase in productivity or competitiveness; reduction in costs; elimination of duplicative functions; achievement of economies of scale; increase in output or quality; the introduction of a new product or service; or product or service improvements as a result of the merger or acquisition, including any of the foregoing related to local news, advertising or competition against streaming services or technology companies." As Defendants' objections set forth above note, the Interrogatory and Plaintiffs' definition of "Efficiencies" are facially overbroad and vague.

341-page Comprehensive Exhibit to the FCC that provide detailed factual accounts of expected efficiencies and procompetitive benefits from the merger.[7] These documents are the kind of record material which any expert—Plaintiffs' or Defendants'—might review in the course of developing efficiencies analyses. And whatever questions Plaintiffs have about those documents, they are free to ask at fact depositions of defense witnesses.

At the same time, Defendants have represented they are not aware of ordinary-course documents that assess the question Plaintiffs seek an answer to right now—whether any efficiency "could not be achieved" absent the deal and is "cognizable" under the antitrust laws—and offered to amend their response to Interrogatory 3 to formally make that representation.[8] As Defendants have explained, that analysis is not something that Nexstar or TEGNA has done in agreeing to merge or in running its business—it is something for the experts to assess.

## II. Argument

During the parties' September 17 meet and confer, Plaintiffs' counsel conceded that: (a) it is standard practice to have experts analyze efficiencies to determine whether they are merger-specific and cognizable under the antitrust laws; (b) Plaintiffs possess Defendants' ordinary-course documents that relate to efficiencies, including those identified in Defendants' response to Interrogatory 3; and (c) Plaintiffs nonetheless are insisting that Defendants identify the merger-specific efficiencies that Defendants will claim in pressing their affirmative defense. In other words, as Plaintiffs framed their position, the only gap between what Plaintiffs have and what they seek is identification now of Defendants' ultimate arguments, and the dispute between the parties is one of timing: Disclose now, or disclose pursuant to the stipulated expert discovery schedule.

[7] Nexstar identified page ranges in the unredacted copy of its Comprehensive Exhibit produced in this case (NXST-000000676). A redacted version is publicly available at https://enterpriseefiling.fcc.gov/dataentry/api/download/attachment/25076f919a75226c019a9c4c25441036.

[8] The Merger Guidelines explain that a cognizable efficiency "must be of a nature, magnitude, and likelihood that no substantial lessening of competition is threatened by the merger in any relevant market," must not be achievable "without the merger," must be verifiable, and must not "merely benefit the merging firms." Merger Guidelines § 3.3.

Identifying and analyzing merger-specific efficiencies is the province of expert economists, who must apply "a reliable methodology and evidence not dependent on the subjective predictions of the merging parties or their agents." Merger Guidelines § 3.3; *see also, e.g.*, *In the Matter of Illumina, Inc., & Grail, Inc.*, 2021 WL 3806025, at *1 (F.T.C. Aug. 18, 2021) (FTC complaint counsel noting the "common practice for economists [to] analyz[e] efficiencies in merger cases"). As explained by a former leading economist at DOJ's Antitrust Division, parties' internal assessments of merger benefits are different than those analyzing cognizable efficiencies, as the latter type are for experts: "In reaching the decision to merge, parties do not always break down the anticipated benefits in ways that an antitrust-savvy consultant might, *i.e.*, by the types of anticipated benefits that would properly qualify as cognizable under the Merger Guidelines." Kenneth Heyer, Statement on Behalf of the U.S. DOJ, Antitrust Modernization Commission Hearings on the Treatment of Efficiencies in Merger Enforcement (Nov. 17, 2005), https://govinfo.library.unt.edu/amc/commission_hearings/pdf/Statement-Heyer.pdf. Courts assessing efficiencies in merger cases have similarly noted the centrality of expert analysis and testimony. *See, e.g.*, *United States v. Long Island Jewish Med. Ctr.*, 983 F. Supp. 121, 147 (E.D.N.Y. 1997) (referring to "the usual battle of opposing experts" in determining whether "any potential anti-competitive effect of the merger is outweighed by the efficiencies").[9]

Plaintiffs appear to accept this noncontroversial point. The parties' Stipulated Discovery Protocol expressly contemplates "merger-specific efficiencies" as a topic for expert disclosures, providing that "affirmative reports submitted by Defendants on merger-specific efficiencies" will be served on January 14, 2027, simultaneous with "affirmative reports submitted by Plaintiffs on market definition or anti-competitive effects." ECF No. 258 at 2 & n.4. Plaintiffs now seek to cast aside that negotiated schedule, insisting on a preview of Defendants' experts' analysis months before the January 2027 deadline. *See* Fed. R. Civ. P. 33(a)(2) (court "may order that" an

---

[9] It is common in merger cases to present expert testimony on merger-specific efficiencies. *See, e.g.*, *F.T.C. v. Kroger Co.*, 2024 WL 5053016, at *22 (D. Or. Dec. 10, 2024); *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1, 82 (D.D.C. 2015); *United States v. H & R Block, Inc.*, 833 F. Supp. 2d 36, 89–90 (D.D.C. 2011); *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1173–75 (N.D. Cal. 2004).

"interrogatory need not be answered until designated discovery is complete . . . or some other time"); Fed. R. Civ. P. 26(a)(2)(D) (requiring expert disclosures "at the times . . . the court orders").

Courts in this Circuit have consistently denied as premature motions to compel responses to interrogatories seeking information on topics subject to expert analysis. In *F.T.C. v. Kroger Co.*, a challenge to the Kroger-Albertsons merger, the court denied a motion to compel a response to an interrogatory seeking an explanation of the basis for Plaintiffs' "claim that the proposed merger will have an anticompetitive effect." 2024 WL 2805295, at *2 (D. Or. May 31, 2024). In *F.T.C. v. Amazon.com, Inc.*, the court denied the defendants' motion to compel responses to an interrogatory seeking identification of alleged competitors and their market shares, holding that such interrogatories were premature because the plaintiffs could not "meaningfully identify" the requested information "without first conducting expert discovery that could help them define their alleged markets." 2025 WL 1557189, at *8–9 & n.7 (W.D. Wash. June 2, 2025). According to the court, even if the plaintiff had "a working theory as to which companies are, for example, deterred from competing with Amazon Prime," that theory "can be shaped by expert testimony." *Id.* These cases make clear that Plaintiffs' Interrogatory is "premature before expert discovery." *Id.* at *9 n.7.

*Amazon* and *Kroger* also reject Plaintiffs' core argument—that they are entitled to a response now so they can explore the topic of efficiencies during fact discovery. *Id.* at *8; *Kroger*, 2024 WL 2805295, at *2.[10] Despite Defendants' questions, Plaintiffs have never articulated what they hope to probe in fact discovery. It is unclear what Plaintiffs would want to cover in, say, fact depositions that they cannot do with the materials they have. Under *Amazon* and *Kroger*, access to relevant ordinary-course materials touching upon the forthcoming expert analysis is sufficient. *Amazon* 2025 WL 1557189, at *8 (movant can "prepare its case based on . . . responses to these interrogatories" during expert discovery); *Kroger*, 2024 WL 2805295, at *2 (movant not prejudiced by waiting brief period until expert discovery for interrogatory response given productions).

---

[10] In *Amazon* and *Kroger*, as here, expert discovery began after the close of fact discovery. *See* ECF No. 258, at 2; *F.T.C. v. Kroger Co.*, 2024 WL 2805295, ECF No. 88, at 18 (D. Or. Apr. 12, 2024); *F.T.C. v. Amazon.com, Inc.*, 2025 WL 1557189, ECF No. 159, at 2 (W.D. Wash. Feb. 13, 2024).

Defendants expect to provide more information at the appropriate juncture, and Plaintiffs can test any efficiencies arguments and analyses at that time through rebuttal expert reports and depositions of Defendants' experts. An order compelling Defendants to convey now what is fundamentally expert analysis would not "contribute meaningfully to clarifying the issues in the case" or "narrowing the scope of the dispute." *Resh, Inc. v. Skimlite Mfg. Inc.*, 2022 WL 16935625, at *1 (N.D. Cal. Nov. 14, 2022); *see also Gorrell v. Sneath*, 292 F.R.D. 629, 636 (E.D. Cal. 2013) (holding that "contention interrogatories to identify facts supporting affirmative defenses in an answer" were "premature where discovery [was] in its early stages"). Rather, "the tentative nature of any responses generated at this stage," with document discovery still in progress and depositions yet to begin, "would be of questionable value to the goal of efficiently advancing the litigation." *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008); *see also In re: EpiPen Direct Purchaser Litig.*, 2023 WL 2675134, at *11 (D. Minn. Mar. 29, 2023) (deferring response deadline for interrogatory to expert discovery because "guess[ing] at an answer now only to have it superseded by an expert later is not an efficient use of time and resources"). Plaintiffs' motion to compel should be denied because any further response is premature and would improperly reward Plaintiffs for seeking to end-run the stipulated expert disclosure schedule.

Dated: September 23, 2026

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

*/s/ Justin P. Raphael*
JUSTIN P. RAPHAEL
*Attorneys for Plaintiff DIRECTV, LLC*

Dated: September 23, 2026

FOR PLAINTIFF STATE OF CALIFORNIA

*/s/ Laura Antonini* (as authorized on 9/23/2026)
LAURA ANTONINI
*Attorneys for Plaintiff The State of California and on Behalf of All Plaintiff States*

Dated: September 23, 2026

*/s/ Sarah E. Neuman* (as authorized on 9/23/2026)

Beth A. Wilkinson (*pro hac vice*)
Kosta S. Stojilkovic (*pro hac vice*)
Sarah E. Neuman (*pro hac vice*)
Jenna P. Swarbrick (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
kstojilkovic@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com
jpswarbrick@wilkinsonstekloff.com

Emily A. Clarke (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
eclarke@wilkinsonstekloff.com

Alexander P. Okuliar (*pro hac vice*)
Bradley S. Lui (CA Bar No. 143088)
Joseph Charles Folio III (*pro hac vice*)
Robert W. Manoso (*pro hac vice*)
Alexa Rae DiCunzolo (*pro hac vice*)
Rita Xia (*pro hac vice*)
**MORRISON & FOERSTER LLP**
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 912-2329
AOkuliar@mofo.com
BLui@mofo.com
JFolio@mofo.com

RManoso@mofo.com
ADiCunzolo@mofo.com
RXia@mofo.com

Michael B. Miller (*pro hac vice*)
William C. McCaughey (*pro hac vice*)
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 903-3720
MBMiller@mofo.com
WMcCaughey@mofo.com

Eliot A. Adelson (CA Bar No. 205284)
Daralyn J. Durie (CA Bar No. 169825)
Adam R. Brausa (CA Bar No. 298754)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
EAdelson@mofo.com
DDurie@mofo.com
ABrausa@mofo.com

Sean Paul Gates (CA Bar No. 186247)
**ILLOVSKY GATES & CALIA LLP**
155 N Lake Ave Ste 800
Pasadena, CA 91101
Telephone: (626) 508-1715
Facsimile: (626) 508-1730
sean@illovskygates.com

*Attorneys for Defendants Nexstar Media Group, Inc. and TEGNA Inc.*