*[Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

IN RE: NEXSTAR-TEGNA MERGER LITIGATION

Case No. 2:26-cv-00976-TLN-CKD

**JOINT STATEMENT REGARDING DISCOVERY DISAGREEMENT**

Date: October 14, 2026
Time: 10:00 a.m.
Courtroom: 24, 8th Floor
Judge: Hon. Troy L. Nunley (assigned to Chief Magistrate Judge Carolyn K. Delaney for discovery matters)

Zoom Appearance

## I. INTRODUCTION

Pursuant to Local Rule 251, Defendants Nexstar Media Group, Inc. ("Nexstar") and TEGNA Inc. ("TEGNA") (collectively, "Defendants") and Plaintiffs the State of California, the State of Colorado, the State of Connecticut, the State of Illinois, the State of Indiana, the State of Kansas, the Commonwealth of Massachusetts, the State of New York, the State of North Carolina, the State of Oregon, the Commonwealth of Pennsylvania, the State of Vermont, and the Commonwealth of Virginia (collectively, "Plaintiff States") respectfully submit this Joint Statement regarding Defendants' Motion to Compel Responses to Defendants' Requests for Production to the Plaintiff States.

## II. NATURE OF THE ACTION

On March 18, 2026, Plaintiff States filed this Action challenging the merger of Nexstar and TEGNA. On April 30, 2026, the Plaintiff States filed an Amended Complaint. Plaintiff States' allegations include that "[t]he Transaction has increased the bargaining power of Nexstar" and that "[t]he merged company has the power to threaten to black out multiple Big 4 stations simultaneously . . . increasing the retransmission consent fees that Defendants could profitably demand." Their allegations also include that the Transaction will lead to local news consolidation in the Big 4 Overlap DMAs, reducing the quantity and quality of local news options available to consumers, and that Nexstar has an established track record of consolidating newsrooms when it owns more than one station in a DMA.

On April 29, 2026, Defendants served their first requests for production ("First RFPs") to the Plaintiff States. Exhibit A. On June 2, 2026, Plaintiff States served their responses and objections to the First RFPs. Exhibit B.

## III. HISTORY OF CONFERRALS

Defendants and Plaintiff States have worked in good faith to attempt to resolve this discovery dispute through various conferrals and letters. On June 12 and June 15, 2026, Plaintiff States produced their Nexstar-TEGNA merger investigative files in response to Defendants' RFPs. On July 1, 2026, Defendants sent Plaintiff States a letter outlining purported deficiencies in their Responses and Objections ("R&Os") to Defendants' First RFPs. Exhibit C. On July 2, 2026, the

parties met and conferred. On July 7, 2026, Defendants sent another letter to Plaintiff States. Exhibit D. On July 8, 2026, the parties met and conferred. On July 13, 2026, Defendants sent another letter to Plaintiff States. Exhibit E. On July 21, 2026, Plaintiff States sent a letter in response to Defendants' letter. Exhibit F. On August 3, 2026, Defendants sent a letter in response to Plaintiff States' letter. Exhibit G. On August 20, 2026, Plaintiff States made a second production of documents to Defendants after meeting and conferring. On September 8, 2026, Plaintiff States produced their privilege log. On September 15, 2026, Defendants sent a letter to Plaintiff States. On September 21, 2026, the parties met and conferred. Despite these many exchanges, the parties have not been able to resolve this dispute and request the Court's guidance.

## IV. THE DISCOVERY DISPUTE CONTENTIONS

### A. Defendants' Statement

The Plaintiff States categorically refuse to search for or produce any document they did not directly or explicitly consider in evaluating the Nexstar-TEGNA transaction. *See* 7/13/2026 Letter, Ex. E. They do so even though many Plaintiff States have investigated other recent media industry mergers implicating dynamics directly related to those at play in this case, such as the causes and effects of "blackouts" and the availability of sports content on "Big 4" television networks. *See, e.g.*, *State of California, et al. v. Paramount Skydance Corp., et al.*, No. 4:26-cv-07116, ¶ 35 (N.D. Cal.) (the "Paramount Complaint"), Exhibit H; *see also* Am. Compl. ¶ 51 ("The licensing of Big 4 Retransmission Consent from broadcast groups has peculiar characteristics and uses, as it offers unique and highly watched must-have content such as local news, sports, and primetime programs"). While Plaintiff States have never disputed that basic point, they nevertheless refuse to search for or produce any documents in response to ***23 of Defendants' 31 total RFPs***, on the ground that such documents are not relevant. This objection cannot stand. Plaintiff States' objections on privilege, burden, and confidentiality grounds are entirely unsubstantiated and must also be rejected. States' R&Os, Exhibit B.[1] The Court should compel the Plaintiff States to search for and produce responsive documents in their possession, custody, or control, even if outside their

[1] The States' blanket refusal encompasses RFP Nos. 2, 3, 5-18, 21-23, 25-27, and 31. States' R&Os, Exhibit B.

Nexstar-TEGNA investigative files.

**1. The Federal Rules Do Not Deem Documents Irrelevant Simply Because Plaintiffs Did Not Review Them When Filing Suit**

Plaintiff States' discovery obligations go far beyond producing the small set of documents they claim that they expressly "considered" in bringing the Complaint. Plaintiff States, like any other litigant, must comply with the broad relevance commands of the Federal Rules of Civil Procedure ("Rules").[2] *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 776 n.4 (9th Cir. 1994) ("When the government is named as a party to an action, it is placed in the same position as a private litigant, and the rules of discovery in the Federal Rules of Civil Procedure apply.") (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)); *see also Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991) ("[W]hen the United States comes into court as a party in a civil suit, it is subject to the Federal Rules of Civil Procedure as any other litigant.").

The Rules allow Defendants to obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). This includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (*citing Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).[3] The substance of a document is what makes it relevant—not whether the Plaintiff States chose to save the file in their "Nexstar/TEGNA" investigation box or to put eyes on the document while that investigation was open or in filing their case.

Defendants are thus entitled to industry participants' views on the media industry market dynamics that may be reflected in the Plaintiff States' files from other investigations—including investigations of other acquisitions by Nexstar—that implicate related issues in this litigation, such

[2] Plaintiff States' authority to bring this action comes from Section 16 of the Clayton Act, which permits any person, including the Plaintiff States, to bring injunctive actions to enforce antitrust laws. 15 U.S.C. § 26.

[3] This standard is a "low bar." *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021).

as blackouts and the competitive effects of media consolidation.[4] For instance, Plaintiff States California, Colorado, Connecticut, Massachusetts, New York, and Oregon sued to block the proposed merger of Paramount Skydance Corp. and Warner Bros. Discovery, Inc. (the "Paramount Action"), and other Plaintiff States may very well have investigated that merger. In the Paramount Action, the States allege that media distributors, like DIRECTV, face threats of blackouts from large media and content providers, like Paramount. Paramount Complaint ¶ 5. Plaintiff States' allegations here are cut from the same cloth, contending as an alleged anticompetitive effect of the merger that a combined Nexstar/TEGNA "has the power to threaten to black out multiple Big 4 stations simultaneously[.]" Am. Compl. ¶ 76. It stands to reason that Plaintiff States have relevant, discoverable documents from that investigation in their files.[5]

Moreover, the States in the Paramount Action appear to have taken positions that contradict Plaintiff States' claims here. As one example, in the Paramount Action, the States allege that the United States is a relevant geographic market for the licensing of basic cable channels because "[b]asic cable programming is negotiated and distributed on a national basis." Paramount Complaint ¶ 67. But in this case, Plaintiff States allege DMA-specific relevant geographic markets, even though licenses for retransmission consent are also negotiated on a national basis. Am. Compl. ¶¶ 61–62. Defendants are entitled to probe the documents and information upon which Plaintiff States predicated their allegation of a national geographic market in the Paramount Complaint, as such materials may support Defendants' contention that Plaintiff States' alleged DMA-specific geographic markets are unduly narrow.

The Paramount Action illustrates the relevance of documents from Plaintiff States' other investigative files, but it is not alone. For instance, Plaintiff States Illinois, Pennsylvania, and Virginia previously investigated Nexstar's acquisition of Tribune Media Co., which took place in

---

[4] Defendants' ability to obtain some of these materials from third parties does not remove Plaintiff States' discovery obligations. *Goldwater Bank, N.A. v. Elizarov*, 2023 WL 3407146, at *4 (C.D. Cal. May 5, 2023) (a party "cannot simply abandon his discovery obligations because [a party] chose to subpoena records from a third party").

[5] Despite Plaintiff States' objections, blackout related documents in the Paramount Action may still be responsive to RFP No. 9 because Paramount is the owner of CBS and Plaintiff States' investigative files may not be limited to blackouts specific to just "basic cable channels." Regardless, even if the documents relate to blackouts of basic cable channels, they are relevant to distributors' bargaining leverage in negotiations and are responsive to at least RFP Nos. 8 and 10.

2019. Those States made strikingly similar allegations in that case that "the proposed merger would eliminate competition between Nexstar and Tribune in the licensing of Big 4 network content" and that "competition from non-Big 4 stations does not typically impose a significant competitive constraint on the retransmission consent fees charged by the owners of Big 4 stations." *United States et al. v. Nexstar Media Group, Inc.*, No. 1:19-cv-02295, ¶¶ 5, 21 (D.D.C.). Notably, Plaintiff States have elsewhere recognized the relevance of the Tribune acquisition to this Action: Their own RFPs to Nexstar ask for evaluations and financial analyses of that acquisition. *See* States' RFPs to Nexstar, RFP 37, Exhibit I (to which Defendants agreed to produce responsive documents).

In the same vein, the Attorneys General of Illinois, Massachusetts, and other states filed a petition with the Federal Communications Commission in opposition to a proposed merger between Sinclair Broadcast Group and Tribune Media—an investigation that necessarily involved analysis of broadcast industry consolidation, retransmission consent dynamics, and local news impacts, the subjects at the heart of this Action. California's investigation and decision to not challenge the 2026 merger of the nation's two largest cable companies, Charter Communications and Cox Communications, with overlaps in California, would be relevant to test Plaintiff States' claims that consolidation will harm consumers through increased fees and bills. Similarly, Connecticut's settlement with Charter Communications in connection with its acquisition of Cox Communications may contain relevant information regarding Spectrum's retransmission consent agreements and whether Defendants' merger would impact residents in the Hartford-New Haven, Connecticut DMA, as Plaintiff States allege. Indeed, the Hartford-New Haven DMA is one of the Overlap DMAs where the alleged post-merger concentration levels are among the highest, with a merged share of 63.3% and an HHI increase of 1,923 by revenue.

The above represent just a few examples of other investigations by some of the Plaintiff States that bear directly on issues in this case. To the extent the Plaintiff States have documents in their possession from those or other investigations that are responsive to Defendants' RFPs here, Plaintiff States may not categorically refuse to search for and produce such documents.

### 2. Plaintiff States' Boilerplate Privilege and Burden Objections Fail Without a Specific Showing

Plaintiff States also contend that their other investigative files are "protected by a multitude of privileges and doctrines" and that searching those files would be "highly burdensome." Both categories of objection fail.

**Privilege.** The party asserting a privilege "has the burden of showing that it applies in the circumstances." *Dole v. Milonas*, 889 F.2d 885, 889 (9th Cir. 1989). A blanket assertion of multiple privileges without identifying the specific privilege applicable to specific categories of documents does not satisfy Fed. R. Civ. P. 26(b)(5)(A). To date, Plaintiff States have not provided any specific information or description to substantiate their blanket privilege claims.

Critically, however, Defendants do not ask this Court to order Plaintiff States to produce privileged materials. Rather, Defendants ask the Court to order Plaintiff States to search their files, produce responsive non-privileged materials, and log any materials withheld on privilege grounds with sufficient specificity as required by Rule 26(b)(5)(A). Defendants are willing to meet and confer, and have been willing for months, to discuss ways to reduce the burdens associated with any valid privilege claims. 8/3/2026 Letter, Ex. G.

**Burden.** Plaintiff States must demonstrate, not merely assert, that "the burden of producing responsive documents is disproportionate to the needs of the case." *SGII, Inc. v. Martin*, 2021 WL 1593246, at *4 (C.D. Cal. Mar. 3, 2021). Plaintiff States cannot satisfy this showing through unsubstantiated protests—some level of burden is inherent in any document production; the question is whether that burden is disproportionate. *See A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006). Plaintiff States make a vague reference to "millions of documents in the files for the Paramount Action," and "thousands of document hits" on the keyword "blackout." These claims only serve to demonstrate the relevance of these files, where blackouts are directly at issue in this case. And, as explained below, Plaintiff States' paltry productions to date seem to belie these burden claims. However, Plaintiff States have flatly refused to even search for responsive files from other investigations to date, and this is the first time they have provided

any alleged indication of burden.[6] Defendants have been willing to discuss ways to reduce burden, but Plaintiff States have never engaged.

Plaintiff States have otherwise identified no specific number of files, custodians, or documents that would need to be reviewed, offered no estimate of the time or cost involved, and provided no declaration from any official attesting to the nature of the burden. Moreover, Plaintiff States' productions to date have yielded documents ranging from 0 produced documents (Vermont) to 381 produced documents (California), to the high of just 878 produced documents (Colorado). Based on Plaintiff States' productions to date, Defendants do not understand the alleged burden where, in comparison, Defendants have already produced over 6 million documents.

**Confidentiality**. Plaintiff States' concerns about confidentiality are not a legitimate barrier to production. "[C]onfidentiality is not a basis [to] withhold a document from discovery." *Vega v. Soto*, 2024 WL 3467064, at *4 (E.D. Cal. July 19, 2024); *see also Davis v. Schneider*, 2020 WL 9074713, at *6 (C.D. Cal. Dec. 18, 2020) ("[D]iscovery in federal court is not governed by a state's regulatory scheme or state law related to confidentiality."). Neither are Plaintiff States' speculative concerns about chilling future investigations warranted where there is a Protective Order in place here to protect sensitive information. *See Gwerder v. Besner*, 2007 WL 2916513, at *3 (D. Or. Oct. 5, 2007) (finding that "speculative concerns about chilling the degree of cooperation from witnesses and subjects of investigations," can be adequately "addressed by a protective order").

Defendants respectfully request that the Court order the Plaintiff States to comply with the Federal Rules, just as any other litigant must, by searching for and producing documents in their possession, custody, or control responsive to Defendants' RFPs.

### B. Plaintiff States' Statement

"[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Discovery is limited to nonprivileged information that is relevant to a claim or defense and proportional to the needs of the case, and courts must

---

[6] In n.9, the States assert that Defendants' counsel has access to document count information in the Paramount Action. While one of the firms representing Defendants is also counsel to Paramount in that action, the Protective Order in that case (Paramount Action, ECF No. 219) does not allow sharing of such information in this matter.

prevent discovery from imposing undue burden. Fed. R. Civ. P. 26(b). Defendants have thrust an extraordinary request upon the thirteen Plaintiff States: search all state agency files, including confidential, investigative files for other matters, over a ten-year period for documents to respond to their RFPs. Plaintiff States have already produced the investigative files for this case. Defendants have not explained why Plaintiff States should have to undertake such a disproportionate burden to search countless documents from other cases—documents whose confidentiality is governed by protective orders, investigation-specific confidentiality agreements, and thirteen different sets of state confidentiality laws and subpoena statutes. Moreover, producing past investigative files impedes states' ability to conduct future investigations. Defendants' gambit should be seen for what it is: an attempt to saddle state attorneys general (and, indirectly, the public) with unreasonably costly and time-consuming review of voluminous files that are unlikely to yield materials bearing on the claims and defenses at issue. Accordingly, the Court should deny Defendants' improper requests for production.

**1. Plaintiff States' investigative files from other matters going back to 2016 are irrelevant to claims or defenses in this case.**

The party seeking discovery bears the burden of establishing relevance. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022). Defendants insist that thirteen Plaintiff States each search through files that preceded Defendants' public announcement[7] of the Nexstar-TEGNA transaction (the "Transaction") and produce any documents that *may* tangentially touch on various substantive topics in Defendants' RFPs. (*E.g.*, "Blackouts" (Ex. A, RFP No. 9), retransmission consent fees (Ex. A, RFP No. 11); consumer demand for local broadcast programming, including local news (Ex. A, RFP No. 13); factors that affect the quantity, quality, or variety of local broadcast programming, including local news (Ex. A, RFP No. 14); the impact of newsroom consolidation on local news (Ex. A, RFP No. 16); any analyses, studies, or investigations into how many Local News organizations a local geographic market can support (Ex. A, RFP No. 17), etc.).[8]

[7] Defendants publicly announced the Nexstar-TEGNA transaction on August 19, 2025, and Plaintiff States filed the initial complaint on March 18, 2026.

[8] Defendants' RFP Nos. 1-4, 6-8, 10, 15, 19-21, 23-25 expressly seek documents related to analyses of and communications about *this* Transaction, which could not have been created prior to the announcement of an anticipated Transaction. Exhibit A. No documents created before August 19, 2025, could be responsive to these RFPs.

Plaintiff States have already searched the files arising from the investigation and litigation of this Transaction and produced responsive, nonprivileged records from August 19, 2025, to the time of the filing of this lawsuit. Defendants do not sufficiently demonstrate how files from Plaintiff States' other investigations and cases, going back a decade, and potentially including matters within bureaus or sections whose work is unrelated to antitrust and unconnected to any of the laws or facts at issue here, are relevant to any specific claim or defense in this case.

Defendants' requests for state files are not limited to the four specific investigations—Paramount-Warner, Nexstar-Tribune, Sinclair-Tribune, and Charter-Cox—mentioned in Defendants' statement above. But even if the Defendants limited their requests to those four investigations, they fail to identify any nonprivileged materials or categories of materials even among those investigative files that would be relevant to any specific claim or defense in this case.

For example, Defendants suggest that the allegation of a national market for basic cable licensing in Paramount makes documents from that investigation relevant to undermining Plaintiff States' allegation of local geographic markets for Big 4 retransmission consent licensing. This theory of relevance is flawed because facts that support a national basic cable licensing market would not necessarily support a national market for Big 4 retransmission consent. Documents about the geographic scope of the basic cable licensing market would not say anything about the geographic scope of the distinct Big 4 retransmission consent market. Similarly, "blackouts" in the context of the Paramount Action relate to basic cable channels, not local broadcast signals. Defendants define "Blackouts" in their RFPs as "any period during which an MVPD, vMVPD, or DTC Service does not carry or transmit a Local Broadcast Station's signal due to the failure to reach a Retransmission Consent Agreement or the expiration of an existing agreement." Exhibit A at 1. Thus, documents in the Paramount Action referencing "blackouts" of basic cable channels would not be responsive to Defendants' RFP No. 9.

Defendants also suggest that California's "decision to not challenge" the Charter-Cox merger is somehow relevant to this matter. It is not. "That the government failed to prosecute civil antitrust actions to divest other industry acquisitions is in and of itself irrelevant because [defendant]'s purported defense of 'discriminatory enforcement' is, as a matter of law, no defense."

*United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 657-60 (6th Cir. 1976); *see also Moog Indus. v. FTC*, 355 U.S. 411 (1958), *FTC v. Universal-Rundle Corp.*, 387 U.S. 244 (1967), *United States v. AT&T Inc.*, 290 F. Supp. 3d 1 (D.D.C. 2018), *United States v. Google, LLC*, 692 F. Supp. 3d 583 (E.D. Va. 2023) (all rejecting discriminatory enforcement-type defenses). And with respect to Connecticut, its Attorney General considered the Charter-Cox merger in a consumer-advocacy capacity as part of the change-of-control proceeding initiated by the parties' application to Connecticut's public utilities regulator; that process was not conducted by its antitrust section.

Ultimately, Defendants' overbroad demand for Plaintiff States to search for and produce "any responsive documents" going back to 2016 amounts to a fishing expedition for documents unrelated to this case. The Court should not permit such impermissible use of discovery. *See Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in fishing expeditions.") (citation modified); Fed. R. Civ. P. 34(b)(1)(A) (RFPs "must describe with reasonable particularity each item or category of items to be inspected.").

**2. Plaintiff States' files contain government work product and confidential third-party files that must be protected from discovery.**

Plaintiff States' files are protected by several privileges and doctrines, including the work product doctrine, the deliberative process privilege, the official information privilege, and/or the attorney-client privilege. *See, e.g.*, *Leggett*, 542 F.2d at 657-60 (work product doctrine); *United States v. US Airways Grp., Inc.*, No. 13-CV-1236 (CKK), 2013 WL 12341599, at *15 (D.D.C. Oct. 10, 2013) (deliberative process privilege and work product doctrine); *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000) (deliberative process privilege and work product doctrine).

Courts have applied the work product doctrine specifically to protect materials such as "reports, memoranda, or other internal government documents made by the attorney for the government [] investigating or prosecuting the case." *U.S. v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000) (applying work-product protection to evaluation form and prosecution memoranda that reflected internal deliberations within Attorney General's office). Internal agency materials reflecting deliberations and attorney impressions/analyses on whether to challenge a merger "fall squarely within the ambit of the work product privilege" because they are "internal government

documents [prepared] in anticipation of litigation." *Id.*; *see also Leggett*, 542 F.2d 655, 660. In an analogous discovery dispute where a defendant airline sought facts and documents from the files of the U.S. Department of Justice regarding investigations of *prior* unchallenged airline mergers, the court found that the work product doctrine shielded those materials from disclosure. *See United States v. US Airways Group,* 2013 WL 12341599, at *11-13 (finding that "the work product doctrine protects both 'deliberative material' and 'factual materials prepared in anticipation of litigation.'") (citations omitted).

State investigative files also often contain third-party documents, for which the States would need to provide appropriate notice to each implicated third party under applicable protective orders, confidentiality agreements, and investigative protocols. While confidentiality by itself is not reason enough to withhold discovery, complying with the protective orders, agreements, and protocols necessitated by that confidentiality would be a massive, unreasonable undertaking considering the scope of what Defendants are seeking. Moreover, any disclosure of third-party documents shared with states for other investigations contravenes public policy because it may discourage third-party participation in future investigations. When the government subpoenas documents in an investigation, it provides certain confidentiality assurances to the recipients, particularly third parties, to encourage a fulsome production. To be forced to produce those documents up to ten years later in a wholly unrelated matter goes against public policy, which is a distinct issue from confidentiality itself. If there is any relevant information from third parties, defendants may seek such information directly from those third parties pursuant to Rule 45. Defendants do not explain why serving subpoenas directly on industry participants—many of whom they already subpoenaed in this matter—is inadequate to get the materials they seek.

The Court should reject Defendants' requests to access Plaintiff States' past files, irrespective of potential relevancy, because those files contain protected work product and confidential information.

**3. Defendants' requests are not proportional to the needs of the case and would be unduly burdensome on Plaintiff States.**

Courts "must limit" discovery when "the discovery sought is unreasonably cumulative or

duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). The 2015 amendments to Rule 26 added proportionality as a requirement for permissible discovery. *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). "Relevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." *Id.* Defendants' demand that Plaintiff States search all their agency files since 2016 is far disproportional to Defendants' need.

Even if there were sporadic documents among Plaintiff States' files responsive to the vague substantive topics referenced in Defendants' RFPs, Defendants' overbroad position would require thirteen Plaintiff States to search through countless records for outdated material that is not directly relevant to this case. *See In re Loestrin 24 Fe Antitrust Litig.*, 2017 WL 1491911, at *6 (D.R.I. Mar. 15, 2017) ("[I]t would be disproportionately burdensome to run searches through the files of multiple custodians to seek what not only is a needle in a haystack, but also is remotely relevant.").

Much of Defendants' argument about the relevance of Plaintiff States' files focuses on the recent Paramount Action (despite their underlying requests going back to 2016). There are millions[9] of documents in the files for the Paramount Action alone, and, for example, searching a keyword for a single one of Defendants' 23 RFPs at issue ("blackout") resulted in thousands of document hits that may concern basic cable markets and not even be responsive to Defendants' RFPs, may be privileged or protected work product, and may implicate confidentiality agreements with third parties.[10] Meanwhile, in this case, Defendants can and already are obtaining documents directly from the third-party entities referenced in Defendant's Statement, as well as numerous other industry participants. It is manifestly more appropriate for Defendants to obtain the "industry participants' views on the media industry market dynamics" directly from those industry participants via subpoenas tailored to the claims and defenses in this case than from the aging files of prior cases focused on laws, facts, and industries unrelated to those at issue here.

---

[9] Plaintiff States use order-of-magnitude quantities here in consideration of confidentiality obligations. The Paramount defendants share counsel with Defendants in this matter, and Defendants' counsel have access to the same underlying numbers.

[10] The protective order in the Paramount Action requires destruction of records at the end of the case. Defendants' position risks forcing Plaintiff States to choose between violating the protective order in Paramount or risking an accusation of spoliation in this case.

Thus, the Court should reject Defendants' request that thirteen Plaintiff States search all records in their custody, possession, and control over a decade-long period in order to respond to Defendants' document requests.

Dated: October 6, 2026

Respectfully submitted,

By: */s/ Bradley S. Lui*
Bradley S. Lui (CA Bar No. 143088)
Alexander P. Okuliar (*pro hac vice*)
Eliot A. Adelson (CA Bar No. 205284)
Daralyn Durie (CA Bar No. 169825)
Michael B. Miller (*pro hac vice*)
Joseph Charles Folio III (*pro hac vice*)
Adam R. Brausa (CA Bar No. 298754)
Nicole K. Serfoss (*pro hac vice*)
Robert W. Manoso (*pro hac vice)*
Alexa Rae DiCunzolo (*pro hac vice*)
Rita Xia (*pro hac vice*)

MORRISON & FOERSTER LLP

Beth A. Wilkinson (*pro hac vice*)
Kosta S. Stojilkovic (*pro hac vice*)
Sarah E. Neuman (*pro hac vice*)
Jenna P. Swarbrick (*pro hac vice*)
Emily A. Clarke (*pro hac vice*)

WILKINSON STEKLOFF LLP

*Attorneys for Defendants Nexstar Media Group, Inc. and TEGNA Inc.*

FOR PLAINTIFF STATE OF CALIFORNIA:

ROB BONTA
Attorney General of California

/s/ *Brian Wang*
BRIAN D. WANG (SBN 284490)
Deputy Attorney General

Paula Blizzard (SBN 207920)
Senior Assistant Attorney General
Brent K. Nakamura (SBN 283572)
Supervising Deputy Attorney General
Elizabeth Cheever (SBN 341421)
Emily C. Curran (SBN 293065)
Jennifer K. Hane (SBN 275729)

Henry J. Hauser (SBN 286744)
Connie P. Sung (SBN 304242)
Laura Antonini (SBN 271658)
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (213) 269-6000
Email: Brian.Wang@doj.ca.gov

/s/ *Shaoul Sussman*
Shaoul Sussman (admitted *pro hac vice*)
Nico Gurian (admitted *pro hac vice*)
Victoria M. O. Field (admitted *pro hac vice*)
Paul M. Goodrich (admitted *pro hac vice*)
Braden Fain (admitted *pro hac vice*)
Simonsen Sussman LLP
307 W. 38th St., 16th Fl.
New York, NY 10018
Telephone: (646) 693-3929
Email: shaoul@simonsensussman.com
nico.gurian@simonsensussman.com
victoria.field@simonsensussman.com
paul.goodrich@simonsensussman.com
braden.fain@simonsensussman.com

Catherine S. Simonsen (SBN 307325)
Andrew Naravage (SBN 320586)
Thomas G. Mattes (SBN 355010)
Simonsen Sussman LLP
418 Bamboo Ln., Suite C-18
Los Angeles, CA 90012
Telephone: (917) 474-5196
Email: catherine@simonsensussman.com
andrew.naravage@simonsensussman.comthom
as.matters@simonsensussman.com

Nicolas A. Stebinger (admitted *pro hac vice*)
Simonsen Sussman LLP
1629 K St. NW, Suite 300
Washington, DC 20006
Telephone: (202) 384-3130
Email: nicolas@simonsensussman.com

*Attorneys for Plaintiff the State of California*

FOR PLAINTIFF STATE OF COLORADO

PHILIP J. WEISER
Attorney General

*/s/ Bryn Williams*
Bryn A. Williams (SBN 301699)
First Assistant Attorney General
Jonathan B. Sallet (admitted *pro hac vice*)
Special Assistant Attorney General
Robin Alexander (admitted *pro hac vice*)
Assistant Attorney General
Melissa Kessler (admitted *pro hac vice*)
Assistant Attorney General
Amy Bowles (admitted *pro hac vice*)
Assistant Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 702- 508-6000
Email: Bryn.Williams@coag.gov
Jon.Sallet@coag.gov
Robin.Alexander@coag.gov
Amy.Bowles@coag.gov

*Attorneys for Plaintiff State of Colorado*

FOR PLAINTIFF STATE OF CONNECTICUT

WILLIAM TONG
Attorney General of Connecticut

NICOLE DEMERS
Deputy Associate Attorney General
(admitted *pro hac vice*)

*/s/ Julián A. Quiñones Reyes*
Julián A. Quiñones (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: Julian.Quinones@ct.gov

*Attorney for Plaintiff State of Connecticut*

FOR PLAINTIFF STATE OF ILLINOIS

KWAME RAOUL
Attorney General of Illinois

*/s/ Paul J. Harper*
Paul J. Harper (admitted *pro hac vice*)
Supervising Attorney, Antitrust Bureau

Elizabeth L. Maxeiner (admitted *pro hac vice*)
Chief, Antitrust Bureau
Daniel R. Betancourt (admitted *pro hac vice*)
Sarah J. North (admitted *pro hac vice*)
Assistant Attorneys General
Office of the Attorney General of Illinois
115 S. LaSalle Street
Chicago, Illinois 60603
Telephone: (312) 814-1004
Email: Paul.Harper@ilag.gov

*Attorneys for Plaintiff State of Illinois*

FOR PLAINTIFF STATE OF INDIANA

THEODORE E. ROKITA
Attorney General of Indiana

*<u>/s/ Scott L. Barnhart</u>*
Scott L. Barnhart, Att. No. 25474-82
Chief Counsel and Director of Consumer Protection
(admitted *pro hac vice*)
Jacob Patterson, Atty. No. 38302-29
Deputy Attorney General (admitted *pro hac vice*)
Corinne Gilchrist No. 27115-53
Deputy Attorney General (admitted *pro hac vice*)

*Counsel for Plaintiff State of Indiana*

FOR PLAINTIFF STATE OF KANSAS

KRIS KOBACK
Attorney General of Kansas

*<u>/s/ Christopher Teters</u>*
Christopher Teters (admitted *pro hac vice*)
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: 785-368-8429
Email: Chris.Teters@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

FOR PLAINTIFF COMMONWEALTH OF MASSACHUSETTS:

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

/s/ Anthony W. Mariano
Anthony W. Mariano (admitted *pro hac vice*)
Chief, Antitrust Division
Jennifer E. Greaney (admitted *pro hac vice*)
Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
Telephone: 781-835-7990
Email: Anthony.Mariano@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General of New York

/s/ Elinor R. Hoffmann
Elinor R. Hoffmann (admitted *pro hac vice*)
Chief, Antitrust Division
Christopher D' Angelo (admitted *pro hac vice*)
Deputy Chief Attorney General
Economic Justice Division
Amy E. McFarlane (admitted *pro hac vice*)
Deputy Chief, Antitrust Bureau
Morgan J. Feder (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Bureau
Jaya M. Mantovani (admitted *pro hac vice*)
Attorney General Fellow, Antitrust Bureau
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Elinor.Hoffmann@ag.ny.gov | 212-416-8269
Christopher.D'Angelo@ag.ny.gov | 212-416-6124
Amy.McFarlane@ag.ny.gov | 212-416-6195
Morgan.Feder@ag.ny.gov | 212-416-8288
Jaya.Mantovani@ag.ny.gov | 212-416-8284

*Attorneys for Plaintiff State of New York*

FOR PLAINTIFF STATE OF NORTH CAROLINA

JEFF JACKSON
Attorney general of North Carolina

KUNAL CHOKSI (admitted *pro hac vice*)
Senior deputy attorney general

*/s/ Francisco Benzoni*
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Director of Major Litigation for Consumer Protection
114 W. Edenton Street
Raleigh, NC 27603
Telephone: 919-716-6000
Email: Fbenzoni@ncdoj.gov
Brabinovitz@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina*

FOR PLAINTIFF STATE OF OREGON:

DAN RAYFIELD
Attorney General of Oregon

*/s/ Alex DeLorenzo*
Timothy D. Smith (admitted *pro hac vice*)
Attorney-in-Charge
Ian Van Loh (SBN 280254)
Alex M. DeLorenzo (admitted *pro hac vice*)
Mikaela M. Bock (SBN 335089)
Senior Assistant Attorneys General
Economic Justice Section
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tim.Smith@doj.oregon.gov | 503-798-3297
Ian.Vanloh@doj.oregon.gov | 971-239-7457
Alex.Delorenzo@doj.oregon.gov | 503-428-9482
Mikaela.Bock@doj.oregon.gov | 503-881-7982

*Attorneys for Plaintiff State of Oregon*
FOR PLAINTIFF COMMONWEALTH OF PENNSYLVANIA:

DAVID W. SUNDAY, JR.
Attorney General of Pennsylvania

*/s/ Tracy W. Wertz*
Tracy W. Wertz (admitted *pro hac vice*)
Chief Deputy Attorney General
Antitrust Section

Email: twertz@attorneygeneral.gov

*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Email: jbetsko@attorneygeneral.gov

Jennifer A. Thomson (admitted *pro hac vice*)
Senior Deputy Attorney General
Antitrust Section
Email: jthomson@attorneygeneral.gov

Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Phone: 717-787-4530

*Attorneys for Plaintiff Commonwealth of Pennsylvania*

FOR PLAINTIFF STATE OF VERMONT:

CHARITY R. CLARK
Attorney General of Vermont

*/s/ Sarah L. J Aceves*
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Public Protection and Antitrust Unit
Office of the Attorney General of Vermont
109 State Street
Montpelier, VT 05676
Telephone: 802-828-3170
Email: sarah.aceves@vermont.gov

*Attorney for Plaintiff State of Vermont*

FOR PLAINTIFF COMMONWEALTH OF VIRGINA

JAY JONES
Attorney General of Virginia

*/s/ Tyler T. Henry*
Tyler T. Henry (admitted *pro hac vice*)
Senior Assistant Attorney General
Antitrust Unit
David Curtis Smith (admitted *pro hac vice*)
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: 804-692-0485
Email: THenry@oag.state.va.us

*Attorneys for Plaintiff Commonwealth of Virginia*