# Exhibit C

MORRISON FOERSTER

2100 L STREET, NW
SUITE 900
WASHINGTON
DC 20037

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON, BRUSSELS, DENVER, HONG KONG, LONDON, LOS ANGELES, MIAMI, NEW YORK, PALO ALTO, SAN DIEGO, SAN FRANCISCO, SEATTLE, SHANGHAI, SINGAPORE, TOKYO, WASHINGTON, D.C.

July 1, 2026

Writer's Direct Contact
+1 (202) 887-8766
BLui@mofo.com

**CONFIDENTIAL**

***Via Email***

Laura Antonini
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

Lauren Ross
Munger Tolles & Olson LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, DC 20001-5369

Re: Plaintiffs' Responses and Objections to Defendants' RFPs, *In re Nexstar-TEGNA Merger Litigation*, No. 2:26-cv-00976 (E.D. Cal.)

Counsel:

In advance of the parties' meet and confer on July 2, 2026, I write to identify several overarching concerns with the Responses and Objections served by Plaintiff States and DIRECTV to Defendants' First Set of RFPs. The below list is not comprehensive but includes some of the most significant issues with your R&Os.

1. **Categorical Refusal to Engage in Good Faith Discovery.** Plaintiff States and DIRECTV refuse to search for or produce documents in response to numerous requests. Plaintiff States' R&Os assert, for at least 21 of Defendants' 31 RFPs, that the States "do not intend to search for, collect, review, and produce any information or documents responsive to this Request." This blanket refusal extends to requests that go to the heart of Plaintiffs' own allegations, including requests concerning product and geographic markets (RFP No. 5), the impact of the Transaction on retransmission consent fees and blackouts (RFP Nos. 8–10), effects of cord-cutting and streaming alternatives on fees (RFP No. 11), local broadcast programming and local news (RFP Nos. 13–16), and analyses and surveys Plaintiffs conducted regarding the Transaction (RFP No. 22). These are topics on which Plaintiffs bear the burden of proof and about which they have made affirmative allegations in their Complaint. Similarly, DIRECTV categorically refuses to search for or produce documents in

response to several requests, including RFP No. 55 (proposed or closed mergers or acquisitions with non-parties), RFP No. 81 (political campaign contributions), and RFP No. 83 (prior litigation materials from *DIRECTV, LLC v. Nexstar Media Group, Inc.*).

DIRECTV further defers substantive engagement on at least fifteen additional requests—including RFP Nos. 3, 10, 12, 15, 28, 30, 35, 44, 48, 49, 56, 57, 65, 66, 67, 74, and 84—by offering to "meet and confer" about relevance without committing to any search or production or committing solely to partial productions. DIRECTV's refusal to search for, collect, or produce documents on subjects central to the parties' claims and defenses is inconsistent with Plaintiffs' obligations under the Federal Rules. A responding party may not simply refuse to produce documents on topics it finds inconvenient; rather, it must respond to each request with specificity. *See* Fed. R. Civ. P. 34(b)(2)(B)–(C). Under Ninth Circuit precedent, a party cannot insulate itself from discovery through general, boilerplate objections or blanket refusals. *See Burlington N. & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (holding that boilerplate objections or blanket refusals in response to a Rule 34 request are insufficient, and that any valid assertion of privilege or protection must be specific enough to enable the requesting party and the court to evaluate each withheld document); *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981) (the discovery process is governed by an "overriding limitation of good faith," and "callous disregard of discovery responsibilities" will not be tolerated; permitting a party to unilaterally evade its obligations by raising meritless objections would encourage severe abuse of the discovery process). Plaintiffs' wholesale refusal to search for or produce documents on subjects central to the Parties' claims and defenses is precisely the type of discovery conduct that courts have found impermissible.

3. **Artificially Truncated and Asymmetric Time Periods.** Plaintiffs impose artificially narrow time periods on their responses while demanding far broader time periods in their own RFPs. Plaintiff States limit their search and production to the narrow window of August 19, 2025 through March 18, 2026—approximately seven months—while their own RFPs to Nexstar request documents from January 1, 2020 through the present. DIRECTV narrows Defendants' "Relevant Time Period" to January 1, 2022 to the present, while DIRECTV's own RFPs to Nexstar request documents going back to January 2015 for certain categories of information, including station-level retransmission consent fee data and financial performance data. These asymmetries are untenable. Defendants propose that the Parties meet and confer on a reasonable time period for first-party productions, which should apply reciprocally to both sides.

4. **Improperly Narrow and Asymmetric Definitions.** Plaintiffs improperly narrow Defendants' defined terms while employing far broader definitions in their own RFPs to Defendants. For example, Plaintiff States redefine Defendants' use of standard relational terms—"including," "relating to," "regarding"—to mean only "directly discussing," a

construction that would materially narrow the universe of responsive documents. DIRECTV likewise objects to Defendants' relational terms as overbroad. Notably, both Plaintiffs' own RFPs to Defendants use expansive definitions of the same terms. In the Plaintiff States' RFPs to Nexstar, they define "relating to," "referring to," "regarding," "concerning," or "about" to mean, "in whole or in part, constituting, containing, concerning, embodying, reflecting, discussing, explaining, describing, analyzing, identifying, stating, supporting, refuting, relating to, referring to, regarding, about, dealing with, or in any way pertaining to." DIRECTV's RFPs to Nexstar similarly define "refer," "relate," "reflect," "concern," "relevant to," and "in connection" to encompass all documents that "comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the request." Plaintiffs cannot insist on this breadth when propounding their own discovery while simultaneously objecting to materially similar language in Defendants' requests. In addition, Plaintiff States purport to redefine substantive terms used in Defendants' RFPs—such as "Consumer," "Distribution," "Streaming Service," "Subscriber," and "Subscription Packages"—by stating that they will construe those terms only "in a manner consistent with Plaintiff States' First Amended Complaint and other pleadings." This unilateral redefinition allows Plaintiff States to limit the scope of their search and production to only those documents that align with their own litigation theories, rather than responding to Defendants' requests as written. Defendants are entitled to discovery that tests Plaintiffs' allegations, not discovery pre-filtered through Plaintiffs' preferred framing of the issues.

5. **Refusal to Search Beyond State Antitrust Divisions.** Plaintiff States have taken the position that they will produce documents only from the "State Antitrust Divisions" within each Attorney General's office and will not "collect and review information from any other state agencies or entities," directing Defendants to issue Rule 45 subpoenas for any other state materials. This limitation is unreasonable and contrary to well-established law. This action was brought by and through each State's Attorney General on behalf of each State, making each State—not the State Antitrust Division—the real party in interest. Because the State is the plaintiff, discovery obligations extend to the Attorney General's office as a whole and are not confined to the particular division managing the litigation. *See People v. Meta Platforms, Inc.* (*In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*), No. 22-md-3047, 2025 U.S. Dist. LEXIS 83004, at *329 (N.D. Cal. 2025) (holding that where actions are brought in the names of the states, "not in the names of the AGOs," the Attorney General cannot compartmentalize discovery obligations to a single litigating division); *Arizona v. Michael D. Lansky, L.L.C.*, No. 22-cv-01423, 2025 U.S. Dist. LEXIS 210381, at *18 (D. Ariz. 2025) (rejecting state AGs' claim that they were "not aware of the inner workings of every State agency" and holding that because "[t]he State is the plaintiff, and a State should know what its agencies have decided," the representing AGs must "undertake a 'good faith' investigation of sources reasonably available" across state agencies when formulating discovery responses).

The public record strongly suggests that this litigation was politically motivated, which further underscores the need for discovery into the Attorneys General's offices and communications beyond the State Antitrust Divisions. Multiple Attorneys General and elected officials have made public statements that reveal the political nature of this action. California Attorney General Rob Bonta, in announcing the lawsuit, noted that his action was in response to President Trump's announced support of the Transaction.[1] Colorado Attorney General Phil Weiser made similar statements describing the DOJ's approval of the Transaction as "corrupting the rule of law."[2] California Governor Gavin Newsom stated the Transaction is a "consolidation of right wing media" with stations "parroting right wing talking points" that would make "Putin blush," and praised AG Bonta for suing to interfere with the Transaction.[3] These statements demonstrate that the decision to bring this action was driven, at least in part, by political considerations rather than a dispassionate assessment of the competitive effects of the Transaction. The political dimensions of this litigation make it all the more critical that Plaintiff States not be permitted to shield relevant documents from discovery by confining their production to the State Antitrust Divisions. Documents reflecting the involvement of the Attorneys General themselves, their senior staff, governors' offices, and other political actors in the decision to investigate and challenge the Transaction are plainly relevant to Defendants' defenses and must be produced.

Notably, Plaintiff States' own discovery requests to Defendants belie their position. Plaintiff States' RFP No. 3 to Defendants requests "[a]ll Documents relating to any communications about the Transaction [Plaintiff States] had internally or with . . . any other federal or state agencies, legislative bodies, or public officials." Plaintiff States cannot simultaneously demand that Defendants search for and produce all communications with state agencies while refusing to search their own agencies. The Plaintiff States must conduct a reasonable inquiry for responsive documents within each Attorney General's office and may not limit their search to the "antitrust divisions" within those offices. The States must also conduct searches of agencies that it has reason to believe have relevant documents. A blanket refusal to search beyond the State Antitrust Divisions—effectively placing the

---

[1] Press Release, Office of California Attorney General, Attorney General Bonta Files Lawsuit Seeking to Block $6.2 Billion Nexstar/Tegna Broadcasting Merger (March 18, 2026), https://oag.ca.gov/news/press-releases/attorney-general-bonta-files-lawsuit-seeking-block-62-billion-nexstartegna ("The Trump Administration has shown states and consumers that it is more concerned with protecting corporate interests than doing its job to defend the public and uphold consumer protection and antitrust laws that help make life affordable for American families.").

[2] Press Release, Office of Colorado Attorney General, Attorney General Phil Weiser sues to block $6.2B Nexstar/Tegna broadcast merger (March 19, 2026), https://coag.gov/press-releases/weiser-sues-to-block-nexstar-tegna-broadcast-merger/.

[3] Lucas Manfredi, *Gavin Newsom Slams FCC Approval of $6.2 Billion Nexstar-Tegna Merger: 'An Outrage and Disgrace,'* THEWRAP (March 24, 2026), https://www.thewrap.com/industry-news/deals-ma/gavin-newsom-fcc-approval-nexstar-tegna-merger-california/.

entirety of each Attorney General's office other than a single subdivision beyond the reach of discovery—is not a reasonable limitation and is unacceptable.

In sum, both Plaintiff States' and DIRECTV's R&Os reflect a pattern of refusing to engage in meaningful reciprocal discovery while simultaneously propounding broad requests to Defendants. The asymmetry between the scope of Plaintiffs' own requests and the scope of the discovery they are willing to provide is untenable. We trust that the parties' meet and confer will be productive in resolving these issues.

Sincerely,

Bradley S. Lui
Morrison & Foerster LLP