# Exhibit D

MORRISON FOERSTER

2100 L STREET, NW
SUITE 900
WASHINGTON
DC 20037

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON, BRUSSELS, DENVER, HONG KONG, LONDON, LOS ANGELES, MIAMI, NEW YORK, PALO ALTO, SAN DIEGO, SAN FRANCISCO, SEATTLE, SHANGHAI, SINGAPORE, TOKYO, WASHINGTON, D.C.

July 7, 2026

Writer's Direct Contact
+1 (202) 887-8766
BLui@mofo.com

**CONFIDENTIAL**

***Via Email***

Laura Antonini
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

**Re: Deficiencies in Plaintiff States' Responses and Objections to Defendants' First Set of RFPs, *In re Nexstar-TEGNA Merger Litigation*, No. 2:26-cv-00976 (E.D. Cal.)**

Dear Ms. Antonini:

I write to follow up on my letter of July 1, 2026, and the parties' meet and confer on July 2, 2026, to address in greater detail several of the serious and concerning deficiencies in Plaintiff States' Responses and Objections ("R&Os") to Defendants' First Set of Requests for Production ("RFPs"). As set forth below, Plaintiff States' R&Os include inappropriate categorical refusals to search for or produce responsive documents, the assertion of boilerplate and unsupported objections, the improper narrowing of defined terms, and the imposition of artificially truncated time periods. We have prioritized in this letter the most significant deficiencies to make tomorrow's meet and confer productive.

This letter should be read in conjunction with Defendants' letter of July 1, 2026, which addressed, among other things, Plaintiff States' refusal to search for responsive documents beyond their State Antitrust Divisions, and Defendants' letter of June 16, 2026, which described the Technology Assisted Review ("TAR") process and time periods used in Defendants' production of Investigation Materials. We raise these issues again here because they remain unresolved and should be prioritized for discussion at tomorrow's meet and confer.

## I. Plaintiff States' Categorical Refusal to Search for or Produce Documents Is Improper and Prejudicial to Defendants.

Plaintiff States assert, for at least 23 of Defendants' 31 RFPs, that they "do not intend

to search for, collect, review, and produce any information or documents responsive to this Request." This blanket refusal encompasses RFP Nos. 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 25, 26, 27, and 31. No basis exists for Plaintiff States' *de facto* refusal to participate in document discovery. The Plaintiff States initiated this litigation and must cooperate in discovery on the claims they have asserted. *See* Fed. R. Civ. P. 26(b)(1) (permitting discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). Many of the requests that the Plaintiff States are refusing to search for and produce documents go directly to the heart of Plaintiff States' own affirmative allegations and to subjects on which Plaintiff States bear the burden of proof.

Plaintiff States bear the burden of proof in this case and therefore cannot refuse discovery on the very topics they have placed at issue. *See Burlington N. & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (holding that boilerplate objections or blanket refusals in response to a Rule 34 request are insufficient, and that any valid assertion of privilege or protection must be specific enough to enable the requesting party and the court to evaluate each withheld document); *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981) (holding the discovery process is governed by an "overriding limitation of good faith," and "callous disregard of discovery responsibilities" will not be tolerated).

The Plaintiff States' blanket refusals to search for and produce responsive materials violate the Federal Rules and controlling case law. The following requests, among others (including those listed above), seek documents related to Plaintiff States' allegations in their Complaint and require Plaintiffs to search and produce relevant materials. Failure to provide these documents prejudices Defendants' ability to test and respond to allegations in the Complaint. Please confirm Plaintiff States will abide by their obligations and withdraw their blanket refusal objections.

**RFP Nos. 5 and 7 (Product and Geographic Markets; Market-Share and Concentration Calculations)**: Plaintiff States' Complaint alleges that the Transaction would substantially lessen competition, yet Plaintiff States refuse to produce any documents relating to market definition (RFP No. 5) or any market-share, merged-share, or concentration calculations they reviewed, considered, or relied on in connection with the Transaction (RFP No. 7), asserting that the requests are "premature" and call for a "legal conclusion." Plaintiff States cannot place market definition and concentration at issue and then refuse to produce documents on these subjects. Without access to these documents, Defendants are unable to evaluate, test, or respond to Plaintiff States' market definition and concentration allegations, which go to the very heart of Plaintiff States' case. *See* Fed. R. Civ. P. 26(b)(1); *Alexander v. BF Labs Inc.*, 2015 WL 4463634, at *3 (D. Kan. July 21, 2015) (requiring a plaintiff to respond to discovery requests that "unremarkably require plaintiffs to identify the facts and documents supporting contentions made in their complaint"); *Cooper v. Cnty. of San Luis*

*Obispo*, 350 F.R.D. 625, 630–32 (C.D. Cal. 2025) (holding that a party who places specific factual allegations at issue cannot refuse to produce documents relevant to those allegations).

**RFP Nos. 8-11 (Impact on Retransmission Consent Fees, Blackouts, and Alternative Distribution)**: Plaintiff States' Complaint alleges that "[t]he Transaction has increased the bargaining power of Nexstar" and that "[t]he merged company has the power to threaten to black out multiple Big 4 stations simultaneously . . . increasing the retransmission consent fees that Defendants could profitably demand." (Compl. ¶ 76.) Plaintiff States' refusal to produce any documents on these subjects—including documents relating to the impact on retransmission consent fees of cord cutting, vMVPDs, streaming services, DTC services, and other alternative distributors (RFP No. 11)—is inconsistent with their discovery obligations. *See Burlington N. & Santa Fe Ry.*, 408 F.3d at 1149; *Alexander*, 2015 WL 4463634, at *3.

**RFP Nos. 13-16 and 18 (Local Broadcast Programming, Local News, and Newsroom Operations)**: Plaintiff States allege that the Transaction would harm the quantity, quality, and variety of local broadcast programming, including local news. Yet Plaintiff States refuse to produce any documents relating to consumer demand for local broadcast programming (RFP No. 13), factors affecting the quantity, quality, or variety of such programming (RFP No. 14), the Transaction's impact on such programming (RFP No. 15), the impact of newsroom consolidation (RFP No. 16), or Plaintiff States' allegations that Nexstar has closed newsrooms, terminated local news operations, or exerted editorial control over local news content (RFP No. 18). These refusals are particularly egregious given that alleged harm to local news is a central theme of Plaintiff States' Complaint. Moreover, these documents bear directly on Plaintiff States' standing to sue, as Plaintiff States must demonstrate, among other things, that their citizens have suffered or will suffer concrete harm from the Transaction.

**RFP No. 21 (Number, Share, or Categories of Affected Citizens)**: Plaintiff States refuse to produce any documents relating to the number, share, or categories of citizens in each State allegedly affected by the Transaction. This information goes directly to Plaintiff States' standing and the scope of the alleged harm. Plaintiff States bear the burden of establishing their standing to sue, and Defendants are entitled to discover the factual basis for their alleged standing. A blanket refusal to produce is unjustifiable. *See Burlington N. & Santa Fe Ry.*, 408 F.3d at 1149; *Cooper*, 350 F.R.D. at 630–32; *Alexander*, 2015 WL 4463634 at *3.

**RFP Nos. 22 and 27 (Local News, Competition, and Consumer Analyses; Surveys and Market Research)**: Plaintiff States refuse to produce any documents relating to analyses they conducted regarding local news, competition, or consumers in connection with the Transaction (RFP No. 22), or any surveys, consumer research, or market research they considered, used, reviewed, or referenced in this Action (RFP No. 27). Defendants are

entitled to discover what analyses and research Plaintiff States performed or relied upon in deciding to challenge the Transaction, subject to applicable privilege protections. A blanket refusal to produce any such documents is improper. *See* Fed. R. Civ. P. 26(b)(5)(A); *Burlington N. & Santa Fe Ry.*, 408 F.3d at 1149.

**RFP No. 23 (Impact on Distribution Fees)**: Plaintiff States refuse to produce any documents relating to the impact the Transaction would have on fees charged to citizens for distribution services. Plaintiff States' Complaint alleges that the Transaction would result in higher costs passed through to consumers, yet Plaintiff States refuse to produce any documents supporting this core allegation, asserting that the request is "premature" and calls for a "legal conclusion." Plaintiff States cannot allege consumer harm in their Complaint and then refuse to produce documents bearing on the nature and extent of that harm. These documents also go directly to Plaintiff States' standing to sue, as they bear on whether citizens in each Plaintiff State have been or will be concretely harmed by the Transaction. *See Alexander*, 2015 WL 4463634 at *3.

## II. Plaintiff States' "Prematurity" Objections Are Unfounded and Cannot Justify a Refusal to Produce.

In addition to the blanket refusals to produce discussed in Section I above, Plaintiff States assert, for at least 22 of Defendants' 31 RFPs, that the requests are "premature" on two grounds: (1) that the requests seek information that "will be the subject of expert discovery," and (2) that the requests seek, "prior to the completion of discovery, . . . information other than the basis for the allegations at the time the Initial Complaint was filed." This objection is asserted in response to RFP Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 27, 28, 29, 30, and 31. Neither ground supports a refusal to produce fact discovery.

First, the fact that a topic may also be addressed by expert testimony does not render *fact* discovery on that topic premature. Fact discovery and expert discovery serve different purposes, and the Federal Rules do not permit a party to defer production of factual documents merely because an expert may later opine on the same subject. *See* Fed. R. Civ. P. 26(b)(1); *Tangco v. Universal Studios, LLC*, 2025 WL 2995468, at *2 (C.D. Cal. Aug. 22, 2025) (holding that "a party may not seek or develop fact discovery from the other party . . . after the close of fact discovery to provide the results of that discovery to an expert for analysis during expert discovery"); *D.R. v. Contra Costa Cnty. CA*, 2024 WL 589103, at *1, 3 (N.D. Cal. Feb. 13, 2024) (agreeing that "there is an apparent presumption that data for an expert report should be gathered during fact discovery and that the extended deadline for the expert report is provided to give the expert time to thoroughly analyze the collected data").

Second, Plaintiff States' assertion that they need only produce documents reflecting "the basis for the allegations at the time the Initial Complaint was filed" has no support in the Federal Rules. Discovery under Rule 26(b)(1) extends to any nonprivileged matter relevant

to any party's claim or defense and proportional to the needs of the case. There is no rule limiting fact discovery to the evidentiary basis that existed at the time of filing. *See* Fed. R. Civ. P. 26(b)(1); *Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1006 (9th Cir. 2014) (holding that "[t]he exact contours of [a party's] claims—the facts that will ultimately be alleged and the final scope of relief that will be sought—can and should be sorted out through later discovery"). Plaintiff States must produce all responsive documents, not a curated set they claim was the basis for their Complaint.

**III. Plaintiff States' Blanket Privilege Assertions, Improper Invocation of the Official Information Privilege, and Reliance on Unidentified Confidentiality Agreements and Statutes Are Insufficient.**

Plaintiff States assert, in response to virtually every RFP, that they will withhold documents protected by the attorney-client privilege, the deliberative process privilege, the common interest privilege, the work product doctrine, and/or "any other applicable privilege." While Plaintiff States are entitled to assert applicable privileges, a blanket assertion of multiple privileges without identifying the specific privilege applicable to specific categories of documents does not satisfy Fed. R. Civ. P. 26(b)(5)(A). To the extent Plaintiff States withhold documents on the basis of privilege, they must provide a privilege log identifying each document withheld and the specific privilege asserted with sufficient particularity to enable Defendants and the Court to assess the claim.

With respect to Plaintiff States' assertion of the "official information privilege," a party invoking this privilege must submit a declaration from a responsible official attesting to the specific governmental interests threatened by disclosure, how disclosure—even subject to a protective order—would create a substantial risk of harm, and a projection of how much harm disclosure would cause. *See Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995); *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987). Plaintiff States have submitted no such declaration. Their bare assertion of the privilege in boilerplate objections is insufficient. *See Athletics Inv. Grp., LLC v. Schnitzer Steel Indus., Inc.*, 2024 WL 2191007, at *7–8 (N.D. Cal. May 14, 2024) (ordering production where the government agency failed to submit the required declaration). Moreover, even where properly invoked, courts apply a balancing test "moderately pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 662.

Additionally, Plaintiff States object to producing documents on the ground that they "are subject to a confidentiality agreement, privilege, or otherwise protected from disclosure," and assert that documents may be withheld pursuant to "any statute governing the confidentiality of documents" or "applicable state laws or rules." Plaintiff States further reserve the right to invoke unidentified state statutes at a later date. These objections are deficient in multiple respects.

First, the existence of a confidentiality agreement between Plaintiff States and a third party does not relieve Plaintiff States of their obligation to produce responsive, non-privileged documents. *See BladeRoom Grp. Ltd v. Emerson Elec. Co.*, 20 F.4th 1231 (9th Cir. 2021) (holding that confidential information is discoverable and that concerns regarding unauthorized disclosure are properly addressed through a protective order). The Protective Order entered in this Action, ECF No. 238, is specifically designed to address such concerns. To the extent Plaintiff States have concerns about the confidentiality of particular documents, the appropriate course is to designate such documents under the Protective Order, not to withhold them entirely.

Second, to the extent Plaintiff States withhold documents pursuant to a state or federal statute governing confidentiality, they must identify the specific statute or statutes upon which they rely. Fed. R. Civ. P. 26(b)(5)(A) requires that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection," the party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." A blanket reference to unspecified "statutes governing the confidentiality of information" or undefined "applicable state laws or rules" does not satisfy this requirement. Nor may Plaintiff States reserve the right to assert unidentified state statutory privileges at some future date. The Federal Rules require that privilege claims be asserted at the time of the response, not held in reserve for later deployment. *See Burlington N. & Santa Fe Ry.*, 408 F.3d at 1149 (holding that "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege," and noting that "[t]o withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection" (citations omitted)). Plaintiff States must identify now each statute upon which they rely to withhold responsive documents, and must do so with sufficient specificity to permit Defendants and the Court to evaluate the applicability of each claimed statutory protection.

## IV. Plaintiff States' "Equal Availability" Objections Are Improper.

Plaintiff States repeatedly object that documents responsive to Defendants' RFPs are "equally available to Defendants, including publicly available documents and information," and invoke Rule 26(b)(2)(C)(i) as a basis for refusing to search for or produce responsive documents. This objection is asserted in response to at least 26 RFPs, including RFP Nos. 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, and 31. Plaintiff States also assert, in General Objection No. 9, that they "will not produce any documents that Defendants have obtained or will obtain from another party to this litigation or from a non-party subject to a Rule 45 subpoena." These objections are meritless. A responding party is not relieved of its obligation to produce requested documents in its

possession, custody, or control by simply directing the requesting party to obtain them from a third party or public source. *See Henry v. Rizzolo*, 2010 WL 11578471, at *3 (D. Nev. Mar. 11, 2010); *Bakersfield Pipe & Supply, Inc. v. Cornerstone Valve, LLC*, 2016 WL 3538251, at *2 (E.D. Cal. June 29, 2016) (a responding party "is obliged to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its 'possession, custody, or control'").

Most significant are documents that, while publicly available or available from a third party, reside in the custodial files of relevant Plaintiff States custodians. Plaintiff States may not withhold or refuse production of documents on these grounds if they are within Plaintiff States' custodial files. To illustrate, if a custodian has documents saved in their files or attachments to their emails that could be obtained from another public source or third party, Plaintiff States cannot withhold those materials on these grounds. Rule 26(b)(2)(C)(i) does not permit a party to refuse production of its own documents merely because some of the underlying information those documents discuss may also be publicly accessible. *See Burlington N. & Santa Fe Ry.*, 408 F.3d at 1149 (9th Cir. 2005) (holding that discovery disputes must be resolved through a "holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process," and that "[t]he purpose of discovery is to provide a mechanism for making relevant information available to the litigants" (citation omitted)). Plaintiff States cannot diminish their production obligations through this improper objection.

## V. Plaintiff States' Pervasive Vagueness Objections to Ordinary Terms Are Meritless.

In their R&Os to at least 28 RFPs, including RFP Nos. 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31, Plaintiff States assert that numerous terms used in Defendants' RFPs are "vague and ambiguous." These include ordinary terms such as "impact," "sources," "communications," "factual basis," "standing," "alleged harm," "coordination," "conduct, strategies, or goals," "demand for," "factors," and many others. These boilerplate objections are insufficient to excuse Plaintiff States from their production obligations. The terms at issue are commonly understood words and phrases with plain and ordinary meanings in the context of commercial litigation and antitrust enforcement. A party objecting on vagueness grounds bears the burden of demonstrating that the terms are actually vague or ambiguous in context. *See RG Abrams Ins. v. Law Offices of C.R. Abrams*, 2021 WL 10312432, at *9 (C.D. Cal. Nov. 5, 2021) (holding that "[t]he party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity," and that "[t]he responding party should exercise common sense and attribute ordinary definitions to terms in discovery requests" (citations omitted)); *Estate of Stingley v. Cnty. of Sacramento*, 2023 WL 6296867, at *3 (E.D. Cal. Sept. 27, 2023) (overruling vagueness objections and holding that the objecting party "must explain the particular ways in which a request is vague" and that, once the parties reach a mutual understanding of the terms at issue, "vagueness is not a valid objection"). Plaintiff States have made no such

showing. They have not identified any term that is genuinely ambiguous in the context of this Action. Plaintiff States should withdraw these objections and respond using the ordinary meanings of the terms employed therein.

The following requests illustrate the lack of merit in Plaintiff States' vagueness objections:

**RFP No. 2 (Non-Governmental Funding Sources)**: Plaintiff States refuse to search for or produce any documents responsive to this request, objecting to the terms "non-governmental," "sources," "funding," "reimbursement," and "in-kind support" as vague and ambiguous. These terms have commonly understood meanings, and the request is plainly relevant to Defendants' defenses, including any defense that this litigation is being funded or supported by third parties with interests adverse to Defendants.

**RFP No. 19 (Factual Basis for Standing)**: While Plaintiff States offer to produce certain documents, they object to the terms "factual basis," "standing," and "alleged harm" as vague and ambiguous. These terms are standard terms, and the request is directly relevant to whether the Plaintiff States have standing. Plaintiff States should produce all non-privileged documents supporting their standing allegations without further delay.

**RFP No. 24 (Communications with DIRECTV, Newsmax, and Non-Parties)**: While Plaintiff States offer to produce certain documents, they object to the terms "communications," "coordination," "expert analyses," "declarations," and "requested relief" as vague and ambiguous. These terms have commonly understood meanings. Plaintiff States should produce all non-privileged communications with DIRECTV, Newsmax, Christopher Ruddy, and other non-parties concerning the Transaction, the investigation, and this Action.

## VI. Additional Request-Specific Deficiencies.

**RFP No. 1 (Pre-Suit Investigation Materials)**: While Plaintiff States offer to produce certain non-privileged materials from their "investigative file," they improperly limit production to documents falling within their own self-defined category of the "investigative file," rather than producing all materials collected, gathered, received, or generated in connection with their investigation of the Transaction. Plaintiff States may not artificially narrow the universe of responsive documents by unilaterally redefining the scope of their investigation to encompass only those materials they choose to place in a designated "investigative file." The obligation to produce responsive documents under Rule 34 extends to all documents within a party's possession, custody, or control that are responsive to the request as written. *See* Fed. R. Civ. P. 34(a)(1); *Burlington N. & Santa Fe Ry.*, 408 F.3d at 1149 (holding that discovery responses must be evaluated under a "holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process," and that a party may not use boilerplate

objections or blanket refusals to limit the scope of its production obligations). Plaintiff States should produce all non-privileged materials gathered in connection with their investigation without artificially limiting the scope of production to a self-defined "investigative file."

**RFP No. 3 (Communications with Government Entities)**: Plaintiff States refuse to search for or produce any documents responsive to this request. This refusal is particularly unjustifiable given that Plaintiff States' own RFP No. 3 to Defendants seeks the identical category of documents—communications with federal and state agencies, legislative bodies, and public officials regarding the Transaction. Plaintiff States cannot claim credibly that this request to Defendants is within the bounds of proper discovery while simultaneously claiming the same request from Defendants is not within the bounds of proper discovery.

**RFP No. 4 (DOJ/FCC Review Irregularities)**: Plaintiff States condition any production in response to this request on a showing that "responsive, non-duplicative, non-privileged, non-work product materials are unavailable from the DOJ or the FCC, and/or a public source." This conditional refusal is improper for the reasons set forth in Section IV above. Rule 34 imposes no such precondition. Fed. R. Civ. P. 34(a)(1). Moreover, the documents at issue—Plaintiff States' own documents reflecting their contentions that the DOJ's or FCC's review of the Transaction was affected by irregular procedure, political influence, or other defect—are uniquely within Plaintiff States' possession, custody, or control and are not obtainable from the DOJ, the FCC, or any public source. Plaintiff States should produce all responsive, non-privileged documents without imposing conditions not authorized by the Federal Rules.

**RFP Nos. 25-26 (Press Strategy and Political Contributions)**: Plaintiff States refuse to produce any documents relating to press strategy, media outreach, or public messaging about the Transaction (RFP No. 25), or political campaign contributions by DIRECTV or any MVPD (RFP No. 26). Documents relating to Plaintiff States' public messaging strategy are relevant to Defendants' defenses, particularly given the Complaint's allegations about irregularity in the federal review process. Documents relating to political contributions are relevant to whether political considerations influenced the decision to bring this action.

In light of the July 1, 2026 letter and the foregoing, we request that Plaintiff States clarify that they will:

(1) withdraw their blanket refusals to search for and produce documents on the subjects identified above;
(2) withdraw their improper "prematurity" objections;
(3) apply Defendants' defined terms as written, or propose reasonable alternative definitions that do not materially narrow the scope of production;
(4) agree to a reasonable and reciprocal time period for document searches;

(5) expand their search to encompass each Attorney General's office as a whole and any state agencies reasonably likely to possess relevant documents;

(6) provide specific privilege assertions supported by a privilege log compliant with Fed. R. Civ. P. 26(b)(5)(A), and identify each specific statute upon which they rely to withhold responsive documents;

(7) withdraw their objections based on confidentiality agreements, which are adequately addressed by the Protective Order entered in this Action;

(8) withdraw their improper "equal availability" objections, including their objection to producing documents that were or may be produced by another party, and produce their own internal documents without regard to whether the underlying information discussed therein is publicly accessible or obtainable from another source;

(9) withdraw their boilerplate vagueness objections and respond to Defendants' RFPs using the ordinary and commonly understood meanings of the terms employed therein;

(10) produce all non-privileged materials gathered, collected, received, or generated in connection with their pre-suit investigation of the Transaction, without artificially limiting the scope of production to a self-defined "investigative file"; and

(11) to the extent Plaintiff States withhold or redact documents on the basis of attorney-client privilege, work product doctrine, joint defense or common-interest privilege, or any other privilege or protection, provide Defendants with a privilege log identifying each document withheld or redacted and the specific privilege asserted with sufficient particularity to enable Defendants and the Court to assess the claim, consistent with Fed. R. Civ. P. 26(b)(5)(A). Defendants are willing to meet and confer with Plaintiff States to discuss the parameters and necessary information to be contained in such privilege log.

We look forward to discussing these issues tomorrow.

Sincerely,

Bradley S. Lui
Morrison & Foerster LLP