# Exhibit E

MORRISON FOERSTER

2100 L STREET, NW
SUITE 900
WASHINGTON
DC 20037

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON, BRUSSELS, DENVER, HONG KONG, LONDON, LOS ANGELES, MIAMI, NEW YORK, PALO ALTO, SAN DIEGO, SAN FRANCISCO, SEATTLE, SHANGHAI, SINGAPORE, TOKYO, WASHINGTON, D.C.

July 13, 2026

Writer's Direct Contact
+1 (202) 887-8766
BLui@mofo.com

**CONFIDENTIAL**

***Via Email***

Laura Antonini
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

Re: Production of Investigation Materials in *In re Nexstar-TEGNA Merger Litigation*, No. 2:26-cv-00976 (E.D. Cal.)

Dear Ms. Antonini:

I write following the parties' meet and confer on July 8, 2026 to reiterate Defendants' continuing and serious concerns regarding Plaintiff States' refusal to search for and produce documents responsive to Defendants' First Set of Requests for Production ("RFPs"). This letter supplements my prior letters of July 1 and July 7, 2026, which addressed many of these same deficiencies and remain largely unresolved after multiple meet and confers. The issues identified in our prior correspondence include some of the most significant problems with Plaintiff States' Responses and Objections ("R&Os").

As set forth below, and as discussed during our meet and confer, Plaintiff States continue to take the position that discovery in this case is a one-way street—demanding expansive productions from Defendants while categorically refusing to conduct even basic searches for documents relevant to the claims Plaintiff States assert in their First Amended Complaint ("Complaint"). Plaintiff States maintained this position even after Defendants clarified that they believed Plaintiff States could satisfy Defendants' RFPs with "go-get" collections, rather than custodial searches.

There is no exception under the Federal Rules of Civil Procedure ("FRCP") exempting the Plaintiff States from the burdens of discovery. The Plaintiff States are subject to the same rules of discovery as any other party. They must search for and produce relevant documents in response to the Defendants' RFPs.

## I. Discovery Is Not a One-Way Street; Plaintiff States Must Comply with Their Discovery Obligations.

Plaintiff States assert, for at least 23 of Defendants' 31 RFPs, that they "do not intend to search for, collect, review, and produce any information or documents responsive to this Request." The Plaintiffs States' blanket refusal to comply with their discovery obligations encompasses RFP Nos. 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 25, 26, 27, and 31. Plaintiff States initiated this litigation and must cooperate in discovery. *See* Fed. R. Civ. P. 26(b)(1) (permitting discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 776 n.4 (9th Cir. 1994) ("When the government is named as a party to an action, it is placed in the same position as a private litigant, and the rules of discovery in the Federal Rules of Civil Procedure apply.") (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)). Plaintiff States bear the burden of proof in this case and cannot refuse to comply with discovery directed to them. *See United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 n.1 (6th Cir. 1976) (discovery rules apply to the government "just as to any party"); *United States v. US Airways Grp., Inc.*, 2013 WL 12341599, at *4–5 (D.D.C. Oct. 10, 2013) (finding defendants established relevance of discovery requests directed at government plaintiffs' prior merger investigation files).

The asymmetry between Plaintiff States' expansive requests to Defendants and their refusal to engage in reciprocal discovery is untenable. Plaintiff States limit their search and production to the narrow window of August 19, 2025 through March 18, 2026—approximately seven months—while their own RFPs to Nexstar request documents from January 1, 2020 through the present. Indeed, Plaintiff States' own RFPs instruct that "all Requests should be construed as requesting Documents created, modified, sent, or received from January 1, 2020, through the present." The Rules do not permit a party to propound broad discovery while simultaneously stonewalling its own obligations. *See US Airways Grp.*, 2013 WL 12341599, at *5–6 (finding it "difficult to read Plaintiffs' request as not seeking essentially the same material from Defendants that Defendants seek to obtain from Plaintiffs," and holding that the material sought was relevant).

## II. Plaintiff States Likely Have Information Relevant to Their Claims Independent of This Transaction Yet Refuse to Search for That Material.

Plaintiff States have affirmatively alleged in their Complaint that the Transaction would substantially lessen competition in markets for retransmission consent, increase the risk and severity of blackouts, and harm local news programming, among other things. *See* Complaint ¶¶ 74–84. These are not issues that arose for the first time when the Transaction was announced. The State Attorneys General who comprise the Plaintiff States have long been active in investigating and commenting on these very issues in the broadcast industry—including in the context of prior media consolidations and investigations. Just earlier this

year, California Attorney General Rob Bonta commented on Paramount Skydance Corporation's proposed acquisition of Warner Bros. Discovery by expressing his concern that the transaction "could increase market concentration, reduce competition, hurt workers in the media industry and limit creative diversity."[1] Other examples include:

- California, Colorado, Connecticut, Massachusetts, New York, and Oregon's recently filed litigation to enjoin Paramount Skydance Corporation's proposed acquisition of Warner Bros. Discovery;[2]

- Public speculation that states, such as California, are investigating Fox Corporation's proposed acquisition of Roku, Inc.;[3]

- A petition filed by Attorneys General of Illinois, Massachusetts, and other states with the Federal Communications Commission in opposition to the proposed merger between Sinclair Broadcast Group and Tribune Media;[4] and

- Connecticut's settlement with Charter Communications in connection with its acquisition of Cox Communications.[5]

- Illinois, Pennsylvania, and Virginia's action against Nexstar and Tribune Media Co. related to Nexstar's proposed acquisition of Tribune.[6]

Despite this history, during the meet and confer, Plaintiff States' counsel took the remarkable position that any materials "not considered" as part of the investigation of this Transaction—including materials relating to the very same industry dynamics at the heart of their Complaint—are not relevant and that the Plaintiff States will not even search for them. When Defendants' counsel pointed out that the issues the Plaintiff States discuss in the Complaint—blackouts, retransmission consent negotiations, production of local news—are

---

[1] Press Release, California Dep't of Justice, Attorney General Bonta Issues Statement on Proposed Warner Bros. Mergers: California is Taking a Close Look (Feb. 20, 2026), https://www.oag.ca.gov/news/press-releases/attorney-general-bonta-issues-statement-proposed-warner-bros-mergers-california; *see also* Dawn Chmielewski & Jody Godoy, *US states could sue next week to block Paramount-Warner Bros deal, sources say*, Reuters, July 8, 2026, https://www.reuters.com/world/us-states-could-sue-next-week-block-paramount-warner-bros-deal-sources-say-2026-07-08/.

[2] *The State of California et al. v. Paramount Skydance Corp. et al.*, No. 4:26-cv-07116 (N.D. Cal.).

[3] Matthew Keys, *California DOJ won't confirm probe into Fox-Roku deal, but there are signs*, TheDesk, June 16, 2026, https://thedesk.net/2026/06/california-doj-rob-bonta-roku-fox-deal-probe/.

[4] Ted Johnson, *Four State Attorneys General Oppose Sinclair-Tribune Merger*, Variety, Nov. 3, 2017, https://variety.com/2017/biz/politics/sinclair-tribune-merger-opposiion-attorneys-general-1202606391/.

[5] Press Release, Conn. Off. of the Att'y Gen., Attorney General Tong and Consumer Counsel Coleman Secure Consumer Protection Commitments in Proposed Charter/Cox Merger Settlement, (Jan. 28, 2026), https://portal.ct.gov/ag/press-releases/2026-press-releases/consumer-protection-commitments-in-proposed-charter-cox-merger-settlement.

[6] *United States et al. v. Nexstar Media Group, Inc.*, No. 1:19-cv-02295 (D.D.C.).

industry issues that predate the Transaction, Plaintiff States' counsel responded that if they "did not consider that information in the context of the transaction," then discovery of it would not be appropriate. Counsel further asserted that any challenge to the States' decision not to search for such materials constituted an impermissible challenge to "prosecutorial discretion."

These positions are wrong as a matter of law. Plaintiff States cannot unilaterally define the boundaries of their own discovery obligations by declaring that if they did not consider certain information during their investigation, it is ipso facto irrelevant and not subject to discovery. The Federal Rules define the scope of discovery—not Plaintiff States' prosecutorial judgment about what information in their possession they chose to consider (or ignore) in deciding to bring this case. *See* Fed. R. Civ. P. 26(b)(1); *see also Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991) ("[W]hen the United States comes into court as a party in a civil suit, it is subject to the Federal Rules of Civil Procedure as any other litigant."); *Procter & Gamble Co.*, 356 U.S. at 681 ("The Government as a litigant is, of course, subject to the rules of discovery."). Plaintiff States' choice not to consider certain information *in their possession* when evaluating the Transaction does not render that information irrelevant; to the contrary, it may bear directly on the strength of those claims, the propriety of the Plaintiff States' remedy requests, and on Defendants' affirmative defenses. Importantly, Plaintiff States themselves seem to believe that information related to prior transactions is relevant here, as Plaintiff States requested information on Nexstar's prior acquisitions of Media General and Tribune.

Plaintiff States' assertion that Defendants are challenging their "prosecutorial discretion" is mistaken. Defendants are exercising their right under the FRCP to obtain discovery of relevant information in the possession, custody, or control of Plaintiff States to defend against the case the Plaintiff States have brought. Plaintiff States must "undertake a diligent search and . . . make a reasonable inquiry for purposes of locating the documents requested[.]" *Camp v. L.A. Arena Co., LLC*, 2024 WL 1634095, at *15 (C.D. Cal. Mar. 22, 2024). The Plaintiff States' litigation choices do not insulate their files from discovery. *See Leggett & Platt, Inc.*, 542 F.2d at 658 (holding that "investigatory inquiries into other industry acquisitions are relevant, and thereby discoverable unless privileged, to the extent they contain factual materials, such as surveys and economic analyses of the industry"); *US Airways Grp.*, 2013 WL 12341599, at *4–6 (finding prior merger analysis materials relevant and discoverable despite government plaintiffs' objections that their enforcement decisions were not at issue); *HM Elecs., Inc. v. R.F. Techs., Inc.*, 2015 WL 4714908, at *12 (S.D. Cal. Aug. 7, 2015) ("Parties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents." (citation omitted)), *vacated in part on other grounds*, 171 F. Supp. 3d 1020 (S.D. Cal. 2016); *see also United States v. Bruce*, 984 F.3d 884, 896-97 (9th Cir. 2021) (holding that, in the criminal context, the government "cannot turn a blind eye to [its] discovery obligations").

Documents that Plaintiff States have gathered or analyzed in other investigations (whether public or non-public), including those noted above, and that are responsive to the Defendants' RFPs must be produced. Those documents are relevant to the Plaintiff States' claims, their proposed remedy, and/or Defendants' defenses. For instance, documents from other investigations, such as Connecticut's review of Charter's acquisition of Cox, may contain relevant information regarding Spectrum's retransmission consent agreements and whether Defendants' merger would impact residents in the Hartford-New Haven, Connecticut DMA, as Plaintiff States allege. The Plaintiff States choice to ignore such documents during their evaluation of this Transaction does not diminish their relevance.

**III. The Scope of the Plaintiff States' Investigative Files.**

While Plaintiff States offer to produce certain non-privileged materials in response to the Defendants' requests for the Plaintiff States' Investigative Materials, their R&Os purport to limit production to documents falling within their own self-defined category of the "investigative file." In our most recent meet and confer, the Plaintiff States indicated that there is no difference between what the RFPs define as Investigative Materials and the Plaintiff States' "investigative files." Please confirm that this is the case for all of the Plaintiff States.

We also appreciate that Plaintiff States indicated during the meet and confer that they would "get back to" us on certain points, including:

- **Front office involvement**: When asked whether the "investigative file" includes materials from individuals who directed or supervised the investigation above the State Antitrust Division level—i.e., the "front office"—counsel acknowledged the question and stated they would check. We ask that Plaintiff States confirm that their productions have or will encompass all materials relating to their investigations in the possession of any individual within each State Attorney General's office who had any role in directing, supervising, or approving the investigation into the Transaction or the decision to file suit, or who otherwise had any role in such investigation or decision to file suit regardless of whether that individual sits within the State Antitrust Division.

- **Communications with other state agencies**: Plaintiff States stated during the meet and confer that they "treat state agencies as [third parties] and produced all comms with them." We understand this to mean that Plaintiff States have produced (or will produce) all communications between the State Antitrust Divisions and other state agencies relating to the Transaction or this litigation. Please confirm that this understanding is correct. In addition, we ask that you confirm for all Plaintiff States that Plaintiff States' Initial Disclosures have disclosed, or will be amended to

disclose, all state agencies that have information that is relevant to the claims and defenses in this action.

## IV. Specific RFP Examples Illustrating these Deficiencies.

We highlight below specific RFPs that illustrate why the Plaintiff States' refusal to cooperate in discovery is improper:

### A. Blackouts (RFP Nos. 9, 10, and 30)

Defendants' RFP No. 9 seeks "[a]ll Documents relating to any Blackouts during the Relevant Time Period, including: (a) the frequency, duration, and reason for each Blackout; and (b) any purported harm sustained as a result of any Blackout." RFP No. 10 seeks "[a]ll Documents relating to any impact the Transaction is likely to have on the duration, extent, or frequency of Blackouts." RFP No. 30 seeks "[a]ll Documents relating to the allegations in Your Complaint about the purported causes and impacts of Blackouts."

Plaintiff States categorically refuse to search for, collect, review, or produce any documents responsive to RFP Nos. 9 and 10. While Plaintiff States make a limited offer of production for RFP No. 30, they confine that production to their "investigative file" within the State Antitrust Divisions.

Plaintiff States' Complaint places blackouts squarely at issue. *See* Complaint ¶¶ 76–77. As Defendants' counsel explained during the meet and confer, the Plaintiff States allege that blackouts provide leverage and harm consumers. Information about the historic dynamics of blackouts—including information predating this Transaction—is plainly relevant. If the Plaintiff States have documents on the impact or non-impact of blackouts on subscriptions or consumers within their States, for example, Defendants are entitled to that information.

During the meet and confer, Plaintiff States stated that they did not have to search for and produce documents relating to blackouts because they "did not consider that information in the context of the transaction." As explained above, that is not a valid basis to refuse production. The fact that Plaintiff States may have ignored previously gathered information about blackouts does not render it irrelevant; it goes to the heart of the merits and to whether Plaintiff States' theory of harm withstands scrutiny, as well as the scope of their proposed remedy. *See* Fed. R. Civ. P. 26(b)(1); *Leggett & Platt, Inc.*, 542 F.2d at 658 (factual materials in government investigatory files concerning other industry acquisitions are "relevant, and thereby discoverable unless privileged"); *US Airways Grp.*, 2013 WL 12341599, at *5–6 (government plaintiffs' prior merger assessments were relevant to defendants' defenses where complaint placed earlier mergers at issue); *In re Generic Pharms. Pricing Antitrust Litig.*, 699 F. Supp. 3d 352, 356 (E.D. Pa. 2023) (ordering plaintiff States produce documents

in response to a request for "[a]ny reports analyses, or studies . . . relating to the price or supply of generic[] pharmaceutical products . . . possessed and/or created by or for the office of a State's attorney general").

**B. Retransmission Consent (RFP Nos. 8 and 11)**

Defendants' RFP No. 8 seeks "[a]ll Documents relating to any impact the Transaction would have on: (a) Nexstar's bargaining position during negotiations of Retransmission Consent Agreements; (b) Retransmission Consent Fees; and (c) the impact of a single Person owning more than one Big Four Affiliate in a DMA on Retransmission Consent Fees." RFP No. 11 seeks "[a]ll Documents relating to the impact on Retransmission Consent Fees of any of the following: (a) Cord Cutting; (b) vMVPDs; (c) Streaming Services; (d) DTC Services; (e) any alternative Distributor to Local Broadcast Stations; and (f) any alternative to Big Four Affiliates." Plaintiff States refuse to search for or produce any documents responsive to either request.

Plaintiff States' Complaint alleges that "[t]he Transaction has increased the bargaining power of Nexstar" and that "[t]he merged company has the power to threaten to black out multiple Big 4 stations simultaneously . . . increasing the retransmission consent fees that Defendants could profitably demand." Complaint ¶ 76. Defendants' counsel made clear during the meet and confer that retransmission consent dynamics—including the effects of cord cutting, vMVPDs, and streaming alternatives—are subjects on which State Attorneys General are likely to have information independent of this Transaction. Those dynamics are central to any proper competitive analysis of the broadcast industry and have been the subject of public regulatory proceedings and legislative attention for years. Information the Plaintiff States possess from other investigations regarding retransmission consent fee dynamics, including whether factors other than broadcaster consolidation affect the level of such fees, is directly relevant to Defendants' defenses and to the viability of Plaintiff States' theory of harm.

**C. The Asymmetry with Plaintiff States' Own Requests**

Plaintiff States' discovery requests to Defendants belie their refusal to search for and produce relevant documents. For example:

- Plaintiff States' RFP No. 54 to Nexstar and RFP No. 53 to TEGNA request "[a]ll Communications between You and any third-party or subpoena recipients related to the Pre-acquisition Details, Transaction, or Instant litigation." Yet Plaintiff States refuse to search for or produce any documents responsive to Defendants' RFP No. 3, which seeks the same category of documents. Plaintiff States cannot simultaneously demand that Defendants search for and produce all communications with third parties including state agencies while refusing to search their own agencies.

- In Plaintiff States' RFPs to Nexstar, they define "relating to," "referring to," "regarding," "concerning," or "about" to mean, "in whole or in part, constituting, containing, concerning, embodying, reflecting, discussing, explaining, describing, analyzing, identifying, stating, supporting, refuting, relating to, referring to, regarding, about, dealing with, or in any way pertaining to." Yet Plaintiff States improperly redefine the same standard relational terms in Defendants' RFPs to mean only "directly discussing"—a construction that would materially narrow the universe of responsive documents.

- Plaintiff States' RFPs to Nexstar request documents going back to January 1, 2020, while Plaintiff States limit their own production to August 19, 2025 through March 18, 2026—a mere seven months.

Plaintiff States seek expansive discovery from Defendants regarding retransmission consent fee models, methodologies, and projections (*see, e.g.*, Plaintiff States' RFP No. 17). They seek documents regarding "analyses of MVPD subscriber losses due to Blackouts" (*see, e.g.*, Plaintiff States' RFP No. 19). The breadth of these requests, among others, to Defendants stands in stark contrast to Plaintiff States' blanket refusal to search their own files for information on the very same subjects.

## V. Request for Resolution.

In light of the foregoing, we request that Plaintiff States promptly:

1. **Withdraw their blanket refusals** to search for and produce documents responsive to RFP Nos. 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 25, 26, 27, and 31, and conduct reasonable searches for responsive documents;

2. **Conduct searches for documents predating the investigation** of the Transaction that relate to the issues placed at issue in the Complaint, including blackout dynamics, retransmission consent fee dynamics, local news dynamics, and prior merger or industry consolidation analyses;

3. **Expand the scope of their "investigative file" production** to include all materials collected, gathered, received, or generated in connection with the investigation—not merely those Plaintiff States unilaterally deem to have been "considered"—including materials in the possession of individuals in the "front office" or otherwise above the State Antitrust Division who directed, supervised, or approved the investigation or the filing of this action;

4. **Confirm their production of communications with other state agencies** and expand their search obligations to encompass the State Attorney General's office as a whole; and

5. **Adopt reasonable and reciprocal time periods** for their document searches, consistent with the scope of the time periods Plaintiff States have demanded in their own RFPs to Defendants.

We have raised these issues in multiple letters and meet and confer sessions and have made significant efforts to resolve them cooperatively. We remain hopeful that Plaintiff States will reconsider their improper objections and conduct searches responsive to Defendants' RFPs. We welcome the opportunity to meet and confer to discuss how the Plaintiff States can discharge these requests in a manner that is efficient, targeted, limited to just relevant investigations, and does not involve burdensome custodial collections. We are willing to consider any proposals that Plaintiff States might make on how to go about identifying and producing responsive materials. All we are insisting on is that Plaintiff States—like any other party to a case—agree to some kind of process to identify and produce relevant materials in their possession regardless of whether they "considered" them before filing the case.

We look forward to your prompt response.

Sincerely,

Bradley S. Lui
Morrison & Foerster LLP