# Exhibit I

ROB BONTA
Attorney General of California
PAULA BLIZZARD (SBN 207920)
Senior Assistant Attorney General
BRENT NAKAMURA (SBN 283572)
Supervising Deputy Attorney General
LAURA ANTONINI (SBN 271658)
ELIZABETH CHEEVER (SBN 341421)
EMILY CURRAN (SBN 293065)
JENNIFER HANE (SBN 275729)
KOMAL K. PATEL (SBN 342765)
CONNIE P. SUNG (SBN 304242)
BRIAN WANG (SBN 284490)
Deputy Attorneys General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Telephone: (213) 269-6277
E-mail: Laura.Antonini@doj.ca.gov
*Attorneys for Plaintiff, The State of California*

Additional counsel identified on signature page

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re: Nexstar-TEGNA Merger Litigation** | Case No. 2:26-cv-00976-TLN-CKD<br><br>**PLAINTIFF STATES' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT NEXSTAR MEDIA GROUP, INC.** |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff States and Commonwealths of California, Colorado, Connecticut, Illinois, Indiana, Kansas, Massachusetts, New York, North Carolina, Oregon, Pennsylvania, Vermont, and Virginia ("Plaintiff States") request that Defendant Nexstar Media Group, Inc. ("Nexstar") produce the documents and data specified in this First Set of Requests for Production ("Requests") for inspection, examination, and reproduction. The documents and data requested herein should be sent to the attention of undersigned counsel in a manner agreed upon by the parties. The production of documents and data shall be in accordance with the Instructions and Definitions set forth below, Rule 34 of the

Federal Rules of Civil Procedure, and any ESI Stipulation agreed upon between the parties or ESI Order issued by the Court. These Requests are continuing in nature and should be supplemented in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

**DEFINITIONS**

1. "**Nexstar**," "**Company**," "**You**," or "**Your**" means Nexstar Media Group, Inc, its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures.
2. "**Tegna**" means TEGNA Inc., its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures.
3. "**Airtime**" refers to the time during which a television broadcast takes place.
4. "**And**" and "**or**" shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any Request all information that otherwise might be construed to be outside the scope of the Request. These terms shall be read expansively to include, not exclude, documents.
5. "**Any**" shall be construed to include "**all**," and "**all**" shall be construed to include "**any**."
6. "**Big Four**" means CBS, ABC, NBC, or Fox.
7. "**Blackout**" means a dispute between a broadcast station owner and a MVPD or vMVPD that leads to a broadcast station owned by that broadcast station owner not being retransmitted or carried by that MVPD or vMVPD for any period of time.

8. "**Churn**" means the percentage or number of MVPD subscribers who cancel or do not renew their service over a given period (typically monthly or annually).

9. "**Collaborative Work Environment**" means any platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Collaborative Work Environments include Quip, Microsoft SharePoint sites, WorkDocs, eRooms, document management systems (*e.g.*, iManage), intranets, web content management systems ("CMS") (*e.g.*, Drupal), wikis (*e.g.*, Confluence, xwiki), work tracking software (*e.g.*, Jira), and blogs.

10. "**Communication(s)**" include(s), but is not limited to, any conversation, discussion, letter, memorandum, meeting, note, letter or administrative message, e-mail, text messages, messenger and other chats, social media, or any other transmittal of information, whether transmitted in writing, orally, electronically or by any other means, the metadata of any electronic Communication such as e-mail, all notes pertaining to any of the aforesaid, and any Document that abstracts, digests, transcribes or records any Communication.

11. "**DMA(s)**" means a "Designated Market Area(s)" as determined by Nielson Media Research, with broadcaster activity within and across DMAs regulated by Federal Communications Commission (*see, e.g.*, 47 CFR § 76.55(e)(2)).

12. "**Document**" is defined as broadly as that term is construed under Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, all written, printed, recorded, or electronically stored information ("ESI") of any kind in the possession, custody, or control of the Company, including information stored on and Communications sent through social media accounts like Twitter, Facebook, or Snapchat; including chats, instant messages, text messages, direct messages, other Messaging Applications, genAI platforms, audio/visual recordings, wherever stored, including documents contained in Collaborative Work Environments and other document databases as well as copies of documents that are not identical duplicates of

the originals in a person's files; and copies of documents the originals of which are not in the possession, custody, or control of the Company. Employee-Owned Devices used to store or transmit documents responsive to these Requests are considered in the possession, custody, or control of the Company. "Documents" includes metadata, formulas, and other embedded, hidden, and bibliographic or historical data describing or relating to any document.

13. "**Documents Sufficient to Show**" means both documents that are necessary and documents that are sufficient to provide the specified information.

14. "**Economic Team**" includes any person or entity that assists or has assisted with assessing the costs and/or benefits of the Transaction, which includes but not limited to management consultants, accountants, or financial analysts.

15. "**Employee-Owned Device**" means any computer, phone, tablet, or other electronic device owned by a Company employee that has been used to conduct business for the Company.

16. "**Every**" includes "**each**," and "**each**" includes "**every**."

17. "**Including**" means including but not limited to.

18. "**Information Systems Diagram**" means an organized list, schematic, diagram, or other representation sufficient to show where and how the Company stores all physical and electronic information in its possession, custody, or control, including but not limited to information systems (*e.g.*, email messages, voice-mail messages, communications logs, enterprise content management, instant messaging, database applications), Collaborative Work Environments, genAI platforms, and locations where information is stored, including servers and backup systems (*e.g.*, physical Company facility, third-party vendor location, cloud).

19. "**Instant Litigation**" is the litigation that began with Plaintiffs' filing of their respective Complaints on March 18, 2026.

20. "**Messaging Application**" refers to any electronic method that has ever been used by the Company and its employees to communicate with each other or entities outside the

Company for any business purposes. "Messaging Application" includes platforms, whether for ephemeral or non-ephemeral messaging, for email, chats, instant messages, text messages, and other methods of group and individual communication (*e.g.*, Microsoft Teams, WhatsApp, Signal, Wickr, Chime, Slack). "Messaging Application" may overlap with "Collaborative Work Environment."

21. "**MVPD**" stands for Multichannel Video Programming Distributor and includes any entity that makes available for purchase multiple channels of video programming, including cable operators and direct broadcast satellite service providers. Examples of MVPDs include operators like DirecTV, Comcast, and DISH.

22. "**Pre-acquisition Details**" means any work Nexstar or Tegna performed to determine the viability of a merger between the two entities, including but not limited to, cost-benefit analyses, synergies analyses, and economic projections.

23. "**Related Case**" refers to *DirecTV, LLC, et al. v. Nexstar Media Group, Inc*., et al., United States Court of Appeals for the Ninth Circuit, Case No.: 26-2490.

24. "**Relating to**," "**referring to**," "**regarding**," "**concerning**," or "**about**" mean, in whole or in part, constituting, containing, concerning, embodying, reflecting, discussing, explaining, describing, analyzing, identifying, stating, supporting, refuting, relating to, referring to, regarding, about, dealing with, or in any way pertaining to.

25. "**Retransmission Consent Fee**" means the per subscriber per month payment made by an MVPD to a local broadcast station for the right to distribute that station's broadcast to its subscribers.

26. "**Reverse Retransmission Fee**" means the per month payment made by a local broadcast station to its affiliated network for the right to allow an MVPD to distribute that station's network programming to its subscribers.

27. "**Rundown**" refers to the programming grid for a news broadcast.

28. "**Sidecar**" means a station that is separately owned and licensed, but over which You exercise operational or financial control, often through joint sales agreements, shared services agreements, and special financial arrangements. For example, Nexstar's

Sidecars include stations owned by Mission Broadcasting, Inc., White Knight Broadcasting, Inc., and Vaughan Media LLC.

29. "**Subsidiary**," "**Affiliate,**" and "**Joint Venture**" refer to any person or entity in which there is at least 25 percent ownership or control between that person or entity and any other person or entity.

30. "**Transaction**" means Nexstar's acquisition of Tegna on March 19, 2026.

31. "**vMVPD**" stands for Virtual Multichannel Video Programming Distributor and includes any entity that makes available for purchase multiple channels of video programming by means of streaming or any other online content distribution system. Examples of vMVPDs are FuboTV, Hulu + Live TV, and YouTube TV.

## INSTRUCTIONS

1. Documents requested are those in the actual or constructive possession, custody, or control of Nexstar.

2. These Requests are to be afforded their broadest interpretation and maximum breadth. To that end, the following constructions should be applied:

(a) construing the singular form of any word to include the plural and the plural form to include the singular;

(b) construing the past tense of a verb to include the present tense and the present tense to include the past tense;

(c) construing the masculine form to include the feminine form; and

(d) construing the term "date" to mean the exact day, month, and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

3. Unless otherwise stated, construe each Request independently and without reference to any other for the purpose of limitation.

4. If you assert that part of a Request is objectionable, respond to the remaining parts of the request to which you do not object. For those portions of any Request to which you object, please

state the reasons for such objection and describe the Documents or categories of Documents that are not being produced.

5. If, in responding to any Request, you assert any ambiguity in interpreting either the Request or a definition or instruction applicable thereto, please state the language deemed to be ambiguous and the interpretation used in responding to the Request and produce all Documents that are responsive to the Request as you interpret it.

6. All Documents responsive to these Requests:

(a) shall be produced in complete form, unredacted unless privileged, and in the order in which they appear in Your files. Each document requested herein must be produced in its entirety and without deletion, abbreviation, redaction, expurgation, or excisions, regardless of whether you consider the entire document to be relevant or responsive to these Requests;

(b) shall be marked on each page with corporate identification and consecutive document control numbers when produced in image format; and

(c) shall be produced in color where necessary to interpret the document.

7. If You withhold any responsive document or mask or redact any portion of any responsive document based on a claim of privilege or other protection from discovery, provide a log in Microsoft Excel format describing the claim and all facts supporting the claim sufficient for the Plaintiffs and the Court to assess the claim of privilege, in accordance with Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure and any ESI Stipulation agreed upon between the parties or ESI Order issued by the Court.

8. Unless otherwise agreed among counsel, Documents responsive to these Requests should be sent to the Office of the Illinois Attorney General at the following address:

Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
Attn: Paul Harper
paul.harper@ilag.gov

9. Documents and electronically stored information shall be produced in the form described in any ESI Stipulation agreed upon between the parties or ESI Order issued by the Court, or if not otherwise addressed, in native format with all metadata.

10. Unless otherwise specified, all Requests should be construed as requesting Documents created, modified, sent, or received from January 1, 2020, through the present.

11. Whenever there is a question as to whether the provided Documents are sufficiently responsive, produce the documents.

## REQUESTS FOR PRODUCTION

### Request for Production No. 1

Organizational charts and other Documents sufficient to show Nexstar's organizational structure, including names, job titles, and reporting relationships of personnel from January 1, 2025, to present.

### Request for Production No. 2

All agendas and minutes for meetings of Nexstar's Board of Directors, or any groups of Directors, from January 1, 2025, through present.

### Request for Production No. 3

All documents relating to topics, words or phrases Nexstar employees are (or have been) instructed to avoid using or are (or have been) discouraged from using or discussing that relate to competition, the Transaction, any potential litigation or investigation relating to the Transaction, or any form of industry consolidation, including newsroom consolidations, station consolidations, or reductions in staffing, including all Communications or Documents that reference or relate to any such topics, words or phrases.

### Request for Production No. 4

From January 1, 2018, to present, all Documents relating to the drafting of each Nexstar shareholder Communication, including but not limited to any tenets, themes, meetings, drafts, notes, and the approval process for finalizing the shareholder letter.

**Request for Production No. 5**

All Nexstar profit and loss data for the past five (5) years and any Documents sufficient to define and explain all terms, calculations, and methods of computation.

**Request for Production No. 6**

All Communications sent or received by Perry Sook, Michael Biard, Joe Abouzeid, Lee Ann Gliha, Scott Russell, and Gary Weitman after January 1, 2025, pertaining to Pre-acquisition Details, the Transaction, or the Instant Litigation.

**Request for Production No. 7**

All Documents comprising any final, completed, or delivered paper, study, analysis, report, survey, or project prepared, conducted, or commissioned in full or in part, by any member of Nexstar's Economic Team pertaining to Pre-acquisition Details, the Transaction, or the Instant Litigation.

**Request for Production No. 8**

All documents relating to any study, evaluation, analysis, report, survey, or project prepared, conducted, or commissioned by Nexstar, in full or in part, relating to or in anticipation of its merger with Tegna, whether or not such study, analysis, report, survey, or project was completed or ultimately used.

**Request for Production No. 9**

All Documents and Communications relating to the evaluation, analysis, decision-making, implementation of, or ultimate approval of the Transaction, including the Communications by and among individuals identified in Request for Production No. 6, pro forma financial statements, and any reports or analyses produced internally or by a consultant, banker, or other advisor.

**Request for Production No. 10**

All Documents and Communications between You and Tegna prior to the closing of the Transaction related to the Transaction or to the parties' conduct, obligations, coordination, or operational planning related to Pre-acquisition Details, including but not limited to any policies, procedures, or protocols governing such conduct.

///

**Request for Production No. 11**

All transcripts of any deposition, hearing, interview, or testimony taken by any federal or state authorities (not limited to antitrust enforcement authorities) of Your employees, consultants or representatives related to Pre-acquisition Details, the Transaction, Blackouts, retransmission agreements, or labor agreements.

**Request for Production No. 12**

All Documents, data, reports, analyses or Communications relating to the financial health of Nexstar broadcast stations located in the states that comprise the "Plaintiff States" identified above or located in Overlap DMAs as identified in paragraph 4, footnote 4 of the Plaintiff States' First Amended Complaint, from January 1, 2024, to present.

**Request for Production No. 13**

All Documents describing, memorializing, outlining, or otherwise reflecting Communications sent, transmitted, or otherwise provided to broadcast stations, broadcast station representatives, "NewsNation" employees, agents or representatives, "The Hill" employees, agents or representatives, and "The CW" employees, agents or representatives regarding Pre-acquisition Details, the Transaction, or the Instant Litigation.

**Request for Production No. 14**

All Documents and Communications internally or with Tegna or broadcast stations, broadcast station representatives, "NewsNation" employees, agents or representatives, "The Hill" employees, agents or representatives, and "The CW" employees, agents or representatives related to "synergy," "synergies," "consolidation" or any other term used related to decisions You made or plan to make, considered, or evaluated that would cut or replace jobs, lower the offered salary or reduce the qualification requirements/years of experience required for hiring purposes for any positions, reduce employees' number of hours per week they work, or reduce the salary of employees at Nexstar or on Nexstar's payroll.

///

///

///

**Request for Production No. 15**

All Documents and Communications relating to Nexstar or Tegna's compliance with the Temporary Restraining Order issued (and extended) by Chief Judge Nunley on March 27, 2026, or Judge Nunley's Preliminary Injunction dated April 17, 2026, in the Instant Litigation.

**Request for Production No. 16**

All Documents and Communications relating to any advisories, guidance, or directives to Nexstar stations regarding topics or information to include or not include in their news coverage or stories, including but not limited to, Pre-acquisition Details, the Transaction, the financial health of Nexstar or Tegna, or the Instant Litigation.

**Request for Production No. 17**

All Documents relating to models, methodologies, forecasts, simulations, or analyses evaluating actual and projected Retransmission Consent Fees related to Tegna stations, including any projected changes in Retransmission Consent Fees, any projected impact of duopolies or triopolies on Retransmission Consent Fees, or any projected changes in bargaining leverage against MVPDs in Retransmission Consent Fee negotiations.

**Request for Production No. 18**

All Documents reflecting analyses of MVPD subscriber losses due to increases in Retransmission Consent Fees.

**Request for Production No. 19**

All Documents reflecting analyses of MVPD subscriber losses due to Blackouts.

**Request for Production No. 20**

All Documents and Communications to or from Your consultants, bankers, or economists relating to how the Transaction could affect Retransmission Consent Fees, bargaining power in Retransmission Consent Fee negotiations, or negotiation outcomes.

**Request for Production No. 21**

With respect to the Transaction, all documents relating to data and analyses relating to Your forecasts of Retransmission Consent Fees, Reverse Retransmission Fees, Blackout impacts, or newsroom costs.

**Request for Production No. 22**

From January 1, 2020, to present, for each station You own, operate, or control, Documents sufficient to show, on a monthly basis, the actual and projected Retransmission Consent Fee or carriage fee per subscriber for each MVPD and vMVPD (including a breakout of that fee for each category of content with separate fees, such as Big Four content versus other broadcast or cable content), the actual and projected number of subscribers per month for each MVPD and vMVPD, the actual and projected Reverse Retransmission Fee for each Big Four network, the actual and projected advertising revenue, any other source of revenue for that station. For clarity, this request encompasses projections through the latest date projected.

**Request for Production No. 23**

Documents sufficient to show any discussion, analyses, modeling or data related to ownership of duopolies within Your broadcast footprint.

**Request for Production No. 24**

Documents reflecting, concerning, or memorializing any discussions, analyses, modeling or data related to the financial effects of increasing the number of Big Four stations under Your ownership.

**Request for Production No. 25**

Documents regarding any formula or methodology used to calculate Retransmission Consent Fees charged to MVPDs.

**Request for Production No. 26**

Documents relating to Reverse Retransmission Fees paid to networks, including any analysis of how such fees are calculated.

**Request for Production No. 27**

Documents describing, analyzing, or reflecting how each of the following affects Retransmission Consent Fee negotiations and Retransmission Consent Fees (including in connection with past acquisitions): (i) station group size; (ii) ownership of multiple Big Four affiliates within a single DMA; (iii) scale of station ownership; and/or (iv) any other factor.

**Request for Production No. 28**

Documents sufficient to show any Communications, analyses, modeling or data related to Churn, including but not limited to causes for Churn, any analyses of Churn caused by Blackouts, any analysis of Churn caused by increased Retransmission Consent Fees, and what services subscribers may or do turn to when they cancel or do not renew with a given MVPD.

**Request for Production No. 29**

Documents sufficient to show any Communications, analyses, modeling or data related to substitutability, from the viewers' perspective, of alternative stations during a Blackout of a Big Four network.

**Request for Production No. 30**

Documents sufficient to show daily, weekly, and monthly Churn during a Blackout.

**Request for Production No. 31**

Documents sufficient to show any Communications, analyses, modeling or data related to Blackouts, including the existence of any Blackout of any of Your stations to any MVPD, the date of commencement of each Blackout, date of termination of each Blackout, which MVPD(s) were impacted, and how many subscribers were impacted.

**Request for Production No. 32**

License or other contractual terms or informal agreements that concern the availability of Your Big 4 station content via a streaming service to any MVPD during a Blackout.

**Request for Production No. 33**

All documents evaluating viewer reactions, ratings impacts, or advertising impacts associated with: (i) increased content duplication across Big Four stations in the same DMA or (ii) reductions in local news production.

**Request for Production No. 34**

All Documents quantifying local news output, including hours, original reporting, investigative reporting, and segments produced locally, along with any Documents comparing these metrics before and after the Transaction.

**Request for Production No. 35**

All Documents produced by You in response to any request by DIRECTV in this action.

**Request for Production No. 36**

From January 1, 2024, to present, for all local broadcast stations owned or operated by Nexstar, provide the following:

a. Station ownership and operator information;

b. Number of employees and total employee payroll;

c. Total production expenditure;

d. Number of newscast stories aired;

e. What percentage of stories aired are local versus national;

f. For all local broadcast stations owned or operated by You at any time since January 1, 2024, provide any ordinary course datasets or databases created or used since January 1, 2024, of newscast stories that were pitched, produced, and/or aired;

g. Re-use of news content and materials;

h. Shifts from local to national news coverage or vice versa; and

i. "customization" of national news bureaus (like Capital Bureau) and other "shared" resources.

**Request for Production No. 37**

Provide all Documents and materials created since January 1, 2018—including spreadsheets, analyses, slide decks, texts and emails—that contain any of the following:

a. Evaluations and financial analyses of projected Nexstar-Tegna merger efficiencies;

b. Evaluations and financial analyses of Sidecar affiliations, including evaluations of cost savings and integration at Sidecars relative to cost savings in duopoly DMAs;

c. Evaluations and financial analyses, both forward-looking and backward-looking or retrospective, relating to prior transactions involving the purchase of Big Four broadcasting stations, including Nexstar's acquisitions of Media General and Tribune Media;

d. Evaluations and financial analyses relating to prior transactions where divestitures were required (including Nexstar's acquisitions of Media General and Tribune Media), including business plans and pricing forecasts before and after the imposition of divestiture requirements.

**Request for Production No. 38**

Documents sufficient to show daily news programming story titles, Airtime, and scripts, such as newscasts' schedules or blueprints (sometimes referred to as "news programming Rundowns") maintained on software like Bitcentral, for news programming aired by each Nexstar-owned station since January 1, 2022.

**Request for Production No. 39**

All Documents related to newsfeeds originating from subscription services or other Nexstar-owned or operated services including without limitation NewsNation or The Hill, that are or were used or that could be or could have been or will be used as a source of news programming for Nexstar-owned stations.

**Request for Production No. 40**

Documents sufficient to show: (i) the number of persons employed by each Nexstar-owned station over time, on a weekly or monthly basis, from January 1, 2025, to present; (ii) how and when those numbers have changed during the same period of time; (iii) whether each employee was employed full-time or part-time; (iv) the job title and description and annual salary of each employee, and, for part-time employees only, the number of hours for which each employee is employed on a weekly basis.

**Request for Production No. 41**

All agreements between Nexstar and third-party subscription services related to news content.

**Request for Production No. 42**

All Documents related to the use or potential use of Premion by Nexstar-owned broadcast stations following the Transaction, including plans, forecasts, projections or analyses regarding

such use or potential use or its potential effect on advertising revenue, sales, costs or profitability for Nexstar or any Nexstar-owned station.

**Request for Production No. 43**

Documents sufficient to identify any FCC, USDOJ, or private action against You that involved You and any other broadcast station owner or operator in the past 10 years.

**Request for Production No. 44**

Documents sufficient to show any FCC fine or other disciplinary measure that involved You and any other broadcast station owner or operator in the past 10 years.

**Request for Production No. 45**

Documents sufficient to show any agreement between You and any other broadcast station owner or operator in the past 10 years.

**Request for Production No. 46**

All Documents prepared for general managers or news directors at each Nexstar-owned broadcast station related to the competitive ranking or position of the station's news programming or news talent.

**Request for Production No. 47**

All quarterly and annual ratings recap reports prepared for or received by each Nexstar-owned broadcast station.

**Request for Production No. 48**

All annual budgets, capital budgets, and strategy plans prepared by Nexstar-owned broadcast stations for approval by Nexstar, including but not limited to Nexstar's current and past Presidents of Broadcasting.

**Request for Production No. 49**

Documents sufficient to show monthly or quarterly capital expenditures by each Nexstar-owned broadcast station categorized by type of expenditure.

**Request for Production No. 50**

All final annual budgets prepared by or for Nexstar's broadcasting division, group, or section.

**Request for Production No. 51**

Documents sufficient to show the over-the-air footprint of each Nexstar-owned broadcast station.

**Request for Production No. 52**

All agreements between Nexstar and variable interest entities[1] or any other local broadcast television station owners, including but not limited to local marketing agreements, joint sales agreements, time brokerage agreements, shared services agreements, or management services agreements.

**Request for Production No. 53**

All Communications between You and any other entity that owns or operates local television broadcast stations affiliated with the Big Four networks related to: (i) the Transaction, (ii) any other completed, in-progress, pending, planned, or contemplated transactions involving Big Four local television broadcast stations (including, for avoidance of doubt, affiliation swaps or transactions involving variable interest entities[2]), including the application or enforcement of laws or regulations to such transactions, or (iii) consolidation in the broadcast television industry, including the actual or potential application of laws or regulations to such consolidation.

**Request for Production No. 54**

All Communications between You and any third-party or subpoena recipients related to the Pre-acquisition Details, Transaction, or Instant litigation.

////

////

////

////

////

////

[1] As the term is defined and used in Your February 27, 2026, Form 10-K filed with the U.S. Securities and Exchange Commission.

[2] As the term is defined and used in Your February 27, 2026, Form 10-K filed with the U.S. Securities and Exchange Commission.

**Request for Production No. 55**

All transcripts, video recordings, video tapes, video footage, and/or video clips of local news broadcasts from January 1, 2025, to December 31, 2025, aired by each Big Four-affiliated local television broadcast station Nexstar owned and operated in 2025.

Dated: May 27, 2026

Respectfully,

FOR PLAINTIFF STATE OF OREGON:

DAN RAYFIELD
Attorney General of Oregon

*/s/ Alexander DeLorenzo*
Timothy D. Smith (*Admitted pro hac vice*)
Attorney-in-Charge
Alex DeLorenzo (*Admitted pro hac vice*)
Ian Van Loh (SBN 280254)
Senior Assistant Attorneys General
Economic Justice Section
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tim.Smith@doj.oregon.gov | 503-798-3297
Alex.Delorenzo@doj.oregon.gov | 503-428-9482
Ian.Vanloh@doj.oregon.gov | 971-239-7457

*Attorneys for Plaintiff State of Oregon*

FOR PLAINTIFF STATE OF CALIFORNIA:

ROB BONTA
Attorney General of California

/s/ *Laura Antonini*
Laura Antonini (SBN 271658)
Deputy Attorney General

Paula Blizzard (SBN 207920)
Senior Assistant Attorney General
Brent Nakamura (SBN 283572)
Supervising Deputy Attorney General
Elizabeth Cheever (SBN 341421)
Emily Curran (SBN 293065)
Jennifer Hane (SBN 275729)
Komal K Patel (SBN 342765)
Connie P. Sung (SBN 304242)
Brian Wang (SBN 284490)
Deputy Attorneys General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7014

Telephone: (415) 510-3765
Email: Brian.Wang@doj.ca.gov

s/ *Shaoul Sussman*
Shaoul Sussman (*Admitted Pro Hac Vice*)
Nico Gurian (*Admitted Pro Hac Vice*
Victoria M. O. Field (*Admitted Pro Hac Vice*)
Paul M. Goodrich (*Admitted Pro Hac Vice*)
Simonsen Sussman LLP
307 W. 38th St., 16th Fl.
New York, NY 10018
Telephone: (646) 693-3929
Email: shaoul@simonsensussman.com
nico.gurian@simonsensussman.com
victoria.field@simonsensussman.com
paul.goodrich@simonsensussman.com

Catherine S. Simonsen (SBN 307325)
Thomas G. Mattes (SBN 355010)
Simonsen Sussman LLP
418 Bamboo Ln., Suite C-18
Los Angeles, CA 90012
Telephone: (917) 747-5196
Email: catherine@simonsensussman.com
thomas.mattes@simonsensussman.com

Nicolas A. Stebinger (*Admitted Pro Hac Vice*)
Victoria R. Sims (*Admitted Pro Hac Vice*)
Simonsen Sussman LLP
1629 K St. NW, Suite 300
Washington, DC 20006
Telephone: (202) 384-3130
Email: nicolas@simonsensussman.com
victoria.sims@simonsensussman.com

FOR PLAINTIFF STATE OF COLORADO:

PHILIP J. WEISER
Attorney General

*/s/ Bryn Williams*
Bryn A. Williams
First Assistant Attorney General
Jonathan B. Sallet (*Admitted pro hac vice*)
Special Assitant Attorney General
Robin Alexander (*Admitted pro hac vice*)
Assistant Attorney General
Amy Bowles (*Admitted pro hac vice*)
Assistant Attorney General
Colorado Department of Law

1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 702- 508-6000
Email: Bryn.Williams@coag.gov
Jon.Sallet@coag.gov
Robin.Alexander@coag.gov
Amy.Bowles@coag.gov

*Attorneys for Plaintiff State of Colorado*

FOR PLAINTIFF STATE OF CONNECTICUT:

WILLIAM TONG
Attorney General of Connecticut

NICOLE DEMERS
Deputy Associate Attorney General
(*Admitted pro hac vice*)

*/s/ Julián A. Quiñones Reyes*
Julián A. Quiñones (*Admitted pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: Julian.Quinones@ct.gov

*Attorney for Plaintiff State of Connecticut*

FOR PLAINTIFF STATE OF ILLINOIS:

KWAME RAOUl
Attorney General of Illinois

*/s/ Paul J. Harper*
Paul J. Harper (*Admitted pro hac vice*)
Supervising Attorney, Antitrust Bureau

Elizabeth L. Maxeiner (*Admitted pro hac vice*)
Chief, Antitrust Bureau
John R. Milligan (*Admitted pro hac vice*)
Daniel R. Betancourt (*Admitted pro hac vice*)
Assistant Attorneys General
Office of the Attorney General of Illinois
115 S. LaSalle Street
Chicago, Illinois 60603

Telephone: (312) 814-1004
Email: Paul.Harper@ilag.gov

*Attorneys for Plaintiff State of Illinois*

THEODORE E. ROKITA
Attorney General of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart, Att. No.25474-82
Chief Counsel and Director of Consumer Protection
(*Admitted pro hac vice*)
Jesse Moore, Atty. No. 37654-49
Deputy Attorney General (*Admitted pro hac vice*)
Jacob Patterson, Atty. No. 38302-29
Deputy Attorney General (*Admitted pro hac vice*)

OFFICE OF INDIANA ATTORNEY GENERAL
TODD ROKITA
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN 46204
Telephone: 317-232-4956
Fax: 317-232-7979
Email: Jesee.Moore@atg.in.gov

*Counsel for Plaintiff State of Indiana*

FOR PLAINTIFF STATE OF KANSAS

KRIS KOBACK
Attorney General of Kansas

*/s/ John Harris*
John Harris (*Admitted pro hac vice*)
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: 785-296-2215
Email: John.Harris@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

FOR PLAINTIFF COMMONWEALTH OF MASSACHUSETTS:

ANDREA JOY CAMPBELL
Attorney Genaral of Massachusetts

*/s/ Anthony W. Mariano*
Anthony W. Mariano (*Admitted pro hac vice*)

Chief, Antitrust Division
Jennifer E. Greaney (*Admitted pro hac vice*)
Deputy Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
Telephone: 781-835-7990
Email: Anthony.Mariano@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General of New York

/s/ *Elinor R. Hoffmann*
Elinor R. Hoffmann (*Admitted pro hac vice*)
Chief, Antitrust Division
Christopher D' Angelo (*Admitted pro hac vice*)
Deputy Chief Attorney General
Economic Justice Division
Amy McFarlane (*Admitted pro hac vice*)
Deputy Chief, Antitrust Bureau
Morgan Feder (*Admitted pro hac vice*)
Assistant Attorney General, Antitrust Bureau
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Elinor.Hoffmann@ag.ny.gov | 212-416-8269
Christopher.D'Angelo@ag.ny.gov | 212-416-6124
Amy.McFarlane@ag.ny.gov | 212-416-6195
Morgan.Feder@ag.ny.gov | 212-416-8288

*Attorneys for Plaintiff State of New York*

FOR PLAINTIFF STATE OF NORTH CAROLINA

JEFF JACKSON
Attorney general of North Carolina

KUNAL CHOKSI (*Admitted pro hac vice*)
Senior deputy attorney general

/s/ *Francisco Benzoni*
Francisco Benzoni (*Admitted pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (*Admitted pro hac vice*)
Director of Major Litigation for Consumer

Protection
114 W. Edenton Street
Raleigh, NC 27603
Telephone: 919-716-6000
Email: Fbenzoni@ncdoj.gov
Brabinovitz@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina*

FOR PLAINTIFF COMMONWEALTH OF PENNSYLVANIA:

DAVID W. SUNDAY, JR.
Attorney General of Pennsylvania

*/s/ Tracy W. Wertz*
Tracy W. Wertz (*pro hac vice forthcoming*)
Chief Deputy Attorney General
Antitrust Section
Email: twertz@attorneygeneral.gov

*/s/ Joseph S. Betsko*
Joseph S. Betsko (*pro hac vice forthcoming*)
Assistant Chief Deputy Attorney General
Antitrust Section
Email: jbetsko@attorneygeneral.gov

Jennifer A. Thomson (*pro hac vice forthcoming*)
Senior Deputy Attorney General
Antitrust Section
Email: jthomson@attorneygeneral.gov

Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Phone: 717-787-4530

*Attorneys for Plaintiff Commonwealth of Pennsylvania*

FOR PLAINTIFF COMMONWEALTH OF VIRGINA

JAY JONES
Attorney General of Virginia

*/s/ Tyler T. Henry*
Tyler T. Henry (*Admitted pro hac vice*)
Senior Assistant Attorney General
Antitrust Unit
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: 804-692-0485

Email: THenry@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia*

CERTIFICATE OF SERVICE

I certify that on May 27, 2026, I served the foregoing Plaintiff States' First Set Of Requests For Production To Defendant Nexstar Media Group, Inc. upon all counsel of record by electronic mail.

*/s/ Alexander DeLorenzo*
Alexander M. DeLorenzo (OSB 203641)
Senior Assistant Attorney General
*Counsel for Plaintiff Oregon and on behalf of all Plaintiff States*